Bridget Hill, WY Bar #6-3616
Karl D. Anderson, WY Bar #6-2807
Devin Kenney, WY Bar #7-5964
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
307-777-7841
bridget.hill@wyo.gov
karl.anderson@wyo.gov
devin.kenney1@wyo.gov

# UNITED STATES DISTRICT COURT

# DISTRICT OF WYOMING

| | | |
|---|---|---|
| CUSTODIA BANK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:22-cv-00125-SWS |
| BOARD OF GOVERNORS OF | ) | |
| THE FEDERAL RESERVESYSTEM & | ) | |
| FEDERAL RESERVE BANK | ) | |
| OF KANSAS CITY, | ) | |
| | ) | |
| Defendants. | ) | |

---

## [PROPOSED] *AMICUS CURIAE* BRIEF OF THE STATE OF WYOMING IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY OF THE ARGUMENT ..................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.   The State's Chartering and Regulation of Special Purpose Depository Institutions ......... 4

        A.  Chartering ................................................................................................... 4

        B.  Certificate of Authority Process ................................................................. 5

        C.  Examination ............................................................................................... 6

        D.  Ongoing Supervision ................................................................................ 7

        E.  Rulemaking and Guidance ........................................................................ 9

    II.  Customer Protections............................................................................................ 10

    III.  The State's Interest in the SPDI Charter ............................................................. 13

CONCLUSION.................................................................................................................... 15

EXHIBITS 1-4 .........................................................................................................ATTACHED

## TABLE OF AUTHORITIES

**Statutes**                                                    **Pages**

Wyo. Stat. Ann. § 9-1-603 ................................................................... 1

Wyo. Stat. Ann. § 13-12-103 ........................................................... 9, 11

Wyo. Stat. Ann. § 13-12-105 ............................................................. 11

Wyo. Stat. Ann. § 13-12-106 ............................................................. 11

Wyo. Stat. Ann. § 13-12-108 ............................................................. 11

Wyo. Stat. Ann. § 13-12-111 ............................................................... 4

Wyo. Stat. Ann. § 13-12-114 ............................................................... 4

Wyo. Stat. Ann. § 13-12-115 ............................................................... 5

Wyo. Stat. Ann. § 13-12-116 ............................................................... 5

Wyo. Stat. Ann. § 13-12-119 ....................................................... 6, 7, 8

Wyo. Stat. Ann. § 34-19-104 ............................................................... 8

Wyo. Stat. Ann. § 34-29-103 ............................................................. 12

Wyo. Stat. Ann. § 34-29-104 ............................................................. 12

**Rules**

Rules, Wyo. Div. Banking, ch. 19 § 3 ................................................. 8

Rules, Wyo. Div. Banking, ch. 19 § 4 ............................................... 12

Rules, Wyo. Div. Banking, ch. 19 §8 ................................................. 8

Rules, Wyo. Div. Banking, ch. 20 § 6 ............................................... 12

Rules, Wyo. Div. Banking, ch. 20 §7 ................................................. 8

Rules, Wyo. Div. Banking ch. 20 § 12 .............................................. 6, 7

Rules, Wyo. Div. Banking, ch. 20 § 13 ............................................................... 9

## Other Authorities

12 C.F.R. § 249.20 ............................................................................................ 11

Crypto dealer SFOX
    https://cointelegraph.com/news/crypto-dealer-sfox-gets-trust-charter-approval-from-
    wyoming-regulators .................................................................................... 7

Essentials of Cryptocurrency and Blockchains for Financial Services Professionals
    https://www.cannonfinancial.com/courses/essentials-of-cryptocurrency-and-blockchain-for-
    financial-services-professi/1519 ................................................................. 7

Guidelines for Evaluating Account and Service Requests
    https://bit.ly/3C59BiP ................................................................................ 13

Powell Nomination Hearing
    https://www.banking.senate.gov/hearings/01/04/2022/nomination-hearing ..................... 3, 14

Statement on Guidelines to Evaluate Requests for Accounts and Services at Fed. Reserve Banks
    https://www.federalreserve.gov/newsevents/pressreleases/bowman-statement-
    20220815.htm .............................................................................................. 13

Two Ocean No-Action Letter
    https://wyomingbankingdivision.wyo.gov/announcements-and-publications/two-ocean-no-
    action-letter-digital-asset-custody-qualified-custodian-status ................................... 7

Wyoming Bank Regulator Taps Chainalysis to Boost Crypto Tracing Efforts, Danny Nelson
    https://www.coindesk.com/markets/2020/09/17/wyoming-bank-regulator-taps-chainalysis-to-
    boost-crypto-tracing-efforts/ ....................................................................... 7

Wyo. Div. of Banking, Special Purpose Depository Institutions
    https://wyomingbankingdivision.wyo.gov/banks-and-trust-companies/special-purpose-
    depository-institutions.................................................................................. 4

Wyo. Div. of Banking, Special Purpose Depository Institution Examination
    https://drive.google.com/file/d/14dA8hrR59aGsKZYxAolWQ7dVr32cr_Vw/view ............... 7

Wyo. Partners with Chainalysis to Combat Money Laundering and Illicit Digital Assest Activity
    https://blog.chainalysis.com/reports/wyoming-division-of-banking-partnership-
    announcement/ .............................................................................................. 8

## SUMMARY OF THE ARGUMENT

Proposed *amicus* State of Wyoming is the state that created the Special Purpose Depository Institution (SPDI) bank charter, granted such a bank charter to Plaintiff Custodia Bank, Inc. (Custodia), and oversees SPDIs such as Custodia. The State's primary interest in this matter is simple: to resolve the indefinite timeline and opaque process for SPDIs to receive decisions from the Defendants on master account applications. Defendants created uncertainty with their extreme delay and ambiguous process for SPDI master account applications. If Defendants are allowed to indefinitely delay decisions on SPDI master account applications, they have effectively relegated the State's SPDI bank charter to an inconsequential charter for depository institutions, *i.e.*, a bank charter with no reasonable path to a master account. The State also has an interest in disputes related to SPDI master account applications being adjudicated with accurate information regarding the State's robust regulatory framework for SPDI bank charters. The State is well-positioned to provide such information to the Court. Finally, the State has an interest in promoting new and innovative financial services companies—including SPDIs—that economically benefit the State and citizens of Wyoming. The delay and uncertainty that Defendants have engendered undermines this important interest.

The Wyoming Attorney General is authorized to file this *amicus* by Wyoming Statute § 9-1-603(a)(iv) which authorizes her to "[r]epresent the state in suits, actions or claims in which the state is interested in . . . any United States court[.]" Wyo. Stat. Ann. § 9-1-603(a)(iv).

## ARGUMENT

The State respectfully requests that the Court not grant Defendants' motions to dismiss because there is viable a claim to be determined in this matter. The State has a robust regulatory

framework for SPDIs. While the Defendants depict alleged risks posed by Plaintiff, they simply overlook the State's extensive regulatory guardrails in place for SPDI chartering, certificates of authority, examinations, ongoing supervision, and customer protection. The Federal Reserve Bank of Kansas City (Kansas City Fed) even concedes that "[e]nacting a regulatory framework for the cryptocurrency industry may help mitigate these risks," but hardly mentions that the State already has such a regulatory framework for SPDIs. (Dkt. No. 51 (Kansas City Fed Br.) at 25).

In particular, the SPDI-chartering process is extensive and requires finding that the applicant's leadership team has a reasonable promise of a successful operation. Following a SPDI's receipt of its bank charter and before the SPDI may commence business, it must apply for and receive a certificate of authority (COA) and show it is prepared to commence business in a safe and sound manner within six months after receiving a COA.

Once the SPDI commences business, the State continuously oversees the SPDI through ongoing supervision and regular examinations. For a SPDI's proposed activity incidental to the business of banking, including digital asset activity, the SPDI must receive prior written approval from the Wyoming Banking Commissioner (Banking Commissioner) that the planned activity is consistent with safe and sound operations. The SPDI's operations must also comply with numerous customer protections and other regulations related to digital asset activity.

Defendants current lack of movement in either granting or denying Plaintiff a master account is impacting the State's interest in the Wyoming SPDI bank charter framework. As even Chairman of the Federal Reserve Board Jerome Powell acknowledged, "we start granting these [in reference to master accounts for SPDIs and like entities] and there will be a couple hundred of them pretty quickly." United States Senate Committee on Banking, Housing, and Urban Affairs,

2

Nomination Hr'g for Jerome Powell, Chair of the Federal Reserve of the Unites States (Jan. 11, 2022) (Powell Nomination Hr'g).[1]  The State agrees with Chairman Powell that there are likely multiple entities which could potentially seek a SPDI bank charter and bring an innovative financial services company to Wyoming, but which await Defendants' decision.

Thus, the State's interest is broader than Plaintiff's individual application, but rather is in obtaining clarity on the timeline and steps necessary for any Wyoming SPDI to receive a decision on a master account application. The Federal Reserve Board of Governors (Board) recently finalized guidelines for account access, but the finalized guidelines provide little clarity because they appear to indefinitely delay decisions on master account applications and are allegedly nonbinding on the Kansas City Fed. With the SPDI bank charter, the State established a foundation to bring responsible, safe, and sound innovation in banking to Wyoming, but the Defendants' lack of clarity on the timeline and process for master accounts has subverted the State's efforts. In filing this *amicus* brief, the State seeks to ensure that entities chartered, regulated, and overseen by the State are treated fairly and that determinations either for or against their master account applications are made in an efficient, prompt manner in accordance with statutes and rules applicable to Defendants.[2]  For that reason, the State respectfully requests that this Court deny Defendants' motions to dismiss and grant Plaintiff's opposition to those motions so that this matter can be fully heard and considered by the Court.

---

[1]  https://www.banking.senate.gov/hearings/01/04/2022/nomination-hearing (from time stamp 2:08:06 to 2:08:09).

[2]  The State is not taking a position on whether federal law even allows Defendants to make a determination against Custodia Bank's master account application, which is disputed matter in this lawsuit.

I.    **The State's Chartering and Regulation of Special Purpose Depository Institutions.**

A.    **Chartering**

The State imposes extensive requirements for a corporation to receive a SPDI bank charter. First, the Wyoming Department of Audit's Division of Banking (Division) encourages potential SPDI applicants to consult with the Division prior to applying. Wyo. Div. of Banking, Special Purpose Depository Institutions.[3] After such consultations, the applicant provides a detailed application, business plan and other information on topics such as operating expenses, compliance with Wyoming law, capital, corporate formation, and more. Wyo. Stat. Ann. § 13-12-111. The application requires information on operations, management, capital, infrastructure, information systems, and other information.[4] The Division's guidelines for business plans recommends that an applicant cover topics such as the description of the business; marketing plans; management plans; records, systems, and controls; financial management plans; monitoring; and financial projections.[5]

The Division then investigates the application with a focus on the SPDI's incorporators, officers and directors, business plan, capital, projected earnings, products and services, compliance, and information technology. Wyo. Stat. Ann. § 13-12-114(a). The investigation's findings are submitted to the Wyoming Banking Board. Wyo. Stat. Ann. § 13-12-114(b). The Wyoming Banking Board then holds a hearing on the application to review statutory criteria

---

[3]        https://wyomingbankingdivision.wyo.gov/banks-and-trust-companies/special-purpose-depository-institutions.

