Bridget Hill, WY Bar #6-3616
Karl D. Anderson, WY Bar #6-2807
Devin Kenney, WY Bar #7-5964
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
307-777-7841
bridget.hill@wyo.gov
karl.anderson@wyo.gov
devin.kenney1@wyo.gov

# UNITED STATES DISTRICT COURT

# DISTRICT OF WYOMING

| | | |
|---|---|---|
| CUSTODIA BANK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:22-cv-00125-SWS |
| BOARD OF GOVERNORS OF | ) | |
| THE FEDERAL RESERVESYSTEM & | ) | |
| FEDERAL RESERVE BANK | ) | |
| OF KANSAS CITY, | ) | |
| | ) | |
| Defendants. | ) | |

---

### *AMICUS CURIAE* BRIEF OF THE STATE OF WYOMING IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

SUMMARY OF THE ARGUMENT ................................................................................ 1

ARGUMENT .................................................................................................................... 2

    I.   The State's Chartering and Regulation of Special Purpose Depository Institutions ......... 4

        A.  Chartering ........................................................................................................... 4

        B.  Certificate of Authority Process ......................................................................... 5

        C.  Examination ........................................................................................................ 6

        D.  Ongoing Supervision ......................................................................................... 7

        E.  Rulemaking and Guidance ................................................................................. 9

    II.   Customer Protections .............................................................................................. 10

    III.  The State's Interest in the SPDI Charter ................................................................ 13

CONCLUSION ................................................................................................................ 15

EXHIBITS 1-4 ..................................................................................................... ATTACHED

## TABLE OF AUTHORITIES

**Statutes**                                                 **Pages**

Wyo. Stat. Ann. § 9-1-603 ................................................................................................. 1

Wyo. Stat. Ann. § 13-12-103 ......................................................................................... 9, 11

Wyo. Stat. Ann. § 13-12-105 ............................................................................................ 11

Wyo. Stat. Ann. § 13-12-106 ............................................................................................ 11

Wyo. Stat. Ann. § 13-12-108 ............................................................................................ 11

Wyo. Stat. Ann. § 13-12-111 ............................................................................................. 4

Wyo. Stat. Ann. § 13-12-114 ............................................................................................. 4

Wyo. Stat. Ann. § 13-12-115 ............................................................................................. 5

Wyo. Stat. Ann. § 13-12-116 ............................................................................................. 5

Wyo. Stat. Ann. § 13-12-119 ..................................................................................... 6, 7, 8

Wyo. Stat. Ann. § 34-19-104 ............................................................................................. 8

Wyo. Stat. Ann. § 34-29-103 ........................................................................................... 12

Wyo. Stat. Ann. § 34-29-104 ........................................................................................... 12

**Rules**

Rules, Wyo. Div. Banking, ch. 19 § 3 ................................................................................ 8

Rules, Wyo. Div. Banking, ch. 19 § 4 .............................................................................. 12

Rules, Wyo. Div. Banking, ch. 19 §8 ................................................................................. 8

Rules, Wyo. Div. Banking, ch. 20 § 6 .............................................................................. 12

Rules, Wyo. Div. Banking, ch. 20 §7 ................................................................................. 8

Rules, Wyo. Div. Banking ch. 20 § 12 ........................................................................... 6, 7

Rules, Wyo. Div. Banking, ch. 20 § 13 ................................................................ 9

## Other Authorities

12 C.F.R. § 249.20 ............................................................................................... 11

Crypto dealer SFOX
    https://cointelegraph.com/news/crypto-dealer-sfox-gets-trust-charter-approval-from-
    wyoming-regulators ..................................................................................... 7

Essentials of Cryptocurrency and Blockchains for Financial Services Professionals
    https://www.cannonfinancial.com/courses/essentials-of-cryptocurrency-and-blockchain-for-
    financial-services-professi/1519 ................................................................... 7

Guidelines for Evaluating Account and Service Requests
    https://bit.ly/3C59BiP ................................................................................ 13

Powell Nomination Hearing
    https://www.banking.senate.gov/hearings/01/04/2022/nomination-hearing ...................... 3, 14

Statement on Guidelines to Evaluate Requests for Accounts and Services at Fed. Reserve Banks
    https://www.federalreserve.gov/newsevents/pressreleases/bowman-statement-
    20220815.htm ........................................................................................... 13

