Billie L.M. Addleman, #6-3690
John P. Fritz, #7-6318
HIRST APPLEGATE, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
jfritz@hirstapplegate.com

Andrew Michaelson (*pro hac vice*)
Laura Harris (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com
lharris@kslaw.com

Jeffrey S. Bucholtz (*pro hac vice*)
Joshua N. Mitchell (*pro hac vice*)
Christine M. Carletta (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500

*Counsel for Defendant the Federal Reserve Bank of Kansas City*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| CUSTODIA BANK, INC., <br><br>     *Plaintiff,* <br><br>       v. <br><br> FEDERAL RESERVE BOARD OF GOVERNORS and FEDERAL RESERVE BANK OF KANSAS CITY, <br><br>     *Defendants.* | No. 1:22-cv-00125-SWS |

**DEFENDANT FEDERAL RESERVE BANK OF KANSAS CITY'S
REPLY IN SUPPORT OF IN SUPPORT OF ITS MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................. iii

INTRODUCTION .............................................................................. 1

ARGUMENT .................................................................................... 3

I.   The Court Should Not Decide the Issues Raised by Custodia's
     Complaint at This Premature Juncture. ........................................ 3

     A.   Custodia's claims are not ripe. ........................................... 3

     B.   Custodia does not have standing. ....................................... 8

II.  Counts III and V: Custodia's Due Process Claims Fail Because
     FRBKC Has Discretion to Determine Whether to Open a Master
     Account. ................................................................................... 10

     A.   Section 342 grants discretion to Reserve Banks. ............... 10

     B.   Section 248a does not eliminate Reserve Bank discretion. .... 12

III. Count I: Custodia's APA Claim Fails Because FRBKC Is Not an
     Agency nor Has Custodia Suffered an Unreasonable Delay. ........ 14

     A.   FRBKC is not a federal banking agency under 12 U.S.C.
          § 4807. ............................................................................ 14

     B.   FRBKC is not an agency under the APA. ........................... 15

     C.   Custodia has not suffered an unreasonable delay............... 17

IV.  Counts III, V, and VI: FRBKC's Exercise of Discretion Over Master
     Accounts Is Consistent with the Constitution. ............................ 20

     A.   Reserve Bank discretion to grant master accounts does not
          violate nondelegation principles (Count III). ..................... 20

     B.   Custodia is not being regulated by its competitors (Count V)........... 21

     C.   The Appointments Clause is not implicated in this case
          (Count VI). ...................................................................... 22

V.      Counts II and VII: Custodia's Mandamus Act Claims Fail........................... 24

VI.     Counts IV and VIII: Custodia's Declaratory Judgment Act Claims
        Fail Because the Act Provides No Independent Right of Action. ................ 24

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937)..............................................................................24

*Awad v. Ziriax*,
  670 F.3d 1111 (10th Cir. 2012) ...........................................................3

*Bd. of Trade v. SEC*,
  883 F.2d 525 (7th Cir. 1989)...............................................................19

*Biden v. Texas*,
  142 S. Ct. 2528 (2022)........................................................................10

*Carter v. Genesis Aklaki, LLC*,
  No. 20-CV-216-SWS,
  2021 WL 7209790 (D. Wyo. Aug. 26, 2021).......................................9

*Dong v. Smithsonian Inst.*,
  125 F.3d 877 (D.C. Cir. 1997) ...................................................... 15, 16

*Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*,
  693 F.3d 1195 (10th Cir. 2012)...........................................................24

*Farmers & Merchs. Bank v. Fed. Rsrv. Bank of Richmond*,
  262 U.S. 649 (1923)............................................................................10

*Flight Int'l Grp., Inc. v. Fed. Rsrv. Bank of Chi.*,
  583 F. Supp. 674 (N.D. Ga. 1984) ......................................................16

*Flight Int'l Grp., Inc. v. Fed. Rsrv. Bank of Chi.*,
  597 F. Supp. 462 (N.D. Ga. 1984) ......................................................16

*Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*,
  861 F.3d 1052 (10th Cir. 2017)............................................................5

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010)............................................................................22

*Ghadami v. DHS*,
  No. CV 19-00397 (ABJ),
  2020 WL 1308376 (D.D.C. Mar. 19, 2020).........................................17

*Grumman Aircraft Eng'g Corp. v. Renegotiation Bd.*,
    421 U.S. 168 (1975) ........................................................................16

*Grumman Aircraft Eng'g Corp. v. Renegotiation Bd.*,
    482 F.2d 710 (D.C. Cir. 1973) ......................................................16

*Gundy v. United States*,
    139 S. Ct. 2116 (2019) ...................................................................20

*Hayes v. Whitman*,
    264 F.3d 1017 (10th Cir. 2001) ......................................................9

*In re Am. Fed'n of Gov't Emps.*,
    790 F.2d 116 (D.C. Cir. 1986) ......................................................19

*In re Barr Labs., Inc.*,
    930 F.2d 72 (D.C. Cir. 1991) ........................................................19

*Indep. Min. Co. v. Babbitt*,
    105 F.3d 502 (9th Cir. 1997) ........................................................19

*Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior*,
    No. 09-cv-1135,
    2010 WL 11595114 (D.N.M. May 10, 2010) ....................................9

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) .........................................................21

*Johnson v. Rogers*,
    917 F.2d 1283 (10th Cir. 1990)......................................................24

*Johnson v. Spencer*,
    950 F.3d 680 (10th Cir. 2020) ........................................................4

*Jojola v. Chavez*,
    55 F.3d 488 (10th Cir. 1995) .........................................................9

*Lee Constr. Co. v. Fed. Rsrv. Bank of Richmond*,
    558 F. Supp. 165 (D. Md. 1982) ...................................................16

*Lewis v. United States*,
    680 F.2d 1239 (9th Cir. 1982) ......................................................16

*Mann v. Fifth Third Bank*,
    No. 1:09-CV-014,
    2011 WL 1575537 (S.D. Ohio Apr. 25, 2011) .....................................................14

*Mistretta v. United States*,
    488 U.S. 361 (1989)...........................................................................................20

*Nat'l Broad. Co. v. United States*,
    319 U.S. 190 (1943)...........................................................................................20

*Salgado-Toribio v. Holder*,
    713 F.3d 1267 (10th Cir. 2013) .........................................................................13

*Taft v. Agric. Bank of China Ltd.*,
    No. 15 CIV 5321 (PAE),
    2016 WL 2766661 (S.D.N.Y. May 12, 2016).....................................................15

*Telecommc'ns Rsch. & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984) ..................................................................... 18, 19

*Tex. Brine Co., LLC & Occidental Chem. Corp.*,
    879 F.3d 1224 (10th Cir. 2018)...........................................................................3

*Texas v. United States*,
    523 U.S. 296 (1998).............................................................................................8

*Thomas v. Union Carbide Agric. Prods. Co.*,
    473 U.S. 568 (1985).............................................................................................8

*TNB USA Inc. v. Fed. Rsrv. Bank of N.Y.*,
    No. 1:18-CV-7978 (ALC),
    2020 WL 1445806 (S.D.N.Y. Mar. 25, 2020)................................................2, 9

