Billie L.M. Addleman, #6-3690
John P. Fritz, #7-6318
HIRST APPLEGATE, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
jfritz@hirstapplegate.com

Andrew Michaelson
Laura Harris
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com
lharris@kslaw.com

Jeffrey S. Bucholtz
Joshua N. Mitchell
Christine M. Carletta
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500

*Counsel for Defendant the Federal Reserve Bank of Kansas City*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CUSTODIA BANK, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> FEDERAL RESERVE BOARD OF GOVERNORS and FEDERAL RESERVE BANK OF KANSAS CITY, <br><br> *Defendants.* | No. 1:22-cv-00125-SWS |

## DEFENDANT FEDERAL RESERVE BANK OF KANSAS CITY'S
## MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 3

I.     Custodia's Master Account Request Has Been Denied. ......................................... 3

II.    Congress Recently Amended the Federal Reserve Act to Require the Board of
       Governors to Publish a Database of Reserve Bank Master Accounts. ................... 4

III.   Custodia's Amended Complaint Asserts an APA Claim Solely Against the Board
       of Governors. ......................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.     Count II Should Be Dismissed as to FRBKC. ....................................................... 6

       a.   Count II Fails Because 12 U.S.C. § 248a Does Not Entitle Custodia to a
            Master Account. ............................................................................................ 8

       b.   Count II Should Be Dismissed Against FRBKC in Any Event. .................. 11

II.    Count III Fails Because the Declaratory Judgment Act Does Not Provide an
       Independent Cause of Action. ............................................................................... 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937)................................................................................................ 14

*Bartlett Mem'l Med. Ctr., Inc. v. Thompson*,
   347 F.3d 828 (10th Cir. 2003) ................................................................................ 7

*Citizens for Smart Growth v. Sec'y of Dep't of Transp.*,
   669 F.3d 1203 (11th Cir. 2012) .............................................................................. 13

*Citizens' Comm. to Save Our Canyons v. Krueger*,
   513 F.3d 1169 (10th Cir. 2008) .............................................................................. 11

*DeHerrera v. Kozak*,
   No. 19-CV-111-SWS, 2019 WL 13259867 (D. Wyo. Oct. 3, 2019) ....................... 3

*Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*,
   693 F.3d 1195 (10th Cir. 2012) .............................................................................. 14

*Ecology Ctr. v. U.S. Forest Serv.*,
   451 F.3d 1183 (10th Cir. 2006) .............................................................................. 11

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000).................................................................................................. 10

*Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*,
   861 F.3d 1052 (10th Cir. 2017) .......................................................................... 10, 11

*Gregg v. Georgia*,
   428 U.S. 153 (1976).................................................................................................. 11

*Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*,
   58 F. Supp. 3d 1191 (D.N.M. 2014) ....................................................................... 14

*Johnson v. Rogers*,
   917 F.2d 1283 (10th Cir. 1990) ................................................................................ 7

*Ketcham v. U.S. Nat'l Park Serv.*,
   No. 16-cv-17, 2016 WL 4268346 (D. Wyo. Mar. 29, 2016).................................... 14

*Marks v. United States*,
   430 U.S. 188 (1977).................................................................................................. 11

*Mt. Emmons Min. Co. v. Babbitt*,
   117 F.3d 1167 (10th Cir. 1997) .............................................................................. 12

*Nero v. Oklahoma*,
  No. 22-6121, 2022 WL 14423872 (10th Cir. Oct. 25, 2022) ............................................ 14, 15

*Olenhouse v. Commodity Credit Corp.*,
  42 F.3d 1560 (10th Cir. 1994) ................................................................................................ 11

*Rios v. Ziglar*,
  398 F.3d 1201 (10th Cir. 2005) ................................................................................................ 7

*Sierra Club v. Hodel*,
  848 F.2d 1068 (10th Cir. 1988) .............................................................................................. 14

*Skelly Oil Co. v. Phillips Petroleum Co.*,
  339 U.S. 667 (1950) ................................................................................................................ 14

*Utah Hous. Corp. v. Country Pines, Ltd.*,
  541 F. Supp. 3d 1288 (D. Utah 2021) .................................................................................... 14

*Vill. of Los Ranchos De Albuquerque v. Marsh*,
  956 F.2d 970 (10th Cir. 1992) ................................................................................................ 14

