UNITED STATES DISTRICT COURT

DISTRICT OF WYOMING

| | |
|---|---|
| CUSTODIA BANK, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 1:22-cv-00125-SWS |
| BOARD OF GOVERNORS OF ) | |
| THE FEDERAL RESERVE SYSTEM & ) | |
| FEDERAL RESERVE BANK ) | |
| OF KANSAS CITY, ) | |
| ) | |
| Defendants. ) | |

**THE STATE OF WYOMING'S
MEMORANDUM IN SUPPORT OF MOTION FOR
PERMISSION TO INTERVENE AND LEAVE TO FILE COMPLAINT AS
INTERVENOR**

The State of Wyoming by and through Attorney General, Bridget Hill, Supervising Attorney General Karl Anderson, and Senior Assistant Attorney General Devin Kenney, hereby requests leave from the Court to intervene in this matter pursuant to Federal Rule of Civil Procedure 24(b)(1)(B).

The Plaintiff is the State of Wyoming represented by the Attorney General. The Wyoming Attorney General is authorized to file this motion to intervene by Wyo. Stat. Ann. § 9-1-603(a)(iv) which authorizes her to "[r]epresent the state in suits, actions or claims in which the state is interested in . . . any United States court[.]" Wyo. Stat. Ann. § 9-1-603(a)(iv). The tenor of the dispute between Custodia and Defendants Federal Reserve Bank of Kansas City and Federal Reserve Board of Governors appears to include, in part, a debate over Wyoming's regulation of Special Purpose Depository Institutions (SPDIs)

under Wyoming law. To the extent that Defendants' decisions and interpretation of federal law, and Wyoming's SPDI statutes and regulations, question or challenge Wyoming's legal framework, the Attorney General is seeking leave to intervene in the defense of that framework.[1]

The State of Wyoming seeks leave to intervene under Federal Rule of Civil Procedure 24(b)(1)(B). Under that rule, "[1] [o]n timely motion, the court may permit anyone to intervene who . . . [2] has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Tenth Circuit "has historically taken a liberal approach to intervention and thus favors the granting of motions to intervene." *Kane Cnty., Utah v. United States*, 928 F.3d 877, 890 (10th Cir. 2019) (citation and quotation marks omitted). Furthermore, "the requirements for intervention may be relaxed in cases raising significant public interests." (citation and quotation marks omitted).

As further discussed below, the State of Wyoming meets the requirements for intervention under Federal Rule of Civil Procedure 24(b)(1)(B) and should be allowed to intervene in this matter. In particular, the State's motion is timely and the State's request to intervene and defend its statutory framework is based on statutes that the State of Wyoming administers.

---

[1] The State reaffirms that, as noted in its *amicus* brief, Wyoming "is not taking a position on whether federal law even allows Defendants to make a determination against Custodia Bank's master account application, which is a disputed matter in this lawsuit," nor is it taking a position on whether or not Custodia is entitled to a master account.

I.      **The State's motion is timely.**

Timeliness of intervention is not merely a question of how long a lawsuit has been pending, but rather is determined "in light of all circumstances." *Western Energy Alliance v. Zinke*, 877 F.3d 1157, 1165 (10th Cir. 2017) (citation omitted). The 10th Circuit has found three factors important in its analysis, however: "(1) the length of time since the movants knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movants." *Id.* (citation omitted). "[T]he prejudice to other parties must be prejudice caused by the movant's delay, not by the mere fact of intervention." *Oklahoma ex rel. Tyson Foods, Inc.*, 619 F.3d 1223, 1236 (10th Cir. 2010). The factor relating to prejudice to the movant is related to the potential that the movant will "be impaired by the denial of its motion to intervene." *Id.* at 1237.

Custodia initially filed its lawsuit in June 2022. [ECF 1-1 at 1]. At that time, Custodia's Complaint was premised on the harms from Defendants' delay in deciding the master account request. [ECF 1 at 2]. The State of Wyoming filed its *amicus* brief in September, establishing at that time that its primary concern was the harm Defendants' reluctance to act caused to Wyoming's regulatory regime. [ECF 88 at 5]. Since that time, the Defendants have acted to deny Custodia a master account and Custodia has sought, and obtained, leave to amend its Complaint to challenge that denial. [ECF 116 at 1-2; ECF 121 at 1].

