Mark Van Der Weide, General Counsel
Richard M. Ashton, Deputy General Counsel
Joshua P. Chadwick, Senior Special Counsel (*pro hac vice*)
Yvonne F. Mizusawa, Senior Counsel (*pro hac vice*)
Yonatan Gelblum, Senior Counsel (*pro hac vice*)
Katherine Pomeroy, Senior Counsel (*pro hac vice*)
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
(202) 263-4835
joshua.p.chadwick@frb.gov

*Counsel for Defendant Board of Governors of the Federal Reserve System*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

|  |  |
|---|---|
| CUSTODIA BANK, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:22-cv-00125-SWS |
| BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM & FEDERAL RESERVE BANK OF KANSAS CITY, | ) |
| Defendants. | ) |

**DEFENDANT BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S OPPOSITION TO THE STATE OF WYOMING'S MOTION FOR PERMISSION TO INTERVENE AND LEAVE TO FILE COMPLAINT AS INTERVENOR**

Defendant Board of Governors of the Federal Reserve System ("Board") respectfully submits this opposition to the motion by the State of Wyoming ("Wyoming") for permission to intervene and for leave to file a complaint as an intervenor (ECF No. 138). Though Wyoming claims that it meets the standard for intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B), it identifies no common question with the First Amended Complaint filed by Custodia. Custodia's complaint alleges that, regardless of which state charters a depository institution, that institution is automatically entitled to a master account under 12 U.S.C. § 248a(c)(2). *See* Am. Compl. ¶¶ 22-35. Thus, based on Custodia's complaint, this case turns on a narrow issue of Federal Reserve Act interpretation. Against this backdrop, Wyoming suggests that it seeks to transform the case into a "debate over Wyoming's regulation of Special Purpose Depository Institutions (SPDIs) under Wyoming law." Wyo. Br. (ECF No. 140) at 1-2. Because Wyoming raises abstract questions concerning state law that have no commonality with Custodia's claims, and because Wyoming's presence as an intervenor would needlessly complicate resolution of the case by injecting new issues not presented by Custodia's Amended Complaint, the Board respectfully requests that the Court deny Wyoming's motion.

## BACKGROUND

On February 28, 2023, Custodia filed its First Amended Complaint challenging the January 27, 2023 decision denying its request for a master account. Notably, Custodia did not attach the decision denying its master account request to its complaint, much less take issue with any of the well-reasoned bases upon which the Federal Reserve Bank of Kansas City ("FRBKC") denied the request. Rather, Custodia makes clear that its complaint hinges on an interpretation of 12 U.S.C. § 248a(c)(2), alleging that the Board's conduct is "patently unlawful" pursuant to that provision of the Federal Reserve Act. Am. Compl. ¶ 83. Custodia claims that the

1

"Board has a non-discretionary duty . . . to make available to nonmember depository institutions Federal Reserve bank services through master accounts." Am. Compl. ¶ 81. To the extent that Custodia refers to Wyoming statutes and regulations, it does so merely to establish that SPDIs are eligible depository institutions such that, in Custodia's view, they must automatically receive a master account. *See*, *e.g.*, Am. Compl. ¶ 40 ("[B]ecause all eligible depository institutions 'shall' be permitted to access the Federal Reserve bank services, SPDI-chartered banks are entitled to master accounts.") (citing 12 U.S.C. § 248a(c)(2)). According to Custodia, any entity that is a depository institution as determined by any state must receive a master account pursuant to 12 U.S.C. § 248a(c)(2). *See* Am. Compl. ¶¶ 22-35 (describing dual-chartering system and alleging that "all depository institutions," including those chartered by any state, must be granted a master account). There is no question in this case that Custodia has an SPDI charter and that as such it is a "depository institution." The only dispute concerns whether this status gives it a nondiscretionary right to a master account.

