Billie L.M. Addleman, #6-3690
Erin E. Berry, #7-6063
HIRST APPLEGATE, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
eberry@hirstapplegate.com

Andrew Michaelson
Laura Harris
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com
lharris@kslaw.com

Jeffrey S. Bucholtz
Joshua N. Mitchell
Christine M. Carletta
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500

*Counsel for Defendant the Federal Reserve Bank of Kansas City*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| CUSTODIA BANK, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> FEDERAL RESERVE BOARD OF GOVERNORS and FEDERAL RESERVE BANK OF KANSAS CITY, <br><br> *Defendants.* | No. 1:22-cv-00125-SWS |

**DEFENDANT FEDERAL RESERVE BANK OF KANSAS CITY'S RESPONSE**
**IN OPPOSITION TO THE STATE OF WYOMING'S MOTION FOR PERMISSION**
**TO INTERVENE AND LEAVE TO FILE COMPLAINT AS INTERVENOR**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................2

INTRODUCTION .......................................................................................................1

ARGUMENT ...............................................................................................................2

I.      Wyoming's Complaint Does Not Share a Common Question of Law With
        Custodia's Amended Complaint .................................................................................3

II.     The Court Should Deny the State's Motion as a Matter of Discretion ...............................4

III.    The State Lacks Standing to Intervene in This Action ......................................................6

        A.      Neither Claim Meets the Standards Necessary to Confer Standing ........................7

        B.      The State Seeks an Advisory Opinion ...................................................................9

CONCLUSION...........................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Arney v. Finney*,
967 F.2d 418 (10th Cir. 1992) ................................................................. 6

*Chapman v. Tristar Prods., Inc.*,
940 F.3d 299 (6th Cir. 2019) ................................................................. 7

*Chegup v. Ute Indian Tribe of Uintah & Ouray Rsrv.*,
2019 WL 6220063 (D. Utah Nov. 21, 2019) ................................................................. 6

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................. 7

*Golden v. Zwickler*,
394 U.S. 103 (1969) ................................................................. 10

*Jordan v. Sosa*,
654 F.3d 1012 (10th Cir. 2011) ................................................................. 10

*Kane County v. United States*,
597 F.3d 1129 (10th Cir. 2010) ................................................................. 3, 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ................................................................. 8, 9

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) ................................................................. 8

*Nero v. Oklahoma*,
2022 WL 14423872 (10th Cir. Oct. 25, 2022) ................................................................. 6

*Renfro v. Champion Petfoods USA, Inc.*,
25 F.4th 1293 (10th Cir. 2022) ................................................................. 9

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
601 F.3d 1096 (10th Cir. 2010) ................................................................. 10

*Shump v. Balka*,
574 F.2d 1341 (10th Cir. 1978) ................................................................. 3

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................. 7, 8

*Tavegie v. Black Hills Power, Inc.*,
2014 WL 11430839 (D. Wyo. June 20, 2014) ................................................................. 6

*Town of Chester v. Laroe Ests., Inc.*,
    581 U.S. 433 (2017) ........................................................................................ 6

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) .................................................................................... 9

*Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regul. Comm'n*,
    787 F.3d 1068 (10th Cir. 2015) ..................................................................... 3

*United Nuclear Corp. v. Cranford Ins. Co.*,
    905 F.2d 1424 (10th Cir. 1990) ..................................................................... 3

*United States v. Bayer CropScience LP*,
    2018 WL 3553413 (S.D. W. Va. July 24, 2018) ....................................... 7

*United States v. Muhtorov*,
    20 F.4th 558 (10th Cir. 2021) ........................................................................ 9

*United States v. RaPower-3, LLC*,
    341 F.R.D. 311 (D. Utah 2022) ..................................................................... 7

*Ute Indian Tribe of Uintah & Ouray Rsrv. v. McKee*,
    2019 WL 1950346 (D. Utah May 1, 2019) ................................................ 4

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................ 9

**Statutes & Rules**

12 U.S.C. § 248a ......................................................................................... *passim*

28 U.S.C. § 2201 ................................................................................................. 7

Fed. R. Civ. P. 24 ...................................................................................... 1, 3, 5

**Other Authorities**

7C Wright & Miller,
    Federal Practice and Procedure Civ. (3d ed.) ......................................... 3

## INTRODUCTION

Custodia's Amended Complaint asserts a single legal theory: 12 U.S.C. § 248a absolutely requires the Board of Governors to provide Custodia a master account. Under Custodia's interpretation of this federal statute, *all* state-chartered depository institutions *must* receive a master account, irrespective of any other considerations such as whether an entity has deposit insurance, whether or in what manner the entity is supervised by a prudential regulator, or whether the entity's business model is narrow and risky. Thus, as pleaded, Custodia's Amended Complaint is agnostic as to the strength or weakness of Wyoming law and regulation.

