

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

---

CUSTODIA BANK, INC.,

        Plaintiff,

    v.

FEDERAL RESERVE BOARD OF
GOVERNORS, and FEDERAL RESERVE
BANK OF KANSAS CITY,

        Defendants.

Case No. 22-CV-125-SWS

---

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT

---

This matter comes before the Court on the Defendants' motions to dismiss Plaintiff's amended complaint (ECF 124, 126). Plaintiff filed a consolidated opposition to both motions (ECF 135), former-Senator Patrick Toomey submitted an amicus brief (ECF 151), and Defendants replied (ECF 159, 160). The Court has also considered the amended amicus brief from the State of Wyoming (ECF 163). Having considered the parties' arguments, reviewed the record herein, and being otherwise fully advised, the Court will deny FRBKC's motion and will grant in part and deny in part the Board of Governors' motion.

## <u>BACKGROUND</u>

Plaintiff Custodia Bank is a Wyoming depository institution "specializing in payment services and crypto-asset custody." (Am. Compl. ¶ 3.) It operates under a

"Special Purpose Depository Institution" (SPDI) bank charter granted in October 2020. (*Id.* ¶¶ 8, 14.) "SPDI banks do not lend money; instead, they specialize in taking deposits, facilitating payments for customers, and other incidental services. SPDI banks were designed to provide a bridge connecting crypto-asset companies to the U.S. payments system (for example, to pay their staff in U.S. dollars)." (*Id.* ¶ 37.)

> SPDI banks were also designed to provide custody services for crypto-assets via their trust departments, analogous to the custody services provided by the trust departments of custody banks for the trillions in securities held by retirement plans and mutual funds. SPDI banks allow, for example, a customer to use his or her Bitcoin held in the trust department of an SPDI bank to make a direct transfer, a purchase, or an investment, rather than having to first convert the Bitcoin into U.S. dollars.

(*Id.*) As a state-chartered institution, SPDI banks are regulated by the Wyoming Division of Banking. (*Id.* ¶ 36.)

In October 2020, Custodia applied to Defendant Federal Reserve Bank of Kansas City (FRBKC) to obtain a Federal Reserve "master account" (Am. Compl. ¶ 21), which is "put simply, a bank account for banks" that "gives deposit institutions access to the Federal Reserve System's services, including its electronic payments system." *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052, 1053 (10th Cir. 2017) (Moritz, J.). "Without such access, a depository institution is nothing more than a vault." *Id.* at 1053 (Moritz, J.) (internal quotation marks omitted).

> The master account is both a record of financial transactions that reflects the financial rights and obligations of an account holder and the Reserve Bank with respect to each other, and the place where opening and closing balances are determined. For each institution, all credits and debits resulting from the use of Federal Reserve services at any Federal Reserve office are booked to this single master account at one Reserve Bank.

*Id.* at 1064 n.1 (Bacharach, J.).  A master account also enables its holder to access various services promised by 12 U.S.C. § 248a beyond deposit and withdrawal services, including wire transfer services, automated clearinghouse services, settlement services, securities safekeeping, and Federal Reserve float services.  *See Fourth Corner*, 861 F.3d at 1053 (Moritz, J.) (noting a master account "gives depository institutions access to the Federal Reserve System's services, including its electronic payments system").

Absent a master account, "Custodia cannot directly access the Federal Reserve and cannot offer the same custodial services for crypto-assets that incumbent banks like BNY Mellon presently provide." (Am. Compl. ¶ 2.) "Without a master account, if Custodia is able to operate at all, it is as a second-class citizen, relegated to dependency on and fealty to an intermediary bank [which does have a master account]." (*Id.*)

> Having a master account means that SPDI banks do not have to use an intermediary ["correspondent"] bank in order to access the Federal Reserve banking system for clearing U.S. dollar transactions. Eliminating the "middleman" cuts costs, lowers risk (including counterparty credit risk), and provides SPDI bank customers with more efficient and customizable payment services that can be programmed using software. It does not mean that SPDI banks hold crypto-assets within their master accounts. Custodia would hold no crypto-assets on its balance sheet or within its master account.

