Mark Van Der Weide, General Counsel
Richard M. Ashton, Deputy General Counsel
Joshua P. Chadwick, Senior Special Counsel (*pro hac vice*)
Yvonne F. Mizusawa, Senior Counsel (*pro hac vice*)
Yonatan Gelblum, Senior Counsel (*pro hac vice*)
Katherine Pomeroy, Senior Counsel (*pro hac vice*)
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
(202) 263-4835
joshua.p.chadwick@frb.gov

*Counsel for Defendant Board of Governors of the*
*Federal Reserve System*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

|  |  |  |
|---|---|---|
| CUSTODIA BANK, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:22-cv-00125-SWS |
| BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM & FEDERAL RESERVE BANK OF KANSAS CITY, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S
OPPOSITION TO PLAINTIFF'S MOTION ON THE FEDERAL RESERVE BANK OF
KANSAS CITY'S INVOCATION OF THE DELIBERATIVE PROCESS PRIVILEGE**

Plaintiff Custodia Bank, Inc. ("Custodia") seeks to compel disclosure of deliberations that were part of decisionmaking processes relating to decisions that were (1) indisputably made by the Board of Governors of the Federal Reserve System ("Board"); (2) subject to the federal deliberative process privilege; and (3) irrelevant to the claims in Custodia's Amended Complaint. The Board respectfully requests that the motion be denied as a result.

*    *    *

By way of background, the deliberations that Custodia wants disclosed involve the Board's contemplation of prospective guidance to the twelve Federal Reserve Banks on (1) what might be relevant criteria in considering requests for Reserve Bank master accounts and services; and (2) how to develop a process that would facilitate adequate consideration of these criteria when Reserve Banks receive such requests. As a result of these processes, the Board ultimately decided to adopt its Guidelines for Evaluating Account and Services Requests ("Guidelines"), FRB-AR-000018-67, on August 15, 2022, and to issue S-Letter 2677 ("S-Letter"), FRB-AR-000014-17, which announced a Board policy concerning implementation of the Guidelines, on January 17, 2023.[1] The Board's authority to adopt and implement these Guidelines derives from its statutory authority "[t]o exercise general supervision" over Reserve Banks. 12 U.S.C. § 248(j); Guidelines at FRB-AR-000048. These decisions concern prospective general guidance, applicable to all twelve Federal Reserve Banks, with respect to any pending and future requests

---

[1] Notwithstanding plaintiff's baseless assertion that the S-Letter "gave the Board unprecedented control over master account" decisions, Mot'n at 1, 12, the letter is on its face a straightforward implementation of the expectation set forth in the Guidelines that "Reserve Banks engage in consultation with" the Board, "as appropriate, to support consistent implementation of the Account Access Guidelines." FRB-AR-000014-17, 000031. It appropriately "recogniz[es] the discretion granted to the Reserve Banks under section 13 of the Federal Reserve Act to grant or deny access requests . . . ." *Id.* at FRB-AR-000015. Unless otherwise indicated, the Board's use of "Guidelines" herein encompasses their implementation through the S-Letter.

1

for master accounts or services and reevaluations of existing accounts.[2]  Guidelines at FRB-AR-000019 n.2.  Although decisions regarding the Guidelines were made by the Board, the Board's decisionmaking process involved extensive consultation with staff at multiple Reserve Banks, including defendant Federal Reserve Bank of Kansas City ("FRBKC").  These Reserve Bank staff provided input, feedback, and suggestions concerning the pending guidance that the Board was contemplating.

Pursuant to the deliberative process privilege, the Board, as a federal agency, is entitled to protection from disclosure of these and similar deliberations, which concern decisions pending *before the Board*.  In contrast, the Board has not claimed the protections of the deliberative process privilege with respect to deliberations concerning the decision pending *before FRBKC* about whether to grant Custodia's request for a master account, which is the action that Custodia has challenged in this proceeding.  *See* Am. Compl. ¶ 2.  As a result, the Board understands that FRBKC has produced over 17,000 pages to Custodia in discovery concerning its deliberations on Custodia's master account request.  Custodia nonetheless demands disclosure of additional information concerning deliberations on *the Board*'s general guidance to Reserve Banks.

