# EXHIBIT K

# [PUBLIC VERSION]

CONFIDENTIAL * * * CONFIDENTIAL * * * CONFIDENTIAL

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
 2               FOR THE DISTRICT OF WYOMING
 3
 4    CUSTODIA BANK, INC.,
 5                Plaintiff,
 6    vs.                                No.
 7    FEDERAL RESERVE BOARD OF           22-cv-00125-SWS
 8    GOVERNORS and FEDERAL RESERVE
 9    BANK OF KANSAS CITY,
10                Defendants.
11
12
13
14
15
16
17         CONFIDENTIAL DEPOSITION OF JACKIE NUGENT, a
18    witness, taken on behalf of the Plaintiff before
19    Kelsey Robbins Schmalz, CSR No. 1571, CCR No. 1148,
20    RPR, pursuant to Notice on the 15th of November,
21    2023, at the offices of the Federal Reserve Bank of
22    Kansas City, 1 Memorial Drive, Kansas City, Missouri.
23
24
25
```

CONFIDENTIAL * * * CONFIDENTIAL * * * CONFIDENTIAL

Page 36

1    frame, had Custodia -- it was Avanti then, but
2    Custodia or Kraken, had they already been chartered,
3    to your knowledge, by the State of Wyoming?
4              MS. CARLETTA:  Objection.  Form.
5         A.   I can't recall when they were
6    chartered.
7    BY MR. ORTIZ:
8         Q.   So I guess I'm a little confused when
9    you said you were doing this just out of your own
10   curiosity.  Did people up the chain of command know
11   that you were participating with the Wyoming Banking
12   Commission on a scheduled call every two weeks to go
13   over their supervisory framework for SPDIs?
14        A.   Yes, they were aware.
15        Q.   And were they encouraging you to do
16   that?
17        A.   They did not discourage me.
18        Q.   I take it you were being open and
19   honest in your communications with representatives
20   from the State of Wyoming?
21        A.   Yes, given an informal feedback
22   relationship.
23        Q.   Were the representatives from the
24   State of Wyoming entitled to rely on what you
25   were telling them that were being stated in good

CONFIDENTIAL * * * CONFIDENTIAL * * * CONFIDENTIAL

Page 37

1    faith?
2         A.    Albert understood that our thoughts
3    were informal.
4         Q.    Are you telling me that you could say
5    things that weren't true on behalf of the Kansas City
6    Fed?
7              MS. CARLETTA:  Objection.  Form.
8    Misstates testimony.
9    BY MR. ORTIZ:
10        Q.    And informal thought, you still want
11   that to be accurate and honest, agree?
12             MS. CARLETTA:  Objection.  Form.
13        A.    I have a great deal of respect for our
14   colleagues at any federal or state agency, so I have
15   an interest in being professional.
16   BY MR. ORTIZ:
17        Q.    Did you find that you were impressed
18   with the statutory supervisory framework that the
19   Wyoming Banking Commission had put in place for the
20   SPDIs?
21             MS. CARLETTA:  Objection.  Form.
22        A.    Can you ask again?
23   BY MR. ORTIZ:
24        Q.    Sure.  Were you impressed with the
25   supervisory framework that Wyoming created for these

CONFIDENTIAL * * * CONFIDENTIAL * * * CONFIDENTIAL

Page 38

1   SPDI charters?
2                  MS. CARLETTA:  Same objection.
3          A.     I had appreciation for how they went
4   about developing the supervisory framework.  That did
5   not mean I didn't have questions or think that there
6   may be gaps.
7   BY MR. ORTIZ:
8          Q.     Did you give them advice on changes
9   that needed to be made or gaps that needed to be
10  filled as we're going through these months and months
11  of phone calls and interactions?
12                 MS. CARLETTA:  Objection.  Form.
13         A.     I shared my perspectives from my role
14  in examinations.
15  BY MR. ORTIZ:
16         Q.     And after you shared your perspective,
17  were there times that the Wyoming supervisory rules
18  or framework changed to incorporate your thoughts
19  from your perspective?
20         A.     I don't know.
21         Q.     Were there times, for instance, you
22  saw things that they had added based on comments you
23  had given them?
24                 MS. CARLETTA:  Objection.  Form.
25         A.     I don't know.

CONFIDENTIAL * * * CONFIDENTIAL * * * CONFIDENTIAL

Page 62

```
 1              A.      Yes.
 2              Q.      And you accepted that offer?
 3              A.      Yes.
 4              Q.      And you shared your thoughts with them
 5      about that -- what Promontory was doing?
 6                      MS. CARLETTA:  Objection.  Form.
 7              A.      We did not share our thoughts with
 8      them.
 9      BY MR. ORTIZ:
10              Q.      One way or another?
11                      MS. CARLETTA:  Objection.  Form.
12              A.      Correct.  We did not share our
13      thoughts with them.
14      BY MR. ORTIZ:
15              Q.      Did you have any follow-up meetings
16      with Promontory after this meeting?
17              A.      I can't recall.  We had an
18      introductory call.  I can't recall if we had a second
19      follow-up.
20              Q.      Did you form an impression one way or
21      another about their competency or sophistication
22      level after that meeting?
23              A.      Personal opinions.  The consultants
24      working on the manuals seemed to have relevant
25      backgrounds.
```

CONFIDENTIAL * * * CONFIDENTIAL * * * CONFIDENTIAL

Page 63

1    Q.    Any other impressions you formed?
2    A.    As I mentioned earlier, I personally
3    thought they took a thoughtful approach to developing
4    the framework.
5    Q.    Anything else?
6    A.    No.
7    Q.    All right.  Let me move to Page 18322,
8    and there is a date of July 8th, '20, and it says,
9    Christi.
10         Would that be Christi May-Oder?
11   A.    I believe so.
12   Q.    And this says, Regarding NTMA meeting.
13         Is that nontraditional master account?
14   A.    Yes.
15   Q.    Were you part of a committee, that
16   committee?
17   A.    No.
18   Q.    Did you go to those NTMA meetings?
19   A.    I went to internal Kansas City
20   meetings that were titled NTMA as well.
21   Q.    So how do I interpret this?  Is this
22   information -- where you put like Christi's name and
23   a date, is this information Christi is sharing with
24   you?
25   A.    This appears to me to be information