# EXHIBIT BN

# [PUBLIC VERSION]

```
 1    ----------------------------------------------------
                   ROUGH DRAFT DISCLAIMER
 2    ----------------------------------------------------
      We, the party working with rough draft
 3    transcripts, understand that if we choose to
      use the rough draft, that we are doing so with the
 4    understanding that the rough draft is an
      uncertified copy.
 5
      We further agree not to share, give, copy, scan,
 6    fax or in any way distribute this rough draft in
      any form (written or computerized) to any party.
 7    However, our own experts, co-counsel, and staff
      may have limited internal use of same with the
 8    understanding that we agree to destroy our
      rough draft and/or any computerized form,
 9    if any, and replace it with the final transcript
      upon its completion.
10
      Case:   Custodia Bank, Inc. vs. Federal Reserve
11            Board of Governors, et al.

12    Date:   December 14, 2023

13    Since this deposition is in rough draft form,
      please be aware that there will be a discrepancy
14    regarding page and line number when comparing the
      rough draft, rough draft disk, and the final
15    transcript.

16    Also please be aware that the uncertified rough
      draft transcript may contain untranslated steno,
17    reporter's note in double parentheses, misspelled
      proper names, incorrect or missing Q/A symbols or
18    punctuation, and/or nonsensical English word
      combinations.  All such entries will be correct on
19    the final, certified transcript.

20
      Court Reporter's Name:  Erick Thacker
21    Firm Name:  VERITEXT LEGAL SOLUTIONS

22
```

```
 1   Rough Draft Deposition of Peter Conti-Brown

 2   BY MR. MICHAELSON

 3       Q   Could you please state your name for

 4   the record?

 5       A   Peter Conti-Brown.

 6       Q   Okay.  And you understand that you're

 7   under oath today?

 8       A   I do.

 9       Q   And you understand that you're giving

10   expert testimony in connection with the case

11   brought by Custodia against the Board of

12   Governors and the Federal Reserve Bank of Kansas

13   City?

14       A   I do.

15       Q   Okay.  And in your -- and you've

16   submitted a report in this case as well as a

17   supplemental report, correct?

18       A   That's right.

19       Q   And in the reports when you refer to

20   the Fed or the Federal Reserve, you're referring

21   to the Federal Reserve System, including both the

22   Board of Governors and reserve banks, correct?
```

```
 9      typically express its -- its policies to the

10      public?

11           A    With speeches by its principals,

12      congressional testimony by its principals,

13      official documents by its -- by its staff and

14      principals.

15           Q    Any other ways?

16           A    There may be but not that I can think

17      of now.

18           Q    Okay.

19           A    Oh, in the -- I suppose in the meetings

20      and transcripts of its meetings that are

21      published sometimes on a lag.

22           Q    Okay.  Now, to be clear, it's your
```
↑Rough Draft - 88

```
 1      opinion that -- that the Federal Reserve did

 2      claim discretion over access to services prior to

 3      1980, correct?

 4           A    Yes.  That is my opinion.

 5           Q    And it's also your opinion that the

 6      Federal Reserve has claimed discretion over

 7      access to services after 2015, correct?

 8           A    That's correct.

 9           Q    So you're focused on just this period
```

```
10     from 1980 to 2015 when it is your opinion the
11     Federal Reserve did not claim access over -- it
12     claimed discretion over access to services?
13          A    Could you --
14               MR. SCARBOROUGH:  Objection to form.
15               THE WITNESS:  Could you repeat that
16     question?
17     BY MR. MICHAELSON
18          Q    Sure.  So it's your opinion that the
19     Federal Reserve did not claim discretion over
20     access to services from 1980 to 2015?
21          A    That's right.
22          Q    But that it did claim access to
```
⬆Rough Draft - 89

```
 1     services prior to 1980?
 2               MR. SCARBOROUGH:  You misspoke.
 3     BY MR. MICHAELSON
 4          Q    But it did claim discretion over access
 5     to services prior to 1980?
 6          A    That's right.
 7          Q    And it did claim discretion over access
 8     to services after 2015?
 9          A    That's right.
10          Q    But between 1980 and 2015, the Federal
```

```
 1    access request should consider whether the
 2    institution precents or creates risk to the
 3    reserve bank.
 4             Do you see that?
 5       A    Which -- which subpoint?  Sorry.
 6       Q    Principle No. 2 on page 36.
 7       A    I see that.  And is there a subpart
 8    that you're reading or just --
 9       Q    No, just principle No. 2.
10       A    Yeah.
11       Q    And it's your opinion that what
12    Congress intended with the Monetary Control Act
13    is that this consideration be handled by the
14    state banking authority?
15       A    No.  To be handled by the Federal
16    Reserve for member banks and for bank holding
17    companies and financial holding companies.  For
18    the FDIC for state, nonmember banks that were
19    member of the deposit insurance system and for
20    the comptroller of the currency and for bank
21    authorities for those few banks that were not
22    members of the Federal Reserve system and did not
```
⇧Rough Draft - 180

```
 1    participate in the deposit insurance system and
```

