# EXHIBIT CD

# [PUBLIC VERSION]

**CONFIDENTIAL TREATMENT REQUESTED**



March 8, 2023

Office of Inspector General
Federal Reserve Board of Governors
20th Street and Constitution Avenue N.W.
Washington, D.C.  20551

Dear Staff of the Office of Inspector General:

We submit the following 23 complaints for your review, pertaining to the application of Custodia Bank, Inc. ("Custodia") to become a state member bank, pursuant to the Office of Inspector General's mission to investigate violations of laws, rules or regulations, mismanagement, and abuse of authority by the Board of Governors (the "Board") of the Federal Reserve System ("System"). We believe the complaints listed herein involve violations of due process, law, regulation, and abuse of authority.

This letter is co-signed by Caitlin Long, CEO of Custodia, and Katie Cox, an independent advisor to Custodia. Ms. Cox is a retired Federal Reserve examiner who worked for the Federal Reserve System for 32 years, most recently as a manager in the Mergers and Acquisitions section at the Board of Governors in Washington, D.C., a section she was in for over 20 years before her retirement in 2020.

Ms. Cox notes that something went very wrong with the Federal Reserve System's handling of Custodia's proposal and that the decision-making process did not comport with the Federal Reserve's normal processes. It was not the Federal Reserve she knows, which was always balanced, methodical and respectful of applicants' due process.

We request that the Office of Inspector General intervene to delay the publication of the Board's pending 86-page order pertaining to the denial of the membership application of Custodia, which is scheduled for release on or about March 17, 2023, until your office has investigated the complaints herein and becomes satisfied that both the private and publication versions of the order (with redactions) meet the Federal Reserve's policies, procedures and due process requirements. The 86-page Custodia order is without precedent in the history of the Federal

1

**CONFIDENTIAL TREATMENT REQUESTED**

Reserve System for numerous reasons, as we explain in this letter – for example, it is 41% longer than the longest order of the Board dating back to at least 2014 (which includes 200 Board orders), it contains four times the normal quantity of confidential information contained in a standard Board order, it is 14 times longer than any precedent denial order (dating to December 1996), and there have been zero instances of an order released after the press release date since 2014 (as is the case with Custodia). We believe much of the 86-page order's content is arbitrary, capricious and potentially even retaliatory and discriminatory, and its publication in the absence of due process will harm Custodia's business prospects of operating as a state-chartered bank via a correspondent bank, will harm its employee retention and will harm its reputation with its prospective customers and investors.

Custodia's membership application presented novel issues for the Federal Reserve System because its business plan involves bridging digital asset technology with traditional banking, and doing so in a safe and sound way while avoiding the very liquidity risk problems faced by banks that serve the digital asset sector today.[1] However, the novel nature of Custodia's proposal does not alleviate the Board's obligation to provide Custodia with due process. Just to have its membership application processed in the first place, Custodia had to sue – specifically, the Board did not begin processing Custodia's membership application until after Custodia filed a lawsuit for undue delay in its master account application in June 2022 (which was ten months after Custodia initially filed its application to become a state member bank in August 2021 and 19 months after it filed its master account application). This lag time does not comport with the normal process for either application. In the meantime, the Board has permitted incumbent banks like BNY Mellon to provide custody services for digital assets.

This letter details a litany of irregular Board actions pertaining to Custodia – for example, a record-fast denial after an applicant declined to withdraw an application, a Board order crammed with a record amount of confidential business plan and prejudicial confidential supervisory information, a refusal to consider a revised business plan, a hastily-drafted policy statement cited as a reason to deny an application despite the policy not being enacted yet, press leaks designed to pressure an applicant to withdraw, a preordained Board vote orchestrated in coordination with the White House and completed within hours during FOMC blackout week, and numerous other breaks from standard procedure. The process was never fair because the result was preordained, and certain procedures that are customarily extended to *de novo* applicants were not extended to Custodia. All of these indicate that Custodia was thrown under the proverbial bus for reasons unrelated to Custodia's application.

---

[1] Custodia holds a Wyoming special-purpose depository institution ("SPDI") charter. The State of Wyoming and FRBKC held more than 100 meetings about the design of the SPDI charter, and FRBKC provided input into Wyoming's comprehensive regulatory framework, as did Promontory Financial Group. *See* https://www.wsj.com/articles/the-fed-battles-wyoming-cryptocurrency-powell-brainard-bitcoin-digital-assets-spdi-fintech-11638308314.