[4] *See* State of Wyoming's Ex. 1.

[5] *See* State of Wyoming's Ex. 2.

including the background of the incorporators, officers, and directors; the adequacy and plausibility of the business plan; compliance with capital and surplus requirements; whether the SPDI is being formed for legitimate objectives authorized by law; and compliance with Wyoming law. *Id.* § 13-12-115(a)(i)-(vii). If the Wyoming Banking Board makes favorable findings on all the listed criteria, the Wyoming Banking Board shall approve the charter application. *Id.* § 13-12-115(b).

### B.    Certificate of Authority Process

A SPDI must have a COA and be prepared to operate in a safe and sound condition before it can commence business. Wyo. Sat. Ann. §§ 13-12-116(a), 13-12-122. Prior to issuance of a COA, a SPDI will receive a letter from the Division detailing the information required for the SPDI to receive the COA and to show it is prepared to commence business in a safe and sound manner within six months after receiving a COA. The SPDI will also undergo an initial visit, similar to an exam, in which the Division reviews certain items from the COA requirements letter and other matters related to safety and soundness before the Banking Commissioner issues the COA. The Commissioner issues a COA after determining the SPDI has met all the requirements.

The Defendants appear to misunderstand this process, since both allege that Plaintiff's failure to receive a COA should impede its suit against Defendants. Dkt. No. 51 (Board's Br.) at 31; Kansas City Fed Br. at 41. Once issued, a COA gives a SPDI the right to commence business within six months after issuance of the COA. Wyo. Stat. Ann. § 13-12-116(b). If it fails to commence business within six months, the charter and COA expire unless the Wyoming Banking Board agrees to extend the time period. *Id.* Given the six-month deadline to commence operations after issuance of the COA, the SPDI should have a master account, correspondent relationship, or

other banking relationship or technology sufficient to facilitate the SPDI engaging in banking business **before** it is issued the COA. The circumstances alone demonstrate the fallacy of Defendants' argument: had Plaintiff obtained a COA earlier, both the bank charter and COA would have expired long ago, thus giving Defendants grounds to deny Plaintiff's master account application because of the lack of a bank charter. In any event, the point is now moot as the Banking Commissioner has issued the COA to Plaintiff as of September 12, 2022. (Dkt. No. 58 (Pl's. Omnibus Mem. in Opp. to Def.s' Mot. to Dismiss Pl.'s Compl.) (Pl.s' Mem.) at 10). The reason Plaintiff can now receive a COA is that, while it awaits a decision on its master account application, it has moved forward with a third-party banking partner. (*See* Dkt. No. 1 (Compl.) ¶ 8; Pl's. Mem. at 10).

### C.     Examination

SPDIs are subject to a full-scope examination annually during the first three years and periodic examinations and visitations thereafter as necessary. Wyo. Stat. Ann. § 13-12-119(c); Wyo. Div. of Banking Rules (Banking Rules), Ch. 20 § 12(c). The examination covers the condition and resources of the SPDI, the mode of managing institution affairs and conducting business, the actions of officers and directors in the investment and disposition of funds, the safety and prudence of institution management, compliance with the requirements of Wyoming's SPDI law, and such other matters as the Banking Commissioner may require. Wyo. Stat. Ann. § 13-12-119(c).

The Division contracted with Promontory Financial Group for a 772-page exam manual which builds on existing federal bank examination manuals, layers on top digital asset guidance from more than 35 sources, and covers AML/BSA, OFAC, Custody and Safekeeping, Information

Security, and Payments Systems.[6]  Division employees received detailed training and materials on

SPDI examinations from Promontory Financial Group. Division employees also received training

from Chainalysis on the fundamentals of blockchains and for certification on using Chainalysis

blockchain analytics tools, as well as training from the Cannon Financial Institute on

cryptocurrency and blockchains.[7] Division employees have experience related to digital assets in

other contexts, including trust companies.[8]

### D.  Ongoing Supervision

SPDIs are also subject to robust ongoing supervision by the State, including digital asset

activity. This ongoing supervision requires SPDIs to regularly submit information to the Division.

SPDIs will file quarterly call reports with the Division. Wyo. Stat. Ann. § 13-12-119(a); Banking

Rules, Ch. 20 § 12(b). Furthermore, SPDIs must provide the Division with quarterly variance

reports that compare the SPDI's budget to actual performance during the first three years of

operation and be subject to quarterly off-site monitoring by the Division. *Id*. SPDIs will submit a

---

[6] *See* Wyoming Division of Banking, Special Purpose Depository Institution Examination Manuals, https://drive.google.com/file/d/14dA8hrR59aGsKZYxAoIWQ7dVr32cr_Vw/view.

[7] Wyoming Bank Regulator Taps Chainalysis to Boost Crypto Tracing Efforts, Danny Nelson, coindesk.com (Sept. 14, 2021), https://www.coindesk.com/markets/2020/09/17/wyoming-bank-regulator-taps-chainalysis-to-boost-crypto-tracing-efforts/; Essentials of Cryptocurrency and Blockchains for Financial Services Professionals, Cannon Financial Institute, https://www.cannonfinancial.com/courses/essentials-of-cryptocurrency-and-blockchain-for-financial-services-professi/1519.

[8] Crypto dealer SFOX gets trust charter approval from Wyoming regulators, CoinTelegraph, Turner Wright (Mar. 1, 2022), https://cointelegraph.com/news/crypto-dealer-sfox-gets-trust-charter-approval-from-wyoming-regulators; Two Ocean No-Action Letter: Digital Asset Custody & Qualified Custodian Status, Wyoming Division of Banking (Oct. 23, 2020), https://wyomingbankingdivision.wyo.gov/announcements-and-publications/two-ocean-no-action-letter-digital-asset-custody-qualified-custodian-status

resolution and recovery plan within six months of commencing business. Banking Rules, Ch. 20 § 4(a).

If a SPDI begins digital asset activity, it must regularly submit substantial supplementary information to the Division. The Division expects any SPDI seeking to engage in digital asset custody to first provide 60 days written notice describing the proposed custodial services, verifying its compliance with applicable law, and stating the reasons why the proposed custodial services will not impair safety and soundness. Wyo. Stat. Ann. 34-19-104(a); Banking Rules, Ch. 19 § 3(a). A SPDI must also provide verification that digital assets under custody carry appropriate insurance or other financial protections to cover or mitigate potential loss exposure. Banking Rules, Ch. 19 § 8(o). The Division, acting on behalf of the Banking Commissioner, has authority to request a wide variety of digital asset reporting from SPDIs, including, but not limited to, their methodology for valuing digital assets, results from information technology security testing, policies and procedures related to digital assets, audit records, and information on potential security incidents. Banking Rules, Ch. 19 § 8(f), (m), (p); 9(k), (r)-(t). SPDIs will also likely submit regular digital asset transaction data to the Division for review and analysis. *See* Wyo. Stat. Ann. § 13-12-119(a); Banking Rules, Ch. 20 § 7(f).[9] Ultimately, the Division has expansive authority to supervise a SPDI's digital asset activity because it may conduct an examination of the SPDI's digital asset custody services at any time, with or without notice. Banking Rules, Ch. 19 § 8(s).

---

[9] The Division has entered into a contract to use Chainalysis blockchain analytics tools in its supervision. *See* Wyoming Partners with Chainalysis to Combat Money Laundering and Illicit Digital Asset Activity, blog.chainalysis.com (Sept. 17, 2020), https://blog.chainalysis.com/reports/wyoming-division-of-banking-partnership-announcement/.

Additionally, SPDIs must obtain prior written approval from the Banking Commissioner for any new activity that is usual or incidental to the business of banking, including activities related to digital assets. Wyo. Stat. Ann. § 13-12-103(b)(vii). SPDIs must "consult with the [Banking] Commissioner and seek any necessary approval, before engaging in a new substantial activity or line of business," including new digital asset products and services. Banking Rules, Ch. 20, § 13(b). The Banking Commissioner shall not approve any new incidental activity, including those involving digital assets in which the SPDI seeks to participate "if he finds that the requested activity will adversely affect the solvency or the safety and soundness of the special purpose depository institution." Wyo. Stat. Ann. § 13-12-103(b)(vii). Furthermore, the Banking Commissioner's review may include, but is not limited to, any applicable policies and procedures, risk assessments, flow of funds, anti-money laundering and compliance programs, any relevant vendor management policies, permissibility under Wyoming law, audits and testing, customer protections, and other items. *See* Wyo. Stat. Ann. § 13-12-103(b)(vii); Banking Rules, Ch. 20 § 13(a).

### E. Rulemaking and Guidance

The State's regulatory framework is built on years of rulemaking and guidance. The Division's SPDI regulations became effective in 2020 and were amended in 2021. Wyoming Dep't of Audit, Banking Div., Superceded Rules Ch. 20 (effective date Aug. 7, 2020). Those rules cover, among many topics, capital and surplus, application requirements, recovery and resolution planning, supervision of controlling interests, a prohibition on commercial firms obtaining a controlling interest in a SPDI, receivership, AML and sanctions, presence in Wyoming, requirement to back deposits with level 1 high-quality liquid assets, safety and soundness, reports

9

and examinations, and operations and activities approvals. *See* Wyo. Div. of Banking Rules (Banking Rules), Ch. 20.

The Division's digital asset custody regulations became effective in 2019 and were amended in 2021. Wyoming Department of Audit, Banking Division, Superceded Rules Ch. 19 (effective date Nov. 8, 2019). They cover, among many topics, custodial services, customer agreements, customer protections, permissible transactions, risk management, operations, key generation and management, training, vendor and supplier requirements, technology controls, transaction handling, and digital asset lending requirements and restrictions. *See* Banking Rules, Ch. 19.

The Division has also issued a variety of guidance on SPDIs. This includes updated capital requirements guidance in 2021 that identifies the factors the Banking Commissioner considers in setting the initial capital requirements, confirms that "the required initial capital will likely far exceed the statutory minimum," and provides for additional information on capital requirements.[10] It also created guidance on SPDI business plans and the application process.[11]

In sum, the State has established a detailed and extensive process that ensures the SPDI banks are well-regulated with built-in oversight processes.

II.    **Customer Protections**

The State offers protections for SPDI customers not typically available in other jurisdictions, including enhanced protections related to their fiat currency deposits and digital assets in custody. As to customer deposits, a SPDI must maintain unencumbered liquid assets at

---

[10]  *See* State of Wyoming's Ex. 3.

[11]  *See* State of Wyoming's Ex. 4.

not less than 100 percent of its customer deposits. Wyo. Stat. Ann. § 13-12-105(a). Thus, a SPDI is a fully reserved bank that cannot use customer deposits to make loans or invest beyond high-quality liquid assets. Wyo. Stat. Ann. §§ 13-12-103(c), 13-12-105(b)(i)-(iii) (defining "liquid assets" as United States currency or highly liquid assets); Banking Rules, Ch. 20 § 9 (b) (requiring SPDI investments to be level 1 high-quality liquid assets, as defined in 12 C.F.R. § 249.20, as of October 1, 2020, unless otherwise approved by the Commissioner). After the first three years of operation, a SPDI must also maintain a 2% contingency account, meaning it should maintain unencumbered liquid assets at not less than 102% of its customer deposits. Wyo. Stat. Ann. § 13-12-106(a).