Two Ocean No-Action Letter
    https://wyomingbankingdivision.wyo.gov/announcements-and-publications/two-ocean-no-
    action-letter-digital-asset-custody-qualified-custodian-status .................................. 7

Wyoming Bank Regulator Taps Chainalysis to Boost Crypto Tracing Efforts, Danny Nelson
    https://www.coindesk.com/markets/2020/09/17/wyoming-bank-regulator-taps-chainalysis-to-
    boost-crypto-tracing-efforts/ ....................................................................... 7

Wyo. Div. of Banking, Special Purpose Depository Institutions
    https://wyomingbankingdivision.wyo.gov/banks-and-trust-companies/special-purpose-
    depository-institutions.................................................................................. 4

Wyo. Div. of Banking, Special Purpose Depository Institution Examination
    https://drive.google.com/file/d/14dA8hrR59aGsKZYxAoIWQ7dVr32cr_Vw/view ............... 7

Wyo. Partners with Chainalysis to Combat Money Laundering and Illicit Digital Assest Activity
    https://blog.chainalysis.com/reports/wyoming-division-of-banking-partnership-
    announcement/ ........................................................................................... 8

## SUMMARY OF THE ARGUMENT

*Amicus* State of Wyoming is the state that created the Special Purpose Depository Institution (SPDI) bank charter, granted such a bank charter to Plaintiff Custodia Bank, Inc. (Custodia), and oversees SPDIs such as Custodia. The State's primary interest in this matter is simple: to resolve the indefinite timeline and opaque process for SPDIs to receive decisions from the Defendants on master account applications. Defendants created uncertainty with their extreme delay and ambiguous process for SPDI master account applications. If Defendants are allowed to indefinitely delay decisions on SPDI master account applications, they have effectively relegated the State's SPDI bank charter to an inconsequential charter for depository institutions, *i.e.*, a bank charter with no reasonable path to a master account. The State also has an interest in disputes related to SPDI master account applications being adjudicated with accurate information regarding the State's robust regulatory framework for SPDI bank charters. The State is well-positioned to provide such information to the Court. Finally, the State has an interest in promoting new and innovative financial services companies—including SPDIs—that economically benefit the State and citizens of Wyoming. The delay and uncertainty that Defendants have engendered undermines this important interest.

The Wyoming Attorney General is authorized to file this *amicus* by Wyoming Statute § 9-1-603(a)(iv) which authorizes her to "[r]epresent the state in suits, actions or claims in which the state is interested in . . . any United States court[.]" Wyo. Stat. Ann. § 9-1-603(a)(iv).

## ARGUMENT

The State respectfully requests that the Court not grant Defendants' motions to dismiss because there is viable a claim to be determined in this matter. The State has a robust regulatory

framework for SPDIs. While the Defendants depict alleged risks posed by Plaintiff, they simply overlook the State's extensive regulatory guardrails in place for SPDI chartering, certificates of authority, examinations, ongoing supervision, and customer protection. The Federal Reserve Bank of Kansas City (Kansas City Fed) even concedes that "[e]nacting a regulatory framework for the cryptocurrency industry may help mitigate these risks," but hardly mentions that the State already has such a regulatory framework for SPDIs. (Dkt. No. 51 (Kansas City Fed Br.) at 25).

In particular, the SPDI-chartering process is extensive and requires finding that the applicant's leadership team has a reasonable promise of a successful operation. Following a SPDI's receipt of its bank charter and before the SPDI may commence business, it must apply for and receive a certificate of authority (COA) and show it is prepared to commence business in a safe and sound manner within six months after receiving a COA.

Once the SPDI commences business, the State continuously oversees the SPDI through ongoing supervision and regular examinations. For a SPDI's proposed activity incidental to the business of banking, including digital asset activity, the SPDI must receive prior written approval from the Wyoming Banking Commissioner (Banking Commissioner) that the planned activity is consistent with safe and sound operations. The SPDI's operations must also comply with numerous customer protections and other regulations related to digital asset activity.