*United States ex rel. Kraus v. Wells Fargo & Co.*,
    943 F.3d 588 (2d Cir. 2019)...............................................................................17

*United States v. Arthrex, Inc.*,
    141 S. Ct. 1970 (2021)........................................................................................23

*United States v. Bennett*,
    823 F.3d 1316 (10th Cir. 2016)...........................................................................3

*United States v. Cabral*,
   926 F.3d 687 (10th Cir. 2019)................................................................3

*United States v. Melgar-Diaz*,
   2 F.4th 1263 (9th Cir. 2021)...............................................................20

*United States v. Sup. Ct. of N.M.*,
   839 F.3d 888 (10th Cir. 2016)................................................................3

*Utah Hous. Corp. v. Country Pines, Ltd.*,
   541 F. Supp. 3d 1288 (D. Utah 2021)................................................24

*Utah Republican Party v. Cox*,
   892 F.3d 1066 (10th Cir. 2018)..............................................................3

*Vaz v. Neal*,
   33 F.4th 1131 (9th Cir. 2022)..............................................................19

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001)............................................................................20

*Wyoming v. Zinke*,
   871 F.3d 1133 (10th Cir. 2017)..............................................................3

*Yakus v. United States*,
   321 U.S. 414 (1944)............................................................................20

**Statutes, Regulations, & Rules**

12 U.S.C. § 221 ......................................................................................14

12 U.S.C. § 248 ........................................................................ 15, 22, 23

12 U.S.C. § 248a ....................................................................................12

12 U.S.C. § 263 ......................................................................................21

12 U.S.C. § 302 ......................................................................................21

12 U.S.C. § 303 ......................................................................................22

12 U.S.C. § 324 ........................................................................................7

12 U.S.C. § 341 ................................................................................ 14, 22

12 U.S.C. § 342 ................................................................................. *passim*

12 U.S.C. § 391 ...................................................................................11

12 U.S.C. § 1813 ............................................................................ 14, 15

12 U.S.C. § 1818 ..................................................................................14

12 U.S.C. § 4801 ..................................................................................14

12 U.S.C. § 5322 ..................................................................................21

12 U.S.C. § 5465 ..................................................................................11

Federal Reserve Act,
  Pub. L. No. 63-43, 38 Stat. 251 (1913)..................................... *passim*

021.0002.19 Wyo. Code R. ....................................................................6

021.0002.20 Wyo. Code R. ....................................................................6

D. Wyo. Loc. R. 7.1(b)(2)(G) ................................................................5

**Other Authorities**

*Appointment & Removal of*
  *Fed. Rsrv. Bank Members of Fed. Open Mkt. Comm.*,
  43 Op. O.L.C. __, slip op. (Oct. 23, 2019) ................................. 23, 24

Avanti Fin. Grp., Inc.,
  Comment Letter on Proposed Guidelines for Evaluating Accounts
  (July 12, 2021), https://bit.ly/3CszjgW...............................................18

*Depository Institutions Deregulation*
  *and Monetary Control Act of 1980*,
  FederalReserveHistory.org (Nov. 22, 2013), https://bit.ly/3US55uP ................13

Fed. Rsrv. Sys.,
  *Guidelines for Evaluating Account and Service Requests*,
  Docket No. OP-1747, https://bit.ly/3C59BiP .......................................7

Fed. Rsrv.,
  Federal Reserve Policy on Payment System Risk
  (Mar. 19, 2021), https://bit.ly/3CsQZJr .............................................5

Press Release,
　　Custodia, *Avanti Is Now Custodia, Announces Countdown to
　　Launch in Q2*, (Feb. 24, 2022), https://bit.ly/3UOXEo9 .............................. 4, 17

Press Release,
　　Custodia, *Avanti Statement on its Application to Become an FDIC-
　　Insured Bank* (Nov. 5, 2021), https://bit.ly/3RqGJW9 ........................................7

Press Release,
　　Fed. Rsrv. Bank of St. Louis, No. 96-33,
　　*New Account Structure Will Support Interstate Branching*
　　(May 2, 1996), https://bit.ly/3CqyuFh ...............................................................11

## INTRODUCTION

Custodia's Opposition obscures the issue at the heart of this dispute. In Custodia's telling, everything is routine here but for a desire by the Federal Reserve Bank of Kansas City ("FRBKC") to inexplicably sit on a simple request for a master account in perpetuity. Custodia writes as if it were just like any other depository institution except that it is being unfairly deprived of direct access to Federal Reserve services enjoyed by its competitors. In fact, Custodia is at no disadvantage relative to other digital asset businesses, and what it seeks is unprecedented.

This case is really about whether a self-described "first-of-its-kind digital asset bank" can become the first Wyoming Special Purpose Depository Institution (SPDI) to obtain a master account. Custodia, a newly formed entity not yet open for business, will offer digital asset custody, serve as a "bridge" between digital assets and the U.S. dollar, and facilitate payments with a self-issued digital "instrument" called the "Avit." These activities are laden with novel risks, which Custodia's Opposition ignores and its amici misstate. Yet the risks are evident, and they are compounded by the fact that Custodia, at least currently, seeks to operate with *neither* deposit insurance to protect customers nor a federal supervisor to evaluate its compliance with applicable federal banking laws and regulations. Even on a motion to dismiss—accepting the Complaint's allegations as true and taking judicial notice of public reports—it is evident that there is no plausible claim for unreasonable delay. Rather, Custodia's request is taking time for good reason.

FRBKC's motion to dismiss should be granted because Custodia's claims are not ripe and it does not have standing. That was true in *TNB* and it is true here—Custodia has not pleaded any

redressable injury.[1] The lack of ripeness is underscored by three amicus briefs that highlight the complexity of FRBKC's precedent-setting evaluation of Custodia's request.

FRBKC's motion should also be granted if the Court reaches the merits. FRBKC's legal position is straightforward: Congress granted FRBKC discretion to accept deposits in master accounts. Opening a master account is a commercial, risk-based decision that does not implicate sovereign, executive powers. The Appointments Clause therefore presents no issue, but even if it did, it is sufficient that this type of decision is made by a constitutionally-accountable "inferior officer"—FRBKC's President. Meanwhile, the one-year deadline in 12 U.S.C. § 4807 is irrelevant because the defined list of "Federal banking agencies" to which that statute applies does not include Reserve Banks; the APA does not apply because Reserve Banks are not federal agencies; there is no non-delegation problem because Congress provided an "intelligible principle" to guide FRBKC's decision-making; and no due process concern is raised by having a minority of FRBKC's board members representing the banking industry.

FRBKC's position requires no "pretzel-twist[s]." Opp. 1. It flows from straightforward application of the law, and the end result is entirely reasonable: FRBKC can decide on master account requests with input from the Board, and it can apply heightened scrutiny and thoughtful analysis to novel and precedent-setting requests like Custodia's. Congress set no fixed timeline for this consideration, and given the nature of Custodia's proposed business, there is no plausible claim that FRBKC's consideration of Custodia's request has been unreasonable.