*W. Shoshone Bus. Council
  ex rel. W. Shoshone Tribe of Duck Valley Rsrv. v. Babbitt*,
  1 F.3d 1052 (10th Cir. 1993) .................................................................................................... 7

**Statutes & Rules**

5 U.S.C. § 706 ............................................................................................................................ 7

12 U.S.C. § 248c .............................................................................................................. 4, 5, 9

12 U.S.C. § 342 .................................................................................................... 6, 9, 10, 13

28 U.S.C. § 1361 ...................................................................................................................... 1, 6

28 U.S.C. § 2201 ...................................................................................................................... 14

Fed. R. Civ. P. 65 .................................................................................................................... 13

**Other Authorities**

Fed. Res. Sys.,
  FRB Order No. 2023-02 (Jan. 27, 2023),
  *available at* https://www.federalreserve.gov/
  newsevents/pressreleases/orders20230324a.htm ...................................................................... 4

Press Release, White House,
  Statement by the President on H.R. 7776, the James M. Inhofe National Defense
  Authorization Act for Fiscal Year 2023 (Dec. 23, 2022), https://bit.ly/3Jm7DN5 .................. 4

**INTRODUCTION**

Much has changed since this Court considered the motions to dismiss Custodia's original complaint. The Board of Governors of the Federal Reserve System ("Board of Governors" or the "Board") denied Custodia's membership application, the Federal Reserve Bank of Kansas City ("FRBKC") denied Custodia's master account request, and Congress amended the Federal Reserve Act. The denial of the account request mooted all of Custodia's claims that had survived the Court's order on the motions to dismiss, and Custodia filed its Amended Complaint.

While Custodia's original complaint asserted a multiplicity of legal theories, the Amended Complaint asserts only one. According to Custodia, 12 U.S.C. § 248a (Section 11A of the Federal Reserve Act, entitled "Pricing of Services") requires the Board of Governors to provide Custodia a master account because all entities holding a state banking charter are automatically entitled to a master account, regardless of the viability of an entity's business plan; the risks it presents to customers, counterparties, and the Federal Reserve System; the adequacy of its compliance programs to combat money-laundering and the financing of terrorism; or any other facts or circumstances. And while the original complaint hedged on whether the Board of Governors or FRBKC was responsible for deciding Custodia's master account request, the Amended Complaint asserts one central factual allegation: the Board of Governors made the decision to deny Custodia's account request. In keeping with its sole legal theory and factual allegations, the Amended Complaint's only substantive claim—Count I, contending that the denial of Custodia's account request was contrary to § 248a—is asserted under the Administrative Procedure Act and only against the Board of Governors.

In addition to Count I against the Board of Governors, the Amended Complaint pleads two other counts against both the Board and FRBKC, but those claims are both derivative of Count I.

Count II seeks relief under 28 U.S.C. § 1361, the mandamus statute. Custodia's only theory

for why it is entitled to mandamus, however, is that it "has a clear and certain claim to have its master account application granted" pursuant to § 248a. Am. Compl. ¶ 90. That is the same legal theory asserted in Count I. And as Custodia recognizes, § 248a is directed to the Board of Governors, not the Reserve Banks. *See, e.g.*, Am. Compl. ¶¶ 8, 73, 76. As the Board explains in its motion to dismiss, Custodia's interpretation of § 248a is incorrect as a matter of law. But even if it were correct, any relief that Custodia would obtain under § 248a would likewise be directed to the Board of Governors.

Count III seeks relief under the Declaratory Judgment Act. But this Court has already recognized that the Declaratory Judgment Act merely provides a remedy; it does not provide a cause of action. Count III thus adds nothing to Count I. If Custodia were to prevail on Count I, one potential form of relief could be a declaratory judgment. But as with Count II, any relief on Custodia's theory that § 248a requires the Board of Governors to grant it an account would be directed to the Board.