The "Custodia Master Account Summary Analysis" (Summary Analysis) the Kansas City Fed provided Custodia makes clear that its view of perceived inadequacies in Wyoming's laws and regulations for SPDIs is partially responsible for its denial. [ECF 129

at 7-8].² The State of Wyoming believes that this changes the tenor of the suit and in turn questions the legitimacy and viability of the State's statutory framework.³ For that reason, the State of Wyoming has filed this motion to intervene to be heard in defense of the State's statutory framework. Given that the denial occurred in late January and the Amended Complaint was filed in late February, very little time has passed in the pendency of this suit as it currently stands. Furthermore, the State believes that this change in the fundamental nature of the suit gives rise to its interests and would thus argue that at most just over two months have passed since the State became aware of that interest.⁴

---

² The State of Wyoming received a copy of this document directly from Plaintiff Custodia after Defendant Kansas City Fed issued it to Custodia. The State of Wyoming takes note of the fact that the basis upon which the Kansas City Fed requested this document be filed under seal, which it refers to as the "Denial Letter," was that "it may contain Custodia's confidential commercial information." [ECF 125 at 2]. For that reason, the State of Wyoming has consulted with Custodia and Custodia has confirmed that it has no objection to the State of Wyoming quoting from that document in this filing.

³ Wyoming statute at § 1-37-113 gives the attorney general of Wyoming the right to appear and be heard in state court "[i]f [a] statute is alleged to be unconstitutional" in a declaratory judgment action. Wyo. Stat. Ann. § 1-37-113. Although this case does not include claims of unconstitutionality, the State of Wyoming envisions that its participation would be similar in nature aimed at being heard regarding the State's regulatory framework and the two tier banking system.

⁴ The State of Wyoming also received the Board's order denying Custodia's application for Federal Reserve membership and supervision on March 24, 2023 when it was released to the public (with redactions). *Federal Reserve Board publishes its order denying the application by Custodia Bank, Inc., to be supervised by the Federal Reserve*, Board of Governors of the Federal Reserve System:

https://www.federalreserve.gov/newsevents/pressreleases/orders20230324a.htm.

Although the State appreciates, to some degree, Defendants' seeming concerns that SPDI Banks like Custodia are not subject to direct federal oversight, the Board's decision to deny Custodia's Federal Reserve membership application has the effect of preventing exactly

The State has not delayed since the Amended Complaint was filed but has instead acted promptly to intervene. The effect of the State's requested intervention at this point is minimal at most. As yet, although they have filed motions to dismiss neither Defendant has filed an answer to Plaintiff Custodia's Amended Complaint nor has discovery occurred. In short, the matter is in very early stages such that the parties will not be prejudiced by the State's intervention in the suit.

As to prejudice against the State, as is discussed in greater detail below, the State has an interest in the administration of its SPDI statutes. Although an adverse determination against Custodia on the merits of Custodia's application and unique situation may not prejudice the State, the Defendants' apparent determination that Wyoming's SPDI statutes and regulations, and SPDI banks themselves, are deficient will.

This Court should therefore find (1) that the State's motion to intervene is timely; (2) that the existing parties will suffer little to no prejudice as a result; and (3) that the State of Wyoming will suffer prejudice if its motion is denied. The Court should therefore conclude that this motion to intervene is therefore timely. *See Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1251 (10th Cir. 2001).

---

that supervision. In any event, the State of Wyoming's intervention is also timely as a response to Defendants' decisions to deny a Wyoming SPDI Bank a master account because it is not federally-regulated, even as they also deny it the opportunity to be federally-regulated.

**II.     The State of Wyoming's claims share a common question of law with the existing litigation because the State's claims are grounded in the SPDI regulatory regime that it administers and the Kansas City Fed's Summary Analysis; Custodia's claims are partially based upon Wyoming statutes; and the Defendants' stated grounds for denial appear to be based, at least in part, on Wyoming statutes and regulations.**

Plaintiff Custodia makes multiple claims related to its entitlement to a master account from Defendants. [ECF 122 at 27-33]. As noted above, the State of Wyoming takes no position on Custodia's entitlement to a master account. Even so, the State, as the administrator of Wyoming's SPDI statutes and regulatory regime takes issue with the Defendants' characterization of Wyoming's statutes and rules, as embodied in the Kansas City Fed's Summary Analysis letter. [ECF 129].