On April 13, 2023, Wyoming filed its motion to intervene pursuant to Rule 24(b)(1)(B), claiming that this pleading presents questions of law or fact in common with Custodia's Amended Complaint. *See* Wyo. Br. at 2. But while Custodia's complaint presents no interpretive question regarding Wyoming statutes and regulations, Wyoming insists that there is "a debate" concerning those statutes and regulations and that it needs to "intervene and defend its statutory framework." *Id.* at 1-2. Wyoming's proposed complaint seeks various declarations pursuant to the Declaratory Judgment Act, including: (1) that "Defendants have a statutory obligation to treat Wyoming SPDI Banks equitably with Federal Reserve member institutions"; (2) "that Wyoming's SPDI Bank statutes and regulations are not high risk but rather are protective of the financial system, the safety and soundness of SPDI Banks, and potential SPDI customers"; and

2

(3) "that Defendant Kansas City Fed's Summary Analysis [denying Custodia's master account request] is deficient and defective insofar as it mischaracterizes Wyoming SPDI Bank statutes and regulations." Wyo. Proposed Compl. (ECF No. 140-4) ¶¶ 38, 42, 43. Wyoming states that it does not "take a position on Custodia's claims that it is entitled to a master account under 12 U.S.C. § 248a(c)(2) or on the Defendants' counter-position that granting a master account is discretionary." *Id.* ¶ 36.

## ARGUMENT

This Court has broad discretion to deny intervention pursuant to Rule 24(b)(1)(B).[1] *See, e.g., City of Stilwell, Okl. v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996) ("[W]e will not reverse the district court's ruling [denying intervention] absent a clear abuse of discretion.").[2] In this litigation, Wyoming should be denied permissive intervention for three independent reasons: (1) Wyoming lacks standing to intervene because it does not have an actual and concrete injury and is instead posing abstract questions on behalf of third parties; (2) Wyoming's claims have no common question of law or fact with Custodia's claims; and (3) allowing Wyoming to intervene would unnecessarily complicate adjudication of this case by introducing new issues that are different and broader than those raised by Custodia.

**I.    Wyoming Cannot Establish That It Has Standing, Which Is Required for Permissive Intervention**

Wyoming has not demonstrated that it possesses Article III and prudential standing, as is necessary for it to permissively intervene. Rather than point to a concrete injury that it has

---

[1] The state does not claim intervention as of right pursuant to Rule 24(a) and relies exclusively on the "common question of law or fact" requirement of Rule 24(b)(1)(B).

[2] This case (and others pre-dating 2007) refers to permissive intervention premised on a common question of law or fact as falling under Rule 24(b)(2). That rule was renumbered to Rule 24(b)(1)(B) in 2007 without any substantive changes.

suffered, Wyoming instead asks the Court to opine about abstract questions regarding Wyoming laws and regulations. In the absence of standing, the Court lacks jurisdiction to entertain Wyoming's proposed complaint and permitting intervention would be futile.[3]

It is a bedrock principle that "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990) (quotation and alteration omitted). The requirement to demonstrate standing extends to a permissive intervenor where that intervenor seeks to broaden the relief sought in the underlying lawsuit. *See, e.g., Okla. Hosp. Ass'n v. Okla. Publ'g Co.*, 748 F.2d 1421, 1424-25 (10th Cir. 1984) (requiring entity seeking modification of protective order for purpose of gaining access to discovery documents to demonstrate standing); *United States v. RaPower-3, LLC*, 341 F.R.D. 311, 316-17 (D. Utah 2022) (collecting cases for the proposition that intervenors must have standing "when they seek relief different from any party").[4] The permissive intervenor must not only demonstrate Article III standing but also prudential standing. *See, e.g., Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 194 (D.C. Cir. 2013).

Here, Wyoming's own words make clear that it raises a "conjectural or hypothetical" injury, not an actual or imminent one, and that it therefore lacks Article III standing. *Spokeo, Inc.*

---

[3] Although Defendants would assert additional bases for dismissal were the state to file a complaint in intervention, the proposed complaint would fail for lack of standing alone.