The State of Wyoming now seeks leave to interject into this lawsuit a subject that Custodia chose to leave out: the wisdom and adequacy of Wyoming's statutory framework and regulatory system. "To the extent" Defendants' defense against Custodia's claims "question[s] or challenge[s] Wyoming's legal framework," the State wishes to intervene "in the defense of that framework." ECF No. 140 at 2. The State's proposed complaint contains two causes of action that differ from Custodia's claims. While Custodia seeks an order that it be given a master account as allegedly required by § 248a, the State explicitly takes no position on whether § 248a compels that Custodia be granted a master account. Instead, the State seeks far broader and more abstract declarations that Defendants have treated SPDIs "inequitably" and "mischaracterize[d]" Wyoming law. ECF No. 140-4 ¶¶ 35, 43.

Wyoming's motion to intervene should be denied for three reasons. *First*, permissive intervention is available only where the putative intervenor's claim "shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The State argues that its proposed complaint shares a common question of law with Custodia's Amended Complaint, ECF No. 140 at 6, but this is plainly not the case: Custodia seeks a ruling that § 248a entitles it to a master account *irrespective of* the wisdom or adequacy of Wyoming's regulatory regime, while the State

seeks to defend the wisdom and adequacy of its regime—an irrelevant issue under Custodia's Amended Complaint. The State underscores the disconnect by expressly disclaiming taking a position on whether § 248a entitles Custodia to an account. Accordingly, the two complaints do not share a common question of law.

*Second*, even if the Court were to find or assume that the State's proposed claims share a common question of law with Custodia's, the Court should deny intervention in the exercise of its discretion. Motions to dismiss Custodia's Amended Complaint will be fully briefed next week. If the motions are granted, the case will be over, and intervention will be moot. If Custodia's claims survive dismissal, injecting the State's very different claims into this action would complicate matters inefficiently and unnecessarily. Rather than grant intervention—which would be followed by motions to dismiss the State's claims—the Court could allow the State to appear as amicus curiae. That would allow the State to "defend" its SPDI regime without injecting a new set of legal issues into this action and necessitating a new round of motion practice.

*Third*, and relatedly, the State lacks standing to pursue its proposed claims because it has not identified concrete injuries that would be redressable by the declaratory relief it seeks. The State's desire to defend its SPDI regime as "not high risk but rather . . . protective of the financial system," ECF No. 140-4 ¶ 42, may be understandable, but federal courts cannot issue advisory opinions that do not resolve concrete controversies.

## ARGUMENT

Wyoming seeks permissive intervention pursuant to Rule 24(b)(1)(B), which requires it to show that it "has a claim or defense that shares with the main action a common question of law or fact."

It is "wholly discretionary with the court whether to allow intervention," so "even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied,

the court may refuse to allow intervention." 7C Wright & Miller, *Federal Practice and Procedure* Civ. § 1913 (3d ed.); *see Kane County v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Shump v. Balka*, 574 F.2d 1341, 1345 (10th Cir. 1978). "In exercising its discretion to permit a party to intervene, 'the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015) (quoting Fed. R. Civ. P. 24(b)(3)).

I.    **Wyoming's Complaint Does Not Share a Common Question of Law with Custodia's Amended Complaint.**

Permissive intervention is not available because the State's proposed complaint does not share a common question of law or fact with Custodia's Amended Complaint.

The State argues only that the two complaints share "a common question of law." ECF No. 140 at 6. The common legal issues, the State contends, are that (a) its proposed claims "are grounded in the SPDI regulatory regime," (b) Custodia's claims are "partially based upon Wyoming statutes," and (c) the "Defendants' stated grounds for denial appear to be based, at least in part, on Wyoming statutes and regulations." *Id.* As the State explains, it wishes to "defend its statutory framework" based on "statutes that the State of Wyoming administers." *Id.* at 2. Custodia's Amended Complaint, however, presents none of these state-law issues.