(*Id.* ¶ 38; *see also* ¶ 4.) Custodia would hold only "customer deposits of U.S. dollars in cash in a Federal Reserve master account," which would be separate from crypto-assets. (*Id.* ¶ 50.) "This means that Custodia will not be exposed to the volatility of crypto-asset prices because it will hold all crypto-assets in bailment on behalf of a customer in its trust department." (*Id.*) Custodia's own Federal Reserve master account is significantly important to its success as a business. *See Fourth Corner*, 861 F.3d at 1053 (Moritz, J.)

(noting that when plaintiff credit union was denied a master account by FRBKC in that case, it "effectively crippl[ed] the Credit Union's business operations").

In August 2021, Custodia also applied to Defendant Federal Reserve Board of Governors for membership in the Federal Reserve, which would subject Custodia to oversight and regulation by the Federal Reserve Board (in addition to the state's banking regulatory system). (Am. Compl. ¶ 47.) "It is not necessary to be a member bank in order to receive a master account …. Custodia, however, took this additional step to demonstrate to [FRBKC] and the Board its willingness to submit to full federal supervision and accountability." (*Id.*)

On January 27, 2023, the Board of Governors denied Custodia's application for membership into the Federal Reserve. (Am. Compl. ¶¶ 62-70.) A few hours later, FRBKC denied Custodia's master account application. (*Id.*) FRBKC's denial came 27 months after Custodia had applied for a master account, whereas the master account application itself notes that processing a master account application "may take 5-7 business days." (*Id.* Ex. 1 (ECF 121 p. 37).)

In its amended complaint, Custodia challenges the denial of its master account application. It contends that while the application was submitted to and the denial came from FRBKC, FRBKC "can exercise no discretion over Custodia's master account application without the approval or, at the very least, the nonobjection of the Board [of Governors]." (Am. Compl. ¶ 4.) Regardless of which entity is actually making the final decision, though, Custodia asserts Defendants "had no discretion to deny Custodia's master account application." (*Id.* ¶ 5.) Custodia argues that because it was legally-eligible for a

master account, "12 U.S.C. § 248a requires that Custodia be able to access all 'Federal Reserve bank services'" and therefore "Defendants had a non-discretionary duty to grant Custodia's master account application and not to discriminate against Custodia in its ability to access all bank services using that account." (*Id.*)

Custodia sets forth three causes of action in its amended complaint. Its first claim is asserted only against the Board of Governors under the Administrative Procedure Act (APA) and alleges the Board of Governors' agency action "in denying Custodia's master account application is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (Am. Compl. ¶ 84 (quoting 5 U.S.C. § 706(2)). Custodia's second claim is asserted against both Defendants and seeks a writ of mandamus compelling Defendants to "promptly rescind the denial of Custodia's master account application and instead grant the application so that Custodia can access Federal Reserve bank services." (*Id.* ¶ 87.) The final claim seeks a declaratory judgment "that the Board and/or [FRBKC] has a statutory obligation to provide Custodia with a master account to permit Custodia to use that master account to access Reserve Bank services in a non-discriminatory manner." (*Id.* ¶ 101.)

Defendants have moved to dismiss Custodia's amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6), asserting Custodia has failed to state any claim on which the Court can grant relief.

## STANDARD FOR 12(b)(6) MOTION TO DISMISS

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone

is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint's factual allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In the context of a 12(b)(6) motion to dismiss, this plausibility standard requires the plaintiff to plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the nonmoving party's well-pled factual allegations as true and construes them in the light most favorable to the nonmoving party, but it is not bound to accept an asserted legal conclusion as true. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991); *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

Much of the parties' arguments on these motions to dismiss the amended complaint track their arguments on the earlier motions to dismiss the original complaint. The Court's analysis will also track much of its prior order on those motions to dismiss (ECF 102), and the reader is encouraged to consult that order for additional discussion.

### Claim I - Administrative Procedure Act (APA)

Custodia's APA claim is asserted against only the Board of Governors, which is undisputedly a governmental agency. Custodia alleges the Board of Governors' action in denying the master account application was arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with the law, and the Board of Governors should be compelled to issue a master account.  (Am. Compl. ¶¶ 84-85.)