The Court should deny Custodia's invitation to compel disclosure of the deliberative information at issue.  That information falls squarely within the scope of the deliberative process privilege because it would reveal the decisionmaking process for the Board's Guidelines, as confirmed by Custodia's own assertions that it seeks to discover this information to uncover the focus and motivations of participants in the deliberations.  *E.g.*, Mot'n at 8, 13.  Because the

---

[2] Decisions concerning account access made since the Guidelines and S-Letter issued have also involved other institutions, two of which are currently litigating the issue.  Mem. Op. & Order, *Banco San Juan Internacional, Inc.* v. *Fed. Reserve Bank of N.Y.*, No. 23-CV-6414-JGK, 2023 WL 7111182, --- F. Supp. 3d ---- (S.D.N.Y. Oct. 24, 2023); Compl., *PayServices Bank v. Fed. Reserve Bank of San Francisco* (D. Idaho June 27, 2023) (No. 1:23-CV-00305-REP).

Board consulted with FRBKC staff (and other Reserve Banks) about decisions on the Guidelines that the Board would issue, the well-established consultant corollary to the privilege would protect the resulting deliberations in which FRBKC staff participated as part of the Board's consultative process.

Custodia has also failed to demonstrate a sufficient need for the information to override the privilege.  The Court has ruled that the relevant question is whether the Board controlled *FRBKC*'s decision on Custodia's request for a master account.  *E.g.*, Op. on Mot'ns to Dismiss, ECF No. 164 at 10 ("If the decision to deny the master account was truly that of FRBKC, then Custodia's Claim I must fail.").  To the extent the Guidelines and S-Letter are relevant to determining whether the Board exercised such control, such relevance stems from their contents and the manner in which they were implemented, rather than the process by which the documents were formulated.  Moreover, Custodia has received extensive evidence directly concerning FRBKC's decisionmaking process on Custodia's master account request, and thus has not shown a sufficient need for the deliberative information it seeks.  Lastly, Custodia's attempt to argue that circumstances warranting waiver of the privilege exist based on such commonplace occurrences as public disclosure of the resulting decision, which the Board could not have avoided, would render the privilege a nullity in virtually any situation.  Accordingly, the Court should deny the motion.[3]

---

[3] Custodia also complains repeatedly that FRBKC initially objected to deposition questions about the identity of participants in the process, Mot'n at 7, 11, but acknowledges that FRBKC withdrew these objections, allowing Custodia to obtain this information, *id.* at 8, and does not explain why this issue is relevant or entitles it to disclosure of other information.  Moreover, FRBKC's initial position was not a "misus[e]" of the privilege as Custodia claims, *id.* at 11, since a number of courts have held that the deliberative process privilege can shield the identities of participants in agency deliberations.  *E.g.*, *Aids Healthcare Found. v. Leavitt*, 256 F. App'x 954, 957 (9th Cir. 2007); *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980).

**ARGUMENT**

I.  **The Information Custodia Seeks is Protected By the Deliberative Process Privilege**

The information Custodia seeks, which aims to uncover the factors that were considered in the Board's decisionmaking, Mot'n at 8, 13, is privileged because its disclosure would be detrimental to future decisionmaking processes.  The deliberative process privilege protects "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975).  It "is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'"  *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)).  "To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure," *id.*, and thereby "protects agencies from being 'forced to operate in a fishbowl.'"  *Id.* (quoting *EPA v. Mink*, 410 U.S. 73, 87 (1973)).  The privilege prevents disclosures that would reveal the "give-and-take" of the government's decisionmaking process.  *Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Com.*, 907 F.2d 203, 208 (D.C. Cir. 1990); *Merit Energy Co. v. U.S. Dep't of Interior*, 180 F. Supp. 2d 1184, 1190 (D. Colo. 2001).  The showing an agency must make to assert the privilege is that the communications at issue are "predecisional," meaning they occurred "before the agency's final decision," and "deliberative," meaning that they "help[ed] the agency formulate its position." *Sierra Club,* 141 S. Ct. at 786.

Here, Custodia's own assertions demonstrate that the information it seeks falls squarely

within the scope of the deliberative process privilege.[4]  Custodia contends that it seeks

information that would permit assessment of "the extent to which Custodia's master account

application influenced the development of those new Board policies and procedures."  Mot'n at

8.  It claims an entitlement to question witnesses on whether "specific discussions with the Board

on Custodia or the Wyoming SPDI charter" occurred in connection with "the development of the

Guidelines and the S-Letter" and "whether the development of the Guidelines and the S-Letter

related to Custodia."  *Id.* at 11.  Custodia contends that it needs this evidence in order "to

ascertain whether Custodia (or Wyoming SPDIs more generally) motivated the Board to develop

its public Guidelines and non-public S-Letter."  *Id.* at 13.