2    did not have a national charter.

3        Q    So this principle No. 2 here would be

4    inconsistent with congressional intent as applied

5    to an unsured state-chartered depository

6    institution that's not a member bank?

7        A    No, to be clear, the -- none of the

8    participants in the debates around the MCA that

9    I've been able to discern contemplated that

10   specific question.  The intent that I am

11   evaluating is the intent whether the Federal

12   Reserve would reclaim authority to impose

13   membership-like admission to its services to Fed

14   nonmember banks.  The intent of the MCA framers

15   was to remove that authority and that discretion

16   over fed nonmember banks.

17       Q    Is this principle No. 2 here,

18   consideration of the reserve bank, is it your

19   opinion that consideration by the Federal Reserve

20   of risk to a reserve bank is inconsistent with

21   the Federal Reserve's history and practice prior

22   to passage of the Monetary Control Act?

↟Rough Draft - 181


1        A    Not with respect to admission to Fed

2    membership, which both preceded and -- and

```
17   risk to the system, right?

18        A    Right.

19        Q    And it's your opinion that all these

20   banks pursuant to the MCA intent behind the MCA,

21   must get access to an account, right?

22        A    All legally-eligible depository
```
⬆Rough Draft - 271

```
 1   institutions, the intent of the framers of the

 2   MCA was to give them access on equal terms to

 3   Federal Reserve services yes.

 4        Q    And that once they have an account,

 5   you're not precluding the possibility that the

 6   Federal Reserve can conduct a risk assessment

 7   concerning each institution, right?

 8        A    That's -- it's correct that I'm

 9   asserting that the Federal Reserve's risk

10   assessments pursuant to regulation is consistent

11   with the Fed's practices after the passage of the

12   Monetary Control Act.

13        Q    But to the extent that they restricted

14   use of any service in perpetuity, that would be

15   inconsistent with the intent behind the monetary

16   control?  That's your opinion?

17             MR. SCARBOROUGH:  Objection.
```

```
          18            THE WITNESS:  My opinion is that the

          19      intent of the framers of the Monetary Control Act

          20      was not to give the Federal Reserve the authority

          21      to impose membership entrance standards for use

          22      of Federal Reserve services as it had done prior
```
⬆Rough Draft - 272

```
           1      to 1980 after the passage of that act.

           2            MR. MICHAELSON:  So the Narrow Bank is

           3      a state-chartered non-member bank.

           4        A     That's right.

           5        Q     Like Custodia, right?

           6        A     Chartered by the state of Connecticut

           7      where Custodia was chartered by --

           8        Q     Right.  But both are state-chartered

           9      non-member banks, right?

          10        A     That's right.

          11        Q     And so it's your opinion that the

          12      Federal Reserve -- that the intermediary control

          13      intent was to force the Federal Reserve to give

          14      entities like that access to services

          15      irrespective -- without the Federal Reserve being

          16      powered to conduct a risk assessment?

          17        A     My opinion is that the intent of the

          18      framers of the MCA was to require the Federal
```