CONFIDENTIAL                                                                                                          Custodia-00010269

BACKGROUND

Custodia is a Cheyenne, Wyoming-based *de novo* bank that is not yet accepting external customer deposits. Custodia received its bank charter pursuant to a 7-0 vote of the Wyoming State Banking Board in October 2020. It immediately applied for a master account at the Federal Reserve Bank of Kansas City ("FRBKC") and subsequently applied to become a state member bank in August 2021. In June 2022, Custodia filed suit against the Board of Governors and FRBKC for improper delay pertaining to its master account application. Custodia underwent a pre-membership examination by the FRBKC in September 2022 and received an exam findings letter dated October 21, 2022. Regarding the exam findings, the examiners-in-charge notified Custodia that "everything is addressable." The Board, FRBKC and Custodia were working toward a follow-up examination until something abruptly changed in January 2023. On January 23, 2023, System staff notified Custodia that, if it did not withdraw its membership application, staff would recommend denial.

On January 25-27, 2023, the following events occurred:
- The White House and Board staff leaked to multiple reporters on or about January 25 that Custodia's pending membership application would imminently be denied by the Board of Governors, and reporters began calling Custodia for comment.
- During the afternoon of January 25, amid the press telling Custodia that the Board denial vote was preordained, Custodia's board of directors met to consider whether to withdraw its membership application.
- At 1:11pmET on January 26, a reporter said the following to Custodia in an email:
    *"I was told that the several financial institutions that have de novo banking licenses related to crypto in process with the Fed or OCC have received calls within the last 48 hours saying they have to pull their applications for various reasons."*
- At 4:54pmET on January 26, Custodia emailed its decision in a letter to Mark Van Der Weide, General Counsel of the Board of Governors, declining to withdraw.
- Within hours of Custodia sending that letter to Mr. Van Der Weide on January 26 at 4:54pmET, a reporter knew the contents of the letter and relayed them back to Custodia during a conversation with Custodia's press representative.
- On the morning of January 27, reporters continued to aggressively pursue a comment from Custodia.
- At 10:57amET on January 27, Custodia's outside counsel received an email from Board Legal (Asad Kudiya, Assistant General Counsel) notifying that the Board voted to deny Custodia's application.
- At 11:01amET on January 27, Bloomberg published its [story](#) exactly 4 minutes after Mr. Kudiya notified Custodia of the Board's denial vote. The Bloomberg reporter told Custodia that, by then, Bloomberg had received multiple confirmations that the Board had actually voted to deny Custodia's application minutes before, so Bloomberg had finally received the requisite confirmations of the leak and therefore was finally cleared to publish the story.

3

**CONFIDENTIAL TREATMENT REQUESTED**

(Custodia subsequently provided a comment, which Bloomberg added to the updated version of its story published at 1:35pmET.)
- Mr. Kudiya attached the 86-page order to his email notifying Custodia of the Board's denial.
- With precision timing, the following 5 events then occurred on January 27:
    1. 11:30amET:   The White House released a new crypto policy statement
    2. 11:30amET:   The Board of Governors released a new crypto policy statement
    3. 11:30amET:   The Board of Governors announced the denial of Custodia's membership application
    4. 2:00pmET:    FRBKC notified Custodia that it denied Custodia's master account application
    5. 4:35pmET:    The Board of Governors and FRBKC jointly moved to dismiss Custodia's lawsuit

COMPLAINTS

Incorporating by reference the above facts, Custodia submits the following 23 complaints for your consideration. The complaints are presented in chronological order. Please note that some of the most important complaints are recent and are therefore toward the end of the list:

1. Custodia's membership application was filed in August 2021; however, the Kansas City Reserve Bank did not acknowledge receipt of Custodia's membership application until March 2022, did not begin processing its application until June 2022, and did not begin its pre-membership examination until September 2022. This lag time does not comport with the normal process for a membership application.