The Kansas City Fed is critical of Plaintiff for not having FDIC insurance to insure $250,000.00 per a depositor (Kansas City Fed. Br. at 1, 8, 10-11, 18, 19, 25, 27), but overlooks that SPDIs are fully reserved banks that **do not make loans** and **must maintain at least 100 percent backing of customer deposits** in high-quality liquid assets. A SPDI is **not** a fractional-reserve bank in which, particularly absent FDIC insurance, a bank run might quickly escalate and overwhelm the small fraction of deposited funds on-hand for customer withdrawals. Instead, the SPDI must fully-back its depository liabilities. Nevertheless, a SPDI without insurance from the FDIC must:

(1)  Display on its website and any place where it accepts deposits a sign conspicuously stating that deposits are not insured by the federal deposit insurance corporation. Wyo. Stat. Ann. § 13-12-108(a);

(2)  Require that each depositor, upon opening an account, execute a statement acknowledging that all deposits at the special purpose depository institution are not insured by the federal deposit insurance corporation. *Id.* § 13-12-108(b); and

(3)  Include in all advertising a disclosure that deposits are not insured by the federal deposit insurance corporation. *Id.* § 13-12-108(c).

Multiple enhanced protections exist for customers who custody digital assets with a SPDI. SPDIs are subject to examination and ongoing supervision for compliance with Wyoming's laws and regulations related to digital assets and customer protection. *See supra* Section I.C-E. SPDIs must generally undertake transactions with customer digital assets based on distinct, written authorizations from the customer. Banking Rules, Ch. 19 § 4(d). SPDIs must also provide clear written notices to customers regarding, among other things, the heightened risk of loss from digital asset transactions. *Id.* § 5(c)(i). Unlike most jurisdictions, Wyoming law also defines perfection and priority of security interests in digital assets. *See* Wyo. Stat. Ann. § 34-29-103. In the event of a receivership, Wyoming law provides significant customer protections when SPDIs hold digital assets. For example:

- A customer's digital assets are not assets of the bank. Wyo. Stat. Ann. § 34-29-104(d);

- A customer's digital assets can be held under a bailment. Wyo. Stat. Ann. § 34-29-104(d)(i), Banking Rules, Ch. 19, § 4(c)(i);

- A customer's digital assets are not a source of unrelated claims of creditors, provided basic requirements are met. Banking Rules, Ch.20 § 6(p)(i)-(iii);

- The Banking Commissioner must transfer a customer's digital assets to a successor custodian or return the assets to a customer in a receivership "as quickly as possible to prevent or minimize disruption to customers." Banking Rules, Ch. 20, § 6(q); and

- Customer claims in a receivership have priority ahead of everyone except for the administrative expenses of the Commissioner. Banking Rules, Ch. 20, § 6(j)(ii).

Together, the State has protections aimed to provide enhanced security of customer fiat currency deposits and digital assets under custody with a SPDI.

III.    <u>**The State's Interest in the SPDI Charter**</u>

The State has an interest in the operation and use of Wyoming SPDI bank charters. As discussed above, the State has built an extensive regulatory framework for banks engaged in digital asset activities. Promoting and encouraging these innovative financial services is an important interest to the State since these groundbreaking activities will economically benefit the citizens of Wyoming. However, Defendants' significant delays causes concern about the viability of SPDI-chartered depository institutions ever receiving direct access to the U.S. payments system in a reasonable time frame.

Defendants argue that recently finalized guidelines provide clarity on the master account application process. Kansas City Fed Br. at 42-43; Board Br. at 6-8 (citing Guidelines Board of Governors of the Federal Reserve System, *Guidelines for Evaluating Account and Service Requests*, Docket No. OP-1747 ("Guidelines")).[12] But even if the Guidelines applied to Plaintiff's application (and Custodia argues they do not), the Guidelines set a roadmap for indefinite delay and further ambiguity on SPDI master account applications. The Board admits more time is required to develop an "implementation plan" for the Guidelines and presumably even more time is required to carry-out any implementation plan it develops. Guidelines at 9. Board Governor Michelle W. Bowman suggested the Board is not even prepared to develop or carry-out an implementation plan for the Guidelines, stating that "more work remains to be completed before a process is established to fully implement the guidelines."[13]

---

[12] https://bit.ly/3C59BiP.

[13] Statement on Guidelines to Evaluate Requests for Accounts and Services at Federal Reserve Banks by Governor Michelle W. Bowman (Aug. 15. 2022), https://www.federalreserve.gov/newsevents/pressreleases/bowman-statement-20220815.htm.

Even if an implementation plan is developed and carried out, the Board expressly rejects any timeline for the review of master account applications. Guidelines at 15. Finally, even if the Guidelines were eventually fully implemented, the State questions how much clarity they provide when the Kansas City Fed is allegedly not bound by them. Board Br. at 6 ("[T]he Proposed Guidelines would not disturb the Reserve Banks' 'discretionary authority to grant or deny requests.'"). Instead of clarifying the timeline and process for master account applications, the Guidelines seem to **extend** the timeline indefinitely under the guise of developing an "implementation plan" and continue an ambiguous process in which Reserve Banks can allegedly disregard the Guidelines and exercise complete discretion.

While the State appreciates the Defendants' care and consideration, an unreasonable 23 months have passed since Plaintiff applied for a master account. Furthermore, the Defendants are aware of the safety and soundness precautions that Wyoming law imposes upon SPDIs, including Plaintiff. Yet, Defendants are unwilling to commit to any timeline to decide Plaintiff's master account application. (Compl. ¶ 43); Guidelines at 15.

Instead of committing to any decision timeline, the Board contends that its delay is justified by the precedential nature of the decision. (Board Br. at 2, 15). Chairman Powell similarly claimed that the Board's time on SPDI master account applications is because "it's just hugely precedential and that's really why we've taken our time with it."[14] The State questions the premise that a master account application decision for a SPDI is precedential for the entire digital asset industry because (1) no other jurisdictions have the advanced regulatory framework for digital assets established by

---

[14] https://www.banking.senate.gov/hearings/01/04/2022/nomination-hearing (from time stamp 2:07:30 to 2:08:27)

Wyoming and (2) the Board acknowledges that applications should be reviewed on a "case-by-case" basis. (Board Br. at 7). Moreover, even assuming Plaintiff's application is precedential for the digital asset industry, the very precedential nature of this application is a reason to make a decision on the application without delay. Otherwise, Defendants are impeding a whole industry (a "couple of hundred" institutions in Chairman Powell's estimation) and impairing efforts to bring the digital asset industry inside the banking regulatory perimeter.

Defendants' failure to act is both the most harmful "decision" they could make and the most harmful process in which they could make it. Because the Defendants have not even denied the application, existing SPDIs and potential SPDI applicants who may apply for a master account face considerable uncertainty. They cannot be sure how long the application process will take, what steps are needed to receive a master account beyond submitting the application itself, or even whether the receipt of a master account is feasible for a SPDI. This uncertainty is a significant detriment to the State because it cannot fully realize the benefits of its SPDI bank charter if Defendants restrict SPDI access to the U.S. payments system.

## CONCLUSION

The State of Wyoming respectfully requests that the Court deny Defendants' motions to dismiss.

Dated this 20th day of September, 2022.

State of Wyoming

*/s/ Bridget Hill*
Bridget Hill, Wyo. Bar No. #6-3616
Attorney General
109 State Capitol
Cheyenne, WY 82002
(307) 777-7841

15

*/s/ Karl Anderson*
Karl Anderson, Wyo. Bar No. #6-2807
Supervising Attorney General
109 State Capitol
Cheyenne, WY 82002
(307) 777-7841


*/s/ Devin Kenney*
Devin Kenney, Wyo. Bar No. #7-5964
Senior Assistant Attorney General
109 State Capitol
Cheyenne, WY 82002
(307) 777-7841

16

## CERTIFICATE OF SERVICE

I certify that on this 20th day of September 2022, a copy of the foregoing **[PROPOSED]** *AMICUS CURIAE* **BRIEF OF THE STATE OF WYOMING IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** was served in the following manner as addressed to:

John K. Vila                                   VIA CM/ECF
Ryan Thomas Scarborough
Whitney D. Hermandorfer
Jamie Wolfe
WILLIAMS & CONNOLLY
680 Maine Avenue SW
Washington, DC 20024
*Attorneys for Plaintiff*


Scott E. Ortiz                                 VIA CM/ECF
WILLIAMS PORTER DAY & NEVILLE
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602
*Attorneys for Plaintiff*


Angela Tarasi                                VIA CM/ECF
KING & SPALDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202
*Attorneys for Defendant Federal Reserve Bank of Kansas City*


Billie LM Addleman                       VIA CM/ECF
John P. Fritz
HIRST APPLEGATE
P.O. Box 1083
Cheyenne, WY 82003
*Attorneys for Defendant Federal Reserve Bank of Kansas City*

17

Joshua P. Chadwick                          VIA CM/ECF
Yvonne F. Mizusawa
Yonatan Gelblum
Katherine Pomeroy
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
*Attorneys for Defendant Federal Reserve Board of*
*Governors*


                                   */s/ Karl Anderson*
                                   Wyoming Attorney General's Office

# STATE OF WYOMING

# DIVISION OF BANKING



# SPECIAL PURPOSE DEPOSITORY INSTITUTION

# BANK CHARTER APPLICATION

**Name of Proposed Institution:**

**Date of Submission:**

<div style="border:2px solid black; display:inline-block; padding:8px;">

## Exhibit 1

</div>

# GENERAL INFORMATION AND INSTRUCTIONS

All questions must be answered with truthful and complete information. Answers of "none," "not applicable" or "unknown" are acceptable. Explain "unknown" answers. If uncertainty exists as to whether information should be disclosed, you should disclose the information.

The questions in the application are not intended to limit the Applicant's presentation nor are the questions intended to duplicate information supplied elsewhere. For such information, a cross reference to the information is acceptable. *Specify the cite or location in the documents for each cross-reference.*

An Applicant may present the information below in an alternative format, if all required information is provided. Supporting information for all relevant factors, setting forth the basis for the Applicant's conclusions, should accompany the application. The Wyoming Division of Banking ("the Division") may request additional information as necessary.

This application form collects information that the Division will use to evaluate a bank charter application for a special purpose depository institution (SPDI). In evaluating the application, the Division will consider the applicable statutory requirements set forth in Wyo. Stat. §§ 13-12-101 through -126, the Rules of the Division, and other applicable state and federal laws. It is the responsibility of the Applicant to ensure compliance with these laws.

In addition to the appropriate number of signed copies of this application, the Division requires Applicants to submit all materials electronically. Please contact the Division for submission instructions.

Applicants with questions should contact the Division at (307) 777-7797.

## CONFIDENTALITY

The Public Section of this document (pgs. 1–4) is available for public inspection under Chapter 5, § 8 of the Rules of the Division.

The remainder of this document is confidential, protected by law and not subject to disclosure through the Wyoming Public Records Act. If necessary, this document may be shared on a confidential basis with other governmental agencies (with which the Division has an information-sharing agreement) in connection with the underlying SPDI application.