Defendants current lack of movement in either granting or denying Plaintiff a master account is impacting the State's interest in the Wyoming SPDI bank charter framework. As even Chairman of the Federal Reserve Board Jerome Powell acknowledged, "we start granting these [in reference to master accounts for SPDIs and like entities] and there will be a couple hundred of them pretty quickly." United States Senate Committee on Banking, Housing, and Urban Affairs,

2

Nomination Hr'g for Jerome Powell, Chair of the Federal Reserve of the Unites States (Jan. 11, 2022) (Powell Nomination Hr'g).[1] The State agrees with Chairman Powell that there are likely multiple entities which could potentially seek a SPDI bank charter and bring an innovative financial services company to Wyoming, but which await Defendants' decision.

Thus, the State's interest is broader than Plaintiff's individual application, but rather is in obtaining clarity on the timeline and steps necessary for any Wyoming SPDI to receive a decision on a master account application. The Federal Reserve Board of Governors (Board) recently finalized guidelines for account access, but the finalized guidelines provide little clarity because they appear to indefinitely delay decisions on master account applications and are allegedly nonbinding on the Kansas City Fed. With the SPDI bank charter, the State established a foundation to bring responsible, safe, and sound innovation in banking to Wyoming, but the Defendants' lack of clarity on the timeline and process for master accounts has subverted the State's efforts. In filing this *amicus* brief, the State seeks to ensure that entities chartered, regulated, and overseen by the State are treated fairly and that determinations either for or against their master account applications are made in an efficient, prompt manner in accordance with statutes and rules applicable to Defendants.[2] For that reason, the State respectfully requests that this Court deny Defendants' motions to dismiss and grant Plaintiff's opposition to those motions so that this matter can be fully heard and considered by the Court.

---

[1]  https://www.banking.senate.gov/hearings/01/04/2022/nomination-hearing (from time stamp 2:08:06 to 2:08:09).

[2]  The State is not taking a position on whether federal law even allows Defendants to make a determination against Custodia Bank's master account application, which is disputed matter in this lawsuit.

## I.   The State's Chartering and Regulation of Special Purpose Depository Institutions.

### A.   Chartering

The State imposes extensive requirements for a corporation to receive a SPDI bank charter. First, the Wyoming Department of Audit's Division of Banking (Division) encourages potential SPDI applicants to consult with the Division prior to applying. Wyo. Div. of Banking, Special Purpose Depository Institutions.[3] After such consultations, the applicant provides a detailed application, business plan and other information on topics such as operating expenses, compliance with Wyoming law, capital, corporate formation, and more. Wyo. Stat. Ann. § 13-12-111. The application requires information on operations, management, capital, infrastructure, information systems, and other information.[4] The Division's guidelines for business plans recommends that an applicant cover topics such as the description of the business; marketing plans; management plans; records, systems, and controls; financial management plans; monitoring; and financial projections.[5]

The Division then investigates the application with a focus on the SPDI's incorporators, officers and directors, business plan, capital, projected earnings, products and services, compliance, and information technology. Wyo. Stat. Ann. § 13-12-114(a). The investigation's findings are submitted to the Wyoming Banking Board. Wyo. Stat. Ann. § 13-12-114(b). The Wyoming Banking Board then holds a hearing on the application to review statutory criteria

---

[3]      https://wyomingbankingdivision.wyo.gov/banks-and-trust-companies/special-purpose-depository-institutions.

[4] *See* State of Wyoming's Ex. 1.

[5] *See* State of Wyoming's Ex. 2.

including the background of the incorporators, officers, and directors; the adequacy and plausibility of the business plan; compliance with capital and surplus requirements; whether the SPDI is being formed for legitimate objectives authorized by law; and compliance with Wyoming law. *Id.* § 13-12-115(a)(i)-(vii). If the Wyoming Banking Board makes favorable findings on all the listed criteria, the Wyoming Banking Board shall approve the charter application. *Id.* § 13-12-115(b).

### B.     Certificate of Authority Process

A SPDI must have a COA and be prepared to operate in a safe and sound condition before it can commence business. Wyo. Sat. Ann. §§ 13-12-116(a), 13-12-122. Prior to issuance of a COA, a SPDI will receive a letter from the Division detailing the information required for the SPDI to receive the COA and to show it is prepared to commence business in a safe and sound manner within six months after receiving a COA. The SPDI will also undergo an initial visit, similar to an exam, in which the Division reviews certain items from the COA requirements letter and other matters related to safety and soundness before the Banking Commissioner issues the COA. The Commissioner issues a COA after determining the SPDI has met all the requirements.