---

[1] *TNB USA Inc. v. Fed. Rsrv. Bank of N.Y.*, No. 1:18-CV-7978 (ALC), 2020 WL 1445806 (S.D.N.Y. Mar. 25, 2020), involved a master account request from a so-called "narrow bank" that did not engage in the traditional business of banking but rather sought to profit by passing through to institutional investors the interest paid by Reserve Banks on reserves in master accounts. Scaling of that business model presents risk to the Federal Reserve's implementation of monetary policy, and no Reserve Bank has granted a master account to a narrow bank.

**ARGUMENT**

I.    **The Court Should Not Decide the Issues Raised by Custodia's Complaint at This Premature Juncture.**

Custodia's request for a master account is novel and raises serious and complex issues. Custodia's Complaint likewise raises constitutional and administrative law issues with potential implications far beyond this case. The Court need not and should not decide those issues at this juncture. Certain issues may become ripe for decision if FRBKC denies Custodia's account request. But that may not happen, and even if it does, the reasons that FRBKC would give for any denial would make judicial review at that time more concrete and informed. For now, as the amici's wide-ranging submissions highlight, aspects of Custodia's processes and business model remain unclear and under active evaluation, warranting prudence and restraint.

A.    **Custodia's claims are not ripe.**

"The ripeness doctrine aims to prevent courts from entangling themselves in abstract disagreements by avoiding premature adjudication." *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (quotation marks omitted). Custodia questions the vitality of the prudential ripeness doctrine, Opp. 13, but the Tenth Circuit has relied on it recently. *See, e.g.*, *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019); *Tex. Brine Co., LLC & Occidental Chem. Corp.*, 879 F.3d 1224, 1231 (10th Cir. 2018); *Utah Republican Party v. Cox*, 892 F.3d 1066, 1092 (10th Cir. 2018); *Wyoming v. Zinke*, 871 F.3d 1133, 1141 (10th Cir. 2017); *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 903 (10th Cir. 2016). To determine whether a dispute is prudentially ripe, a court "balance[s] the fitness of the issue for judicial review with the hardship to the parties from withholding review." *United States v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016). Custodia's Opposition and the amicus briefs reveal the complexities and evolving factual circumstances that demonstrate the lack of ripeness and the reasonableness of FRBKC's process.

1. *Custodia and its amici make representations that illuminate the complexity of FRBKC's decision. First,* Custodia makes the bold representation that "[i]f Custodia receives a master account, the Federal Reserve System will not be exposed to any digital asset risks." Opp. 19. The reality is not so simple. It is telling that Custodia declines to provide any meaningful detail about its proposed business model in its Complaint or Opposition. For purposes of resolving this motion, however, the Court can take judicial notice of Custodia's own press releases and other public information that refutes Custodia's simplistic risk assessment. *See Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

In February, Custodia issued a press release describing itself as a "first-of-its-kind digital asset bank" seeking to provide "ACH and Fedwire services" and to launch a still-in-development "payment instrument" (a so-called "stablecoin") called the "Avit."[2] Custodia claims that when it is operational, it will hold adequate reserves to back the Avit and customer deposits, raising an obvious set of risks concerning plans to manage, track, and control such reserves. Has Custodia adequately assessed operational, cybersecurity, and liquidity risks? Has it established, staffed, and tested a compliance regime sufficient under the Bank Secrecy Act and Anti-Money Laundering ("BSA/AML") regulations? What are the risks posed by issuing the Avit on one or more public blockchains, where individuals who are not customers of Custodia may hold Avits and make worldwide payments using Avits? What will happen if Custodia's customers shift their interests from digital assets to the U.S. dollar *en masse* in the face of a run or other stress on digital assets or financial markets, forcing Custodia to come up with additional reserves on short notice? FRBKC

---

[2] Press Release, Custodia, *Avanti Is Now Custodia, Announces Countdown to Launch in Q2*, (Feb. 24, 2022), https://bit.ly/3UOXEo9.

is exercising prudence and conducting due diligence to ensure it understands all risks—including risks to itself, the payment system, and the implementation of monetary policy.

*Second*, Sen. Rothfuss and Rep. Olsen state that "Custodia has informed the Kansas City Fed (and has stated publicly) that it will have a *zero* net debit cap, meaning it will receive *no* credit from the Kansas City Fed." Rothfuss Br. 12. The U.S. Members' brief makes a similar remark. U.S. Members' Br. 23. That is not accurate: FRBKC will be exposed to credit risk from Custodia. That is because (among other potential sources of risk) Custodia intends to offer automated clearing-house ("ACH") services to customers. Processing of ACH transactions, which occurs in batches several times each day, does not permit a real-time rejection of incoming debits that could cause a master account balance to go negative. In other words, the inability of FRBKC to reject certain transactions in real time would create credit risk to FRBKC even if Custodia's account nominally had a zero net cap. *See* Fed. Rsrv., Federal Reserve Policy on Payment System Risk, Part II (Mar. 19, 2021), https://bit.ly/3CsQZJr (describing ways Reserve Banks mitigate credit risk posed when an institution's master account is negative intra-day).[3]

*Third,* Sen. Rothfuss and Rep. Olsen represent that "any cryptocurrencies held by Custodia will be held in trust and will not appear on Custodia's depository balance sheet at all, thus necessarily insulating the Fed entirely from those risks." Rothfuss Br. 13. Custodia, however, makes no such representation in its Complaint, and the legal and accounting treatment of cryptocurrencies by Custodia is an example of an issue under ongoing evaluation. Moreover,

---

[3] Amici's assertion that Custodia has requested a master account with a zero net debit cap goes outside the pleadings and the public record, as Custodia itself has not made such an allegation. It is nonetheless appropriate for FRBKC to respond to it. *See* Local Rule 7.1(b)(2)(G). And, more generally, these issues help to illuminate why it is taking time for FRBKC to responsibly arrive at an answer to Custodia's request. *See Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*, 861 F.3d 1052, 1060 (10th Cir. 2017) (Matheson, J.) (concluding that case was premature because plaintiff bank's business model was still in flux).

Wyoming law suggests that digital asset custodians executing blockchain transactions on behalf of customers may be *required* to hold digital assets on their balance sheets to fund the variable network transaction fees paid in cryptocurrency at the time of broadcasting transactions to a blockchain network. *See* 021.0002.19 Wyo. Code R., § 8(a) (requiring digital asset custodians to have on hand "sums required for the execution of transactions" as part of the digital asset custodial services). Custodia may well hold digital assets on its balance sheet.

*Fourth,* Sen. Rothfuss and Rep. Olsen describe the series of BSA/AML compliance regulations that the Wyoming Division of Banking recently promulgated. Rothfuss Br. 20 (citing 021.0002.20 Wyo. Code R. § 7). While meaningful, state requirements do not supplant Reserve Banks' own consideration of compliance with federal law, and even the most robust legal requirements do not guarantee the actual efficacy of a particular SPDI's compliance program. FRBKC has been working diligently with Custodia to determine whether its compliance regime is adequate not only on paper but in practice as well.

These issues highlighted by amici are among those that FRBKC has been actively working with Custodia to better understand and resolve, including during a recent on-site visit as part of its consideration of Custodia's master account request and the Board's consideration of Custodia's application for membership. The prudent course for the Court is to allow FRBKC time to work through these issues and arrive at a decision.