As explained in the Board of Governors' motion to dismiss, Custodia's legal theory is wrong. Section 248a does not require the Board of Governors to grant a master account to anyone—it does not even govern master account requests. But even apart from that, § 248a does not automatically entitle any and every entity holding any state charter to obtain a master account regardless of significant concerns raised by allowing the entity direct access to the Federal Reserve's payment system. And while Custodia alleges that it is being subjected to disparate treatment and that established banks are being permitted to offer the services it wants to offer, Am. Compl. ¶ 60, that is both legally irrelevant and untrue. FRBKC provided Custodia a letter outlining well-founded reasons for the denial of its master account request. Custodia, tellingly, has chosen not to challenge those reasons in the Amended Complaint. Instead, Custodia's position is that the

reasons for the denial are irrelevant because § 248a absolutely required the Board to grant its request even if there were good reasons to deny it. The Amended Complaint squarely presents that legal theory, and the Court should reject it and dismiss this action with prejudice for the reasons set forth more fully by the Board of Governors in its motion to dismiss.

In all events, however, the Court should dismiss FRBKC from this action. If Custodia prevails on its sole legal theory, it will obtain relief against the Board of Governors and its claims against FRBKC will be superfluous. If Custodia fails on Count I, Counts II and III will fail with it. Either way, the Amended Complaint does not state a claim upon which relief may be granted against FRBKC.

## BACKGROUND

### I.    Custodia's Master Account Request Has Been Denied.

When Custodia filed its first complaint with this Court, its only request for relief was for the Board of Governors or FRBKC to make a decision on Custodia's master account request. *See, e.g.*, ECF No. 1 ¶ 2. Custodia has now received that relief: on January 27, 2023, FRBKC sent Custodia a letter denying its account request and setting forth the basis of its decision. *See* Am. Compl. ¶ 6. FRBKC is filing a copy of that decision under seal. *See* Declaration of Billie L.M. Addleman, March 28, 2023, ¶ 4, Ex. A [hereinafter "Denial Ltr."] at 2.[1]

When the Court ruled on the initial motions to dismiss, Custodia's application to the Board of Governors for membership in the Federal Reserve System was pending. On January 27, 2023,

---

[1] The denial letter is referred to in Custodia's complaint and is central to its claims: it is the decision Custodia is asking the Court to set aside. The Court therefore may consider the denial letter. *See, e.g.*, *DeHerrera v. Kozak*, No. 19-CV-111-SWS, 2019 WL 13259867, at *1 (D. Wyo. Oct. 3, 2019) (Skavdahl, J.) (relying on documents referred to in the complaint while considering a motion to dismiss and noting that "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss" (internal quotation marks omitted)).

the Board denied that application in an 86-page order that described the many concerns the Board

had with Custodia's application and proposed business model.[2]

## II.   Congress Recently Amended the Federal Reserve Act to Require the Board of Governors to Publish a Database of Reserve Bank Master Accounts.

Following this Court's order on the motions to dismiss Custodia's initial complaint,

Congress amended the Federal Reserve Act to add a new provision concerning master accounts.

On December 23, 2022, the President signed into law the National Defense Authorization Act

("NDAA").   Press Release, White House, Statement by the President on H.R. 7776, the James M.

Inhofe National Defense Authorization Act for Fiscal Year 2023 (Dec. 23, 2022),

https://bit.ly/3Jm7DN5. Section 5708 of Title LVII of the FY 2023 NDAA amends the Federal

Reserve Act by inserting § 11C, entitled "Master Account and Services Database." 12 U.S.C.

§ 248c.

Section 248c requires the Board of Governors to create and maintain a public, online,

searchable database of institutions that have access to a Reserve Bank master account and services,

as well as entities that have requested the same. *Id.* § 248c(b)(1). The database must be updated

quarterly and include the status of any request for access, including whether a request was rejected.

*Id.* § 248c(b)(1)(B)(ii).   Notably, this amendment to the Federal Reserve Act limits the Board of

---

[2] The Board released the final version of the Order on March 24, 2023. The Board summarized its conclusions: "In summary, the Board believes that approving Custodia's application as submitted would be inconsistent with the factors that the Board is required to consider. There are significant deficiencies in Custodia's risk management and controls framework in relation to Custodia's limited basic banking activities. Even if Custodia were able to successfully remediate all issues identified with respect to its ability to safely and soundly conduct its limited day-one activities, conducting only this limited set of activities would not enable it to constitute a viable bank in the medium or long term. Moreover, the future earnings prospects of the business model that Custodia has proposed—that is, an uninsured, undiversified, crypto-asset-focused business model featuring a number of novel and untested activities posing heightened risks—is inconsistent with approval." Fed. Res. Sys., FRB Order No. 2023-02, at 9–10 (Jan. 27, 2023), *available at* https://www.federal reserve.gov/newsevents/pressreleases/orders20230324a.htm (confidential information redacted).