Several points in the Summary Analysis give rise to concerns. Examples include the Kansas City Fed's statement that "comparisons between [an institution with a crypto-focused business like] Custodia and insured depository institutions are misplaced" because "Custodia is an uninsured, *de novo* institution . . . seeking to engage in multiple high risk endeavors in a high-risk industry." [ECF 129 at 7] Defendants also state that: "Custodia is not subject to the regulatory capital framework for insured banks. Neither the federal capital framework nor the Wyoming state rules have incorporated requirements related specifically to crypto-assets."[5] [*Id.*] Wyoming does not deny that the Rules themselves do not require this, but the Wyoming Division of Banking has issued Guidance providing that:

---

[5] The Kansas City Fed does not mention that the Board also denied Custodia Federal Reserve membership, thereby preventing it from becoming a member bank or from receiving direct federal oversight. [Federal Reserve Board Denial Letter, Attachment A]

> A prospective SPDI should anticipate an initial capital requirement similar to a federally-insured institution and other recently chartered de novo banks. Additionally, the Division expects that each SPDI meet the capital ratios set by the Federal Reserve and FDIC.

[Special Purpose Depository Institutions: Updated Capital Requirement Guidance, July 7, 2021, Attachment B]. Additionally, the State of Wyoming intends to argue that other requirements, such as SPDI's obligations to hold unencumbered liquid assets in at least the amount of one hundred percent of their fiat currency deposit liabilities, provide other means of oversight and security. Wyo. Stat. Ann. § 13-12-105(a).

The Kansas City Fed goes on to characterize this requirement as a liability because "the Wyoming rules allow Custodia to hold other high-quality liquid assets, which may introduce credit or market risk to the institution." [ECF 129 at 7, n.8]. Here Defendants' lack of regard for Wyoming SPDIs and perhaps even the two-tier banking system itself is evident.[6]

Equality between federally-chartered and state-chartered banks is "firmly embedded in the statutes governing the national banking system." *First Nat. Bank in Plant City v. Dickinson*, 396 U.S. 122, 133 (1969). Multiple precedential decisions confirm this stance. *See, e.g.*, *State of Colo. ex rel. Colorado State Banking Bd. v. Resolution Trust Corp.*, 926 F.2d 931, 946 (10th Cir. 1991) (outlining how regulation that "applie[d] equally to both

---

[6] For example, Wyoming's SPDI Bank regulations ensure that a SPDI Bank's assets "are managed prudently, consistent with safe and sound banking practices, in a manner that [a]ddresses interest rate risk, including repricing, basis, yield curve and option risk; [p]revents mismatching; and [a]ccounts for potential stress scenarios." Wyo. Dep't of Audit Rules, Ch. 20 § 9(d)(i)-(iii). Defendants make no mention of these requirements, appearing to disregard them entirely.

state and national banks" "protect[ed] competitive equality" between them); *State of Colo. ex rel. State Banking Bd. v. First Nat. Bank of Fort Collins*, 540 F.2d 497, 500 (10th Cir. 1976) ("[T]he congressional intent behind the provisions of [federal branch banking statute] was to place national and state banks on a basis of 'competitive equality[.]'"). Indeed, the principle of regulatory equality is further enhanced by the requirement of 12 U.S.C. § 248a(c)(2) that "[a]ll Federal Reserve bank services covered by the fee schedule shall be available to nonmember depository institutions"—of which class Plaintiff Custodia is. 12 U.S.C. § 248a(c)(2); 12 U.S.C. § 461(b)(1)(A)(i).

Nevertheless, Defendants seek to treat Wyoming SPDI Banks (as entities thus far denied a federal regulator) in an inequitable manner vis a vis regulated state and national banks and member institutions. For example, rather than preemptively declaring all crypto-currency or digital asset-related activities as impermissible, Defendant Board has issued a letter "provid[ing] that a Federal Reserve-supervised banking organization engaging or seeking to engage in crypto-asset-related activities should notify its lead supervisory point of contact at the Federal Reserve." [Attachment C at 2]. The letter defines "crypto-asset-related activities as "includ[ing], but . . . not limited to, crypto-asset safekeeping and traditional custody services; ancillary custody services; facilitation of customer purchases and sales of crypto-assets; loans collateralized by crypto-assets; and issuance and distribution of stablecoins." [Attachment C at 2 n.3]. Notably, much of these activities are the precise activities Wyoming's SPDI regulations and statutes permit SPDI Banks to engage in, subject to approval by the Commissioner. Wyoming Dep't of Audit Rules, Ch. 20, § 11(d), 13(a); Wyo. Stat. Ann. § 13-12-103(b)(vii).