[4] At one point, the Tenth Circuit held that "parties seeking to intervene under Rule 24(a) or (b) need not establish [independent] Article III standing so long as another party with constitutional standing on the same side as the intervenor remains in the case." *City of Colo. Springs v. Climax Molybdenum Co.*, 587 F.3d 1071, 1079 (10th Cir. 2009) (quotation and emphasis omitted). However, following the Supreme Court's decision in *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439-40 (2017), the Tenth Circuit held that if an intervenor seeks relief different from the existing parties, the intervenor must itself have standing. *See Kane Cnty., Utah v. United States*, 928 F.3d 877, 886-87 (10th Cir. 2019).

*v. Robins*, 578 U.S. 330, 339 (2016) (indicating that, to demonstrate Article III standing, a party must demonstrate "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical" (quotation omitted)). Specifically, Wyoming writes that "[a]n actual controversy exists . . . concerning [Defendants'] denial of original plaintiff's master account application because the denial *appears to call into question* the sufficiency of the State of Wyoming's SPDI statutes." Wyo. Proposed Compl. ¶ 5 (emphasis added). But FRBKC's decision says nothing of the sort. That decision made clear that it applied only to a single requester (Custodia) seeking a master account based on the facts and circumstances as of the date that the decision was rendered. *See generally* ECF No. 129. It does not say that even Custodia is forever barred from receiving a master account. Wyoming's proposed complaint is thus nothing more than supposition about possible future outcomes that may or may not come to pass, which is insufficient to demonstrate constitutional standing. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983) (theoretical possibility that conduct would recur held insufficient to establish standing).

      Wyoming also lacks prudential standing because the state is not asserting its own legal rights but is instead seeking to vindicate the legal rights of potential current and future SPDIs. *See Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) ("The prudential standing doctrine encompasses various limitations, including 'the general prohibition on a litigant's raising another person's legal rights.'" (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984))). For example, Wyoming alleges that "uncertainty created by Defendants' initial delay in reviewing and ultimate denial of Custodia's application has chilled the creation of SPDI Banks in Wyoming." Wyo. Proposed Compl. ¶ 5. This is a paradigmatic instance in which the intervenor is "rest[ing] his claim to relief on the legal rights or interests of third parties." *Wilderness Soc.*,

632 F.3d at 1168 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). To the extent that the Federal Reserve Act creates a right to sue for denial of a master account, that lawsuit must come from a party "within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quotation omitted). In this case, that party would be the state-chartered depository institution seeking a master account, not a state government raising theoretical questions on behalf of unnamed prospective SPDIs. *See Wilderness Soc.*, 632 F.3d at 1168 (noting that the doctrine of prudential standing counsels that courts should refrain from "decid[ing] abstract questions").

Accordingly, because Wyoming has not suffered a concrete and particularized harm from the denial of Custodia's master account request, and because Wyoming is requesting an advisory opinion concerning its regulatory framework, Wyoming lacks standing and should not be permitted to intervene.

## II. Wyoming's Complaint Does Not Have Common Questions of Law or Fact with Custodia's Claims

Wyoming's efforts to intervene should be denied for the additional reason that it does not have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). While Wyoming's proposed complaint seeks to incorporate by reference some of the generalized allegations in Custodia's Amended Complaint, Wyoming's "claim[s]" do not have any "common questions of law or fact" with Custodia's claims.

Specifically, Custodia's Amended Complaint is narrowly focused on whether the denial of its master account request was proper under the Federal Reserve Act. Custodia alleges that the Board's conduct is "patently unlawful" because the Board had a "non-discretionary duty" to grant its master account request under 12 U.S.C. § 248a(c)(2). Am. Compl. ¶¶ 81, 83. Custodia does not ask the Court to delve into any interpretive issue concerning Wyoming's statutes and

6

regulations governing SPDIs.

In contrast, Wyoming's proposed complaint is squarely focused on delving into the details of Wyoming's statutes and regulations governing SPDIs. *See generally* Wyo. Proposed Compl. ¶¶ 11-25 (making detailed allegations concerning Wyoming's "regulatory framework"). And both of Wyoming's claims for relief ask the Court to issue advisory opinions concerning those statutes and regulations. *See generally id.* ¶¶ 31-43. While Custodia challenges its master account denial on a narrow legal basis, the state attempts to use that denial as a springboard to obtain an advisory opinion from the Court about abstract legal questions.