Custodia's Amended Complaint presents a single question of law: whether 12 U.S.C. § 248a entitles Custodia to a master account. *See* ECF No. 121 ¶¶ 77–101. The separate question, whether (as the State asserts) "Wyoming's SPDI Bank statutes and regulations are not high risk but rather are protective of the financial system, the safety and soundness of SPDI Banks, and potential SPDI customers," ECF No. 140-4 ¶ 42, is irrelevant: in Custodia's view, § 248a is absolute and mandatory, and that's that. For its part, the State expressly disclaims presenting the

3

sole legal theory that Custodia presses: "Nor does the State of Wyoming take a position on Custodia's claims that it is entitled to a master account under 12 U.S.C. § 248a(c)(2) or on the Defendants' counter-position that granting a master account is discretionary." ECF No. 140-4 ¶ 36. And the State further confirms the disconnect between its proposed claims and Custodia's by expressly disclaiming any support for Custodia's request for relief: "the State of Wyoming takes no position on Custodia's entitlement to a master account." ECF No. 140 at 6. Likewise, the State seeks to litigate whether Defendants have recognized "[e]quality between federally-chartered and state-chartered banks" and engaged in "arbitrar[y]" decision-making, *id.* at 8, 10, but Custodia chose not to challenge the reasons for the denial of its master account request. Custodia does not, for example, allege that the denial was arbitrary and capricious. Instead, Custodia has pinned all its hopes on the absolutist argument that § 248a entitles it to an account, full stop, regardless of any risks presented by its business model, financial condition, or ability to comply with applicable laws and regulations.

Accordingly, the two complaints do not share a common question of law or fact and permissive intervention must be denied. *See Ute Indian Tribe of Uintah & Ouray Rsrv. v. McKee*, 2019 WL 1950346, at *3 (D. Utah May 1, 2019) (denying permissive intervention where proposed intervenor "failed to articulate any claim or defense that has a common question of law or fact" with the plaintiff's action) (quotation marks omitted).

## II.   The Court Should Deny the State's Motion as a Matter of Discretion.

Irrespective of the presence of a common issue of law or fact, the Court should deny the State's motion as a matter of discretion. As explained above, there is a fundamental disconnect between these two complaints. Custodia's sole contention is that § 248a mandates the issuance of a master account to any entity that holds a state bank charter. Custodia's claims do not depend on whether Wyoming's SPDI statute and regulations are "high risk" or "protective." ECF No. 140-4

¶ 42. To the contrary, Custodia's position is that under federal law, the adequacy of a state-law regime is irrelevant; states are free to design whatever charters and regulatory regimes they want, and once an entity has a state banking charter, § 248a entitles it to a master account. Custodia's claims thus do not turn on the issues Wyoming wishes to litigate.

The fact that Wyoming's SPDI regime is mentioned in Custodia's Amended Complaint does not mean that the adequacy of the state regime is at issue. It is not. The State's vague suggestion that the "tenor" of Custodia's claims relates to the State's SPDI regime, ECF No. 140 at 1, is no accident: the State cannot say, because it is not true, that the Court would need to decide the adequacy of its SPDI regime in order to adjudicate Custodia's claims. That is why Wyoming's claims do not share a common question of law with Custodia's as required by Rule 24(b)(1)(B). But even if the Court finds or assumes that the State satisfies the minimum requirement under Rule 24(b) of proposing at least one common issue of law, any such common question would be, at most, tangential. The Court should therefore still deny the State's intervention motion as a matter of discretion because the State's claims would inject a host of issues into this action that Custodia's claims do not raise, and the State's desired relief is significantly different from Custodia's desired relief.

Litigating the adequacy of Wyoming's regulatory regime for SPDIs and whether Defendants "are treating Wyoming approved SPDI Banks inequitably compared to member institutions," ECF 140-4 ¶ 35, would dramatically broaden the scope of this action and change its focus. As things stand, this action presents one, and only one, legal issue: does § 248a mean what Custodia says it means? Motions to dismiss raising that pure question of federal statutory interpretation will be fully briefed in just a few days, on May 2. If dismissal is granted, the case will be over, and the State's motion will be moot. If dismissal is denied and Custodia's claims

proceed, the Board will file an administrative record pursuant to Local Rule 83.6.[1] If the State were permitted to intervene, however, Defendants would move to dismiss.[2] Allowing intervention thus would complicate this litigation and distract from the core issue currently in dispute.