The Board of Governors' entire argument for dismissal is that Custodia's interpretation of 12 U.S.C. § 248a as mandating the issuance of master accounts to eligible institutions is legally erroneous.  (ECF 127 pp. 19-33.)  The Court already considered this argument it its prior order on dismissal and determined that Custodia has stated a plausible claim for relief under the APA, and that earlier discussion continues to apply in large part here.  The Court quotes its earlier order at length:

> The Defendants contend FRBKC has complete discretion to issue or deny a master account pursuant to 12 U.S.C. § 342, which says in part:
>
>> Any Federal reserve bank may receive from any of its member banks, or other depository institutions, ... deposits of current funds in lawful money, national-bank notes, Federal reserve notes, [etc.].
>
> Section 342 is located in Subchapter IX of Chapter 3 of Title 12 of the U.S.C.  Subchapter IX is titled, "Powers and Duties of Federal Reserve Banks."  To effectuate this deposit-taking function, Federal Reserve Banks use the master account to keep a record of each institution's debits and credits.  No provision of the Federal Reserve Act, including § 342, "imposes upon reserve banks any obligation to receive" deposits.  *Farmers' & Merchants' Bank of Monroe, N.C. v. Fed. Rsrv. Bank of Richmond, Va.*, 262 U.S. 649, 662 (1923).  "The act merely confers authority to do so."  *Id.*
>
> The Defendants contend the discretion to receive or reject deposits necessarily carries with [it] the discretion to grant or deny master accounts.  (ECF 51 p. 33; ECF 49 pp. 32-35.)  This argument presents as logical and may yet carry the day, but at least one judge of the Tenth Circuit has disagreed in a published opinion.
>
> In *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052 (10th Cir. 2017), Judge Bacharach determined 12 U.S.C. § 248a requires Federal Reserve Banks to issue master accounts to eligible depository institutions that apply.  That section (part of the Depository

Institutions Deregulation and Monetary Control Act of 1980), says in part:

> **(a)    Publication of Pricing Principles and Proposed Schedule of Fees; Effective Date of Schedule of Fees.**
> Not later than the first day of the sixth month after March 31, 1980, the Board shall publish for public comment a set of pricing principles in accordance with this section and a proposed schedule of fees based upon those principles for Federal Reserve bank services to depository institutions, and not later than the first day of the eighteenth month after March 31, 1980, the Board shall begin to put into effect a schedule of fees for such services which is based on those principles.
> …
> **(c)    Criteria applicable.**
> The schedule of fees prescribed pursuant to this section shall be based on the following principles:
>
> > …
> > (2)    All Federal Reserve bank services covered by the fee schedule shall be available to nonmember depository institutions and such services shall be priced at the same fee schedule applicable to member banks, except that nonmembers shall be subject to any other terms, including a requirement of balances sufficient for clearing purposes, that the Board may determine are applicable to member banks.

12 U.S.C. § 248a(a), (c)(2).  Judge Bacharach concluded the only way the "Federal Reserve bank services covered by the fee schedule" can be made available to nonmember depository institutions is by granting them a master account. *See Fourth Corner*, 861 F.3d at 1071 (Bacharach, J.) ("The plain text of § 248a(c)(2) indicates that nonmember depository institutions are entitled to purchase services from Federal Reserve Banks. To purchase these services, a master account is required.  Thus, nonmember depository institutions, such as Fourth Corner, are entitled to master accounts.").  In distinguishing § 342 from § 248a, Judge Bacharach opined:

> Section 342 addresses the types of monetary instruments that Federal Reserve Banks may receive for deposit or collection.... But § 342 does not address which institutions can access Federal Reserve services; that subject is governed instead by § 248a(c)(2), which establishes open access to Federal Reserve services for all nonmember depository institutions. As a result, § 342 does not affect Fourth Corner's entitlement to a master

account.

*Fourth Corner*, 861 F.3d at 1074. That is, he agreed § 342 affords to a Federal Reserve Bank the discretion to take or refuse deposits, but concluded such discretion was separate and apart from the issuance of master accounts. *See id.* at 1073-74 ("But this discretion does not encompass the issuance of master accounts."); *see also* Mot. Dismiss Hr'g Tr. 31:1-17 (ECF 101 p. 31) (counsel for the Board of Governors affirming the deposits of funds with Federal Reserve Banks and the services of § 248a are distinct), 57:7-58:9 (ECF 101 pp. 57-58) (counsel for FRBKC agreeing that § 342 allows FRBKC discretion over deposit-taking even after a master account is opened).