 In sum, the motion seeks to uncover the extent to which concerns relating to Custodia

may have played a role in formulation of the Board's policies, based on unfounded assumptions

about the Board's "motivat[ion]" for developing these policies.  But even if such rank

speculation could be credited in any way,[5] the "subjective motivation for a decision" falls

squarely within the scope of the deliberative process privilege, *Ridenour v. Kaiser-Hill Co.*,

397 F.3d 925, 939 (10th Cir. 2005); *accord Coastal States Gas Corp. v. Dep't of Energy*, 617

---

[4] For this reason, Custodia has not made a showing that in-camera review is warranted.  Because
even in-camera review may potentially have a chilling effect on deliberations, it should not be
utilized as a matter of course.  *Mink*, 410 U.S. 73, 92-93 (1973) (In-camera review "need not be
automatic" in adjudicating disputes over the deliberative process privilege since "the very
purpose of the privilege, the encouragement of open expression of opinion as to governmental
policy[,] is somewhat impaired by a requirement to submit the evidence even (in camera).")
(citation omitted).

[5] As the decision in *Banco San Juan Internacional* makes clear, the Board's Guidelines and
accompanying implementation through the S-Letter are in no way limited to or focused on
Custodia (or FRBKC) as plaintiff implausibly suggests, and instead are policies of general
applicability.  *See* 2022 WL 7111182, at *2, *4 (noting that Federal Reserve Bank of New York
"consulted with the Board regarding its closure decision," consistent with the Board's Guidelines
and S-Letter that were issued under the Board's "general supervision authority over the
operations of the Federal reserve banks").

F.2d 854, 866 (D.C. Cir. 1980) (deliberative process privilege prevents disclosures "suggesting as agency position that which is as yet only a personal position" of participants in the deliberation), as does the extent that various factors animated predecisional deliberations. *See Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513-14 (D.C. Cir. 2011) (deliberative process privilege bars disclosure of "what issues are most relevant to the pre-decisional findings and recommendations"); *Poll v. U.S. Off. of Special Couns.*, No. 99-CV-4021, 2000 WL 14422, at *3 (10th Cir. Oct. 14, 1999) (denying disclosure that would reveal which facts an agency employee thought might be "significant" to an agency's decisionmaker); *Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 68 (D.C. Cir. 1974) (same); *New York Times Co. v. Dep't of Educ.*, No. 19-CV-693-LTS, 2023 WL 2267438, at *12 (S.D.N.Y. Feb. 28, 2023) (documents reflecting "topics of discussion" protected by the deliberative process privilege"); *Nat'l Pub. Radio, Inc. v. U.S. Int'l Dev. Fin. Corp.*, No. 22-CV-8307-ODW-JCX, 2021 WL 5507215, at *6 (C.D. Cal. Nov. 24, 2021) (meeting agendas indicating "topics to be discussed" are deliberative) (citation omitted); *Pub. Emps. for Env't Resp. v. Off. of Sci. & Tech. Pol'y*, 881 F. Supp. 2d 8, 17 (D.D.C. 2012) ("[I]nformation about the deliberative process, that reveals *what the agency is considering*, should still be exempt from disclosure . . . .") (emphasis added).  The information Custodia seeks—for the reasons stated by Custodia itself—by definition falls within the scope of the deliberative process privilege.

## II.    The Privilege Applies to Predecisional Deliberations at FRBKC Concerning the Board's Decisions

Custodia makes a series of irrelevant assertions to argue that the fact that the communications at issue involved staff from FRBKC (which, as Custodia notes, has contended that it is not an agency for purposes of the Administrative Procedure Act ("APA"), Mot'n at 10, ECF No. 51 at 13-16) somehow takes them out of the scope of the deliberative process privilege.