2. Notice of Custodia's initial membership application was not published in the Federal Reserve's H.2 report, which lists all applications and notices that have been filed with the Federal Reserve System. Despite Ms. Cox's repeated verbal inquiries over months to System staff about the lack of publication of Custodia's membership application in the H.2 report, System staff continued to indicate that they would look into the matter. In the end, no H.2 publication was made until after the Board vote occurred, which means the public was never afforded proper notice. This is a substantial break from Federal Reserve procedure.

3. The Federal Reserve violated its own guidance, *SR 20-16 Supervision of De Novo State Member Banks*, which instructs Federal Reserve Banks to conduct a targeted examination of a *de novo* bank seeking to become a state member bank within the first six months following the *de novo's* formation, which we interpreted to mean when the *de novo* is

4

operational (the language in the guidance is not precise).[2] Under the SR 20-16 guidance, the Federal Reserve System relies on the state bank chartering authority's examination of a *de novo* bank, so that Federal Reserve examiners do not 'reinvent the wheel.' The Federal Reserve's first examination may be a targeted examination – not a full-scope examination – and should focus on the bank's risk management process. The guidance also states: *"Examiners should also review the de novo's <u>operating</u> results for consistency with its projections and any business and <u>operating</u> plans submitted in connection with its membership application"* (emphasis added). The Federal Reserve did not follow this guidance in multiple respects regarding Custodia:

- The Federal Reserve's examination of Custodia was not targeted. It was instead full-scope.
- The Federal Reserve's full-scope examination of Custodia was not required until one year after the bank commenced operations, but the Federal Reserve conducted a full-scope examination of Custodia before it commenced operations.
- Consequently, the Federal Reserve was unable to compare Custodia's <u>operating</u> results for consistency with its projections, as the guidance explicitly requires.
- The Federal Reserve's examination did not rely on the Wyoming Division of Banking's charter examination findings.
- Evidence of 'scope creep' exists in multiple instances of the Federal Reserve's October 21, 2022 exam findings letter, whose actual scope went well beyond the initial scope of the exam. Here is one example: *"In general, overall policies and procedures are limited in detail and are not sufficiently tailored to Custodia's <u>unique business model and planned activities</u>"* (emphasis added). Planned activities were expressly excluded from the exam scope as defined in the Day 1 letter, which was limited to *"products and services that will be in place when operations commence, or soon thereafter."* The same is true for the reference to "unique business model" – there is nothing unique about Custodia's initial launch products (Fedwire and ACH).

Indeed, Federal Reserve System staff themselves were uncertain before the exam whether they had the regulatory authority to conduct the exam they conducted on Custodia, the results of which Board staff cited in the 86-page order denying Custodia's membership application. Initially, in July/August 2022, there was confusion among System staff about whether the pre-membership exam for Custodia would be a full-fledged exam or merely a "visitation" – because membership applicants are not yet Federal Reserve-supervised institutions, so there was an open question whether the Federal Reserve even had the regulatory authority to conduct an actual exam on a non-operating bank. Then, System staff decided the exam would be an "exam-lite" (the examiner's words) – staff informed Custodia that it would not be issuing a written exam letter or assigning a management

---

[2] FR 2083, *Application to the Board of Governors of the Federal Reserve System for Membership in the Federal Reserve System*, applies to a "newly organizing bank that seeks to become a state member bank." https://www.federalreserve.gov/apps/reportingforms/Download/DownloadAttachment?guid=a7feb68a-d198-4f32-b34e-d96506da3cf7. A link to SR 20-16, *Supervision of De Novo State Member Banks* (which contains the imprecise language) is here:
https://www.federalreserve.gov/supervisionreg/srletters/SR2016.htm.

**CONFIDENTIAL TREATMENT REQUESTED**

rating, and that the exam would be limited to launch products only (Fedwire and ACH, as noted in the Day 1 letter sent to Custodia on August 19, 2022). Then, ultimately, the exam evolved into a full-scope exam (later expanded during the exam to cover Custodia's entire 3-year product roadmap), and System staff changed course – deciding last-minute to issue exam feedback in writing, which FRBKC delivered to Custodia on October 21, 2022.

Nonetheless, Custodia cooperated fully and in good faith with the exam. Custodia relied upon System staff's representation that it would be afforded a follow-up exam, as noted below, so it had no reason to object before the exam occurred or to appeal the exam findings via the ombudsman process, as separately noted below.