<u>Public Section</u>

## Proposed Special Purpose Depository Institution Information

_____

Name of Proposed Institution

_____

City of Headquarters

## Holding Company Information *(if applicable, please contact Division with questions)*

_____

Name of Company

_____

Mailing Address

## Proposed Institution Activities *(check all that apply)*

☐ Operating Accounts/Cash Management

☐ Commodities Transactions[1]

☐ Securities Transactions[2]

☐ Custodial Services

☐ Digital Assets

☐ Enhanced Digital Asset Custody Regime *(Ch. 19, Rules of the Division)*

☐ Fiduciary/Investment Management Services

*Intended Federal Reserve Status:*

☐ Member Bank

☐ Non-Member Bank

☐ Other *(describe)*

## Primary Point of Contact for Application

_____

Name

---

[1] *See, e.g.*, transactions governed by the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, or other similar law.
[2] *See, e.g.*, transactions governed by the Exchange Act, 15 U.S.C. § 78a *et seq.*, Investment Company Act, 15 U.S.C. § 80a-1 *et seq.*, Investment Advisers Act, 15 U.S.C. § 80b-1 *et seq.*, or other similar law.

_____

Mailing Address


_____          _____

Firm *(if applicable)*              License Number, Type, & State  *(if applicable)*


_____          _____

Phone Number                     E-Mail

## Brief Overview of Application

Provide a brief overview of the application. The overview should describe the institution's business and any special market niche, including products, market, and services.

<u>Confidential Section</u>

*In accompanying materials, please clearly delineate sections, item numbers
and organization of information.*

## 1.     Operations

(a)     Provide an executive summary. The summary should describe the institution's proposed business activities, capital and business projections. This document should be more detailed than the brief overview in the public section of this application and separate from the business plan required under Wyo. Stat. § 13-12-111(b) which is described beginning on pg. 12 of this application.

(b)     Describe any issues regarding the permissibility of the institution's activities regarding Wyo. Stat. §§ 13-12-101 through -126 and other applicable state and federal laws.

(c)     List and provide a copy of all applications filed in conjunction with this document, or intended to be filed, including applications for holding companies, branch offices, service corporations, licenses from governmental agencies or self-regulatory agencies for incidental activities, whether state, federal or foreign.

(d)     Provide a copy of all public or private offering materials and the proposed form of stock certificate, including any required restrictive legends.

(e)     Ensure all incorporators sign the verification at the end of this application.

(f)     Provide three (3) signed, original copies of the articles of incorporation of the institution, consistent with Wyo. Stat. § 13-12-109(b).

(g)     Provide a copy of the final bylaws, if available, or the latest proposed draft. Indicate how and when the bylaws will be adopted.

(h)     Provide letters of commitment or other evidence of capital available to the special purpose depository institution upon chartering, as required by the Commissioner.

(j)     Attach preliminary evidence of private insurance, including coverage types, coverage limits and any conditions relating to claim payment, as specified by W.S. 13-12-119(e).

(k)     Attach a detailed business plan, as otherwise required by the Rules of the Division and this document.

(l)     Provide preliminary evidence that a surety bond is available to the proposed institution, or a statement that the institution will pledge assets consistent with Wyo. Stat. § 13-12-118.

(m)     If applicable, designate an agent for service of process under Chapter 5, § 7 of the Rules of the Division.

(n)    List all other state, federal and foreign regulators that may have jurisdiction over the proposed special purpose depository institution, whether in whole or in part relating to the proposed activities of the institution and provide the nature or extent of the jurisdiction. Describe all contacts with other regulators regarding the proposed institution as of the date of this application.

(o)    If applicable, please describe any proposed activities or other portions of this application, including the business plan, which contemplate proposed amendments to the statutes governing special purpose depository institutions. Provide a copy of the legislation and its status, including the date on which a legislative committee or task force adopted the proposed legislation. Please underline other portions of this application.

(p)    Provide any additional information requested by the Commissioner.

## 2.   Management

(a)    Identity the following persons: (1) incorporators; (2) proposed directors; (3) executive officers; and (4) any individual, or group of shareholders acting in concert, that will own or control ten (10) percent or more of the institution's stock. For each of these persons, attach a Biographical and Financial Report, a fingerprint card, and indicate all positions and offices currently held or to be held with the institution's holding company and its affiliates, if applicable. Include the signed "Oath of Director" for each proposed director.

(b)    Provide the name, proposed title and physical address of each individual who will serve as a director or an executive officer of the proposed institution during the first year of operation. Also provide a statement with supporting evidence, demonstrating that the proposed executive officers and directors have sufficient experience, ability and standing to afford reasonable promise of a successful operation, including a biographical sketch of qualifications for each individual. Describe the extent to which directors or major stockholders are or will be involved in the day-to-day management of the institution.  Also list forms of compensation.

(c)    Provide a list of board committees and members.

(d)    Describe any plans to provide ongoing director education or training.

(e)    Describe each proposed executive officer's duties and selection criteria.  Discuss the proposed terms of employment, including compensation and benefits, and attach a copy of all pertinent documents, including all employment contracts or compensation arrangements with executive officers.  Provide the aggregate compensation of all officers.

(f)    Describe any potential conflicts of interest relating to incorporators, directors, and executive officers.

(g)    Describe any transaction, contract, professional fees, or any other type of business relationship involving the institution, the holding company, and its affiliates (if applicable), and any incorporator, director, executive officer, a shareholder owning or controlling ten

percent (10%) or more, and other insiders. Include professional services or goods for organizational expenses, bank premises and fixed asset transactions. (Not required to describe transactions between affiliates of the holding company that do not involve the institution.)

1)    Describe whether the business relationship is made in the ordinary course of business and is made on substantially the same terms as those prevailing at the time for comparable transactions with non-insiders. Also state whether the transaction presents more than normal risks of such transaction or other unfavorable features.

2)    Specify those incorporators that approved each transaction and whether the transaction was disclosed to proposed directors and prospective shareholders.

3)    Provide all relevant documentation, including contracts, independent appraisals, market valuations, and comparisons.

(h)    Describe all stock benefit plans of the institution and holding company, including stock options, stock warrants, and other similar stock-based compensation plans, for executive officers, organizers, directors, and other insiders. Include in the description:

1)    The duration limits.

2)    The vesting requirements.

3)    Transferability restrictions.

4)    Exercise price requirements.

5)    Rights upon termination.

6)    Any "exercise or forfeiture" clause.

7)    Number of shares to be issued or covered by the plans.

8)    Provide a list of participants, allocation of benefits to each participant, and a copy of each proposed plan.

## 3.    Capital

(a)    For each class of stock, provide the number of authorized shares, the number of shares to be issued, par value, voting rights, convertibility features, liquidation rights, and the projected sales price per share. Indicate net proceeds to be allocated to common stock, paid-in surplus, and other capital segregations.

(b)    Describe any noncash contributions to capital, and provide supporting documents for assigned values, including an independent evaluation or appraisal.

(c)     Discuss the adequacy of the proposed capital structure relative to internal and external risks, planned operational and financial assumptions, including technology, branching, and projected organization and operating expenses.  Present a thorough justification to support the proposed capital, including incidental services that will be provided by the institution. Describe any plans for the payment of dividends.

(d)     List all known subscribers to stock. For incorporators, directors, ten (10%) percent shareholders, executive officers, and other insiders, include the number of shares and anticipated investment and the amount of direct and indirect borrowings to finance the investment. Discuss debt servicing.

(e)     List recipients and amounts of any fees, commissions, or other considerations in connection with the sale of stock.

(f)     Indicate whether the institution plans to file for S corporation tax status.

(g)     Information relating to all prospective investors in the proposed institution who are not United States citizens, including the name of the natural person making an investment, date of birth, nationality, and the mailing and physical address of the primary residence of the natural person.

## 4.    Infrastructure

(a)     Provide a physical description of the permanent premises of the institution. Indicate the level and type of property insurance to be carried.

(b)     If the permanent premises are to be purchased, provide the name of seller, purchase price, cost and description of necessary repairs and alterations, and annual depreciation.  If the premises are to be constructed, provide the name of the seller, the cost of the land, and the construction costs. Indicate the percentage of the building that will be occupied by the institution.  Provide a copy of the appraisal.

(c)     If the permanent premises are to be leased, provide the name of owner, terms of the lease, cost and description of leasehold improvements. Provide a copy of the proposed lease when available.

(d)     If temporary quarters are planned, describe the interim facility, length of use, lease terms, and other associated commitments and costs.

(e)     State whether proposed premises and fixed asset expenditures conform to applicable legal limitations.

(f)     Outline the physical security program of the institution.

(g) Discuss any significant effect the proposal will have on the quality of the human environment. Include in the discussion changes in air and/or water quality, noise levels, energy consumption, congestion of population, solid waste disposal, or environmental integrity of private land.

(h) Describe any plan to establish branches or relocate the main office within the first three years. Any acquisition or operating expenses must be reflected in the financial projections.

## 5. Information Systems

(a) Outline the proposed or existing information systems architecture. The information should describe how: (1) the information system will work within existing technology; (2) the information system is suitable to the type of business in which the institution will engage; (3) the security hardware, software, and procedures will be sufficient to protect the institution from unauthorized tampering or access; and (4) whether the organizers and directors will allocate sufficient resources to the entire technology plan.

(b) Provide lists or descriptions of the primary systems and flowcharts of the general processes related to the products and services. The level of detail in these system descriptions should be sufficient to enable verification of cost projections.

(c) Estimate the start-up budget for all information systems related to the products and services and the expected annual operating and maintenance costs.

(e) Describe the physical and logical components of security. Describe the security system and discuss the technologies used and key elements for the security controls, internal controls, and audit procedures. Discuss the types of independent testing the institution will conduct to ensure the integrity of the system and its controls.

(f) Describe the information security program that will be in place to comply with the "Interagency Guidelines Establishing Standards for Safeguarding Customer Information" and other applicable state and federal laws.

## 6. Other Information

(a) List activities and functions that will be outsourced to third-party vendors, identifying the parties, and noting any affiliations. Describe all terms and conditions of the vendor management activities and provide a copy of the proposed agreement when available. Describe due diligence processes and the planned oversight and management program of the vendors' or service providers' relationships (for general vendor management guidance, see the Appendix of the Federal Financial Institution Examination Council's guidance— Risk Management of Outsourced Technology Services).

(b)     List all planned expenses related to the organization of the institution and include the name of the recipient, type of professional service or goods, and amount. Describe payment of organization expenses.

(c)     Provide evidence that the institution can obtain sufficient fidelity coverage on its officers and employees to conform with generally accepted banking practices.

(d)     If applicable, list names and addresses of all correspondent depository institutions.

(e)     Provide a copy of management's policies for investments, liquidity, funds management, interest rate risk, and other relevant policies, including procedures to ensure compliance with the provisions of Wyo. Stat. §§ 13-12-105 and 106.

(f)     Provide a proposed Bank Secrecy Act/anti-money laundering/customer identification/beneficial ownership program, including an overview of director/employee training, detailed policies and procedures relating to digital assets, and Office of Foreign Assets Control requirements.