The Defendants appear to misunderstand this process, since both allege that Plaintiff's failure to receive a COA should impede its suit against Defendants. Dkt. No. 51 (Board's Br.) at 31; Kansas City Fed Br. at 41. Once issued, a COA gives a SPDI the right to commence business within six months after issuance of the COA. Wyo. Stat. Ann. § 13-12-116(b). If it fails to commence business within six months, the charter and COA expire unless the Wyoming Banking Board agrees to extend the time period. *Id.* Given the six-month deadline to commence operations after issuance of the COA, the SPDI should have a master account, correspondent relationship, or

other banking relationship or technology sufficient to facilitate the SPDI engaging in banking business **before** it is issued the COA. The circumstances alone demonstrate the fallacy of Defendants' argument: had Plaintiff obtained a COA earlier, both the bank charter and COA would have expired long ago, thus giving Defendants grounds to deny Plaintiff's master account application because of the lack of a bank charter. In any event, the point is now moot as the Banking Commissioner has issued the COA to Plaintiff as of September 12, 2022. (Dkt. No. 58 (Pl's. Omnibus Mem. in Opp. to Def.s' Mot. to Dismiss Pl.'s Compl.) (Pl.s' Mem.) at 10). The reason Plaintiff can now receive a COA is that, while it awaits a decision on its master account application, it has moved forward with a third-party banking partner. (*See* Dkt. No. 1 (Compl.) ¶ 8; Pl's. Mem. at 10).

### C.    Examination

SPDIs are subject to a full-scope examination annually during the first three years and periodic examinations and visitations thereafter as necessary. Wyo. Stat. Ann. § 13-12-119(c); Wyo. Div. of Banking Rules (Banking Rules), Ch. 20 § 12(c). The examination covers the condition and resources of the SPDI, the mode of managing institution affairs and conducting business, the actions of officers and directors in the investment and disposition of funds, the safety and prudence of institution management, compliance with the requirements of Wyoming's SPDI law, and such other matters as the Banking Commissioner may require. Wyo. Stat. Ann. § 13-12-119(c).

The Division contracted with Promontory Financial Group for a 772-page exam manual which builds on existing federal bank examination manuals, layers on top digital asset guidance from more than 35 sources, and covers AML/BSA, OFAC, Custody and Safekeeping, Information

Security, and Payments Systems.[6]  Division employees received detailed training and materials on

SPDI examinations from Promontory Financial Group. Division employees also received training

from Chainalysis on the fundamentals of blockchains and for certification on using Chainalysis

blockchain analytics tools, as well as training from the Cannon Financial Institute on

cryptocurrency and blockchains.[7]  Division employees have experience related to digital assets in

other contexts, including trust companies.[8]

### D.     Ongoing Supervision

SPDIs are also subject to robust ongoing supervision by the State, including digital asset

activity. This ongoing supervision requires SPDIs to regularly submit information to the Division.

SPDIs will file quarterly call reports with the Division. Wyo. Stat. Ann. § 13-12-119(a); Banking

Rules, Ch. 20 § 12(b). Furthermore, SPDIs must provide the Division with quarterly variance

reports that compare the SPDI's budget to actual performance during the first three years of

operation and be subject to quarterly off-site monitoring by the Division. *Id*. SPDIs will submit a

---

[6] *See* Wyoming Division of Banking, Special Purpose Depository Institution Examination Manuals, https://drive.google.com/file/d/14dA8hrR59aGsKZYxAolWQ7dVr32cr_Vw/view.

[7] Wyoming Bank Regulator Taps Chainalysis to Boost Crypto Tracing Efforts, Danny Nelson, coindesk.com (Sept. 14, 2021), https://www.coindesk.com/markets/2020/09/17/wyoming-bank-regulator-taps-chainalysis-to-boost-crypto-tracing-efforts/; Essentials of Cryptocurrency and Blockchains for Financial Services Professionals, Cannon Financial Institute, https://www.cannonfinancial.com/courses/essentials-of-cryptocurrency-and-blockchain-for-financial-services-professi/1519.