2. *The Board's issuance of the Guidelines demonstrates progress toward a decision.* While a master account decision belongs to an individual Reserve Bank, it may receive input from the Board and other Reserve Banks to promote consistency and a full appreciation of the risks and policy issues a particular request presents. To this end, pursuant to its general oversight authority, the Board recently issued Guidelines to support a structured, transparent, and consistent framework

6

for Reserve Banks' use in evaluating the implications that account requests may have for Federal Reserve policies and objectives. *See* Fed. Rsrv. Sys., *Guidelines for Evaluating Account and Service Requests*, Docket No. OP-1747, https://bit.ly/3C59BiP.

The Guidelines offer the Board's thinking on the types of risks that the Reserve Banks should focus on and the relative level of due diligence and scrutiny that should be given to various account requests. Custodia currently falls into "Tier 3"—the highest level of scrutiny—based on the absence of either federal insurance or prudential supervision by a federal banking agency. The degree of due diligence and risk-based scrutiny would change if, for example, Custodia receives FDIC insurance. Custodia previously publicly stated an intention to apply for FDIC insurance but to FRBKC's knowledge has not done so. *See* Press Release, Custodia, *Avanti Statement on its Application to Become an FDIC-Insured Bank* (Nov. 5, 2021), https://bit.ly/3RqGJW9. Also, if the Board grants Custodia's membership application, Custodia would become a "Tier 2" organization subject to prudential supervision by a federal banking agency. *See* Compl. ¶ 4; 12 U.S.C. § 324. Custodia worries that the Guidelines will be an excuse for delay, Opp. 31, but neither the notice-and-comment development of the Guidelines nor the pendency of this litigation has halted the work of FRBKC in connection with the ongoing evaluation of Custodia's master account request and its application for membership.

In sum, Custodia's request raises technical, complex, and novel issues that present risk to FRBKC and that potentially have implications for the stability of our nation's payment system. Moreover, the factual landscape in this case is still evolving, as Custodia concedes; for example, it did not receive a Certificate of Authority from Wyoming until the day before its Opposition was due. Opp. 10. FRBKC should be allowed to continue its active and regular engagement with Custodia to ensure it has the facts necessary and can apply recent guidance from the Board before

it renders a decision. FRBKC is gathering more detail on Custodia's anticipated business model, evaluating whether mitigating actions and controls would lessen identified risks, and determining whether granting Custodia an account could result in financial loss to FRBKC or an operational disruption to FRBKC or other participants in the payment system or could affect the implementation of monetary policy and the broader financial system. Even Custodia's amici agree that a master account request requires determining whether the requester is "responsible, safe and sound, and compliant with all material federal and state laws and regulations." Rothfuss Br. 7.

Before the Court weighs in on Custodia's wide-ranging constitutional and administrative law allegations, FRBKC should be afforded reasonable additional time to complete this difficult work, and the Court should await the "contingent future events" that could moot or reshape this case. *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). If instead the Court is inclined to deny Defendants' motions to dismiss, prudence counsels doing so without unnecessarily ruling on complex issues with potential ramifications for the careful balance Congress has created with the Federal Reserve System—including potential consequences far beyond this case—so that the Court may consider those issues, if necessary, with the benefit of a full record.

**B.    Custodia does not have standing.**

Custodia's supposed injuries are not pleaded, are not redressable, and are problems of its own making. Having taken on the risk of investing in a business model susceptible to a future, discretionary action by a third party, Custodia now claims it is injured by being forced to do what every other SPDI must do at present: launch with an intermediary bank. Compl ¶ 8. Custodia requests that this Court compel FRBKC to decide—grant or deny—its account request. But as FRBKC pointed out, rendering a decision may not redress Custodia's claimed injury because a denial would leave Custodia precisely where it is today. Mot. 39-40. To make up for this obvious

pleading defect, Custodia improperly seeks to use its Opposition to amend its Complaint. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995); *Carter v. Genesis Aklaki, LLC*, No. 20-CV-216-SWS, 2021 WL 7209790, at *1 (D. Wyo. Aug. 26, 2021) (stating that plaintiffs are "not permitted to amend [their] complaint by alleging new facts in a responsive brief" and "declining to consider the new allegations") (citing *Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001)).

For the first time, Custodia claims in its Opposition that it would be better off if FRBKC *denied* its account request because then Custodia could "negotiate a long-term agreement with a third-party bank." Opp. 9. But Custodia does not suggest anywhere in its Complaint that it cannot currently enter into such an agreement. And Custodia certainly does not allege that a denial would "help" it by freeing it to negotiate a long-term agreement with a bank on better terms.

Custodia's newfound theory of injury also runs contrary to the State's understanding that Custodia has a stable relationship with a third-party bank. Wyoming Br. 6 ("while [Custodia] awaits a decision on its master account application, it has moved forward with a third-party banking partner"). In fact, Wyoming issued Custodia a Certificate of Authority based on that representation. *Id*. ("The reason Plaintiff can now receive a COA is that … it has moved forward with a third-party banking partner."). If Custodia wants to amend its Complaint to clarify its status and plans, it can request leave to do so. Otherwise, the Court should refuse to consider these improperly asserted allegations.[4]

---

[4] As explained in FRBKC's motion, to the extent Custodia is claiming that it would be error for FRBKC to deny its account request, that claim is premature given that FRBKC has not denied it. Mot. 36. Recharacterizing FRBKC's ongoing consideration of the request as a "constructive denial" also would not confer standing. *See, e.g., TNB USA Inc.*, 2020 WL 1445806, at *7; *Intrepid Potash-N.M., LLC v. U.S. Dep't of Interior*, No. 09-cv-1135, 2010 WL 11595114, at *11 (D.N.M. May 10, 2010); Mot. 38-39.

## II.   Counts III and V: Custodia's Due Process Claims Fail Because FRBKC Has Discretion to Determine Whether to Open a Master Account.

The only plausible reading of the Federal Reserve Act ("FRA"), (Pub. L. No. 63-43, 38 Stat. 251 (1913)), is that Reserve Banks have discretion to decide whether to open a master account for depository institutions located in their respective jurisdictions. Because Custodia is not entitled to a master account, it has no property interest in its request and its due process claims fail.

### A.   Section 342 grants discretion to Reserve Banks.

The FRA unambiguously grants Reserve Banks discretion to decide whether to accept deposits from a depository institution by opening a master account. Custodia contends that this power belongs to the Board and urges the Court to "[s]tart with the law." Opp. 17. But the FRA makes clear that Congress entrusted certain powers to the Board (in Section 11) and certain other powers to the Reserve Banks (in Section 13). In Section 13, dedicated to the "Powers of Federal Reserve Banks," the very first power described is the "Receipt of deposits and collections." 12 U.S.C. § 342. The statute clearly provides that "[a]ny Federal reserve bank *may* receive from any of its member banks, or other depository institutions ... deposits." *Id.* (emphasis added). Contrary to the U.S. Members' brief, "may" is permissive; it does not mean" "shall." *See Biden v. Texas*, 142 S. Ct. 2528, 2541 (2022); *Farmers & Merchs. Bank v. Fed. Rsrv. Bank of Richmond*, 262 U.S. 649, 662 (1923). U.S. Members' Br. 13. For its part, Custodia dismisses § 342 because it does not use the words "master accounts," *see* Opp. 18, but master account is simply a term for a deposit

account at a Reserve Bank.[5] Granting master accounts is part and parcel of accepting deposits. Deposits are deposited *into a master account*.[6]

Custodia relies on a provision of the Dodd Frank Act that, it contends, shows that Congress gave the Board, rather than the Reserve Banks, discretion to open master accounts. Opp. 18 (citing 12 U.S.C. § 5465(a)). Custodia's reliance is misplaced, as that provision makes clear that Congress knows how to grant the Board discretion over master accounts when it wants to do so. Section 5465(a) provides: "The Board of Governors may authorize a Federal Reserve Bank to establish and maintain an account for a designated financial market utility...." *Id.* If Custodia were a "designated financial market utility," this statute might be relevant, but it is not. What this statute shows is that Congress *could have* granted the Board comparable authority over master accounts for depository institutions. Instead, Congress gave that power to Reserve Banks.