Governors' role to publication of a database containing certain master account information from each Reserve Bank, and otherwise makes clear that Congress views a master account as something a Reserve Bank—not the Board of Governors—can provide.

Before this amendment, the Federal Reserve Act did not make specific reference to "master accounts." Now, § 248c refers to "access requests," which it defines as "a request to a Federal reserve bank for access to a reserve bank master account and services." *Id.* § 248c(a)(1). That same section defines "Reserve bank master account and services" as "an account in which a Federal reserve bank—(A) receives deposits for an entity other than an official accountholder; or (B) provides any service under section 248a(b) . . . to an entity other than an official accountholder." *Id.* § 248c(a)(3). ("Official accountholder" is defined to mean certain governmental entities. *Id*. § 248c(a)(2).)

III.   **Custodia's Amended Complaint Asserts an APA Claim Solely Against the Board of Governors.**

Custodia's Amended Complaint paints a very different picture from its initial complaint. In the Amended Complaint, Custodia's factual allegations and legal theory are directed at the Board of Governors. In Count I, Custodia asserts an APA claim against only the Board of Governors, not FRBKC. The substance of Count I is directed entirely at the Board, in terms of both Custodia's legal theory and its factual allegations. Custodia alleges that the Board of Governors (not FRBKC) made the decision to deny its master account request and contends that § 248a required the Board to grant it. *See, e.g.*, Am. Compl. ¶¶ 4, 8, 10, 62, 64, 73, 75.

Custodia alleges, for example, that "[t]he Board exercises ultimate control over the decision to grant or deny a master account, and exercised that power to assert control over the decision-making process for Custodia's application in particular." Am. Compl. ¶ 46. Under Custodia's theory of the case, FRBKC was merely "charged with communicating the decision"

made by the Board of Governors. Am. Compl. ¶ 72. According to Custodia, while the letter denying its account request was sent by FRBKC, the decision was made by the Board of Governors: "[t]he denial of Custodia's master account application was done at the direction of the Board." Am. Compl. ¶ 69.[3]

Given that Custodia alleges that the Board of Governors denied its request in violation of § 248a—a provision that on its face is addressed to the Board of Governors—it is not surprising that Custodia named the Board as the only defendant on its APA claim. And Count I is the only substantive claim asserted in the Amended Complaint; Counts II and III are derivative of Count I.

Count II seeks relief under 28 U.S.C. § 1361, the mandamus statute. While Count II names FRBKC as a defendant as well as the Board of Governors, it asserts the same legal theory as Count I, namely, that "Custodia has a clear and certain claim to have its master account application granted" pursuant to § 248a. Am. Compl. ¶ 90. Count III seeks relief under the Declaratory Judgment Act, which this Court has already held does not create an independent cause of action. *See* ECF No. 102 at 23 ("Custodia's claim for declaratory judgment is not properly understood as a stand-alone cause of action . . . .").

## ARGUMENT

## I.   Count II Should Be Dismissed as to FRBKC.

The mandamus statute, 28 U.S.C. § 1361, grants district courts the authority to issue a writ of mandamus compelling "an officer or employee of the United States" to "perform a duty owed to the plaintiff." By its nature, mandamus is a last resort, available only where a plaintiff has no

---

[3] While FRBKC decided Custodia's master account request pursuant to the discretion Congress afforded it in Section 13 of the Federal Reserve Act (12 U.S.C. § 342), FRBKC recognizes that Custodia's allegations are taken as true for the limited purpose of this motion.

other avenue for relief. *Bartlett Mem'l Med. Ctr., Inc. v. Thompson*, 347 F.3d 828, 835 (10th Cir. 2003) ("Mandamus relief is available to a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." (cleaned up)). In particular, where a remedy is available under the APA, mandamus is not appropriate. *W. Shoshone Bus. Council ex rel. W. Shoshone Tribe of Duck Valley Rsrv. v. Babbitt*, 1 F.3d 1052, 1059 (10th Cir. 1993) (mandamus was not available because review was possible under the APA). Moreover, the mandamus statute requires a plaintiff to surmount a higher bar than the APA. To prevail under the APA, Custodia would have to show that the Board of Governors' alleged action was "not in accordance with law." 5 U.S.C. § 706(2)(A). But to prevail under the mandamus statute, Custodia would have to show "a clear right to the relief sought" and "a plainly defined and peremptory duty" owed to it. *Johnson v. Rogers*, 917 F.2d 1283, 1285 (10th Cir. 1990); *see Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005).