Defendants have also expressed skepticism over the aptitude of "new" state-chartered banks while allowing "old" state-chartered banks like BNY Mellon to engage in substantially the same digital asset custody activity Wyoming SPDIs intend to engage in. [ECF 98, Ex. A]. A disregard of Wyoming's right to charter depository institutions in the two-tier banking system appears, at least in part, to be the motivation for this disparate treatment and disregard of Wyoming-chartered banks. Accordingly, the State of Wyoming's intervention shares with Custodia's claims and the Defendants' potential defenses a "common question of law and fact" as the State seeks to defend Wyoming's SPDI statutes against federal regulatory overreach that appears to treat state-chartered non-federally-regulated banks as second-class banks ineligible to compete with federally-regulated ones.

The Defendants appear to have arbitrarily created a distinction between federally regulated and non-federally regulated banks. Wyoming SPDI Banks are subject to a range of state-level regulations as outlined under Wyoming statutes, and have attempted to obtain federal regulation—including, in Plaintiff Custodia's case, by applying for membership in the Federal Reserve—but to no avail. This has created a Kafkaesque situation where a SPDI Bank is denied a master account because it is not federally regulated, even while it is also denied federal regulation. This case raises significant public interests relating to the ability of non-federally regulated banks to operate, and of states to administer their own statutory regimes, and thus should be considered under the Tenth Circuit's relaxed requirements for intervention.

## CONCLUSION

The State of Wyoming respectfully requests permission to intervene in this matter. Such timely intervention is based on decisions targeted at Wyoming law, which the Attorney General has a duty to defend. Additionally, because the State of Wyoming seeks to assert claims related to its administration of its own statutes, rather than Custodia's entitlement to a master account (upon which the State takes no position), the State of Wyoming further seeks leave to file its own Complaint. [Attachment D]. The State of Wyoming's claims share a common question of law and fact with the claims and defenses of Plaintiff Custodia and the Defendants, but are notably tied to the State of Wyoming's public interest in this matter. The State of Wyoming therefore requests an order (1) granting it leave to intervene as a party-plaintiff in this matter and (2) granting it leave to file the attached draft complaint.

Dated this 10th day of April, 2023.

> /s/ Devin Kenney
> Bridget Hill, Wyo. Bar No. #6-3616
> Attorney General
> Karl Anderson, Wyo. Bar No. #6-2807
> Supervising Attorney General
> Devin Kenney, Wyo. Bar No. #7-5964
> Senior Assistant Attorney General
> 109 State Capitol
> Cheyenne, WY 82002
> (307) 777-7886
> bridget.hill@wyo.gov
> karl.anderson@wyo.gov
> devin.kenney1@wyo.gov
>
> *ATTORNEYS FOR STATE OF WYOMING*

## CERTIFICATE OF SERVICE

I certify that on this 10th day of April 2023, a copy of the foregoing **THE STATE OF WYOMING'S MEMORANDUM IN SUPPORT OF MOTION FOR PERMISSION TO INTERVENE** was served in the following manner as addressed to:

| | |
|---|---|
| John K. Vila<br>Ryan Thomas Scarborough<br>Whitney D. Hermandorfer<br>Jamie Wolfe<br>WILLIAMS & CONNOLLY<br>680 Maine Avenue SW<br>Washington, DC 20024<br>*Attorneys for Plaintiff* | VIA CM/ECF |
| Scott E. Ortiz<br>WILLIAMS PORTER DAY & NEVILLE<br>159 North Wolcott, Suite 400<br>P.O. Box 10700<br>Casper, WY 82602<br>*Attorneys for Plaintiff* | VIA CM/ECF |
| Angela Tarasi<br>KING &SPALDING LLP<br>1401 Lawrence Street<br>Suite 1900<br>Denver, CO 80202<br>*Attorneys for Defendant Federal Reserve Bank of Kansas City* | VIA CM/ECF |
| Billie LM Addleman<br>John P. Fritz<br>HIRST APPLEGATE<br>P.O. Box 1083<br>Cheyenne, WY 82003<br>*Attorneys for Defendant Federal Reserve Bank of Kansas City* | VIA CM/ECF |

Joshua P. Chadwick                          VIA CM/ECF
Yvonne F. Mizusawa
Yonatan Gelblum
Katherine Pomeroy
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
*Attorneys for Defendant Federal Reserve Board of Governors*

                                       /s/ Jessica Curless
                                       Paralegal
                                       Wyoming Attorney General's Office