Indeed, any pretense of commonality between Custodia's Amended Complaint and Wyoming's proposed complaint is put to rest by Wyoming's own admission that it does not "take a position on Custodia's claims that it is entitled to a master account under 12 U.S.C. § 248a(c)(2) or on the Defendants' counter-position that granting a master account is discretionary." Wyo. Proposed Compl. ¶ 36. The fact that Wyoming does not take any position on the sole issue in this litigation demonstrates that Wyoming is seeking "to interject additional issues" not raised by the original litigants, which is not an allowable purpose of permissive intervention. *City of Stilwell*, 79 F.3d at 1043; *see also Petuskey v. Rampton*, 431 F.2d 378, 382 (10th Cir. 1970) (denying permissive intervention where "the intervention sought to inject a new and different issue").

In similar circumstances, courts have denied permissive intervention where a state's proposed intervention had no "claim or defense" in common with the main action. For example, in *DeOtte v. Azar*, 332 F.R.D. 173 (N.D. Tex. 2019), the court rejected the State of Nevada's attempt to intervene where Nevada claimed that it "share[d] a common question of law," but did not have "*a claim or defense*" that shares with the main action "a common question of law or

7

fact," as required by Rule 24(b). *Id.* at 186 (emphasis in original). And in *Environmental Integrity Project v. McCarthy*, 319 F.R.D. 8 (D.D.C. 2016), the court held that the State of North Dakota sought to do nothing more than raise new questions about the interpretation of state law, which was not a valid basis for permissive intervention. *Id.* at 17 & n.8 ("[T]he validity of North Dakota's regulations is not currently before the Court. There is little need, therefore, for North Dakota's input on that subject. And North Dakota does not administer the provisions of federal law that are at issue here."), *aff'd sub nom. Env't Integrity Project v. Pruitt*, 709 F. App'x 12 (D.C. Cir. 2017).

In sum, because the factual and legal questions raised by Custodia's Amended Complaint turn on an interpretation of the Federal Reserve Act, while the factual and legal questions raised by Wyoming's proposed complaint turn on an interpretation of Wyoming's statutes and regulations governing SPDIs, Wyoming cannot satisfy the commonality requirement set forth in Rule 24(b)(1)(B).

### III. Wyoming's Permissive Intervention Would Unnecessarily Complicate the Adjudication of the Original Parties' Rights

Finally, denial of Wyoming's motion to intervene is also warranted because Wyoming's presence would unnecessarily complicate this case, diverting attention away from resolution of the claims brought by Custodia.

Intervention should not be permitted when it would alter the scope of the underlying litigation through the introduction of new issues. Specifically, the Tenth Circuit has cautioned that, when exercising discretion as to whether permissive intervention should be allowed, the court must consider whether the intervention will "prejudice the adjudication of the original parties' rights." *Tri-State Generation & Transmission Ass'n v. New Mexico Pub. Regul. Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015) (quoting Rule 24(b)(3)). For example,

intervention could "create[] an undue burden to respond to arguments that do not inform" the legal issued raised by the plaintiffs. *Dine Citizens Against Ruining Our Env't v. Bernhardt*, 1:19-cv-703, 2020 WL 7872104, at *3 (D.N.M. Jan. 21, 2020). Similarly, intervention should be denied where it "could complicate the litigation and unnecessarily expand the scope of this case," such that it would "promote judicial economy" to deny intervention. *Furr's Supermarkets, Inc. v. Fleming Companies, Inc.*, No. CIV 97-0410, 1997 WL 35430577, at *1 (D.N.M. Oct. 20, 1997).