Moreover, allowing intervention would cause these inefficiencies unnecessarily. If the State wants to be heard on issues of state law that are important to the State but tangential to Custodia's claims, an amicus brief would be appropriate. *See, e.g.*, *Chegup v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2019 WL 6220063, at *2 (D. Utah Nov. 21, 2019). FRBKC consented when the State previously sought leave to file an amicus brief, and it would do so again. Allowing the State to intervene as a party, however, is not warranted. *See, e.g.*, *Kane County*, 597 F.3d at 1135–56 (affirming district court's discretionary denial of permissive intervention); *Arney v. Finney*, 967 F.2d 418, 421-22 (10th Cir. 1992) (same).

### III.   The State Lacks Standing to Intervene in This Action.

The Supreme Court has held that an intervenor "must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). Though *Town of Chester* involved intervention as of right under Rule 24(a), courts have applied its standing rule to parties seeking to permissively intervene under Rule 24(b). *See, e.g., United States v. RaPower-3, LLC*, 341 F.R.D. 311, 316 (D. Utah 2022);

---

[1] As noted, Custodia's claims do not challenge the reasons for the denial of its master account request, so there would be no relevancy basis for discovery into the reasons for the denial even apart from Local Rule 83.6's provision for review based on the administrative record.

[2] The State's intervention would be futile and short-lived. If the State's motion is granted, FRBKC intends to move to dismiss on multiple grounds, including that the State lacks standing to bring the claims it asserts and that neither the Declaratory Judgment Act nor the Federal Reserve Act provides for a cause of action. *See, e.g.*, ECF No. 102 at 23; *Nero v. Oklahoma*, 2022 WL 14423872, at *2 (10th Cir. Oct. 25, 2022); *see also Tavegie v. Black Hills Power, Inc.*, 2014 WL 11430839, at *1 (D. Wyo. June 20, 2014) (Rankin, M.J.) (when granting intervention, noting that defendants planned to file a motion to dismiss for failure to state a claim).

*Chapman v. Tristar Prods., Inc.*, 940 F.3d 299, 304 (6th Cir. 2019); *United States v. Bayer CropScience LP*, 2018 WL 3553413, at *9 (S.D. W. Va. July 24, 2018). Wyoming fails the injury-in-fact and redressability requirements for standing. At bottom, the State is asking the Court to issue an advisory opinion, not to resolve a concrete controversy.

### A.    Neither Claim Meets the Standards Necessary to Confer Standing.

Wyoming proposes two claims under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking declarations that are highly generalized and conjectural by their own terms:

> The State of Wyoming therefore asks the Court to declare that this inequitable treatment is unlawful and discriminatory and further declare that Defendants have a statutory obligation to treat Wyoming SPDI Banks equitably with Federal Reserve member institutions, and federally-regulated state-chartered and nationally-chartered banks[;]
>
> that, *to the extent* a statute or regulation of Wyoming is called into question and is put at issue between Plaintiff Custodia and the Defendants, that Wyoming's SPDI Bank statutes and regulations are not high risk but rather are protective of the financial system, the safety and soundness of SPDI Banks, and potential SPDI customers[;] [and]
>
> that Defendant Kansas City Fed's Summary Analysis is deficient and defective *insofar as* it mischaracterizes Wyoming SPDI Bank statutes and regulations.

ECF 140-4 ¶¶ 38, 42, 43 (emphasis added).

The familiar elements of standing include that the claimant "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016), *as revised* (May 24, 2016). Any claimed injury must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). Moreover, the injury must not be "the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)

7

(cleaned up). Wyoming's complaint does not demonstrate that it has a concrete and particularized injury traceable to Defendants' actions or that its claimed injury is redressable by the relief it seeks.

Take its second claim first: the State seeks a declaration that FRBKC's Summary Analysis is "deficient and defective" and "mischaracterizes" state law. ECF 140-4 ¶ 43. It asks for this declaration only "to the extent a statute or regulation of Wyoming is called into question and is put at issue between Plaintiff Custodia and the Defendants." *Id.* ¶ 42. "[M]ischaracteriz[ing]" a law is not a concrete injury as required to confer Article III standing. *Id.* ¶ 43; *Spokeo*, 578 U.S. at 339 (citing *Lujan*, 504 U.S. at 560). The State does not seek to set aside FRBKC's allegedly "deficient" letter; the State just criticizes the denial letter, while expressly disclaiming taking a position on whether Custodia's challenge to it is valid. ECF No. 140-4 ¶ 43. And as discussed above, no party has put Wyoming's statutes or regulations at issue in this action. Wyoming's alleged injury also ignores that the FRBKC letter it criticizes was a document sent only to Custodia that FRBKC has not released to the public. *See* ECF No. 125.