The Defendants spill much ink explaining why Judge Bacharach's opinion in *Fourth Corner* cannot win the day in this case. (ECF 49 pp. 37-41; ECF 51 pp. 33-36.) They point out *Fourth Corner* was a three-way split decision between the three-judge panel, and Judge Bacharach was effectively the odd man out as he voted to reverse the dismissal of the complaint while the other two judges voted to uphold the dismissal. *See Fourth Corner*, 861 F.3d at 1053. All true. Nonetheless, it's worth noting that the other two judges did not reach the merits of the § 248a versus § 342 statutory interpretation question (because they found dismissal warranted), so we don't currently know if they would have seen it the same as Judge Bacharach or not.

The Defendants also note that Section 248a is found in Subchapter II of Chapter 3 of Title 12, and Subchapter II is titled "Board of Governors of the Federal Reserve System." Indeed, § 248 begins, "The Board of Governors of the Federal Reserve System shall be authorized and empowered: [list of duties]." 12 U.S.C. § 248. Thus, Judge Bacharach appears convinced that Congress effectively mandated Federal Reserve Banks to automatically grant master accounts to all eligible nonmember institutions that apply in a Subchapter that sets forth the duties of a completely different entity (the Board of Governors). The Court agrees it appears a strange place for Congress to stick such a requirement that would seemingly govern the Federal Reserve Banks. Of course, the title of a statute, along with the title of the subchapter the statute resides in, might matter only if the Court first determines the statute is ambiguous, and even then it might matter only very little. "[U]nder the general rules of statutory interpretation, the title to a statutory provision is not part of the law itself, although it can be used to interpret an ambiguous statute." *Griffin v. Steeltek, Inc.*, 160 F.3d 591, 594 n.4 (10th Cir. 1998) (quoting *Johnston v. Commissioner of Internal Revenue*, 114 F.3d 145, 150 (10th Cir. 1997), and giving "little weight" to

the title of the Americans With Disabilities Act); *see Brotherhood of R. R. Trainmen v. Baltimore & O. R. Co.*, 331 U.S. 519, 529 (1947) ("For interpretative purposes, [statutory headings and titles] are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain."). Thus, the title of Subchapter II and the location of § 248a within the statutory code likely offer relatively little toward refuting Judge Bacharach's opinion.

To cut short what could become an unnecessarily long recap of the Defendants' objections to Judge Bacharach's opinion in *Fourth Corner*, the Court concludes Custodia has stated a plausible claim to compel legally-required action for two reasons. First, Judge Bacharach's opinion may plausibly be the law on this matter in this case. *See* Mot. Dismiss Hr'g Tr. 31:1-17 (ECF 101 p. 31) (counsel for the Board of Governors affirming the deposits of funds with a Federal Reserve Bank and the services of § 248a are distinct), 57:7-58:9 (ECF 101 pp. 57-58) (counsel for FRBKC agreeing that § 342 allows FRBKC discretion over deposit-taking even after a master account is opened).

Second, and more immediately significant, a full statutory interpretation of the matter is better left for another day. In this particular case, the facts alleged by Custodia could weigh heavily on the Court's analysis of whether Congress afforded FRBKC complete discretion (under § 342) or no discretion (under § 248a) in granting Custodia's master account application. For example, if discovery reveals the Board of Governors in fact inserted itself into FRBKC's consideration of Custodia's application, the level of discretion held by FRBKC under the law may matter little because it may be that FRBKC failed to exercise any such discretion (if, that is, the Board of Governors was pulling the puppet strings behind the scenes, as Custodia has plausibly suggested). Thus, because the development of facts underlying or refuting certain allegations may prove particularly relevant to any statutory interpretation of § 342 versus § 248, the Court will not undertake a complete analysis at this stage of the proceedings without further development of those facts.

(ECF 102 pp. 12-17.)