But the Guidelines and S-Letter were issued by the Board, which is undisputedly an agency under the APA, and the Board's consultation with the Reserve Bank while formulating this guidance makes the "consultant corollary" to the deliberative process privilege applicable and renders the deliberations intra-agency deliberations of the Board itself for purposes of the privilege.[6]

The consultant corollary to the deliberative process privilege provides that the "privilege may include materials generated by agency employees *as well as consultants*" who are not agency employees, and renders such materials "intraagency" communications. *Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1239, 1241 (10th Cir. 2009) (emphasis added). The corollary thus protects the deliberations of Reserve Bank staff that occur when the Board consults with a Reserve Bank with respect to a Board decision, and federal courts have repeatedly so found. *See, e.g.*, *McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 338 (D.C. Cir. 2011)

---

[6] Although the Board uses the "intra-agency" formulation common in the deliberative process case law, the limitation of the deliberative process privilege to "inter-agency or intra-agency" communications is a statutory limitation imposed by the Freedom of Information Act ("FOIA") on assertions of otherwise-applicable litigation privileges in response to FOIA requests and not a requirement of the privilege itself. *See* 5 U.S.C. § 552(b)(5). FOIA incorporates the APA's definition of "agency," *id.* § 552(f)(1), but is not the source of the deliberative process privilege and instead simply affirms that this and other common-law privileges, such as the attorney-client privilege, provide a basis for agencies to withhold "inter-agency or intra-agency memorandums or letters" in response to FOIA requests. *Id.* § 552(b)(5). In contrast, the common-law deliberative process *litigation privilege* predates FOIA, and applies more broadly to Executive Branch officials. *See, e.g.*, *In re Sealed Case*, 121 F.3d 729, 735 (D.C. Cir. 1997) (deliberative process privilege "protects the deliberations and decisionmaking process of executive officials generally" and is a common-law privilege predating FOIA). As a result, at least one federal court has held that, even in the FOIA context, communications involving non-agency Executive Branch actors are protected from disclosure if their release "will expose the pre-decisional and deliberative processes of the Executive Branch," regardless of agency status. *Jud. Watch, Inc. v. Dept' of Energy*, 412 F.3d 125, 131 (D.C. Cir. 2005); *id.* at 129 (refusing to "distinguish between the decision-making activities of an 'agency' subject to the FOIA and those of the President and his staff, who are not subject to the FOIA"); *cf.* Order on Mot'ns to Dismiss, ECF No. 102 at 25-32 (FRBKC's president is an Officer of the United States exercising executive power and appointed in conformity with the Appointments Clause).

("to aid in its deliberative process, the Board sought information from the [Federal Reserve Bank of New York] about the financial condition and exposures of institutions monitored by the FRBNY," which fell within the consultant corollary); *Greenspan v. Bd. of Governors of Fed. Reserve Sys.*, 643 F. Supp. 3d 176, 190-91 (D.D.C. 2022) (affirming deliberative process privilege where the "Board relied on Federal Reserve Bank staff and a former board employee as consultants in its deliberations before specific meetings, speeches, and press conferences"). Custodia itself admits that the record confirms that FRBKC "played a role in the development of" the Board guidance at issue (as did other Reserve Banks).  Mot'n at 1.  Custodia's arguments that the corollary does not apply disregard both the nature of the decisions at issue and the nature of the consultant corollary.

Custodia first argues that FRBKC's denial "that it has been under the Board's control regarding the Custodia master account decision" means it could not have been consulting *to* the Board "during the drafting and implementation of the Guidelines or the S-Letter."  Mot'n at 10. But there is no question, nor could there be, that *the Board* made the decisions concerning the Guidelines and S-Letter on which it consulted with FRBKC.  And regardless of the dispute in this case over the scope of FRBKC's Congressionally assigned authority over master accounts, whether or not FRBKC had final decisionmaking authority on that issue has no bearing on the predecisional nature of its recommendations concerning *Board* decisions that FRBKC indisputably lacked authority to make.  *See* 12 U.S.C. 12 U.S.C. § 248(j) (establishing Board general supervisory authority over Reserve Banks); *id.* § 248(k) (Board's rulemaking and policy functions not delegable to Reserve Banks); *cf. Casad v. U.S. Dep't of Health & Hum. Servs.*, 301 F.3d 1247, 1253 (10th Cir. 2002) (for purposes of the deliberative process privilege, scientific review group that could *decide* to terminate consideration of a grant application, but could only

*recommend* approval, acted in an advisory capacity when recommending approval of a grant) (citing *Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 188, n.25 (1975)).  And in the specific context of the Federal Reserve System, the Board may assert the deliberative process privilege and the consultant corollary to protect from disclosure Reserve Bank deliberations concerning a decision vested in the Board even when the Federal Reserve Act *also* vests authority to decide a related matter in the Reserve Bank.  *McKinley*, 647 F.3d at 336-38.