4. By broadening the exam scope as noted above, the Federal Reserve subjected Custodia to a higher standard than it uses to review other *de novo* bank applicants: By judging Custodia against the expanded exam scope of a fully-operational bank, the Federal Reserve did not allow for a ramp-up period typically accorded to *de novo* banks. The statutory factors for membership, which are provided in the Federal Reserve's Regulation H, do not require that banks be fully operational before attaining membership. Yet, by expanding the exam scope for Custodia to include its full three-year product development roadmap upfront, the Fed functionally imposed a standard that strayed outside the Federal Reserve Act – in essence, requiring that Custodia be fully operational with all products and services on its roadmap before becoming a member bank.

5. Following Custodia's September 2022 exam, the FRBKC examiner-in-charge told Custodia multiple times that "everything is addressable" in relation to its exam findings (reading from a script). Additionally, before giving feedback, the lead BSA/AML examiner said "all the things we will mention are achievable." At the time, FRBKC staff confirmed to Ms. Long and Board staff separately confirmed to Ms. Cox that there was no inclination among System staff to deny Custodia's application after the examination. The examiner-in-charge agreed with Ms. Long's interpretation that the examination result in October 2022 was "a not yet, but not a no."

Then, on January 27, 2023 the answer changed to a "no" and the Board's 86-page order portrayed the September 2022 examination findings as insurmountable – painting Custodia's examination as a failure on every front. System staff admitted that they did not consider any new information in the meantime, so it is not clear why the result changed from a "not yet" after the examination to a "no" months later. The change to "no" begs credulity, in part because the Wyoming Division of Banking (Custodia's regulator) also conducted an on-site examination of Custodia in August/September. Both the Wyoming Division of Banking and an independent consultant determined Custodia was ready to start taking external deposits last Fall (and the Wyoming Division of Banking granted Custodia a certificate of authority to operate on September 12, 2022).

6

Something changed at the Federal Reserve that was unrelated to Custodia or its September 2022 examination – because, until January 2023, Custodia was on good terms and making progress. Custodia was given no indication that anything was amiss until January 23, 2023.

If the Federal Reserve's answer is "no" for policy reasons, then the Federal Reserve should say that instead of publishing an order that inaccurately impugns Custodia as unsafe and unsound and that will prejudice Custodia's business prospects operating as a state-chartered bank independent of its status with the Federal Reserve.

6. The "Day 1 letter" for Custodia's exam was dated August 19, 2022, and the examination was based on information as of that date. System staff admitted in the 86-page order that it did not consider the updated information Custodia submitted after that date (which was voluminous). This means the 86-page order was based on outdated information that was six months old in many cases – and six months is an epoch for a *de novo* bank finalizing its policies, procedures and risk management for the first time. At the time, Custodia did not object to the decision made by the examiner-in-charge not to review Custodia's updated information piecemeal as Custodia was regularly submitting it because, as noted in the next paragraph, all parties involved with Custodia's application expected there to be a follow-up examination that would incorporate all the updated information – but that second exam never happened. Instead, the 86-page order was drafted to paint Custodia in the worst possible light and without acknowledging the conclusions were based on outdated information. It is irregular for the Federal Reserve to base a Board decision on information that was so outdated, particularly for a *de novo* bank whose documentation rapidly improves.

7. System staff indicated in October 2022 that Custodia would be given a customary follow-up examination. *De novo* membership applicants often do not achieve approval for membership on their first examination, and they customarily receive at least a second examination. Custodia was afforded only one examination and that examination was conducted before Custodia was operational (in violation of Federal Reserve guidance, as noted above). Again, all this is a break with standard Federal Reserve practice.

8. Had Custodia been forewarned in October 2022 that it would not be afforded a second examination as discussed above, Custodia would have appealed the examination findings at the time (since appeals must be filed within 30 days from the receipt of examination results). But the 30-day window had long closed by the time System staff notified Custodia in January 2023 it would not receive a follow-up examination. Again, this does not comport with standard Federal Reserve practice and with an applicant's due process rights.