# Oath of Director

*(required for all proposed directors)*

---

I, ***[insert name of proposed director here]***, a proposed director of ***[insert name of proposed institution here]***, solemnly affirm under penalty of perjury pursuant to Wyo. Stat. §§ 6-5-301 and 6-5-303 that:

1. As a director, I understand that I have a legal responsibility and a fiduciary duty to shareholders to administer the institution's affairs faithfully and to oversee its management. In carrying out my duties and responsibilities, I will exercise reasonable care and place the institution's interests before my own.
2. I shall fulfill my duties of loyalty and care to the institution.
3. I shall, commensurate with my duties, diligently and honestly administer the affairs of the institution, and I shall not knowingly violate, or willingly permit, any applicable state, federal or foreign law to be violated.
4. I shall ensure that I learn of changes in laws which affect my duties, responsibilities, or obligations as a director.
5. I shall faithfully attend meetings of the board of directors of the institution and will participate fully on all committees of the board to which I am appointed.


_____
Signature


_____
Printed Name


_____
Date

# Business Plan Guidelines

**Business Plan**

The business plan is an integral part of the management and oversight of a financial institution.  It should establish the institution's goals and objectives.  It is a written summary of how the business will organize its resources to meet its goals and how the institution will measure progress.

The business plan should be a comprehensive plan, which is the result of in-depth planning by the institution's organizers and management.  It should realistically forecast market demand, customer base, competition, and economic conditions.  The plan must reflect sound principles and demonstrate a realistic assessment of risk in light of economic and competitive conditions in the market to be served.  The business plan should describe, in great detail, the proposed activities of the special purpose depository institution and the legal basis under which each activity is conducted within each applicable jurisdiction. This description should include an outline of the proposed transactions the institution intends to make available to its customers within the first three (3) years of operation.

The business plan should include a comprehensive estimate of operating expenses for the first three (3) years. The description should provide sufficient detail to clearly demonstrate that the institution has a reasonable chance for success, will operate in a safe and sound manner and will have adequate capital to support its risk profile. The business plan should also include a business risk assessment and a complete proposal for compliance with all applicable state, federal and foreign laws. Identification of applicable laws is the responsibility of the incorporators. The business plan should also include any additional information material to the investigation and report of the Commissioner and the decision of the State Banking Board.

# Business Plan Outline

1.      **Table of Contents**

2.      **Executive Summary**

3.      **Description of Business**

     A.      Describe the institution's objectives and how these will be monitored and quantified.

     B.      If in a holding company structure or in a corporate relationship with another entity (another business entity controls twenty-five percent (25%) of more of the institution), including a parent company, discuss the operations of the organization, including a brief detail of the organizational structure and interaction. Describe the purpose of the relationship and attach the most recent audited financial statement of any business entity which controls 25% or more of the institution.

C.    Describe the extent, if any, that there could be transactions affecting the business structure of the institution with affiliated entities, natural persons, or foreign investors. Include terms and biographical information.

D.    Discuss the legal form and stock ownership of the institution and any investment in subsidiaries or service corporations.

E.    Describe the proposed location, office quarters, and any branch structure.

F.    Discuss any growth or expansion plans, including additional branches, other offices, mergers, or acquisitions.

G.    Discuss the proposed activities of the institution and the legal basis under which each activity is conducted within each applicable jurisdiction, including an outline of proposed transactions that the institution will make available to customers.

H.    Describe the proposed individual or individuals who will be responsible for coordinating and monitoring day-to-day compliance with the institution's AML/BSA/KYC/beneficial ownership program and provide background information and materials demonstrating that the individuals are qualified.

I.    Provide a risk assessment relating to the business of the institution.

J.    Describe the flow of funds structure, specifying all flows of funds that will occur in the institution's normal operations. Describe: (1) who directs the flow; (2) the name and address of each entity the funds flow through; (3) the title of each account; (4) ownership or control of the accounts and addresses; and (5) who or what entity is liable for the funds at all points.

**4.**    **Marketing Plan**

*A marketing plan should provide detailed factual evidence that the institution has reasonable prospects to achieve its revenue projections, customer volume, and key marketing and income targets. The analysis must be based on the most current data available, and the sources of information should be referenced. This section should contain an in-depth discussion of the major planning assumptions for the market analysis, economic, and competitive components used to develop the plans, objectives, and the basis for the assumptions.*

A.    Product Strategy

        Discuss how the institution will offer products and services over the first three (3) years of the operations of the institution, indicating any variation in the different market areas or distribution channels, and include the time frame for the introduction and the anticipated cost associated with each.

B.   Market Analysis
1)   Describe the intended target market and the geographical market area(s), including foreign jurisdictions.

2)   Describe the demographics of the target market population (e.g., age, education, and occupation).

C.   Economic Component *(if obtained, discuss any independent economic survey or market feasibility study)*
1)   Describe the economic forecast for the first three (3) years of the plan. The plan should cover the most likely scenario and discuss possible economic downturns.

2)   Indicate any international, national, regional, or local economic factors that may affect the operations of the institution. Include an analysis of any anticipated changes in the market, the factors influencing those changes, and the effect they will have on the institution.

3)   Describe the current economic characteristics of the proposed market(s).

4)   Based on the economic characteristics described previously, discuss the economic factors that influence the products and services offered.  A more in-depth discussion is warranted when different types of services are used for different market areas in the Description of Business section.

D.   Competitive Analysis
1)   Compare and contrast the institution's product strategy with its principal competitors in the target market(s), including projected competitors. Include expected results in terms of relative strength, market share, and pricing.

2)   Discuss the overall marketing/advertising strategy, including approaches to reach the target market through the marketing of brand, products, and services. Outline the specific medium that will be used, including timing and level of advertising efforts.

## 5.   Management Plan—Directors and Officers

A.   Describe the management structure and provide a management chart, describing the name and title of directors, officers, managers, and key employees. Describe the duties and responsibilities of the executive officers. Describe all front office business units and back office reporting for compliance, internal audit and IT infrastructure. Describe any intended management committees.

B.   Describe the organizational chart showing the percentage of ownership of direct owners, indirect owners, parents, affiliates, subsidiaries and all ten percent (10%) or greater owners.

C.   Discuss the institution's plans to address management succession, including any management training program or other available resources.

D.   Provide copies of all written policies and procedures relating to the following: AML/BSA/KYC/beneficial ownership, market manipulation, conflict of interest transactions, fiduciary duties, consumer protection, information technology security, business continuity and disaster recovery, and complaint resolution.

E.   Provide copies of sample documents the institution plans to issue or use with customers, including customer disclosure and agreements, operating agreements, third-party agreements, and receipts, customer confirmations, and any similar instruments.

**6.   Records, Systems, and Controls**

A.   Describe the institution's proposed accounting and internal control systems.

B.   Describe management's proposed internal audit function. The description should set forth the independence of the department and the scope and frequency of audits.  Discuss the experience and education of the audit staff. If external auditors will be used for internal audits, provide similar information for the external auditors.

C.   Describe the compliance management programs, addressing independence, scope, frequency, and staff qualifications. Discuss how the institution will respond to consumer complaints.

D.   Outline plans for an annual audit by independent public accountants, preferably by a firm with national or international experience. Discuss the parameters of an audit and whether the firm has the technical knowledge and tools to issue an opinion relating to digital assets.

E.   Discuss outsourced functions and what the institution will do in-house.

**7.   Financial Management Plan**

A.   Capital and Earnings
   1)   Discuss the institution's capital goals and the means to achieve them.

   2)   Discuss the institution's earnings goals in terms of return on assets, net interest margin, or other profitability measurements, and summarize the strategies to achieve those goals.

   3)   Discuss the institution's plan for raising capital and for financing growth.

4)   Discuss the adequacy of the proposed capital structure relative to internal and external risks, planned operational and financial assumptions, including technology and projected organization and operating expenses.   Present a thorough justification to support the proposed capital, including all proposed activities.

5)   Describe the debt service requirements for any debt that will be issued at the holding company level to capitalize the institution, if applicable.

6)   Discuss the use of options, warrants, and other benefits associated with the institution's capital.

7)   Summarize the institution's dividend policy.

B.   Liquidity and Funds Management
1)   Discuss how the institution will identify and measure liquidity risk.

2)   Discuss the institution's plan to monitor and control its liquidity risk, including funding sources. Include holding or affiliate company support, if any.

3)   Describe any plans to borrow funds from any financial institutions or other sources, including the amount, composition, interest rate, maturity, purpose, and collateral.

4)   Discuss the type of investment securities the institution plans to purchase.

5)   Liquidity reporting tools, including the means by which the institution will periodically report to the Division and monitor compliance with Wyo. Stat. § 13-12-105.

C.   Sensitivity to Market Risk
1)   Discuss the institution's objectives, strategies, and risk tolerance for interest rate risk.

2)   Discuss how the institution will identify and measure interest rate risk.

3)   Discuss the institution's asset and liability portfolio in terms of sensitivity to interest rate changes and the impact of earnings and capital and net portfolio value. Discuss the risk limits to control interest rate risk.

4)   Describe any plans to use hedging activities.

**8.      Monitoring and Revising the Business Plan**

A.    Describe how the board of directors will monitor adherence to the plan, including any metrics.

B.    Describe how the board of directors will adjust and amend the plan to accommodate material economic or regulatory changes.

**9.      Financial Projections**

A.  Provide information for the opening day of the institution and quarterly projections for the first three (3) years of operations, in U.S. dollars and as a percentage of assets:

1)    Describe in detail the assumptions used, including the assumed interest rate scenario for each interest-earning asset and interest-costing liability over the term of the business plan. Also present a thorough justification to support proposed capital.

2)    Provide the basis for the assumptions used for noninterest income and noninterest expense. Indicate the amount of lease expense, capital improvements, and furniture, fixtures, and equipment, including systems and equipment upgrades.

3)    Describe the assumptions for the start-up costs, volumes, expected returns, and time frame to introduce each new product and service.

B.    Discuss how the institution used marketing studies or surveys to support the institution's projected growth.

C.    Discuss the level of marketing expenses necessary to achieve the projected market share for products and services. Assumptions should be consistent with those experienced by other institutions in the target market. Explain any significant variances between the assumptions in the target market.

D.    Provide a sensitivity analysis of the financial projections. A sensitivity analysis provides a realistic stress test of the major underlying assumptions used in the business plan and the resultant financial projections.  For example, adjust the financials to reflect the effects of adverse changes in the interest rate environment, changes in the asset/liability mix, higher than expected operating expenses, marketing costs, or growth rates.

# Verification

I, an incorporator of ***[insert name of proposed institution here]*** named below, solemnly affirm under penalty of perjury pursuant to Wyo. Stat. §§ 6-5-301 and 6-5-303 that this application, and accompanying materials, has been carefully examined by me and is true and complete to the best of my knowledge and belief.

I consent to the filing of an application for a special purpose depository institution bank charter under the laws of Wyoming. If a charter application is approved by the State Banking Board and a certificate of authority granted by the Commissioner, I understand that the institution must commence operations within six (6) months of a certificate of authority being granted, absent good cause. To the best of my knowledge and belief, the proposed business of the institution complies with all applicable state, federal and foreign laws.

I further affirm my understanding that I have a continuing duty to promptly supplement or amend this application and all accompanying materials when information changes materially or if an error or omission is discovered.