[8] Crypto dealer SFOX gets trust charter approval from Wyoming regulators, CoinTelegraph, Turner Wright (Mar. 1, 2022), https://cointelegraph.com/news/crypto-dealer-sfox-gets-trust-charter-approval-from-wyoming-regulators; Two Ocean No-Action Letter: Digital Asset Custody & Qualified Custodian Status, Wyoming Division of Banking (Oct. 23, 2020), https://wyomingbankingdivision.wyo.gov/announcements-and-publications/two-ocean-no-action-letter-digital-asset-custody-qualified-custodian-status

resolution and recovery plan within six months of commencing business. Banking Rules, Ch. 20 § 4(a).

If a SPDI begins digital asset activity, it must regularly submit substantial supplementary information to the Division. The Division expects any SPDI seeking to engage in digital asset custody to first provide 60 days written notice describing the proposed custodial services, verifying its compliance with applicable law, and stating the reasons why the proposed custodial services will not impair safety and soundness. Wyo. Stat. Ann. 34-19-104(a); Banking Rules, Ch. 19 § 3(a). A SPDI must also provide verification that digital assets under custody carry appropriate insurance or other financial protections to cover or mitigate potential loss exposure. Banking Rules, Ch. 19 § 8(o). The Division, acting on behalf of the Banking Commissioner, has authority to request a wide variety of digital asset reporting from SPDIs, including, but not limited to, their methodology for valuing digital assets, results from information technology security testing, policies and procedures related to digital assets, audit records, and information on potential security incidents. Banking Rules, Ch. 19 § 8(f), (m), (p); 9(k), (r)-(t). SPDIs will also likely submit regular digital asset transaction data to the Division for review and analysis. *See* Wyo. Stat. Ann. § 13-12-119(a); Banking Rules, Ch. 20 § 7(f).[9] Ultimately, the Division has expansive authority to supervise a SPDI's digital asset activity because it may conduct an examination of the SPDI's digital asset custody services at any time, with or without notice. Banking Rules, Ch. 19 § 8(s).

---

[9] The Division has entered into a contract to use Chainalysis blockchain analytics tools in its supervision. *See* Wyoming Partners with Chainalysis to Combat Money Laundering and Illicit Digital Asset Activity, blog.chainalysis.com (Sept. 17, 2020), https://blog.chainalysis.com/reports/wyoming-division-of-banking-partnership-announcement/.

Additionally, SPDIs must obtain prior written approval from the Banking Commissioner for any new activity that is usual or incidental to the business of banking, including activities related to digital assets. Wyo. Stat. Ann. § 13-12-103(b)(vii). SPDIs must "consult with the [Banking] Commissioner and seek any necessary approval, before engaging in a new substantial activity or line of business," including new digital asset products and services. Banking Rules, Ch. 20, § 13(b). The Banking Commissioner shall not approve any new incidental activity, including those involving digital assets in which the SPDI seeks to participate "if he finds that the requested activity will adversely affect the solvency or the safety and soundness of the special purpose depository institution." Wyo. Stat. Ann. § 13-12-103(b)(vii). Furthermore, the Banking Commissioner's review may include, but is not limited to, any applicable policies and procedures, risk assessments, flow of funds, anti-money laundering and compliance programs, any relevant vendor management policies, permissibility under Wyoming law, audits and testing, customer protections, and other items. *See* Wyo. Stat. Ann. § 13-12-103(b)(vii); Banking Rules, Ch. 20 § 13(a).

### E. Rulemaking and Guidance

The State's regulatory framework is built on years of rulemaking and guidance. The Division's SPDI regulations became effective in 2020 and were amended in 2021. Wyoming Dep't of Audit, Banking Div., Superceded Rules Ch. 20 (effective date Aug. 7, 2020). Those rules cover, among many topics, capital and surplus, application requirements, recovery and resolution planning, supervision of controlling interests, a prohibition on commercial firms obtaining a controlling interest in a SPDI, receivership, AML and sanctions, presence in Wyoming, requirement to back deposits with level 1 high-quality liquid assets, safety and soundness, reports

and examinations, and operations and activities approvals. *See* Wyo. Div. of Banking Rules (Banking Rules), Ch. 20.