Reserve Banks naturally confer with each other and the Board to promote consistency and ensure that account decisions align with the purposes of the FRA. And given the Board's general oversight of Reserve Banks, it makes sense for the Board to issue guidelines to assist the Reserve Banks. By statute, however, the decision whether to accept deposits—to open a master account— belongs with Reserve Banks.

---

[5] For context, before interstate bank branching, some banks held different types of accounts and accounts at more than one Reserve Bank. Starting in 1998, the Reserve Banks consolidated all these accounts "into a single, master account" for each account holder to streamline things for both depository institutions and the Reserve Banks. *See* Press Release, Fed. Rsrv. Bank of St. Louis, No. 96-33, *New Account Structure Will Support Interstate Branching* (May 2, 1996), https://bit.ly/3CqyuFh.

[6] Custodia asserts that a "textual clue" supporting its position is that § 342 puts the United States on par with private banks, yielding the absurd result that Reserve Banks could deny an account to the U.S. Government. Opp. 17. This is a red herring, as Section 15 of the FRA authorizes the Secretary of the Treasury to deposit funds in the Reserve Banks and requires the Reserve Banks to act as fiscal agents of the United States. 12 U.S.C. § 391. Congress would not have needed to include § 391 if Reserve Banks did not otherwise have discretion to accept or reject master account requests.

**B.      Section 248a does not eliminate Reserve Bank discretion.**

At the end of its brief, Custodia buries an argument that Reserve Banks have no discretion at all, contending that Custodia is "statutorily entitled to a master account" because 12 U.S.C. § 248a provides that services "shall" be available to nonmember depository institutions. Opp. 43-44. Custodia advances a contorted argument that a statutory provision entitled "Pricing of services" and embedded in a section of the FRA focused on powers of the Board (Section 11) somehow eliminates the discretion to accept deposits that Congress granted to Reserve Banks in a section of the FRA dedicated to powers of Reserve Banks (Section 13).

A straightforward reading of § 248a reveals that it is focused on precisely what its title says: pricing. It simply provides that a fee schedule prescribed by the Board for Reserve Bank services "shall be based on the following principles:… Federal Reserve bank services covered by the fee schedule shall be available to nonmember depository institutions and shall be priced at the same fee schedule applicable to member banks." The provision does *not* say that Reserve Banks *must* grant master accounts to any and all depository institutions irrespective of the risk presented. It would make no practical sense to eliminate Reserve Banks' discretion to deny accounts to entities that present undue risk, and that is plainly not what Congress did. When it enacted § 248a, Congress did not alter § 342's permissive language.

While amici refer to legislative history, U.S. Members' Br. 7-11, the legislative history does not reflect an intent to deprive Reserve Banks of discretion to deny master accounts to entities presenting undue risk to the Bank, the payment system, or the implementation of monetary policy. None of the cited materials shows anyone in Congress grappling with the implications of shifting to a system in which any depository institution chartered by any state, under any standard, with or without FDIC insurance or federal supervision, would be automatically entitled to a master account—a radical loss of control over monetary policy and the financial system by the federal

government. Not only is it implausible that Congress took such an anomalous step without any member seeming to notice, but, as its name suggests, the Monetary Control Act was intended to *broaden* the Federal Reserve System's control over monetary policy. *See Depository Institutions Deregulation and Monetary Control Act of 1980*, FederalReserveHistory.org (Nov. 22, 2013), https://bit.ly/3US55uP; Mot. 22-24.

For over 100 years, the nation's banking system has been founded on dual state and federal regulation and supervision of banking. Wyoming's SPDI statute, however, allows SPDIs to dispense with the federal half of that equation. In our dual system, states are free to create novel state charters, but the Reserve Banks can decide whether to grant access to Federal Reserve financial services and the payment system based on a risk-based evaluation of the depository institution, including the features of its charter. It makes no sense to think that Congress's expansion of the class of institutions eligible for Federal Reserve services to include non-members was intended to eliminate any ability of the Reserve Banks to control their own balance sheets and address the risks presented by a particular financial institution with a non-traditional charter. Indeed, even Custodia's amici agree that master account requests are not automatic; instead, "the institution seeking access must be legally qualified as well as responsible, safe and sound, and compliant with all material federal and state laws and regulations." Rothfuss Br. 7.

Because Custodia is not entitled to a master account, it has no protected property interest at stake and its due process claims in Counts III and V should be dismissed. *Salgado-Toribio v. Holder*, 713 F.3d 1267, 1271 (10th Cir. 2013).

III.   **Count I: Custodia's APA Claim Fails Because FRBKC Is Not an Agency nor Has Custodia Suffered an Unreasonable Delay.**

A.   **FRBKC is not a federal banking agency under 12 U.S.C. § 4807.**

Custodia's argument that FRBKC is a "Federal banking agency" (Opp. 24-25) under 12 U.S.C. § 4807 is contrary to the plain language of that statute, which defines "Federal banking agenc[ies]" to include only the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, and the FDIC. 12 U.S.C. §§ 1813(z) & 4801(1). That's it—just those three. The fact that Congress did not include Reserve Banks in the statute's list of "Federal banking agenc[ies]" ends the inquiry.

Custodia contends that when Congress refers to "heads of agencies," it "presumptively" includes subordinates and subsidiaries. Opp. 24. But Reserve Banks are not "subsidiaries" of the Board. Each Reserve Bank is its own juridical entity, with its own capacity "[t]o make contracts" and "[t]o sue and be sued." 12 U.S.C. § 341. Indeed, Congress not only made the Board and the Reserve Banks distinct entities, it prescribed different powers to each. *Compare* FRA Section 11, entitled "Powers of Board of Governors of the Federal Reserve System," *with* FRA Section 13, entitled "Powers of Federal Reserve Banks." When Congress defined a "Federal banking agency" in 12 U.S.C. § 1813(z) to include the Board—but not Reserve Banks—it knew what it was doing. Conversely, when Congress does intend to refer to the Board and the Reserve Banks together, it does so expressly. *See* 12 U.S.C. § 1818(t)(5)(A) ("A regional office of an appropriate Federal banking agency (including a Federal Reserve bank) …."); *cf.* 12 U.S.C. § 221 ("The term 'board' shall be held to mean Board of Governors of the Federal Reserve System … the term 'reserve bank' shall be held to mean Federal reserve bank").