Yet Custodia's mandamus claim asserts the same legal theory and factual allegations as its APA claim. Like Count I, Count II alleges that that the Board of Governors had a nondiscretionary duty under § 248a to direct the issuance of a master account to Custodia and that the Board violated that duty by denying Custodia's account request. *See* Am. Compl. ¶¶ 83, 90. As explained in section A below and at more length in the Board of Governors' motion to dismiss, Custodia's legal theory is wrong. The Court should hold that § 248a does not require the Board of Governors to grant Custodia a master account and should dismiss Count II for the same reasons it should dismiss Count I.

Because Count II is derivative of Count I, however, the Court should dismiss Count II as against FRBKC for the reasons set forth in section B below regardless of its disposition of Count I. If Custodia were to prevail on its APA claim in Count I, the availability of APA relief would mean

that mandamus relief was unavailable. Conversely, if Custodia's APA claim fails because the Court rejects Custodia's interpretation of § 248a, Custodia's mandamus claim would fail, *a fortiori*, because it is based on the same legal theory and subject to, if anything, a higher standard.

### a.    Count II Fails Because 12 U.S.C. § 248a Does Not Entitle Custodia to a Master Account.

Custodia's legal theory is that, as a holder of a state charter that makes it eligible to apply for deposit insurance, it is automatically and "unequivocally entitled" to a master account—full stop. Am. Compl. ¶ 2. If Custodia's anti-money-laundering and Bank Secrecy Act compliance procedures are inadequate and could lead to illegal activity, too bad. If its business model raises questions of long-term sustainability and providing a master account would endanger depositors (because it has not obtained deposit insurance), too bad. If giving it direct access to the nation's payments system would threaten the Federal Reserve's control over its own balance sheet, too bad. According to Custodia, none of that matters because Congress, in enacting § 248a, required the Board of Governors to give a master account to all entities that hold a state charter—regardless of the permissible activities or other terms of the charter, regardless of the lack of deposit insurance, regardless of the lack of federal supervision, regardless of the nature of the state supervision and resolution framework, and regardless of any other circumstances. Am. Compl. ¶ 12 ("While the facts of this case may appear complex, the core issue is simple: Defendants are statutorily required to grant Custodia's master account application."). That legal theory is utterly untenable.

Section 248a does not speak to whether the Board of Governors should grant a master account to anyone, let alone require the Board to grant an account to all comers notwithstanding concerns. Section 248a instructs the Board of Governors to "put into effect a schedule of fees," *id.* § 248a(a), for certain payment services and requires those services to be made available on a nondiscriminatory pricing basis to nonmember banks, so long as the nonmembers meet criteria

that the Board of Governors has set for members, including maintaining minimum "balances sufficient for clearing purposes," *see id*. § 248a(c). This provision mandates non-discriminatory *pricing* for Federal Reserve services to ensure that depository institutions are not charged different prices for the same product or service based on their membership status with the Federal Reserve, and no one disputes that the Board of Governors has published a schedule of fees for Federal Reserve services that does not differentiate in price between members and non-members. Nowhere in § 248a is there any reference to master accounts, much less a mandate that the Board open deposit accounts, accept funds and provide services to all depository institutions irrespective of risk, insurance or supervision.

Rather than being governed by § 248a, which is addressed to the Board of Governors, master accounts are governed by § 342, which addresses powers Congress granted to the Reserve Banks. Section 248a is contained in the subchapter titled "Board of Governors of the Federal Reserve System." *See id*. §§ 241–253. Section 342, in contrast, is contained in the subchapter titled "Powers and Duties of Federal Reserve Banks." *See id*. §§ 341–364. Congress's recent amendment of the Federal Reserve Act—just three months ago, after the Court's ruling on the initial motions to dismiss—makes clear that Congress views a master account as something a Reserve Bank—not the Board of Governors—can provide. In new § 248c, Congress defined a "*reserve bank* master account." *Id*. § 248c(a)(3) (emphasis added). Access to a "reserve bank master account" must logically be governed by the provisions of the Federal Reserve Act directed to Reserve Banks. That means § 342, which gives Reserve Banks discretion over whether to grant them. *Id*. § 342 ("*may* receive . . . deposits") (emphasis added).