These concerns are squarely at issue with Wyoming's proposed complaint. Wyoming seeks to shift the focus of this case from a narrow issue concerning interpretation of the Federal Reserve Act into a much more unwieldy matter. As opposed to the single interpretive issue raised by Custodia—whether 12 U.S.C. § 248a(c)(2) requires granting a master account to all depository institutions—Wyoming proposes adding many more issues into the case, including:

- Whether "Defendants have arbitrarily allowed certain depository institutions with master accounts to provide safekeeping services for crypto-assets and providing banking services to customers in the crypto-asset industry, while denying other depository institutions the ability to provide like services while maintaining master accounts" (Wyo. Proposed Compl. ¶ 33);
- Whether "Defendants are treating Wyoming approved SPDI Banks inequitably compared to member institutions" (*id.* ¶ 35);
- Whether Defendants are "disregarding the competitive equality in the banking system by preferring member banks over state charted institutions that do not have membership with the Federal Reserve such as Wyoming's SPDI Banks" (*id.*);
- Whether "Wyoming's SPDI Bank statutes and regulations are not high risk but rather are protective of the financial system, the safety and soundness of SPDI Banks, and potential SPDI customers" (*id.* ¶ 42); and
- Whether FRBKC's decision "mischaracterizes Wyoming SPDI Bank statutes and regulations" (*id.* ¶ 43).

And while Wyoming's complaint purports to bring only two claims under the Declaratory Judgment Act, the foregoing allegations make clear that Wyoming's claims sweep broadly and would transform the case dramatically. Allowing Wyoming's complaint may require the Court to

9

analyze all statutes and regulations governing SPDIs, to examine if those statutes and regulations are consistent with the safety and soundness of the financial system, to second-guess every aspect of FRBKC's decision concerning Custodia's master account request, and to probe theoretical questions about whether a hypothetical SPDI may or may not be granted a master account.

Wyoming should not be permitted to "alter th[e] scope" of this case "to create a different suit based on different claims." *Hale v. Marques*, 1:19-cv-752, 2020 WL 2309619, at *16 (D. Colo. Feb. 3, 2020). Wyoming's proposed complaint is too far afield from Custodia's Amended Complaint, and allowing the proposed complaint would significantly prejudice adjudication of this case by "turn[ing] the attention of the Court" from the "narrow issue" presented by the plaintiff's complaint to more "general issue[s]." *Dine Citizens*, 2020 WL 7872104, at *3. The Court should not allow the issues in this case to be changed dramatically under the guise of a motion to intervene. If Wyoming wants to make known its views regarding its statutes and regulations, it can do so through an amicus brief, just as it did earlier in this proceeding in an effort that Defendants did not oppose. *See* ECF No. 88; *see also*, *e.g.*, *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 473 (5th Cir. 1984) ("Where the intervenors do not have a legally protectable interest," and their participation "will not add to the relevant factual development of the case, the position of amicus may be considered more appropriate than an intervention."). But Wyoming should not be allowed to insert itself into this case as an intervenor and introduce new issues that will not advance resolution of the existing claims.

## **CONCLUSION**

For the foregoing reasons, the Board respectfully requests that the Court deny Wyoming's motion for permission to intervene and for leave to file a complaint as an intervenor.

Dated: April 27, 2023

                         Respectfully submitted,

                         /s/ *Joshua P. Chadwick*
                         Mark Van Der Weide, General Counsel
                         Richard M. Ashton, Deputy General Counsel
                         Joshua P. Chadwick, Senior Special Counsel (*pro hac vice*)
                         Yvonne F. Mizusawa, Senior Counsel (*pro hac vice*)
                         Yonatan Gelblum, Senior Counsel (*pro hac vice*)
                         Katherine Pomeroy, Senior Counsel (*pro hac vice*)
                         Board of Governors of the Federal Reserve System
                         20th Street and Constitution Avenue, N.W.
                         Washington, D.C. 20551
                         (202) 263-4835
                         joshua.p.chadwick@frb.gov

                         *Counsel for Defendant Board of Governors of the Federal Reserve System*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 27, 2023, I electronically filed the foregoing using the court's CM/ECF system, which will send notification of such filing to all parties of record.

By:  /s/ *Joshua P. Chadwick*
Joshua P. Chadwick

*Counsel for Defendant Board of Governors of the Federal Reserve System*