In its first claim, the State contends that it has suffered pecuniary harm because "the uncertainty created by Defendants' initial delay in reviewing and ultimate denial of Custodia's application has chilled the creation of SPDI Banks in Wyoming," with the result that the State "is not currently receiving" certain "supervisory fees" and that "the State of Wyoming, and its citizens," are missing out on purported "economic benefits from the operation of SPDI Banks within the state." ECF No. 140-4 ¶ 5. For that injury, the State seeks a declaration that SPDIs have been treated inequitably and must be treated fairly going forward.

Here again, the State's alleged harm is "too speculative" to confer standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2212 (2021). The State's allegations require many steps and contingent events to produce an injury: but for the allegedly inequitable review and denial of

Custodia's master account request, certain unknown third parties might have applied for SPDI charters, might have paid certain unidentified "supervisory fees" to Wyoming and, if they received charters, might have successfully operated, and, during their entirely theoretical operation, might have generated unidentified "economic benefits" for the State. And it bears repeating that the State does not challenge the denial of Custodia's account request, so it is unclear how the State could claim a cognizable injury stemming (however indirectly and speculatively) from it.

For similar reasons, these claimed injuries are neither traceable to Defendants' actions nor redressable by the State's requested relief. That is so because any alleged economic harm or benefit would be caused by third parties' independent business decisions to seek (or not to seek) SPDI charters. *See Lujan*, 504 U.S. at 560 (to be "fairly traceable to the challenged action of the defendant," injury may not be "the result of independent action of some third party not before the court" (cleaned up)); *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1305 (10th Cir. 2022). No court order could produce the State's desired "economic benefits": they would depend on whether unknown third parties to become sought SPDIs, whether the State found its standards met and issued charters, and whether any such new SPDI successfully began operations and generated any economic benefits for anyone. *Warth v. Seldin*, 422 U.S. 490, 506–07 (1975) (voiding challenged zoning ordinance would not redress claimed injury from lack of low-income housing).

### B.     The State Seeks an Advisory Opinion.

The Court lacks jurisdiction under Article III to issue a decision generally approving of Wyoming's banking statutes and regulatory regime. Federal "courts must adjudicate only 'concrete legal issues, presented in actual cases, not abstractions;'" advisory opinions are not permitted. *United States v. Muhtorov*, 20 F.4th 558, 607–08 (10th Cir. 2021) (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)). The dividing line between a legitimate declaratory judgment

and an advisory opinion "is the settling of some dispute which affects the behavior of *the defendant toward the plaintiff*." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010)).

The State asks the Court to declare that Defendants "have a statutory obligation to treat Wyoming SPDI Banks equitably with Federal Reserve member institutions" and that "Wyoming's SPDI bank statutes and regulations are not high risk but rather are protective of the financial system, the safety and soundness of SPDI Banks, and potential SPDI customers." ECF No. 140-4 ¶¶ 38, 42. These declarations are vague and untethered to Custodia's master account request—which, again, the State disclaims a position on—or any other actual account request. The State can appear as amicus to argue the virtues of its regulatory regime, but the Court lacks jurisdiction to issue such a generalized and abstract opinion.

## CONCLUSION

For the foregoing reasons, the Court should deny the State's motion to intervene.

10

Date: April 27, 2023.

Respectfully submitted,

  /s Billie LM Addleman
Billie LM Addleman, #6-3690
Erin E. Berry, #7-6063
HIRST APPLEGATE, LLP
Attorneys for Defendant FRBKC
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
eberry@hirstapplegate.com

Andrew Michaelson
Laura Harris
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com
lharris@kslaw.com

Jeffrey S. Bucholtz
Joshua N. Mitchell
Christine M. Carletta
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500
jbucholtz@kslaw.com
jmitchell@kslaw.com
ccarletta@kslaw.com

*Counsel for Defendant the*
*Federal Reserve Bank of Kansas City*

**CERTIFICATE OF SERVICE**

I certify that on the 27th day of April, 2023, a copy of the foregoing ***Defendant Federal Reserve Bank of Kansas City's Memorandum in Opposition to the State of Wyoming's Motion for Permission to Intervene and Leave to File Complaint as Intervenor*** was served upon all parties to this action via CM/ECF.

 s/ Shannon M. Ward
OF HIRST APPLEGATE, LLP
Attorneys for Defendant