While several factual developments have occurred since the Court's earlier order, including the denial of Custodia's master account application, the Court remains of the opinion that a full statutory interpretation of the matter is more appropriate after further

development of important facts.  For example, Custodia applied to FRBKC for its master account and received its denial from FRBKC.  And while this lawsuit has been pending, the Board of Governors published and adopted guidelines for Federal Reserve Banks to use "in evaluating requests for master accounts."  Guidelines for Evaluating Account and Services Requests, 87 Fed. Reg. 51,099, 51,106 (Aug. 19, 2022).  If the decision to deny the master account was truly only that of FRBKC, then Custodia's Claim I must fail. Nonetheless, the alleged occurrence of certain events, and the timing of those events, plausibly suggests the Board of Governors had at least some hand in controlling the outcome of Custodia's master account application.  (*See, e.g.*, Am. Compl. ¶¶ 62-70 (alleging the denial of Custodia's master account application, the denial of its Federal Reserve membership application, and the White House's statement on risks of crypto-assets all occurred on the same date and all included similar language); *see also* ECF 102 pp. 7-8 (summarizing several factors making it "reasonable to infer" the Board of Governors involved itself into Custodia's master account application).)

Also since the Court's prior order on dismissal, Congress enacted 12 U.S.C. § 248c. The Board of Governors relies on this new statute in part to advance its statutory interpretation argument, but the Court is not convinced.  Section 248c requires the Board of Governors to create and publish a public database that identifies every entity currently with access to a Federal Reserve master account and every entity that has applied for a master account along with whether the request was approved, rejected, pending, or withdrawn.  12 U.S.C. § 248c(b).  The Board of Governors argues that because § 248c requires a public list of any "rejected" master account applications, whether to grant such

an application must be discretionary. (ECF 127 pp. 31-32.) The Court does not see it so cut-and-dried. It is public knowledge that master account applications have been "rejected" or denied for non-discretionary reasons in the past. For example, in *Fourth Corner*, the district court dismissed the credit union's lawsuit after determining FRBKC could not have issued a master account in that case because doing so would have aided the credit union in providing banking services to marijuana-related businesses, which would have violated federal drug laws. *Fourth Corner*, 861 F.3d at 1053-54 (Moritz, J.). Thus, at the time Congress passed § 248c, it was known that Federal Reserve Banks had "rejected" master account applications in the past, but § 248c cannot be read as Congress' imprimatur on Federal Reserve Banks holding carte blanche to grant or deny master account applications. (*See* ECF 151 pp. 12-14, 17-18.) Section 248c does not, expressly or impliedly, carry the statutory construction load the Board of Governors asserts it does.

In short, based mostly on Judge Bacharach's opinion in *Fourth Corner*, Custodia has asserted a plausible cause of action under the APA in Claim I against the Board of Governors. And determining the Board of Governors' actual conduct related to this lawsuit, if any, will help determine whether the claim might be successful. Consequently, the Board of Governors' request to dismiss Custodia's APA claim will be denied.

**Claim II - Compel Action under the Mandamus Act**

Custodia's second cause of action seeks a writ of mandamus compelling action from both Defendants under 28 U.S.C. § 1361, which provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

"Mandamus is the traditional writ designed to compel government officers to perform nondiscretionary duties." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1234 (10th Cir. 2005).

In considering whether Claim II plausibly alleges a claim for mandamus relief, the Court returns to its prior dismissal order, wherein it wrote the following:

In a mandamus action, the Court should

> measure the allegations in the complaint against the statutory and constitutional framework to determine whether the particular official actions complained of fall within the scope of the discretion which Congress accorded the administrators.... In other words, even in an area generally left to agency discretion, there may well exist statutory or regulatory standards delimiting the scope or manner in which such discretion can be exercised. In these situations, mandamus will lie when the standards have been ignored or violated.

*Carpet, Linoleum & Resilient Tile Layers, Loc. Union No. 419, Bhd. of Painters & Allied Trades, AFL-CIO v. Brown*, 656 F.2d 564, 566 (10th Cir. 1981) (quoting *Davis Associates, Inc. v. Sec., Dep't of Housing and Urban Development*, 498 F.2d 385, 389 & n.5 (1st Cir. 1974)).