Second, Custodia insinuates that the consultant corollary does not apply to communications wholly within the Reserve Bank.  Mot'n at 8 (complaining about withholding of documents that are "completely internal to the Kansas City Fed and include no Board staff").  But, as its name suggests, the deliberative process privilege protects communications that constitute any "*part of a process* by which governmental decisions and policies are formulated." *NLRB*, 421 U.S. at 150 (emphasis added).  It thus protects communications *among* consultants outside the agency.  *Fox News Network, LLC v. U.S. Dep't of The Treasury*, 739 F. Supp. 2d 515, 540 (S.D.N.Y. 2010) (communications entirely between a Federal Reserve Bank consulting to the Treasury Department and private-sector firms advising the Reserve Bank fell under the consultant corollary) (citing *Tigue v. U.S. Dep't of Just.*, 312 F.3d 70, 80 (2d Cir. 2002)); *accord Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1279 (11th Cir. 2004) (privilege extends to deliberations by "lower level staff" that were not shared with the final decisionmaker); *Pub. Emps. for Env't Resp.*, 881 F. Supp. 2d at 17 ("[N]on-decision-makers can take part in the decision making process either by providing recommendations or by debating at a lower level about what course of action to recommend.").  Moreover, the Tenth Circuit has framed the consultant corollary in terms of whether the deliberative materials were "generated" by a consultant to the agency.  *Stewart*, 554 F.3d at

9

1239.  Therefore, deliberations among FRBKC staff in the process of consulting to the Board on the Board's agency decisions are protected from disclosure regardless of whether Board staff directly participated in such deliberations.

### III.      Custodia Fails to Make the Necessary Showing to Override the Privilege

Finally, Custodia fails to make the necessary showing of a "compelling need" that overcomes the privilege accorded to these deliberations.  *Rothschild v. United States*, No. 15-CV-030-J, 2016 WL 8856652, at *1 (D. Wyo. Mar. 16, 2016) (Rankin, J.); *see also Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (Fed. Cir. 2006) (same); *In re Sealed Case,* 121 F.3d 729, 737 (D.C. Cir. 1997) (requiring showing of "sufficient need" to overcome the deliberative process privilege).  In making this determination, courts consider the "(1) relevance of the evidence; (2) availability of other evidence; (3) Government's role in the litigation; and (4) extent to which disclosure would hinder frank and independent discussion regarding contemplative policies and decisions."  *Rothschild*, 2016 WL 8856652, at *3.  In arguing for disclosure under this test, Custodia fails to demonstrate a need that overrides the policies underlying the privilege, and its arguments for disclosure, taken to their logical end, would allow this exception to swallow the entire privilege.  Such rationales that have "no logical stopping point," and effectively render the privilege "meaningless," are not a proper basis for requiring disclosure.  *Hinckley v. United States*, 140 F.3d 277, 285 (D.C. Cir 1998); *accord United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) ("particularized" showing required to overcome deliberative process privilege).

First, Custodia has not shown that the information it seeks is "particularly relevant." *Hinckley*, 140 F.3d at 286.  Even if the impact of the Board's final Guidelines were at issue, the underlying communications and deliberations that led up to adoption of the Guidelines are not.

In other words, if Custodia fails to show that the Guidelines and S-Letter had the actual effect of allowing the Board to "exert control" over FRBKC's decision on Custodia's master account request as it claims, Mot'n at 4, it would not help Custodia to show that an intent to exert such control was an unrealized and unfulfilled motivation for these policies' adoption.  Custodia further argues that it needs the information "to obtain evidence about the Kansas City Fed's role in the development of the Guidelines or the S-Letter," Mot'n at 12, but the issue in this litigation concerns the nature of the *Board*'s role vis-à-vis *FRBKC*'s decision on Custodia's request, not FRBKC's role in deliberations over policies adopted by the Board.

Custodia has also not shown that it lacks sufficient evidence relevant to the issues in this litigation.  Defendants have not asserted the deliberative process privilege as to FRBKC's deliberations concerning the decision about Custodia's master account request and have produced over 17,000 pages of related material, so Custodia is free to explore the extent to which the Guidelines, S-Letter, and any other Board action impacted FRBKC's decision on Custodia's master account.  Courts have refused to order disclosure of deliberative materials where such "other evidence on . . . issues" in the litigation has been made available to a party.  *FTC v. Warner Comms. Inc.*, 742 F.2d 1156, 1161-62 (9th Cir. 1984); *see also United States v. Malik*, No. 15-CV-9092-CM-TJJ, 2016 WL 3167307, at *9 (D. Kan. June 7, 2016) (same).