9. In good faith, Custodia used significant resources to provide complete responses and a remediation plan for all examination findings in December 2022. System staff had

committed in writing to Custodia on October 21, 2022 that "...*these remediation efforts will subsequently be assessed by Reserve Bank staff at a future date...*," but that never happened. Custodia's remediation efforts were never assessed by Reserve Bank staff, as promised in writing to Custodia.

10. System staff scheduled a call for January 23, 2023 but did not inform Custodia what would be discussed during the call – so Custodia, as normal, invited its key personnel to join. Unexpectedly and without any warning, Custodia was informed that Board staff would be recommending denial of Custodia's membership application and asked Custodia to respond within 48 hours as to whether it would withdraw its membership application. Ms. Cox, who was in the Mergers and Acquisitions Section of the Board for over 20 years and has made countless calls of this nature, notes that such calls are typically conducted with only the applicant's counsel and top management, and that bank employees are not involved in such detrimental discussions. This was a significant break with standard Federal Reserve practice and created an employee retention challenge for Custodia.

11. Further, Ms. Cox notes that the Federal Reserve typically gives applicants a full calendar week to make the important decision whether to withdraw a proposal. Mr. Kudiya, on January 23, initially gave Custodia only 48 hours. Custodia needed to convene an emergency board meeting and requested an additional week. However, Mr. Kudiya provided Custodia with only an additional 24 hours. It is now clear why Board staff was rushing – as discussed in the facts above, a precision-orchestrated series of announcements with the White House was on tap for January 27, 2023.

12. The Federal Reserve violated its policies pertaining to confidential business information and confidential supervisory information, which do not permit leaks to reporters (particularly involving confidential supervisory matters), but someone at the Federal Reserve did use press leaks to pressure Custodia. In addition to the facts disclosed above, reporters revealed several leaked things to Custodia in multiple conversations between January 25-27, including that the Board's forthcoming vote to deny Custodia's application would be a foregone conclusion and they implied that the White House was involved. The facts surrounding these press leaks support the conclusion that the outcome of Custodia's application was preordained.

13. On January 26, 2023, as noted above, Custodia received an email from a reporter who notified Custodia that all pending applicants at both the Fed and OCC with digital asset components to their business plans were simultaneously being asked to withdraw their applications. This is *prima facie* evidence that Custodia's application was not considered on its own merits, and was instead thrown into a much broader, coordinated effort (into which the Board's 86-page order may be viewed as "back-papering the file" by revising history to make it appear that Custodia's exam resulted in a "no" answer, which it did not).

8

14. White House involvement in a Federal Reserve Board vote on an application, which the leaks to reporters portrayed as preordained, is highly irregular. In addition to reporters implying that the White House was involved, Custodia was subsequently contacted by a Biden Administration insider who independently confirmed that the White House was involved. The insider provided the name of a person at the White House who allegedly was involved: Bharat Ramamurti, Deputy Director for the National Economic Council. Please note, however, that Custodia has no way to confirm the veracity of Mr. Ramamurti's alleged involvement and is providing you with his name in good faith to potentially assist your investigation. No one at Custodia has ever met Mr. Ramamurti.

    Ms. Cox notes that, during her 32-year Federal Reserve System career, the Federal Reserve System has operated as an independent agency and has resisted any White House influence. Staff would do its best to make fair and balanced presentations to the Governors in order for decisions to be made in a thoughtful and informed manner. Ms. Cox observes that something has gone terribly wrong in the review of Custodia's application, whereby Custodia has not been given due process and it appears that, based upon the events described above, political pressure pushed the Board to make a hasty and poorly informed decision.

15. On January 27, 2023, in an unprecedentedly quick fashion – 17 hours after Custodia notified Mr. Van Der Weide that it declined to withdraw the application – the Board voted to deny Custodia's membership. From Ms. Cox's experience, that is record time and it condensed a process that normally takes weeks into one that took 17 hours (i.e., from 4:54pmET on January 26 to 10:57amET on January 27, based on email records). Normally, for a proposal that staff intends to take to the Board for denial, Board staff, at minimum, meet with the Committee on Supervision and Regulation to get its consent to move the proposal forward for denial. If the Committee supports a denial recommendation, Board staff then complete a "Board package" that includes recommendation memos from certain divisions of the Board and the Legal Division's draft order and send that package to the Secretary of the Board. The Secretary's office then releases the package via email to the Governors to vote on via email. The Governors are typically given at least three business days to review the documents, request changes to the draft order, and cast their votes. The votes are tabulated by the Secretary's office usually by noon and the Legal Division finalizes and publishes the order on the same day of the finalized vote. This process can take several weeks to complete. In Custodia's case, the process spanned only hours.