I acknowledge that failure to provide true and complete information or failure to supplement or amend may result in delay or denial of this application, removal and prohibition from banking, revocation of a charter, criminal prosecution or other legal consequences.


_____          _____
Signature                               Signature

_____          _____
Printed Name                            Printed Name


_____          _____
Signature                               Signature

_____          _____
Printed Name                            Printed Name


_____
Signature

_____
Printed Name

# STATE OF WYOMING

# DIVISION OF BANKING



# SPECIAL PURPOSE DEPOSITORY INSTITUTION

# BANK CHARTER APPLICATION

**Name of Proposed Institution:**

**Date of Submission:**

<div style="border:1px solid black; display:inline-block; padding:4px;">

**Exhibit 2**

</div>

# GENERAL INFORMATION AND INSTRUCTIONS

All questions must be answered with truthful and complete information. Answers of "none," "not applicable" or "unknown" are acceptable. Explain "unknown" answers. If uncertainty exists as to whether information should be disclosed, you should disclose the information.

The questions in the application are not intended to limit the Applicant's presentation nor are the questions intended to duplicate information supplied elsewhere. For such information, a cross reference to the information is acceptable. *Specify the cite or location in the documents for each cross-reference.*

An Applicant may present the information below in an alternative format, if all required information is provided. Supporting information for all relevant factors, setting forth the basis for the Applicant's conclusions, should accompany the application. The Wyoming Division of Banking ("the Division") may request additional information as necessary.

This application form collects information that the Division will use to evaluate a bank charter application for a special purpose depository institution (SPDI). In evaluating the application, the Division will consider the applicable statutory requirements set forth in Wyo. Stat. §§ 13-12-101 through -126, the Rules of the Division, and other applicable state and federal laws. It is the responsibility of the Applicant to ensure compliance with these laws.

In addition to the appropriate number of signed copies of this application, the Division requires Applicants to submit all materials electronically. Please contact the Division for submission instructions.

Applicants with questions should contact the Division at (307) 777-7797.

# CONFIDENTALITY

The Public Section of this document (pgs. 1–4) is available for public inspection under Chapter 5, § 8 of the Rules of the Division.

The remainder of this document is confidential, protected by law and not subject to disclosure through the Wyoming Public Records Act. If necessary, this document may be shared on a confidential basis with other governmental agencies (with which the Division has an information-sharing agreement) in connection with the underlying SPDI application.

<u>Public Section</u>

## Proposed Special Purpose Depository Institution Information

_____

Name of Proposed Institution

_____

City of Headquarters

## Holding Company Information *(if applicable, please contact Division with questions)*

_____

Name of Company

_____

Mailing Address

## Proposed Institution Activities *(check all that apply)*

☐ Operating Accounts/Cash Management

☐ Commodities Transactions[1]

☐ Securities Transactions[2]

☐ Custodial Services

☐ Digital Assets

☐ Enhanced Digital Asset Custody Regime *(Ch. 19, Rules of the Division)*

☐ Fiduciary/Investment Management Services

*Intended Federal Reserve Status:*

☐ Member Bank

☐ Non-Member Bank

☐ Other *(describe)*

## Primary Point of Contact for Application

_____

Name

---

[1] *See, e.g.*, transactions governed by the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, or other similar law.
[2] *See, e.g.*, transactions governed by the Exchange Act, 15 U.S.C. § 78a *et seq.*, Investment Company Act, 15 U.S.C. § 80a-1 *et seq.*, Investment Advisers Act, 15 U.S.C. § 80b-1 *et seq.*, or other similar law.

_____
Mailing Address


_____        _____
Firm *(if applicable)*          License Number, Type, & State  *(if applicable)*


_____        _____
Phone Number                    E-Mail

## Brief Overview of Application

Provide a brief overview of the application. The overview should describe the institution's business and any special market niche, including products, market, and services.

<u>Confidential Section</u>

*In accompanying materials, please clearly delineate sections, item numbers
and organization of information.*

## 1.    Operations

(a)    Provide an executive summary. The summary should describe the institution's proposed business activities, capital and business projections. This document should be more detailed than the brief overview in the public section of this application and separate from the business plan required under Wyo. Stat. § 13-12-111(b) which is described beginning on pg. 12 of this application.

(b)    Describe any issues regarding the permissibility of the institution's activities regarding Wyo. Stat. §§ 13-12-101 through -126 and other applicable state and federal laws.

(c)    List and provide a copy of all applications filed in conjunction with this document, or intended to be filed, including applications for holding companies, branch offices, service corporations, licenses from governmental agencies or self-regulatory agencies for incidental activities, whether state, federal or foreign.

(d)    Provide a copy of all public or private offering materials and the proposed form of stock certificate, including any required restrictive legends.

(e)    Ensure all incorporators sign the verification at the end of this application.

(f)    Provide three (3) signed, original copies of the articles of incorporation of the institution, consistent with Wyo. Stat. § 13-12-109(b).

(g)    Provide a copy of the final bylaws, if available, or the latest proposed draft. Indicate how and when the bylaws will be adopted.

(h)    Provide letters of commitment or other evidence of capital available to the special purpose depository institution upon chartering, as required by the Commissioner.

(j)    Attach preliminary evidence of private insurance, including coverage types, coverage limits and any conditions relating to claim payment, as specified by W.S. 13-12-119(e).

(k)    Attach a detailed business plan, as otherwise required by the Rules of the Division and this document.

(l)    Provide preliminary evidence that a surety bond is available to the proposed institution, or a statement that the institution will pledge assets consistent with Wyo. Stat. § 13-12-118.

(m)    If applicable, designate an agent for service of process under Chapter 5, § 7 of the Rules of the Division.

(n)     List all other state, federal and foreign regulators that may have jurisdiction over the proposed special purpose depository institution, whether in whole or in part relating to the proposed activities of the institution and provide the nature or extent of the jurisdiction. Describe all contacts with other regulators regarding the proposed institution as of the date of this application.

(o)     If applicable, please describe any proposed activities or other portions of this application, including the business plan, which contemplate proposed amendments to the statutes governing special purpose depository institutions. Provide a copy of the legislation and its status, including the date on which a legislative committee or task force adopted the proposed legislation. Please underline other portions of this application.

(p)     Provide any additional information requested by the Commissioner.

## 2.     Management

(a)     Identity the following persons: (1) incorporators; (2) proposed directors; (3) executive officers; and (4) any individual, or group of shareholders acting in concert, that will own or control ten (10) percent or more of the institution's stock. For each of these persons, attach a Biographical and Financial Report, a fingerprint card, and indicate all positions and offices currently held or to be held with the institution's holding company and its affiliates, if applicable. Include the signed "Oath of Director" for each proposed director.

(b)     Provide the name, proposed title and physical address of each individual who will serve as a director or an executive officer of the proposed institution during the first year of operation. Also provide a statement with supporting evidence, demonstrating that the proposed executive officers and directors have sufficient experience, ability and standing to afford reasonable promise of a successful operation, including a biographical sketch of qualifications for each individual. Describe the extent to which directors or major stockholders are or will be involved in the day-to-day management of the institution.  Also list forms of compensation.

(c)     Provide a list of board committees and members.

(d)     Describe any plans to provide ongoing director education or training.

(e)     Describe each proposed executive officer's duties and selection criteria.  Discuss the proposed terms of employment, including compensation and benefits, and attach a copy of all pertinent documents, including all employment contracts or compensation arrangements with executive officers.  Provide the aggregate compensation of all officers.

(f)     Describe any potential conflicts of interest relating to incorporators, directors, and executive officers.

(g)     Describe any transaction, contract, professional fees, or any other type of business relationship involving the institution, the holding company, and its affiliates (if applicable), and any incorporator, director, executive officer, a shareholder owning or controlling ten

percent (10%) or more, and other insiders. Include professional services or goods for organizational expenses, bank premises and fixed asset transactions. (Not required to describe transactions between affiliates of the holding company that do not involve the institution.)

1) Describe whether the business relationship is made in the ordinary course of business and is made on substantially the same terms as those prevailing at the time for comparable transactions with non-insiders. Also state whether the transaction presents more than normal risks of such transaction or other unfavorable features.

2) Specify those incorporators that approved each transaction and whether the transaction was disclosed to proposed directors and prospective shareholders.

3) Provide all relevant documentation, including contracts, independent appraisals, market valuations, and comparisons.

(h) Describe all stock benefit plans of the institution and holding company, including stock options, stock warrants, and other similar stock-based compensation plans, for executive officers, organizers, directors, and other insiders. Include in the description:

1) The duration limits.

2) The vesting requirements.

3) Transferability restrictions.

4) Exercise price requirements.

5) Rights upon termination.

6) Any "exercise or forfeiture" clause.

7) Number of shares to be issued or covered by the plans.

8) Provide a list of participants, allocation of benefits to each participant, and a copy of each proposed plan.

## 3.    Capital

(a) For each class of stock, provide the number of authorized shares, the number of shares to be issued, par value, voting rights, convertibility features, liquidation rights, and the projected sales price per share. Indicate net proceeds to be allocated to common stock, paid-in surplus, and other capital segregations.

(b) Describe any noncash contributions to capital, and provide supporting documents for assigned values, including an independent evaluation or appraisal.

(c)     Discuss the adequacy of the proposed capital structure relative to internal and external risks, planned operational and financial assumptions, including technology, branching, and projected organization and operating expenses.  Present a thorough justification to support the proposed capital, including incidental services that will be provided by the institution. Describe any plans for the payment of dividends.

(d)     List all known subscribers to stock. For incorporators, directors, ten (10%) percent shareholders, executive officers, and other insiders, include the number of shares and anticipated investment and the amount of direct and indirect borrowings to finance the investment. Discuss debt servicing.

(e)     List recipients and amounts of any fees, commissions, or other considerations in connection with the sale of stock.

(f)     Indicate whether the institution plans to file for S corporation tax status.

(g)     Information relating to all prospective investors in the proposed institution who are not United States citizens, including the name of the natural person making an investment, date of birth, nationality, and the mailing and physical address of the primary residence of the natural person.


## 4.     Infrastructure

(a)     Provide a physical description of the permanent premises of the institution. Indicate the level and type of property insurance to be carried.

(b)     If the permanent premises are to be purchased, provide the name of seller, purchase price, cost and description of necessary repairs and alterations, and annual depreciation.  If the premises are to be constructed, provide the name of the seller, the cost of the land, and the construction costs. Indicate the percentage of the building that will be occupied by the institution.  Provide a copy of the appraisal.

(c)     If the permanent premises are to be leased, provide the name of owner, terms of the lease, cost and description of leasehold improvements. Provide a copy of the proposed lease when available.

(d)     If temporary quarters are planned, describe the interim facility, length of use, lease terms, and other associated commitments and costs.

(e)     State whether proposed premises and fixed asset expenditures conform to applicable legal limitations.

(f)     Outline the physical security program of the institution.

(g)    Discuss any significant effect the proposal will have on the quality of the human environment. Include in the discussion changes in air and/or water quality, noise levels, energy consumption, congestion of population, solid waste disposal, or environmental integrity of private land.

(h)    Describe any plan to establish branches or relocate the main office within the first three years. Any acquisition or operating expenses must be reflected in the financial projections.