The Division's digital asset custody regulations became effective in 2019 and were amended in 2021. Wyoming Department of Audit, Banking Division, Superceded Rules Ch. 19 (effective date Nov. 8, 2019). They cover, among many topics, custodial services, customer agreements, customer protections, permissible transactions, risk management, operations, key generation and management, training, vendor and supplier requirements, technology controls, transaction handling, and digital asset lending requirements and restrictions. *See* Banking Rules, Ch. 19.

The Division has also issued a variety of guidance on SPDIs. This includes updated capital requirements guidance in 2021 that identifies the factors the Banking Commissioner considers in setting the initial capital requirements, confirms that "the required initial capital will likely far exceed the statutory minimum," and provides for additional information on capital requirements.[10] It also created guidance on SPDI business plans and the application process.[11]

In sum, the State has established a detailed and extensive process that ensures the SPDI banks are well-regulated with built-in oversight processes.

## II.   Customer Protections

The State offers protections for SPDI customers not typically available in other jurisdictions, including enhanced protections related to their fiat currency deposits and digital assets in custody. As to customer deposits, a SPDI must maintain unencumbered liquid assets at

---

[10] *See* State of Wyoming's Ex. 3.

[11] *See* State of Wyoming's Ex. 4.

not less than 100 percent of its customer deposits. Wyo. Stat. Ann. § 13-12-105(a). Thus, a SPDI is a fully reserved bank that cannot use customer deposits to make loans or invest beyond high-quality liquid assets. Wyo. Stat. Ann. §§ 13-12-103(c), 13-12-105(b)(i)-(iii) (defining "liquid assets" as United States currency or highly liquid assets); Banking Rules, Ch. 20 § 9 (b) (requiring SPDI investments to be level 1 high-quality liquid assets, as defined in 12 C.F.R. § 249.20, as of October 1, 2020, unless otherwise approved by the Commissioner). After the first three years of operation, a SPDI must also maintain a 2% contingency account, meaning it should maintain unencumbered liquid assets at not less than 102% of its customer deposits. Wyo. Stat. Ann. § 13-12-106(a).

The Kansas City Fed is critical of Plaintiff for not having FDIC insurance to insure $250,000.00 per a depositor (Kansas City Fed. Br. at 1, 8, 10-11, 18, 19, 25, 27), but overlooks that SPDIs are fully reserved banks that **do not make loans** and **must maintain at least 100 percent backing of customer deposits** in high-quality liquid assets. A SPDI is **not** a fractional-reserve bank in which, particularly absent FDIC insurance, a bank run might quickly escalate and overwhelm the small fraction of deposited funds on-hand for customer withdrawals. Instead, the SPDI must fully-back its depository liabilities. Nevertheless, a SPDI without insurance from the FDIC must:

    (1)    Display on its website and any place where it accepts deposits a sign conspicuously stating that deposits are not insured by the federal deposit insurance corporation. Wyo. Stat. Ann. § 13-12-108(a);

    (2)    Require that each depositor, upon opening an account, execute a statement acknowledging that all deposits at the special purpose depository institution are not insured by the federal deposit insurance corporation. *Id.* § 13-12-108(b); and

    (3)    Include in all advertising a disclosure that deposits are not insured by the federal deposit insurance corporation. *Id.* § 13-12-108(c).

11

Multiple enhanced protections exist for customers who custody digital assets with a SPDI. SPDIs are subject to examination and ongoing supervision for compliance with Wyoming's laws and regulations related to digital assets and customer protection. *See supra* Section I.C-E. SPDIs must generally undertake transactions with customer digital assets based on distinct, written authorizations from the customer. Banking Rules, Ch. 19 § 4(d). SPDIs must also provide clear written notices to customers regarding, among other things, the heightened risk of loss from digital asset transactions. *Id.* § 5(c)(i). Unlike most jurisdictions, Wyoming law also defines perfection and priority of security interests in digital assets. *See* Wyo. Stat. Ann. § 34-29-103. In the event of a receivership, Wyoming law provides significant customer protections when SPDIs hold digital assets. For example:

- A customer's digital assets are not assets of the bank. Wyo. Stat. Ann. § 34-29-104(d);