Custodia cites two cases that are easily distinguished. Opp. 25. The first, *Mann v. Fifth Third Bank*, No. 1:09-CV-014, 2011 WL 1575537, at *1 (S.D. Ohio Apr. 25, 2011), did not interpret

the meaning of "Federal banking agency" under § 1813(z). Further, *Mann* concerned the exercise of a power—the power to conduct examinations—that Congress entrusted to the Board and the Board, in turn, delegated to Reserve Banks. *See* 12 U.S.C. § 248(a), (k). Here, in contrast, the decision whether to accept deposits from a given institution was entrusted by Congress directly to Reserve Banks; it is not a function delegated by the Board. 12 U.S.C. § 342. The second case, *Taft v. Agric. Bank of China Ltd.*, No. 15 CIV. 5321 (PAE), 2016 WL 2766661, at *12 (S.D.N.Y. May 12, 2016), concerned a statute that, unlike § 4807, left the term "banking agency" undefined.

**B.      FRBKC is not an agency under the APA.**

Custodia's contention that FRBKC is an "agency" under the APA is based on a false premise that FRBKC exercises "many binding regulatory powers." Opp. 26. Custodia's contention misapprehends the distinction between the two types of acts undertaken by Reserve Banks. The first is the exercise of FRBKC's own powers, granted by Congress and commercial in nature (such as granting or denying master accounts), where the Board has general supervisory authority but cannot directly make decisions statutorily vested in Reserve Banks. The second are the activities FRBKC performs pursuant to the Board's delegation of its own statutory powers to Reserve Banks pursuant to 12 U.S.C. § 248(k), where the Board can directly control FRBKC's actions and outcomes on the delegated function. Critically, with respect to the latter, § 248(k) expressly *prohibits* the Board from delegating functions "relating to rulemaking or pertaining principally to monetary and credit policies." To qualify as an APA "agency," an entity must "exercise substantial independent authority" and "'take final and binding action'" in exercising this authority. *Dong v. Smithsonian Inst.*, 125 F.3d 877, 881-82 (D.C. Cir. 1997) (quotation omitted). Reserve Banks do not do so when acting on the many matters that the Board delegates to them under § 248(k) because, by the nature of authority being delegated, it is not independent. On those matters, Reserve Bank action is not independent, final, or binding in this sense.

What remains are the first type of acts, the limited Reserve Bank powers that are not delegated to them by the Board but were rather granted to them by Congress, such as FRBKC's discretion to accept deposits in a master account, from entities located within its jurisdiction. 12 U.S.C. § 342. This type of decision is insufficient to make FRBKC an APA "agency." The question at hand is whether Custodia can open an account and place deposits directly with FRBKC, or whether it must instead open an account with a different bank. This is a quintessentially commercial and highly localized decision—whether to permit a person or entity to bank with you—and the prospect that Custodia would need to pay the alternative bank a layer of fees, *see* Compl. ¶ 8, does not transform FRBKC's commercial decision into an act of the sovereign. *Cf. Dong*, 125 F.3d at 881-82 (holding that hiring security and giving grants does not make Smithsonian an "agency" because private museums do the same).

The two cases cited by Custodia for the proposition that Reserve Banks are APA "agencies" do not withstand scrutiny. *Flight Int'l Grp., Inc. v. Fed. Rsrv. Bank of Chi.*, 583 F. Supp. 674 (N.D. Ga. 1984), was "vacated" and deemed to "have no precedential effect" by the judge who had issued the opinion. 597 F. Supp. 462 (N.D. Ga. 1984). And *Lee Construction Co. v. Federal Reserve Bank of Richmond*, 558 F. Supp. 165 (D. Md. 1982), does not square with the weight of cases holding that Reserve Banks are *not* agencies across a variety of contexts, including under the Federal Tort Claims Act, which defines agency more broadly than the APA. *See, e.g., Lewis v. United States*, 680 F.2d 1239 (9th Cir. 1982) (holding that Reserve Banks are not agencies under the FTCA); Mot. 15-16 & n.4.[7] As the Second Circuit recently explained, "Congress has gone out of its way

---

[7] Custodia's reliance on *Grumman Aircraft Engineering Corp. v. Renegotiation Board*, 482 F.2d 710, 714-15 (D.C. Cir. 1973), *rev'd on other grounds*, 421 U.S. 168 (1975), is misplaced because the Supreme Court expressly avoided the question of whether "Regional Boards" qualified as APA "agencies." *See* 421 U.S. at 188.

to formally separate the [Reserve Banks] from the government. The [Reserve Banks] are not part of any executive department or agency." *United States ex rel. Kraus v. Wells Fargo & Co.*, 943 F.3d 588, 597 (2d Cir. 2019). Rather, "Congress intended the [Reserve Banks] to serve the interests of, but stand apart from, the sovereign," and Congress has "carefully retained the formal separation of the [Reserve Banks] from the executive branch" for years. *Id.* at 597-58 (cleaned up). It cannot be that Reserve Banks stand apart from the sovereign yet qualify as "agencies" under the APA.

### C.    Custodia has not suffered an unreasonable delay.

Even if the Court were to conclude (or assume without deciding) that FRBKC is an agency under the APA, Custodia's unreasonable delay claim is without merit and may be dismissed now. *See Ghadami v. DHS*, No. CV 19-00397 (ABJ), 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020) (holding that plaintiffs failed to state unreasonable delay claim). In its motion, FRBKC identified a series of questions presented by Custodia's request for a master account. Mot. 18-19. These questions may be considered by the Court because they are founded in Custodia's own allegations, Custodia's own public statements, and other publicly available information. Custodia alleges, for example, that it is "specializing in payment services and digital asset custody." Compl. ¶ 2. And it has issued a press release describing itself as a "first-of-its-kind digital asset bank" that is seeking to provide "ACH and Fedwire services" and to launch a "payment instrument" called the "Avit."[8] Because ACH services inherently involve a potential extension of credit to the counterparty, the Court can see that FRBKC must assess the risk presented to it and customers in the event of a bank failure. *See supra* at 4-5. Because Custodia has publicly announced it is going to launch the "Avit," the Court can see that FRBKC must understand the risk presented by this "instrument." Because Custodia's customers will be transacting in digital assets and "Custodia will also facilitate

---

[8] Press Release, Custodia, *Avanti Is Now Custodia, supra* note 2.

exchanges of digital assets for dollars," Opp. 6, the Court can see that FRBKC must assess the adequacy of Custodia's BSA/AML compliance regime. Indeed, Custodia has acknowledged that its business poses "unique risks and regulatory challenges ... some of which have not yet manifested." Avanti Fin. Grp., Inc., Comment Letter on Proposed Guidelines for Evaluating Accounts 2 (July 12, 2021), https://bit.ly/3CszjgW.

Tellingly, in its Opposition, Custodia declines to engage on any of these questions, dismissing them as "fact-laden." Opp. 30. To be sure, fully addressing these questions as part of reviewing Custodia's request—as FRBKC has been doing for months now—is fact-laden. But the question on a motion to dismiss is whether Custodia has stated a plausible claim that FRBKC's delay has been *unreasonable*, and given the complexities of the issues presented and the moving target presented by Custodia's evolving factual circumstances, the answer is no.