It would be highly anomalous to conclude that Congress imposed a non-discretionary duty on the Board of Governors to give master accounts to any and all state-chartered depository

institutions, regardless of the Board of Governors' concerns about a given requestor. Custodia contends that respect for our "dual-banking system" requires holding that any entity chartered by any state has an absolute right to a master account, Am. Compl. ¶ 5, but that gets things backwards. Accepting deposits into a master account and providing Federal Reserve services affords the account holder direct access to the nation's payments system and to the Federal Reserve's own balance sheet. The federal half of our "dual" banking system would be meaningless if the Board of Governors, a federal agency, were required as an automatic, ministerial matter to give direct access to the Federal Reserve's balance sheet to any entity that obtained any charter that any state saw fit to issue under whatever standards and procedures the state might choose to prescribe or follow (even if the charter contains unique features that remove or weaken protections that exist for traditional bank customers).

For a court to draw such an anomalous and consequential conclusion, Congress would need to have spoken quite clearly. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000). In § 248a, Congress did not speak to "reserve bank master accounts" at all, let alone "unequivocally entitle[]" any and all eligible entities to a master account no matter what concerns an entity's request may raise. Am. Compl. ¶ 2.

These considerations help explain why Custodia's reliance on Judge Bacharach's separate opinion in *Fourth Corner* is misguided. *See Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*, 861 F.3d 1052, 1068 (10th Cir. 2017). Judge Bacharach erred by concluding that § 248a(c)(2)'s provisions directed to the Board of Governors regarding nondiscriminatory pricing of Federal Reserve services negated § 342's direct grant of discretion to Reserve Banks to decide whether to accept deposits. Judge Bacharach's opinion, which was issued before Congress's recent

amendments to the FRA, also fails to account for the monumental shift in regulation of the nation's financial system that his reading could create.[4]

The Court should reject Custodia's theory that § 248a absolutely entitles it to a master account. And because that is Custodia's *only* legal theory in Count I and Count II alike, the Court should dismiss both of those counts.[5]

### b.   Count II Should Be Dismissed Against FRBKC in Any Event.

If the Court allows Count I to proceed against the Board, FRBKC should still be dismissed from Count II because Count II does not state an independent claim for relief that could be viable against FRBKC.

Mandamus, by its nature, can be available only if no other relief is available. But if Custodia is correct about what § 248a means (which it is not), it has a remedy under the APA in Count I. Because Counts I and II are based on the same legal theory—the sole legal theory asserted

---

[4] Judge Bacharach's opinion is not binding on this Court. The Tenth Circuit's disposition in *Fourth Corner* was to direct the dismissal of the amended complaint without prejudice. 861 F.3d at 1053 (per curiam). Judge Bacharach would have allowed that complaint to proceed, but both Judge Moritz and Judge Matheson disagreed. *Id*. A separate opinion of a single judge advocating a disposition that the other judges rejected has no binding force. *Cf. Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment[ ] on the narrowest grounds.'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976))).

[5] Notably, Custodia chose not to allege that the denial of its master account request was arbitrary and capricious. Such a claim would have put at issue the reasons why Custodia's account request was denied—and thus would have shone a light on the multiple significant concerns raised by Custodia's request. *See Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008) (noting that review of agency action is "highly deferential" and "the reviewing court must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment" (quoting *Ecology Ctr. v. U.S. Forest Serv.*, 451 F.3d 1183, 1188 (10th Cir. 2006) and *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994)). Instead, Custodia's claim is that it doesn't matter what reasons underlay the denial of its account request because the law absolutely entitles it to a master account.

in the Amended Complaint—there is no scenario under which Custodia would be entitled to relief under Count II. If Custodia prevails on Count I, it will neither need nor be entitled to mandamus relief; Count II will be moot. *See Mt. Emmons Min. Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997) ("The availability of a remedy under the APA technically precludes Mt. Emmons' alternative request for a writ of mandamus."). And if Custodia does not prevail on Count I, the Court's ruling against it on Count I will equally doom Count II.[6]