> Under Judge Bacharach's view in *Fourth Corner*, Custodia has stated a claim of both unreasonable delay of a decision on its master account application and legal entitlement to a master account. Therefore, the Court finds Custodia's request for mandamus relief should not be dismissed. In short, "there may well exist statutory or regulatory standards delimiting the scope or manner in which" the Defendants may exercise their discretion (if any) over Custodia's master account application, and assuming the truth of Custodia's allegations, those standards may have been ignored or violated in this case. That is, applying Judge Bacharach's reasoning, Custodia has plausibly alleged the Defendants have "failed to discharge a duty owed to plaintiffs which Congress has directed them to perform." *Carpet, Linoleum & Resilient Tile Layers, etc. v. Brown*, 656 F.2d 564, 567 (10th Cir. 1981).

(ECF 102 p. 18.) The question of unreasonable delay is no longer at issue because the

master account application has since been denied, but if Judge Bacharach's (and Custodia's) interpretation of § 248a is correct, then granting a master account may be a nondiscretionary duty.

The Court deviates from its prior order, though, in determining that Custodia cannot state a claim for mandamus relief under the Mandamus Act against the Board of Governors. "To be eligible for mandamus relief [under § 1361], the petitioner must establish (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005) (citation omitted).  However, under 5 U.S.C. § 706(1), the APA permits Custodia to "compel agency action unlawfully withheld." Because there is no dispute the Board of Governors is an agency, the APA provides Custodia a means to its requested remedy if it prevails against the Board of Governors on administrative review.  "The statutory remedy provided by § 706(1) is an adequate remedy available to Plaintiff[] that precludes mandamus relief." *Tista v. Jaddou*, 577 F. Supp. 3d 1219, 1231 (D.N.M. 2021).

Thus, Custodia has stated a plausible claim for relief under the Mandamus Act, 28 U.S.C. § 1361, against FRBKC.  However, relief under the Mandamus Act is not available to Custodia against the Board of Governors because the APA provides an adequate remedy. Custodia's Mandamus Act claim will be dismissed as to the Board of Governors.

**Claim III - Declaratory Judgment**

In the final cause of action in its amended complaint, Custodia seeks a declaratory judgment holding "the Board and/or [FRBKC] has a statutory obligation to provide

Custodia with a master account and to permit Custodia to use that master account to access Reserve Bank services in a non-discriminatory manner." (Am. Compl. ¶ 101.) The Declaratory Judgment Act provides a remedy for valid federal causes of action and does not offer a separate cause of action. *See Nero v. Oklahoma*, No. 22-6121, 2022 WL 14423872, at *2 (10th Cir. Oct. 25, 2022) (unpublished) ("the Declaratory Judgment Act does not provide an independent federal cause of action") (citing *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671–74 (1950)). "To maintain an action for a declaratory judgment, then, [Custodia] must assert a valid federal cause of action—one that exists independent of any request for declaratory relief." *Nero*, 2002 WL 14423872, at *2. As the Court determined above Custodia has asserted a plausible claim under the APA against the Board of Governors and a plausible claim under the Mandamus Act against FRBKC, its request for a declaration of entitlement to a master account is valid.

Custodia's claim for declaratory judgment is not properly understood as a stand-alone cause of action, but it is a viable request for relief that will not be dismissed at this time.

## CONCLUSION AND ORDER

In Claim I, Custodia alleges a plausible claim for relief under the APA against the Board of Governors. In Claim II, Custodia alleges a plausible claim for relief under the Mandamus Act against FRBKC. Claim II does not state a viable claim for relief against the Board of Governors, and it will be dismissed as to that Defendant. Custodia's request for declaratory relief in Claim III is a proper remedy demand but is not appropriately considered a separate cause of action.

In hopes of avoiding a repeat of past confusion (*see* ECF 112), the Court here notes that Claim I will proceed against the Board of Governors as a judicial review action in conformity with the APA (and this Court's local rules), and the Board of Governors must prepare and file the administrative record. Claim II will proceed against FRBKC as a standard civil action in conformity with the Federal Rules of Civil Procedure (and this Court's local rules), with FRBKC now owing an answer to the amended complaint.

**IT IS THEREFORE ORDERED** that Defendant Federal Reserve Bank of Kansas City's Motion to Dismiss (ECF 124) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Board of Governors of the Federal Reserve System's Motion to Dismiss the Amended Complaint (ECF 126) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted solely as to Claim II, which is dismissed only as against the Board of Governors. The remainder of the motion to dismiss is denied.

**DATED**: June ___8th___, 2023.

Scott W. Skavdahl
United States District Court Judge