Custodia also fails to show that disclosure will not "hinder frank and independent discussion regarding contemplative policies and decisions," Mot'n at 12, (citation omitted), seizing on language in a FOIA case that did not involve use of outside consultants and therefore focused on whether disclosure would impact frank discussions "within an agency," *Nat. Res. Def. Council v. EPA*, 954 F.3d 150, 158 (2d Cir. 2020).  Custodia argues that, since "the only agency at issue is the Board," disclosure of FRBKC's deliberations will not impact the openness

of the Board's future deliberations.  Mot'n at 13.  But the privilege protects the entire

deliberative *process*, *supra* at 9 (citing *NLRB*, 421 U.S. at 150).  Categorically denying

protection to deliberative communications as Custodia urges on the grounds that they were made

by consultants who are not Board employees would render the consultant corollary a nullity and

preclude the Board from seeking candid input from Reserve Bank staff (or other outside

consultants) on future decisions, thereby harming this process.  In any event, the consultant

corollary treats consultants' communications as "intraagency" materials, *Stewart*, 554 F.3d at

1241, and Custodia has not explained how disclosure of such communications would not hinder

openness when the Board consults with Reserve Bank staff in the future.

Custodia also makes the remarkable argument that "the Board's privacy interest in these

matters is minimal" because "the Guidelines were published in the Federal Register and the

Board filed the S-Letter as part of the public (not sealed) Administrative Record in this

litigation."  Mot'n at 13.  This argument disregards a fundamental distinction in the

jurisprudence between final decisions and the deliberations that precede them.  The policies

underlying the deliberative process privilege reflect concern about "the chilling effect that

accompanies the prospect of disclosure" of predecisional deliberations, which "does not apply, of

course, to documents that embody a final decision, because once a decision has been made, the

deliberations are done."  *Sierra Club*, 141 S. Ct. at 785-86.[7]  Custodia's argument would render

the deliberative process privilege a nullity by treating such disclosures of nondeliberative final

---

[7] Only when a final decision expressly adopts the reasoning expressed in underlying
deliberations is the privilege waived as to such deliberations, and a very clear showing must be
made that such adoption expressly occurred and was intended.  *Elec. Frontier Found. v. U.S.
Dep't of Just.*, 739 F.3d 1, 10 (D.C. Cir. 2014) (citing *Renegotiation Bd. v. Grumman Aircraft
Eng'g Corp.*, 421 U.S. 168, 184 (1975) and other authorities).

decisions—which agencies are typically required to disclose, as occurred here—as grounds for denying protection to the deliberations that preceded them.

Accordingly, the only applicable criterion remaining is the participation of government entities in this litigation, but courts have declined to override the privilege in litigation to which the government is a party absent a particularized showing of need that outweighs the public interest in protecting the deliberative process, which Custodia has failed to make. *E.g.*, *Farley*, 11 F.3d at 1389-91; *FTC v. Warner Comms. Inc.*, 742 F.2d at 1161-62; *Malik*, 2016 WL 3167307, at *9.

### CONCLUSION

For the foregoing reasons, the Board respectfully requests that the Court deny Custodia's motion.

Dated: November 7, 2023

Respectfully submitted,


  /s/ *Joshua P. Chadwick*
Mark Van Der Weide, General Counsel
Richard M. Ashton, Deputy General Counsel
Joshua P. Chadwick, Senior Special Counsel (*pro hac vice*)
Yvonne F. Mizusawa, Senior Counsel (*pro hac vice*)
Yonatan Gelblum, Senior Counsel (*pro hac vice*)
Katherine Pomeroy, Senior Counsel (*pro hac vice*)
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, D.C. 20551
(202) 263-4835
joshua.p.chadwick@frb.gov

*Counsel for Defendant Board of Governors of the Federal Reserve System*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2023, I electronically filed the foregoing using the court's CM/ECF system, which will send notification of such filing to all parties of record.

By:   /s/ *Joshua P. Chadwick*
Joshua P. Chadwick

*Counsel for Defendant Board of Governors*
*fsuof the Federal Reserve System*

14