16. The Board's Custodia vote occurred during the "blackout week," the week before the Federal Open Market Committee ("FOMC") meeting held on January 31 and February 1. During blackout weeks, Board staff is instructed not to communicate with Board members regarding matters not related to FOMC matters. That the Board would break with its long-standing "blackout" procedure in order to coordinate the January 27 announcements with the White House's announcement is irregular.

9

17. In their haste to complete the orchestrated series of announcements, the Board and FRBKC neglected to provide Custodia its statutory right to request Board reconsideration of its membership denial within 15 days of the Board's decision, pursuant to 12 CFR part 262.3(k). Instead, FRBKC denied Custodia's master account application within hours of the Board's denial of its membership application, and before Custodia had the opportunity to exercise its statutory right to request reconsideration. The hasty FRBKC action was a violation of Custodia's due process and the statutory protection it was due.

18. On January 27, 2023, Mr. Kudiya provided Custodia a copy of the Board's 86-page order denying its membership application (an order that has not yet been published). In reviewing the last 200 Board actions on proposals on the Board's website, dating back to 2014, Custodia was unable to find a single instance where the final order was not released simultaneously with the Board action. Moreover, the average length of a Board order is 19.6 pages. Custodia's 86-page order would be 41% longer than the longest published by the Board based upon our review of the last 200 Board actions, since the longest order published to date was 61 pages (excluding 19 pages of appendices). Our review also found zero instances of an attached order released after the press release date. Custodia's order is far out of the norm of standard Federal Reserve practice.

19. Custodia could find no other example of a Board order containing remotely the same quantity of disclosures of Custodia's confidential business plan and confidential supervisory information – Custodia estimates that the 86-page order contains four times greater confidential information than the next longest order it could find, based on public information. Custodia objected to the extensive publication of its confidential business information and noted that some of the confidential supervisory information contained in the 86-page order was not factually correct. Mr. Kudiya later confirmed that the Board has no plans to correct the factual inaccuracies, one of which – that Custodia had already spent half of the capital it raised on formation expenses – was not only wrong because it was based on outdated information that neglected to reflect Custodia's October 2022 capital raise, but it was also prejudicial to Custodia by casting aspersions on its expense management practices. The order is also filled with misleading statements and omissions, such as: "Custodia is not seeking deposit insurance from the Federal Deposit Insurance Corporation ("FDIC")." Custodia did seek FDIC insurance but it was not available to Custodia. Had it been available, Custodia would have obtained it – and System staff knew this. Such a material omission from the order, and the inclusion of a misleading statement instead, paints Custodia as trying to avoid federal regulation, when the opposite is true.

Custodia requested that significant amounts of confidential information be redacted from the order – again, Custodia plans to operate as a state-chartered bank – however, Board Legal rejected the vast majority of Custodia's requests for confidential treatment. Mr. Kudiya further indicated to Custodia's outside counsel that the Board will make no

10

redactions of its own. So, the Board plans to publish virtually the entire 86-page order, which Custodia views as disparate treatment, prejudicial, potentially retaliatory, and intended to harm its business prospects. We have attached to this email the three most recent proposals denied by the Board of Governors of which we are aware, dating back to December 1996 – they are two, six and two pages long, respectively. Custodia's is 86-page denial order is non-standard.

20. The 86-page Board order contained certain language that surprised Custodia in light of the Federal Reserve System's stated commitment to diversity, equity and inclusion. Custodia qualifies as a female-owned bank (because more than 51% of its voting stock is female-owned). The 86-page order repeatedly asserted that Custodia's management has limited "relevant banking experience," which struck Custodia as arbitrary and odd since 100% of its senior management has relevant banking experience. System staff did not raise this issue with Custodia until the issue was highlighted in the 86-page order. Regardless of the outcome of Custodia's situation, we urge the Office of Inspector General to consider whether this approach by the Federal Reserve System to require "relevant banking experience" might actually be a form of systemic discrimination that perpetuates the woeful underrepresentation of protected classes among owners of banks in the United States and subtly discourages protected classes from attempting to form *de novo* banks. According to the OCC, there are only [13 women-owned banks](#) in the U.S. (out of [4,236 total](#)), or 0.3%. For the Federal Reserve to engage in disparate treatment of a woman-owned bank at all – much less to the magnitude of the numerous breaks with policy, procedure, normal practice and due process that Custodia has described in this letter – is disturbing.