## 5.  Information Systems

(a)    Outline the proposed or existing information systems architecture. The information should describe how: (1) the information system will work within existing technology; (2) the information system is suitable to the type of business in which the institution will engage; (3) the security hardware, software, and procedures will be sufficient to protect the institution from unauthorized tampering or access; and (4) whether the organizers and directors will allocate sufficient resources to the entire technology plan.

(b)    Provide lists or descriptions of the primary systems and flowcharts of the general processes related to the products and services. The level of detail in these system descriptions should be sufficient to enable verification of cost projections.

(c)    Estimate the start-up budget for all information systems related to the products and services and the expected annual operating and maintenance costs.

(e)    Describe the physical and logical components of security.  Describe the security system and discuss the technologies used and key elements for the security controls, internal controls, and audit procedures.  Discuss the types of independent testing the institution will conduct to ensure the integrity of the system and its controls.

(f)    Describe the information security program that will be in place to comply with the "Interagency Guidelines Establishing Standards for Safeguarding Customer Information" and other applicable state and federal laws.

## 6.  Other Information

(a)    List activities and functions that will be outsourced to third-party vendors, identifying the parties, and noting any affiliations. Describe all terms and conditions of the vendor management activities and provide a copy of the proposed agreement when available. Describe due diligence processes and the planned oversight and management program of the vendors' or service providers' relationships (for general vendor management guidance, see the Appendix of the Federal Financial Institution Examination Council's guidance— Risk Management of Outsourced Technology Services).

(b)     List all planned expenses related to the organization of the institution and include the name of the recipient, type of professional service or goods, and amount. Describe payment of organization expenses.

(c)     Provide evidence that the institution can obtain sufficient fidelity coverage on its officers and employees to conform with generally accepted banking practices.

(d)     If applicable, list names and addresses of all correspondent depository institutions.

(e)     Provide a copy of management's policies for investments, liquidity, funds management, interest rate risk, and other relevant policies, including procedures to ensure compliance with the provisions of Wyo. Stat. §§ 13-12-105 and 106.

(f)     Provide a proposed Bank Secrecy Act/anti-money laundering/customer identification/beneficial ownership program, including an overview of director/employee training, detailed policies and procedures relating to digital assets, and Office of Foreign Assets Control requirements.

# Oath of Director

*(required for all proposed directors)*

---

I, ***[insert name of proposed director here]***, a proposed director of ***[insert name of proposed institution here]***, solemnly affirm under penalty of perjury pursuant to Wyo. Stat. §§ 6-5-301 and 6-5-303 that:

1. As a director, I understand that I have a legal responsibility and a fiduciary duty to shareholders to administer the institution's affairs faithfully and to oversee its management. In carrying out my duties and responsibilities, I will exercise reasonable care and place the institution's interests before my own.
2. I shall fulfill my duties of loyalty and care to the institution.
3. I shall, commensurate with my duties, diligently and honestly administer the affairs of the institution, and I shall not knowingly violate, or willingly permit, any applicable state, federal or foreign law to be violated.
4. I shall ensure that I learn of changes in laws which affect my duties, responsibilities, or obligations as a director.
5. I shall faithfully attend meetings of the board of directors of the institution and will participate fully on all committees of the board to which I am appointed.


_____
Signature


_____
Printed Name


_____
Date

# Business Plan Guidelines

**Business Plan**

The business plan is an integral part of the management and oversight of a financial institution.  It should establish the institution's goals and objectives.  It is a written summary of how the business will organize its resources to meet its goals and how the institution will measure progress.

The business plan should be a comprehensive plan, which is the result of in-depth planning by the institution's organizers and management.  It should realistically forecast market demand, customer base, competition, and economic conditions.  The plan must reflect sound principles and demonstrate a realistic assessment of risk in light of economic and competitive conditions in the market to be served.  The business plan should describe, in great detail, the proposed activities of the special purpose depository institution and the legal basis under which each activity is conducted within each applicable jurisdiction. This description should include an outline of the proposed transactions the institution intends to make available to its customers within the first three (3) years of operation.

The business plan should include a comprehensive estimate of operating expenses for the first three (3) years. The description should provide sufficient detail to clearly demonstrate that the institution has a reasonable chance for success, will operate in a safe and sound manner and will have adequate capital to support its risk profile. The business plan should also include a business risk assessment and a complete proposal for compliance with all applicable state, federal and foreign laws. Identification of applicable laws is the responsibility of the incorporators. The business plan should also include any additional information material to the investigation and report of the Commissioner and the decision of the State Banking Board.

# Business Plan Outline

1. **Table of Contents**

2. **Executive Summary**

3. **Description of Business**

   A.  Describe the institution's objectives and how these will be monitored and quantified.

   B.  If in a holding company structure or in a corporate relationship with another entity (another business entity controls twenty-five percent (25%) of more of the institution), including a parent company, discuss the operations of the organization, including a brief detail of the organizational structure and interaction. Describe the purpose of the relationship and attach the most recent audited financial statement of any business entity which controls 25% or more of the institution.

C.    Describe the extent, if any, that there could be transactions affecting the business structure of the institution with affiliated entities, natural persons, or foreign investors. Include terms and biographical information.

D.    Discuss the legal form and stock ownership of the institution and any investment in subsidiaries or service corporations.

E.    Describe the proposed location, office quarters, and any branch structure.

F.    Discuss any growth or expansion plans, including additional branches, other offices, mergers, or acquisitions.

G.    Discuss the proposed activities of the institution and the legal basis under which each activity is conducted within each applicable jurisdiction, including an outline of proposed transactions that the institution will make available to customers.

H.    Describe the proposed individual or individuals who will be responsible for coordinating and monitoring day-to-day compliance with the institution's AML/BSA/KYC/beneficial ownership program and provide background information and materials demonstrating that the individuals are qualified.

I.    Provide a risk assessment relating to the business of the institution.

J.    Describe the flow of funds structure, specifying all flows of funds that will occur in the institution's normal operations. Describe: (1) who directs the flow; (2) the name and address of each entity the funds flow through; (3) the title of each account; (4) ownership or control of the accounts and addresses; and (5) who or what entity is liable for the funds at all points.

## 4.   Marketing Plan

*A marketing plan should provide detailed factual evidence that the institution has reasonable prospects to achieve its revenue projections, customer volume, and key marketing and income targets. The analysis must be based on the most current data available, and the sources of information should be referenced. This section should contain an in-depth discussion of the major planning assumptions for the market analysis, economic, and competitive components used to develop the plans, objectives, and the basis for the assumptions.*

A.    Product Strategy

        Discuss how the institution will offer products and services over the first three (3) years of the operations of the institution, indicating any variation in the different market areas or distribution channels, and include the time frame for the introduction and the anticipated cost associated with each.

B.    Market Analysis

    1)    Describe the intended target market and the geographical market area(s), including foreign jurisdictions.

    2)    Describe the demographics of the target market population (e.g., age, education, and occupation).

C.    Economic Component *(if obtained, discuss any independent economic survey or market feasibility study)*

    1)    Describe the economic forecast for the first three (3) years of the plan. The plan should cover the most likely scenario and discuss possible economic downturns.

    2)    Indicate any international, national, regional, or local economic factors that may affect the operations of the institution. Include an analysis of any anticipated changes in the market, the factors influencing those changes, and the effect they will have on the institution.

    3)    Describe the current economic characteristics of the proposed market(s).

    4)    Based on the economic characteristics described previously, discuss the economic factors that influence the products and services offered.  A more in-depth discussion is warranted when different types of services are used for different market areas in the Description of Business section.

D.    Competitive Analysis

    1)    Compare and contrast the institution's product strategy with its principal competitors in the target market(s), including projected competitors. Include expected results in terms of relative strength, market share, and pricing.

    2)    Discuss the overall marketing/advertising strategy, including approaches to reach the target market through the marketing of brand, products, and services. Outline the specific medium that will be used, including timing and level of advertising efforts.

## 5.    Management Plan—Directors and Officers

A.    Describe the management structure and provide a management chart, describing the name and title of directors, officers, managers, and key employees. Describe the duties and responsibilities of the executive officers. Describe all front office business units and back office reporting for compliance, internal audit and IT infrastructure. Describe any intended management committees.

B.     Describe the organizational chart showing the percentage of ownership of direct owners, indirect owners, parents, affiliates, subsidiaries and all ten percent (10%) or greater owners.

C.     Discuss the institution's plans to address management succession, including any management training program or other available resources.

D.     Provide copies of all written policies and procedures relating to the following: AML/BSA/KYC/beneficial ownership, market manipulation, conflict of interest transactions, fiduciary duties, consumer protection, information technology security, business continuity and disaster recovery, and complaint resolution.

E.     Provide copies of sample documents the institution plans to issue or use with customers, including customer disclosure and agreements, operating agreements, third-party agreements, and receipts, customer confirmations, and any similar instruments.

## 6.    Records, Systems, and Controls

A.     Describe the institution's proposed accounting and internal control systems.

B.     Describe management's proposed internal audit function. The description should set forth the independence of the department and the scope and frequency of audits.  Discuss the experience and education of the audit staff. If external auditors will be used for internal audits, provide similar information for the external auditors.

C.     Describe the compliance management programs, addressing independence, scope, frequency, and staff qualifications. Discuss how the institution will respond to consumer complaints.

D.     Outline plans for an annual audit by independent public accountants, preferably by a firm with national or international experience. Discuss the parameters of an audit and whether the firm has the technical knowledge and tools to issue an opinion relating to digital assets.

E.     Discuss outsourced functions and what the institution will do in-house.

## 7.    Financial Management Plan

A.     Capital and Earnings
     1)     Discuss the institution's capital goals and the means to achieve them.

     2)     Discuss the institution's earnings goals in terms of return on assets, net interest margin, or other profitability measurements, and summarize the strategies to achieve those goals.

     3)     Discuss the institution's plan for raising capital and for financing growth.

4)      Discuss the adequacy of the proposed capital structure relative to internal and external risks, planned operational and financial assumptions, including technology and projected organization and operating expenses.   Present a thorough justification to support the proposed capital, including all proposed activities.

5)      Describe the debt service requirements for any debt that will be issued at the holding company level to capitalize the institution, if applicable.

6)      Discuss the use of options, warrants, and other benefits associated with the institution's capital.

7)      Summarize the institution's dividend policy.

B.      Liquidity and Funds Management
        1)      Discuss how the institution will identify and measure liquidity risk.

        2)      Discuss the institution's plan to monitor and control its liquidity risk, including funding sources. Include holding or affiliate company support, if any.

        3)      Describe any plans to borrow funds from any financial institutions or other sources, including the amount, composition, interest rate, maturity, purpose, and collateral.

        4)      Discuss the type of investment securities the institution plans to purchase.

        5)      Liquidity reporting tools, including the means by which the institution will periodically report to the Division and monitor compliance with Wyo. Stat. § 13-12-105.

C.      Sensitivity to Market Risk
        1)      Discuss the institution's objectives, strategies, and risk tolerance for interest rate risk.

        2)      Discuss how the institution will identify and measure interest rate risk.

        3)      Discuss the institution's asset and liability portfolio in terms of sensitivity to interest rate changes and the impact of earnings and capital and net portfolio value. Discuss the risk limits to control interest rate risk.