- A customer's digital assets can be held under a bailment. Wyo. Stat. Ann. § 34-29-104(d)(i), Banking Rules, Ch. 19, § 4(c)(i);

- A customer's digital assets are not a source of unrelated claims of creditors, provided basic requirements are met. Banking Rules, Ch.20 § 6(p)(i)-(iii);

- The Banking Commissioner must transfer a customer's digital assets to a successor custodian or return the assets to a customer in a receivership "as quickly as possible to prevent or minimize disruption to customers." Banking Rules, Ch. 20, § 6(q); and

- Customer claims in a receivership have priority ahead of everyone except for the administrative expenses of the Commissioner. Banking Rules, Ch. 20, § 6(j)(ii).

Together, the State has protections aimed to provide enhanced security of customer fiat currency deposits and digital assets under custody with a SPDI.

12

III.   **The State's Interest in the SPDI Charter**

The State has an interest in the operation and use of Wyoming SPDI bank charters. As discussed above, the State has built an extensive regulatory framework for banks engaged in digital asset activities. Promoting and encouraging these innovative financial services is an important interest to the State since these groundbreaking activities will economically benefit the citizens of Wyoming. However, Defendants' significant delays causes concern about the viability of SPDI-chartered depository institutions ever receiving direct access to the U.S. payments system in a reasonable time frame.

Defendants argue that recently finalized guidelines provide clarity on the master account application process. Kansas City Fed Br. at 42-43; Board Br. at 6-8 (citing Guidelines Board of Governors of the Federal Reserve System, *Guidelines for Evaluating Account and Service Requests*, Docket No. OP-1747 ("Guidelines")).[12] But even if the Guidelines applied to Plaintiff's application (and Custodia argues they do not), the Guidelines set a roadmap for indefinite delay and further ambiguity on SPDI master account applications. The Board admits more time is required to develop an "implementation plan" for the Guidelines and presumably even more time is required to carry-out any implementation plan it develops. Guidelines at 9. Board Governor Michelle W. Bowman suggested the Board is not even prepared to develop or carry-out an implementation plan for the Guidelines, stating that "more work remains to be completed before a process is established to fully implement the guidelines."[13]

---

[12] https://bit.ly/3C59BiP.

[13] Statement on Guidelines to Evaluate Requests for Accounts and Services at Federal Reserve Banks by Governor Michelle W. Bowman (Aug. 15. 2022), https://www.federalreserve.gov/newsevents/pressreleases/bowman-statement-20220815.htm.

Even if an implementation plan is developed and carried out, the Board expressly rejects any timeline for the review of master account applications. Guidelines at 15. Finally, even if the Guidelines were eventually fully implemented, the State questions how much clarity they provide when the Kansas City Fed is allegedly not bound by them. Board Br. at 6 ("[T]he Proposed Guidelines would not disturb the Reserve Banks' 'discretionary authority to grant or deny requests.'"). Instead of clarifying the timeline and process for master account applications, the Guidelines seem to **extend** the timeline indefinitely under the guise of developing an "implementation plan" and continue an ambiguous process in which Reserve Banks can allegedly disregard the Guidelines and exercise complete discretion.

While the State appreciates the Defendants' care and consideration, an unreasonable 23 months have passed since Plaintiff applied for a master account. Furthermore, the Defendants are aware of the safety and soundness precautions that Wyoming law imposes upon SPDIs, including Plaintiff. Yet, Defendants are unwilling to commit to any timeline to decide Plaintiff's master account application. (Compl. ¶ 43); Guidelines at 15.

Instead of committing to any decision timeline, the Board contends that its delay is justified by the precedential nature of the decision. (Board Br. at 2, 15). Chairman Powell similarly claimed that the Board's time on SPDI master account applications is because "it's just hugely precedential and that's really why we've taken our time with it."[14]  The State questions the premise that a master account application decision for a SPDI is precedential for the entire digital asset industry because (1) no other jurisdictions have the advanced regulatory framework for digital assets established by

---

[14]  https://www.banking.senate.gov/hearings/01/04/2022/nomination-hearing (from time stamp 2:07:30 to 2:08:27)

Wyoming and (2) the Board acknowledges that applications should be reviewed on a "case-by-case" basis. (Board Br. at 7). Moreover, even assuming Plaintiff's application is precedential for the digital asset industry, the very precedential nature of this application is a reason to make a decision on the application without delay. Otherwise, Defendants are impeding a whole industry (a "couple of hundred" institutions in Chairman Powell's estimation) and impairing efforts to bring the digital asset industry inside the banking regulatory perimeter.