The *TRAC* factors support the conclusion that FRBKC has not unreasonably delayed.[9] *See Telecommc'ns Rsch. & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984). The first two factors, which focus on timing, favor FRBKC. FRBKC has provided a "rule of reason" both to Custodia and to the public—it is evaluating the credit and stability risks Custodia may pose both to FRBKC itself and to the Federal Reserve System as a whole. Congress has promulgated no timetable for FRBKC's decision whether to "receive … deposits" from an institution. *See* 12 U.S.C. § 342.

The third factor also favors FRBKC because this matter falls squarely within the sphere of economic regulation where courts are more tolerant of delays. *TRAC*, 750 F.2d at 80. The fourth factor favors FRBKC because forcing a faster decision could result in harm to FRBKC's duty to

---

[9] While Custodia asserts that FRBKC "never mention[s]" the *TRAC* factors, Opp. 30, FRBKC cited *TRAC* and addressed the factors by describing, *inter alia*, why there is a reasonable explanation for the time it has taken to consider Custodia's request. Mot. 17-20.

safeguard its own balance sheet and protect the payment system by requiring it to render judgment in a shifting landscape (the Board just released its Guidelines) before FRBKC has adequately assessed the associated risks. The Court should decline Custodia's demand that it require FRBKC to short-circuit its analysis. *See In re Barr Labs., Inc*., 930 F.2d 72, 75 (D.C. Cir. 1991) (analyzing the fourth *TRAC* factor and noting that officials had not just been "twiddl[ing] their thumbs" (quoting *Bd. of Trade v. SEC*, 883 F.2d 525, ___ (7th Cir. 1989))). The fifth factor does not favor Custodia; its "interests prejudiced" would be only the cost of using a bank to intermediate. *TRAC*, 750 F.2d at 80. And the sixth factor is inapplicable in that Custodia has not alleged that FRBKC has acted with impropriety or bad faith.

As demonstrated by Custodia's application to the Board for membership in the Federal Reserve, announcement of an intention to apply for FDIC insurance, and post-complaint procurement of a Certificate of Authority permitting it to commence operations, fundamental aspects of Custodia's request have been in flux. Nonetheless, even on the current record, Custodia has not stated a plausible claim for unreasonable delay. *Vaz v. Neal*, 33 F.4th 1131, 1138 (9th Cir. 2022) (using *TRAC* factors to conclude that Executive Office for Immigration Review's four-year delay in completing investigation was not unreasonable); *Indep. Min. Co. v. Babbitt*, 105 F.3d 502, 510 (9th Cir. 1997) (Secretary of the Interior's three-and-a-half-year delay in acting on mineral patent applications was not unreasonable under the *TRAC* factors); *In re Am. Fed'n of Gov't Emps.*, 790 F.2d 116, 119 (D.C. Cir. 1986) (Federal Labor Relations Authority's 49-month delay in processing negotiability and unfair labor practice appeals was not unreasonable under the *TRAC* factors).

IV.     **Counts III, V, and VI: FRBKC's Exercise of Discretion Over Master Accounts Is Consistent with the Constitution.**

Custodia's assertion that Reserve Bank discretion over master account requests violates the Constitution is wrong.

A.      **Reserve Bank discretion to grant master accounts does not violate nondelegation principles (Count III).**

Custodia asserts that the nondelegation doctrine prohibits Congress from granting "boundless, standardless discretion over regulatory decisions" to FRBKC. Opp. 34. This is just a strawman. "[S]tatutory delegation is constitutional as long as Congress 'lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform.'" *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (brackets omitted) (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)). Courts recognize that the "intelligible-principle" test presents "an exceedingly modest limitation." *United States v. Melgar-Diaz*, 2 F.4th 1263, 1266 (9th Cir. 2021) (quoting *Gundy*, 139 S. Ct. at 2123).

An "intelligible principle" need not be more specific than a broad policy goal. The Supreme Court has upheld the delegation of authority to regulate "in the public interest," *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 216-17 (1943), to set "fair and equitable" prices, *Yakus v. United States*, 321 U.S. 414, 422, 427 (1944), and to issue air-quality standards that are "requisite to protect the public health," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 465 (2001) (quotation marks omitted).

Custodia's assertion that § 342 imposes "no constraints whatsoever" on FRBKC's consideration of master account requests—that FRBKC is free to "flip[] a coin"—is bluster. Opp. 35. In fact, Congress supplied the requisite intelligible principle: The very first section of the FRA, for example, sets forth the policy goals for the Federal Reserve System, which alone provide "intelligible principle[s]" to guide FRBKC action. As the Board explained, BOG Mot. 38, the FRA

20

states that Congress passed the FRA "to furnish an elastic currency … [and] establish a more effective supervision of banking in the United States." *Id.* (quoting FRA, ch. 6, 38 Stat. at 251). Congress later instructed the Federal Reserve System, which includes the Reserve Banks, to pursue a monetary policy of "accommodating commerce and business and with regard to their bearing upon the general credit situation of the country," 12 U.S.C. § 263(c), and to ensure the financial stability of the economy. *E.g.*, 12 U.S.C. § 5322(a)(1). All the Reserve Banks' work, including FRBKC's evaluation of Custodia's request, must be done in furtherance of the goals stated in the FRA. That is sufficient.

Custodia leans heavily on *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), but that case challenged Congress's grant of authority to the SEC to determine on its own which enforcement actions to bring in federal court and which to bring before its own administrative law judges. The court wrote that "[t]he Supreme Court has noted that the power to assign disputes to agency adjudication is 'peculiarly within the authority of the legislative department,'" and it further concluded that Congress gave the SEC "*no guidance*" on the issue. *Id*. at 461-62 (quotation omitted). Here, in contrast, granting a master account is not "peculiarly" legislative, and Congress provided an "intelligible principle" to guide Reserve Banks' decision-making.

### B.    Custodia is not being regulated by its competitors (Count V).

Even setting aside Custodia's failure to show that it has a property interest in a master account, Custodia acknowledges that the constitutional problem it asserts in Count V would arise only "to the extent Reserve Bank directors—who are private parties—participate in" decisions on master account requests. Opp. 42. But FRBKC has already explained that its directors are neither Custodia's competitors nor involved in master account decisions. A supermajority of each Reserve Bank's board of directors—six of nine—are elected to "represent the public." 12 U.S.C. § 302. If a director fails to live up to that mandate, he or she can be removed by the Board of Governors. 12

U.S.C. § 248(f). None of those six directors may be an "officer, director, or employee of any bank," and three of them are further prohibited from owning stock in a bank or affiliate. 12 U.S.C. § 303.

Custodia itself recognized that the decision on its master account will be made by FRBKC's president, not its board of directors. *See* Compl. ¶ 41 (stating that Custodia "sent a letter to Esther George, the President and Chief Executive Officer of the Kansas City Fed," and that it "urged Ms. George to consider Custodia's application"). Because Reserve Banks' presidents are, by statute, selected only by the non-banking directors chosen to represent the public with the approval of the Board of Governors, the presidents do not represent the interests of any depository institution's competitors. 12 U.S.C. § 341 (Fifth). Custodia's professed concern has no application to its master account request.