To be sure, Count II names FRBKC as a defendant along with the Board of Governors, while Count I names only the Board. But that does not change the derivative nature of Count II, because it remains true that the two counts are based on the same legal theory and the same factual allegations. And those allegations are that *the Board of Governors* made the decision to deny Custodia's master account request, and that legal theory is that § 248a required *the Board of Governors* to grant that request. There are no independent allegations against FRBKC in Count II. Instead, Custodia's claim is that the Board of Governors, not FRBKC, made the decision and FRBKC merely was "charged with communicating the decision" the Board had made. Am. Compl. ¶ 72; *see also id*. (alleging that "in practice, the decision was not the Kansas City Fed's to make"). Without allegations that FRBKC did more than communicate the Board of Governors' decision on Custodia's master account request or a legal theory directed at FRBKC, Custodia's mandamus claim is nothing more than a duplicative claim against the Board of Governors that § 248a entitles Custodia to a master account.

The Amended Complaint stands in contrast to the initial Complaint, in which Custodia alleged in the alternative both that FRBKC was (or should have been) the decisionmaker on its

---

[6] Because the Board is undisputedly an APA agency, there is no threshold obstacle to Count I and a ruling against Custodia on Count I would mean the Court has rejected Custodia's interpretation of § 248a.

master account request *and* that the Board of Governors was (or should have been) the decisionmaker. *Compare, e.g.*, ECF No. 1 ¶ 38 (alleging that the Board of Governors was required to decide the master account request) *with, e.g., id*. ¶ 116 (alleging that FRBKC was required to decide it). Now, however, Custodia has chosen to allege that the Board of Governors was the decisionmaker and to advance only the legal theory that § 248a required the Board to make a different decision. As a result, while the Court viewed Custodia's mandamus claims in its initial complaint as "complementary" to its other, substantive claims against FRBKC, ECF No. 102 at 18, now there are no substantive claims against FRBKC.

In essence, Custodia has named FRBKC as nothing more than a relief defendant. Custodia's concern appears to be that the Board of Governors does not itself provide master accounts and thus might need to work with FRBKC to effectuate a court order requiring the Board to provide Custodia with an account. *See* Am. Compl. ¶ 72. The relief Custodia seeks in Count I, therefore, might run through FRBKC as a practical matter.

But FRBKC need not remain a defendant in this action for the Court to afford Custodia relief. If the Court holds that § 248a requires the Board of Governors to provide Custodia with a master account and enters judgment against the Board on Count I, FRBKC would be obligated to work with the Board if doing so were necessary to effectuate the Court's order. *See* Fed. R. Civ. P. 65(d)(2)(A) & (C) (an injunction binds the parties and "other persons who are in active concert or participation" with the parties and who have actual notice); *see also Citizens for Smart Growth v. Sec'y of Dep't of Transp.*, 669 F.3d 1203, 1210 n.1 (11th Cir. 2012) (questioning whether it was necessary for relief defendant to remain a party in the case since an injunction would be binding on it under Rule 65). To be clear, FRBKC's position is that § 342 grants Reserve Banks discretion to decide master account requests. But if the Court enters judgment for Custodia on Count I, it will

necessarily have concluded, to the contrary, that § 248a compels the Board of Governors to provide

a master account to Custodia. On that (incorrect) premise, § 248a would also presumably empower

the Board of Governors to work with FRBKC as necessary to ensure that happens.[7]

## II.  Count III Fails Because the Declaratory Judgment Act Does Not Provide an Independent Cause of Action.

Count III fails to state a claim upon which relief may be granted because the Declaratory

Judgment Act, 28 U.S.C. § 2201, does not create a right of action. *Devon Energy Prod. Co. v.*

*Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012). Instead, the Act merely

provides that a declaratory judgment is a remedy that may be available on a proper underlying

cause of action. The Court already recognized as much in its order on the initial motions to dismiss.