21. In the 86-page Board order dated January 27, the Board cited a new Board policy that had not yet been enacted, was not published in the Federal Register until February 7 and applied only to existing member banks (i.e., not to Custodia). Citing a not-yet-enacted policy is a significant break from the normal methodical approach used by the Federal Reserve, and it is questionable whether a yet-to-be-enacted policy that did not technically apply to the applicant could be cited in a Board order as a reason for denial of a pending application.

22. The Board released the above-referenced January 27 policy statement simultaneously with the Board's announcement that it denied Custodia's membership application. The policy statement was hastily-drafted, defining a major shift on digital assets and severely restricting the banking industry's activities involving digital assets. The policy statement does not appear to conform with the requirements of the Administrative Procedure Act, which requires public comment on such substantive proposed rules or guidance.

23. On February 13, 2023, Custodia submitted a significantly revised business plan to the Board which addressed the Board's concerns defined in the 86-page order, and requested

11

reconsideration of the denial based on the revised business plan. The new plan broadened Custodia's target customer base well beyond the digital asset industry, and removed two activities for which Custodia had repeatedly requested permission in the preceding months (but for which the Board denied permission on January 27, 2023). On February 23, 2023, the Board denied Custodia's request for reconsideration. Custodia's revised business plan remains in limbo.

This is all particularly troubling because Custodia has been a good-faith actor throughout the process, endeavoring to help the Federal Reserve understand how digital assets will impact the banking system and then, once FTX imploded and bank runs began, how to respond to the numerous problems. An investigation of the email record will indicate numerous examples of Custodia helping Federal Reserve staff at various levels of the System during its 27-month application processes – including, at Ms. Cox's urging, emails aimed at helping examiners understand what to look for among the banks as the FTX mess was unfolding. Moreover, Custodia disclosed two things to System staff: (1) that Ms. Long began providing law enforcement, beginning last summer, with evidence of probable crimes committed by FTX, and (2) Custodia warned System staff of impending bank runs at the banks serving the digital asset industry. Yet, the Federal Reserve proverbially shot the messenger who tried to warn it of problems.

We will close by sharing with you Custodia's email to Mr. Van Der Weide on the morning of January 27, 2023, just minutes before the Board released its denial, which will hopefully help you understand how Custodia has been a good actor and has continually sought a constructive outcome:

> *It seems you believe crypto is a threat to banking system stability. Much of it is, but some of it is not – and that's where Custodia intends to do business. I believe regulators could truly benefit from the knowledge of responsible players who understand how to distinguish the wheat from the chaff, and who want the chaff to burn on a raging pyre before it hurts the banking system and consumers again. Very few people truly saw what was coming well before it happened — from the bank runs to the imploding lenders and even to the biggest fraud. Custodia did, and informed law enforcement months before FTX imploded. Aren't you curious how? That was no accident. And, among those few people, even fewer would be at the table with you – but we are, and we've been trying hard to work with you.*

Something went very wrong with Custodia's proposals, and we request that your office investigate and take appropriate action if you agree that Custodia did not receive due process. Specifically, we request that you intervene to delay the already-delayed publication of the 86-page order, which is scheduled for release on or about March 17, until you determine that both its private and redacted versions comport with due process.

12

**CONFIDENTIAL TREATMENT REQUESTED**

Please let us know if you need additional information from us. Custodia's counsel has authorized us to tell you that you may communicate directly with us regarding the matters raised herein.

Sincerely,

*[signature]*

Caitlin Long
CEO, Custodia Bank

Sincerely,

*Katie S. Cox*

Katie S. Cox
Adviser to Custodia Bank, retired 32-year examiner and manager of the Mergers and Acquisitions section at the Board of Governors in Washington, D.C.

cc: Jeremiah Bishop, Commissioner
    Wyoming Division of Banking

13