        4)      Describe any plans to use hedging activities.

**8.     Monitoring and Revising the Business Plan**

A.     Describe how the board of directors will monitor adherence to the plan, including any metrics.

B.     Describe how the board of directors will adjust and amend the plan to accommodate material economic or regulatory changes.

**9.     Financial Projections**

A.   Provide information for the opening day of the institution and quarterly projections for the first three (3) years of operations, in U.S. dollars and as a percentage of assets:

1)     Describe in detail the assumptions used, including the assumed interest rate scenario for each interest-earning asset and interest-costing liability over the term of the business plan. Also present a thorough justification to support proposed capital.

2)     Provide the basis for the assumptions used for noninterest income and noninterest expense. Indicate the amount of lease expense, capital improvements, and furniture, fixtures, and equipment, including systems and equipment upgrades.

3)     Describe the assumptions for the start-up costs, volumes, expected returns, and time frame to introduce each new product and service.

B.     Discuss how the institution used marketing studies or surveys to support the institution's projected growth.

C.     Discuss the level of marketing expenses necessary to achieve the projected market share for products and services. Assumptions should be consistent with those experienced by other institutions in the target market. Explain any significant variances between the assumptions in the target market.

D.     Provide a sensitivity analysis of the financial projections. A sensitivity analysis provides a realistic stress test of the major underlying assumptions used in the business plan and the resultant financial projections.  For example, adjust the financials to reflect the effects of adverse changes in the interest rate environment, changes in the asset/liability mix, higher than expected operating expenses, marketing costs, or growth rates.

# Verification

I, an incorporator of *[insert name of proposed institution here]* named below, solemnly affirm under penalty of perjury pursuant to Wyo. Stat. §§ 6-5-301 and 6-5-303 that this application, and accompanying materials, has been carefully examined by me and is true and complete to the best of my knowledge and belief.

I consent to the filing of an application for a special purpose depository institution bank charter under the laws of Wyoming. If a charter application is approved by the State Banking Board and a certificate of authority granted by the Commissioner, I understand that the institution must commence operations within six (6) months of a certificate of authority being granted, absent good cause. To the best of my knowledge and belief, the proposed business of the institution complies with all applicable state, federal and foreign laws.

I further affirm my understanding that I have a continuing duty to promptly supplement or amend this application and all accompanying materials when information changes materially or if an error or omission is discovered.

I acknowledge that failure to provide true and complete information or failure to supplement or amend may result in delay or denial of this application, removal and prohibition from banking, revocation of a charter, criminal prosecution or other legal consequences.

_____          _____
Signature                                                                            Signature

_____          _____
Printed Name                                                                     Printed Name


_____          _____
Signature                                                                            Signature

_____          _____
Printed Name                                                                     Printed Name


_____
Signature

_____
Printed Name



# STATE OF WYOMING
## DEPARTMENT OF AUDIT

**DIVISION OF BANKING**
Phone: (307) 777-7797     Fax: (307) 777-3555

**Mark Gordon**
Governor

**Fred Rife**
Interim Director

**Albert L. Forkner**
Commissioner

**Special Purpose Depository Institutions:**
**Updated Capital Requirement Guidance**
**July 7, 2021**

Wyo. Stat. § 13-12-110 and implementing rules[1] establish an overall bank capital requirement for chartering a special purpose depository institution ("SPDI"). In May 2020, the Division of Banking ("the Division") released its original capital requirement guidance for chartering a SPDI. In May 2021, the Division adopted amendments to the implementing rules to describe factors considered in setting SPDI capital requirements. Based on the amended implementing rules, the Division releases this Updated Capital Requirement Guidance.

The capital requirement has three components:

- <u>Capital Stock:</u>  Statutory requirement of not less than $5,000,000. The Division's Banking Commissioner is authorized to set the capital requirement on a case-by-case basis, in a manner commensurate with the risk profile and proposed activities of the institution.
- <u>Surplus/Operating Expenses:</u>  3 years of projected operating expenses, as specified in the business plan of the SPDI.
- <u>Contingency Account:</u>  2% of demand (non-custodial) deposits of fiat currency. Only applies after third year of operation and other requirements may count towards this mandate.

In setting the capital requirement, the Banking Commissioner shall consider the factors set forth in Rules of the Division, Chapter 20, § 2(d)(i)-(vi). These include: (i) peer institutions of the special purpose depository institution, which may include custodial banks and national trust banks; (ii) the activities and risks posed by the business plan and financial projections of the SPDI; (iii) the prompt corrective action tier 1 leverage ratio; (iv) the non-leveraged nature of deposits related to custodial, fiduciary and trust accounts administered by the institution, consistent with 12 C.F.R. § 217.10 as of October 1, 2020, and the treatment of custodial, fiduciary and trust deposits under the supplementary leverage ratio for custodial banks; (v) current market conditions, including capital requirements of recently chartered de novo banks; and (vi) potential costs of a receivership.

The Division takes a holistic view of these factors and considers the overall resources available to a prospective SPDI for a safe and sound operation. Generally, the Division focuses significantly on the activities and risks posed by the business plan of a SPDI and its financial projections.

In reviewing the business plan and other factors set by rule, the Division recognizes that operations of a SPDI will likely be different than a traditional retail-focused bank because a SPDI is required to maintain 100% of its fiat demand deposits as liquid assets and is prohibited from lending fiat

---

[1] Rules of the Division, Chapter 20, § 2.

**Exhibit 3**

HATHAWAY BUILDING, 2nd FLOOR  •  2300 CAPITOL AVENUE  •  CHEYENNE, WY 82002
WYOMINGBANKINGDIVISION.WYO.GOV

deposits.[2] SPDIs may resemble a custody bank[3] because of their focus on fiduciary activities, asset management and custody.

The Division will assess the capital requirement of each prospective SPDI on a case-by-case basis, after consulting with the applicant. The required initial capital will vary from institution to institution. However, given the factors considered, the required initial capital will likely far exceed the statutory minimum. A prospective SPDI should anticipate an initial capital requirement similar to a federally-insured institution and other recently chartered de novo banks. Additionally, the Division expects that each SPDI meet the capital ratios set by the Federal Reserve and FDIC.[4]

As part of a SPDI charter application, the applicant must present evidence that it will have the required initial capital available if a charter is granted. Capital is not required to be subscribed and fully paid in until a SPDI applies for a certificate of authority under Wyo. Stat. § 13-12-116.[5]

This guidance is principally tailored to ensure the financial strength of a prospective institution, including maintaining adequate capital to continue as a going concern and to meet its current and projected operating expenses under a range of scenarios.

The Division is happy to discuss this guidance further with potential applicants. Please contact us at (307) 777-7797 or wyomingbankingdivision@wyo.gov with questions or concerns.

---

[2] This requirement does not apply to off-balance sheet assets.
[3] THE CLEARING HOUSE, THE CUSTODY SERVICES OF BANKS (2016), *available at* https://www.theclearinghouse.org/-/media/tch/documents/research/articles/2016/07/20160728_tch_white_paper_the_custody_services_of_banks.pdf.
[4] *See* Rules of the Division, Chapter 20 §§ 1(d), 12(a).
[5] *Id*. § 2(a).

HATHAWAY BUILDING, 2nd FLOOR  •  2300 CAPITOL AVENUE  •  CHEYENNE, WY 82002
WYOMINGBANKINGDIVISION.WYO.GOV



# S T A T E   O F   W Y O M I N G
## D E P A R T M E N T   O F   A U D I T

**DIVISION OF BANKING**
Phone: (307) 777-7797    Fax: (307) 777-3555

**Mark Gordon**
Governor

**Jeffrey C. Vogel**
Director

**Albert L. Forkner**
Commissioner

### General Overview of the
### Special Purpose Depository Institution Chartering Process

Wyoming Statutes §§ 13-12-101 through 13-12-126, Chapter 20, Rules of the Division of Banking establish the application requirements and the process to obtain a special purpose depository institution charter.

Potential applicants should carefully analyze these laws and have an introductory meeting with the Wyoming Division of Banking ("the Division") before completing an application.

The Division may be contacted at (307) 777-7797 or wyomingbankingdivision@wyo.gov.

## Charter Application

1. Complete the special purpose depository institution charter application packet. Provide a physical, signed application packet to the Division by certified mail or courier.

2. Provide a scanned copy of the application packet to the Division via secure portal. For submission instructions, contact the Division.

3. Include the following with the application:
   - A $50,000 application fee.
   - A completed special purpose depository institution biographical and financial report and fingerprint card for each proposed director, executive officer and shareholder with a ten percent (10%) or greater ownership stake in the institution.
   - Three (3) signed, original copies of the articles of incorporation of the institution satisfying the requirements of W.S. § 13-12-109(b).
   - Letters of commitment or similar evidence relating to available capital.
   - Letters of commitment or similar evidence relating to available private insurance.
   - Bylaws proposed for adoption, whether in draft or final form.
   - All other requirements, documents and information specified by the application or requested by the Commissioner.

## Charter Application Timeline

1. Application is received by the Division in physical and electronic form.

2. Within thirty (30) days of the Division's receipt of the application, the Commissioner will notify the applicant in writing of any deficiencies or that the application has been accepted for filing. The thirty (30) day timeline begins when the application is first received by the Commissioner in either physical or electronic form.

3. Once the application has been accepted for filing by the Commissioner, the Commissioner will notify the Chairman of the State Banking Board who will then establish a time and place for a public hearing on the

**Exhibit 4**

charter application. The hearing will be held between sixty (60) and one hundred fifty (150) days after the application was accepted for filing.

4. Within thirty (30) days after notice of the time and place of the charter application hearing, the applicant is required to publish notice of the charter application and public hearing in a newspaper within the county where the proposed institution will be located, as required by W.S. § 13-12-112.  The applicant is required to provide proof of publication to the Commissioner not later than ten (10) days before the hearing.

5. A public hearing on the charter application is held before the State Banking Board.

6. Not later than ninety (90) days after receipt of the transcript of the public hearing, the State Banking Board will approve, conditionally approve or disapprove the charter application.

   - If approved, a bank charter will be issued.
   - If conditionally approved, a bank charter will be issued after completion of any requirements.
   - If disapproved, the Commissioner is required to mail notice of disapproval to the applicant within twenty (20) days of the decision.

## <u>Certificate of Authority</u>

1. After a charter application is approved by the State Banking Board, the institution may not commence operations before receiving a certificate of authority to operate from the Commissioner pursuant to W.S. § 13-12-116. An application for a certificate of authority requires:
   - All required initial capital to be paid in and shares issued;
   - The physical and mailing address of the institution;
   - A copy of the adopted bylaws; and
   - Contact information of all directors and executive officers.

## <u>Certificate of Authority Timeline</u>

1. The Commissioner is required to approve or deny the application for a certificate of authority within thirty (30) days of receipt of an application.
   - If approved, the Commissioner will issue a certificate of authority within twenty (20) days.
   - If denied, the Commissioner will mail a notice of denial within twenty (20) days.

2. If the application is denied, the applicant has ninety (90) days to resubmit the application for a certificate of authority with any necessary corrections.

3. Once a certificate of authority has been granted by the Commissioner, the institution may commence operations.