Defendants' failure to act is both the most harmful "decision" they could make and the most harmful process in which they could make it. Because the Defendants have not even denied the application, existing SPDIs and potential SPDI applicants who may apply for a master account face considerable uncertainty. They cannot be sure how long the application process will take, what steps are needed to receive a master account beyond submitting the application itself, or even whether the receipt of a master account is feasible for a SPDI. This uncertainty is a significant detriment to the State because it cannot fully realize the benefits of its SPDI bank charter if Defendants restrict SPDI access to the U.S. payments system.

## CONCLUSION

The State of Wyoming respectfully requests that the Court deny Defendants' motions to dismiss.

Dated this 21st day of September, 2022.

State of Wyoming

*/s/ Bridget Hill*
Bridget Hill, Wyo. Bar No. #6-3616
Attorney General
109 State Capitol
Cheyenne, WY 82002
(307) 777-7841

15

_/s/ Karl Anderson_
Karl Anderson, Wyo. Bar No. #6-2807
Supervising Attorney General
109 State Capitol
Cheyenne, WY 82002
(307) 777-7841


_/s/ Devin Kenney_
Devin Kenney, Wyo. Bar No. #7-5964
Senior Assistant Attorney General
109 State Capitol
Cheyenne, WY 82002
(307) 777-7841

16

## CERTIFICATE OF SERVICE

I certify that on this 21st day of September 2022, a copy of the foregoing *AMICUS CURIAE* **BRIEF OF THE STATE OF WYOMING IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** was served in the following manner as addressed to:

John K. Vila                                          VIA CM/ECF
Ryan Thomas Scarborough
Whitney D. Hermandorfer
Jamie Wolfe
WILLIAMS & CONNOLLY
680 Maine Avenue SW
Washington, DC 20024
*Attorneys for Plaintiff*

Scott E. Ortiz                                        VIA CM/ECF
WILLIAMS PORTER DAY & NEVILLE
159 North Wolcott, Suite 400
P.O. Box 10700
Casper, WY 82602
*Attorneys for Plaintiff*

Angela Tarasi                                         VIA CM/ECF
KING & SPALDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202
*Attorneys for Defendant Federal Reserve Bank of Kansas City*

Billie LM Addleman                                    VIA CM/ECF
John P. Fritz
HIRST APPLEGATE
P.O. Box 1083
Cheyenne, WY 82003
*Attorneys for Defendant Federal Reserve Bank of Kansas City*

Joshua P. Chadwick                                    VIA CM/ECF
Yvonne F. Mizusawa
Yonatan Gelblum
Katherine Pomeroy
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
*Attorneys for Defendant Federal Reserve Board of Governors*

17

Lisa Jerde Spillman                                VIA CM/ECF
JERDE SPILLMAN LAW LLC
Wyoming Attorney General's Office
7527 Jessica Drive
Cheyenne, WY 82009
*Attorney for* Amicus *Wyoming Select Committee on*
*Blockchain, Financial Technology and Digital*
*Innovation Technology Co-Chairs Christopher*
*Rothfuss and Jaren Olsen*

Stephen T. Gannon                                  VIA CM/ECF
David M. Gossett
Lisa Richards
DAVIS WRIGHT TREMAINE, LLP
1301 K Street NW
Ste. 500 East
Washington, D.C. 20005
*Attorneys for* Amicus *Wyoming Select Committee*
*on Blockchain, Financial Technology and Digital*
*Innovation Technology Co-Chairs Christopher*
*Rothfuss and Jaren Olsen*

Christopher Land                                   VIA CM/ECF
UNITED STATES SENATE
Senator Cynthia M. Lummis
Russell Senate Office Building
Ste 124
Washington, DC 20510
*Attorney for* Amici *United States Senate Banking,*
*Housing and Urban Affairs Committee Members*
*and United States House of Representatives*
*Financial Services Committee Members*

*/s/ Karl Anderson*
Wyoming Attorney General's Office

18