### C.  The Appointments Clause is not implicated in this case (Count VI).

A fatal flaw in Custodia's Appointments Clause challenge is that a decision on a master account does not implicate the sovereign executive power. Congress may not vest authority to exercise substantial executive power in an individual whom the President cannot remove. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492-93 (2010). By that same token, if the power delegated is not executive power, its wielder is not subject to Appointments Clause concerns. *See id.*

Deciding whether to open a bank account for an entity is not an executive power; it is the type of commercial decision that private banks make every day. When FRBKC takes an action on a master account request, it is exercising business judgment and evaluating the risks posed to its own balance sheet. That it also considers risks posed to the financial system does not convert the decision into an exercise of the executive power of the United States. A commercial decision can have consequences beyond the direct effects of the decision itself, but the existence of such consequences does not change the commercial character of the decision.

Even if deciding whether to open a master account constituted an exercise of executive power, the current structure meets constitutional standards. The decision is made by FRBKC's president, who is an "inferior officer" under the Constitution appointed with the approval of—and subject to at-will removal by—the Board. 12 U.S.C. § 248(f); *see Appointment & Removal of Fed. Rsrv. Bank Members of Fed. Open Mkt. Comm.*, 43 Op. O.L.C. __, slip op. at 2 (Oct. 23, 2019) (explaining that § 248(f) permits the Board to remove Reserve Bank officers at will). Because of the removal power that Congress gave the Board (in addition to the Board's general oversight of the Reserve Banks), Custodia's suggestion that FRBKC's position means that a Reserve Bank could use the master account decision-making process to "hold ... federal objectives hostage" is entirely implausible. Opp. 38.

Citing *United States v. Arthrex, Inc.*, 141 S. Ct. 1970 (2021), Custodia contends that anyone who exercises *final* decision-making authority with respect to a sovereign power must be a "principal officer" and not merely an "inferior" one. Opp. 37, 40. That constitutional issue is not present here. In *Arthrex*, administrative patent judges serving on the Patent Trial and Appeal Board ("PTAB") were appointed as inferior officers but made final determinations on patent validity that were unreviewable within the Executive Branch and conclusive on the parties. *Arthrex*, 141 S. Ct. at 1976. The Court held that this violated the Appointments Clause because no constitutionally appointed principal officer could review the APJs' decisions or affect their outcome in a transparent way. *Id.* at 1985. Here, in contrast, a Reserve Bank's decision on a master account request is inherently without prejudice. Unlike a PTAB determination of a patent's validity, a Reserve Bank's decision to accept deposits can be revoked, and a request that has been denied can be renewed. This lack of finality, coupled with the Board's ability to affect the outcome in transparent ways through issuance of guidelines pursuant to its general oversight authority and its authority to

remove Reserve Bank presidents, provides accountability that complies with the Appointments Clause. *See Appointment & Removal*, slip op. at 2.

## V.      Counts II and VII: Custodia's Mandamus Act Claims Fail.

Counts II and VII just rehash Custodia's other counts, but with the higher mandamus standard requiring "a *clear* right to the relief sought" and "a *plainly defined and peremptory duty*" owed by FRBKC. Opp. 32 (emphasis added) (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990)). These claims thus fail, *a fortiori*, for the reasons Custodia's other claims fail. In addition, Custodia concedes that Count VII would only apply "[i]f Defendants did deny Custodia's application." Opp. 43. Because that has not happened, Count VII should also be dismissed as unripe.

## VI.     Counts IV and VIII: Custodia's Declaratory Judgment Act Claims Fail Because the Act Provides No Independent Right of Action.

Because Custodia's other claims fail, its Declaratory Judgment Act claims must be dismissed as well. Custodia does not dispute that the Declaratory Judgment Act does not provide an independent cause of action. *See Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012); *Utah Hous. Corp. v. Country Pines, Ltd.*, 541 F. Supp. 3d 1288, 1295 n.1 (D. Utah 2021) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). Like Count VII, Count VIII must be dismissed for the additional reason that it is unripe.

\* \* \*

Although the decision on Custodia's account request is FRBKC's to make, that decision must be made with due consideration for the novelty and risks that Custodia's request poses. Should those risks come to pass, the ramifications could be significant for FRBKC, the payment system, and the public. FRBKC is diligently working to resolve Custodia's request, and the Court should afford FRBKC the time needed to complete that important work.

## CONCLUSION

For the foregoing reasons and those in FRBKC's motion to dismiss, the Complaint should be dismissed.

Respectfully submitted,

Dated 4 October 2022

  /s/ Billie LM Addleman
Billie LM Addleman, #6-3690
John P. Fritz, #7-6318
HIRST APPLEGATE, LLP
Attorneys for Defendant FRBKC
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
jfritz@hirstapplegate.com

Andrew Michaelson (*pro hac vice*)
Laura Harris (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com
lharris@kslaw.com

Jeffrey S. Bucholtz (*pro hac vice*)
Joshua N. Mitchell (*pro hac vice*)
Christine M. Carletta (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500
jbucholtz@kslaw.com
jmitchell@kslaw.com
ccarletta@kslaw.com

*Counsel for Defendant the*
*Federal Reserve Bank of Kansas City*

## CERTIFICATE OF SERVICE

I certify the foregoing *Defendant Federal Reserve Bank of Kansas City's Reply in Support of Its Motion to Dismiss* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 4 October 2022, and that copies were served as follows:

John K. Villa
Ryan Thomas Scarborough
Whitney D Hermandorfer
Jamie Wolfe
WILLIAMS & CONNOLLY
680 Maine Avenue SW
Washington, DC 20024
*Attorneys for Plaintiff*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☒ E-FILE

Scott E Ortiz
WILLIAMS PORTER DAY & NEVILLE
159 North Wolcott, Suite 400
P O Box 10700
Casper, WY 82602
*Attorneys for Plaintiff*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☒ E-FILE

Angela Tarasi
KING & SPALDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202
*Attorneys for Defendant Federal Reserve Bank of Kansas City*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☒ E-FILE

Joshua P. Chadwick, Senior Special Counsel
Yvonne F. Mizusawa, Senior Counsel
Yonatan Gelblum, Senior Counsel
Katherine Pomeroy, Senior Counsel
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
*Attorneys for Defendant Federal Reserve Board of Governors*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☒ E-FILE

Bridget Hill
Karl D. Anderson
Devin Kenney
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, WY 82002
*Attorneys for State of Wyoming*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Lisa Marie Jerde Spillman
Jerde Spillman Law LLC
7527 Jessica Drive
Cheyenne, WY 82009
*Attorneys for Amici Curiae*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

David M. Gossett
Davis Wright Tremaine LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
*Attorneys for Amici Curiae*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Stephen T. Gannon
Lisa Weingarten Richards
Davis Wright Tremaine LLP
4870 Sadler Road, Suite 301
Glen Allen, VA 23060
*Attorneys for Amici Curiae*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Chris Land
Office of Senator Cynthia M. Lummis
United States Senate
124 Russell Senate Office Building
Washington, DC 20510
*Attorneys for Amici Curiae*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

 /s/ Shannon M. Ward
OF HIRST APPLEGATE, LLP