*See* ECF No. 102 at 22–23; *see also Nero v. Oklahoma*, No. 22-6121, 2022 WL 14423872, at *2

(10th Cir. Oct. 25, 2022) ("the Declaratory Judgment Act does not provide an independent federal

cause of action" (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–74 (1950)));

*Utah Hous. Corp. v. Country Pines, Ltd.*, 541 F. Supp. 3d 1288, 1295 n.1 (D. Utah 2021) (citing

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). "To maintain an action for a declaratory

judgment, then, [Custodia] must assert a valid federal cause of action—one that exists independent

---

[7] In all events, if FRBKC remains in this action as a relief defendant, the action should proceed on an administrative record under the APA. The only substantive claim in the Amended Complaint is Custodia's APA claim against the Board of Governors. Where a party includes additional claims in what fundamentally is an APA case, the case as a whole proceeds under the APA and is decided based on the administrative record. *See, e.g., Ketcham v. U.S. Nat'l Park Serv.*, No. 16-cv-17, 2016 WL 4268346, at *2 (D. Wyo. Mar. 29, 2016) (Skavdahl, J.) (holding that plaintiff could not circumvent APA record review by pleading a claim under a source of law other than the APA); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 58 F. Supp. 3d 1191, 1238 (D.N.M. 2014) (same). The presence of a relief defendant does not change that rule. *See Sierra Club v. Hodel*, 848 F.2d 1068, 1077 (10th Cir. 1988) (per curiam) (finding that Garfield County, which was not an APA agency, was an indispensable party as a relief defendant, but proceeding on an administrative record under the APA), *overruled on other grounds by Vill. of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1992).

of any request for declaratory relief." *Nero*, 2022 WL 14423872, at *2.

In ruling on the initial motions to dismiss, the Court held that Custodia's counts seeking declaratory relief did not state viable standalone causes of action. ECF No. 102 at 22. The Court nonetheless declined to dismiss the Declaratory Judgment Act counts because substantive causes of action against FRBKC survived dismissal, and the Declaratory Judgment Act might have provided appropriate relief if Custodia had prevailed. *Id.* at 23. The Amended Complaint, however, does not assert any substantive claims against FRBKC. If Custodia prevails on Count I against the Board of Governors, it might be able to obtain declaratory relief against the Board, the only defendant on that independent cause of action. But Custodia has not pleaded an underlying cause of action against FRBKC "that exists independent of [Count III's] request for declaratory relief." *Nero*, 2022 WL 14423872, at *2. The Court should therefore dismiss Count III against FRBKC.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint.

Date: March 28, 2023.

Respectfully submitted,

 /s Billie LM Addleman
Billie LM Addleman, #6-3690
John P. Fritz, #7-6318
HIRST APPLEGATE, LLP
Attorneys for Defendant FRBKC
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
jfritz@hirstapplegate.com

Andrew Michaelson
Laura Harris
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com
lharris@kslaw.com

Jeffrey S. Bucholtz
Joshua N. Mitchell
Christine M. Carletta
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500
jbucholtz@kslaw.com
jmitchell@kslaw.com
ccarletta@kslaw.com

*Counsel for Defendant the*
*Federal Reserve Bank of Kansas City*

**CERTIFICATE OF SERVICE**

I certify the foregoing *Defendant Federal Reserve Bank of Kansas City's Motion to Dismiss* was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure on 28 March 2023, and that copies were served as follows:

John K. Villa
Ryan Thomas Scarborough
Whitney D Hermandorfer
Jamie Wolfe
WILLIAMS & CONNOLLY
680 Maine Avenue SW
Washington, DC 20024
*Attorneys for Plaintiff*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Scott E Ortiz
WILLIAMS PORTER DAY & NEVILLE
159 North Wolcott, Suite 400
P O Box 10700
Casper, WY 82602
*Attorneys for Plaintiff*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Angela Tarasi
KING & SPALDING LLP
1401 Lawrence Street
Suite 1900
Denver, CO 80202
*Attorneys for Defendant Federal Reserve Bank of Kansas City*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

Joshua P. Chadwick, Senior Special Counsel
Yvonne F. Mizusawa, Senior Counsel
Yonatan Gelblum, Senior Counsel
Katherine Pomeroy, Senior Counsel
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
*Attorneys for Defendant Federal Reserve Board of Governors*

☐ U.S. MAIL
☐ FED EX
☐ FAX
☐ HAND DELIVERED
☐ EMAIL
☑ E-FILE

  /s Shannon M. Ward
OF HIRST APPLEGATE, LLP
Attorneys for Defendant