# EXHIBIT 19

CONFIDENTIAL

In accordance with a protective order, the enclosure(s) shall be treated as confidential and shall not be shown to any person other than those persons designated in paragraph 8.2 of the paragraph order.

RESTRICTED FR // FRSONLY

| Regulation | Scope of Review | Comparable Activity | Assessment of Applicablity: Full, Partial, Should't Apply | Supporting Comments | |
|---|---|---|---|---|---|
| Community Reinvestment Act (CRA) Regulation BB: Community Reinvestment | General consideration. | | Shouldn't Apply. | 12 CFR 228.11(c)(3) Indicates that "This part does not apply to special purpose banks that do not perform commercial or retail banking services by granting credit to the public in the ordinary course of business, other than as incident to their specialized operations." Existing novel charters do not allow for lending. Additionally, allowable investments are highly limited and would not allow for meeting the investment test. May need to consider other ways in which non-lending institutions can meet the needs of the communities they serve. | |
| Regulation A: Extensions of credit by federal reserve banks | General consideration. | Discount window services as available to traditional banking institutions. | Full. | 12 CFR 201.2(c)(1)(i) provides a definition of a depository institution for purposes of this Regulation. While a novel entitiy does not easily fit into definitions provided, it is understood that novel entities can apply for insurance despite any precedence being set on the FDIC formally accepting applications.  Additionally, it is understood that if an entity is issued a routing number, it may apply for services provided under the discount window. | |
| Regulation F: Limitations on interbank liabilities | Review of business model and correspondent account agreements. | Use of a correspondent or partner bank to provide operational deposit accounts and to provide settlement services. | Full. | A non-insured depository institution may utilize third party banks in the same manner in which a traditional depository institution may utilize services.  In lieu of master account access, reliance on correspondent banking relationships is greater; and therefore, should be well monitored and managed. | |
| Regulation G: Disclosure and reporting of CRA-related agreements (issued under section 711 of the Gramm-Leach-Bliley Act) | General consideration. | There is not an obvious comparable activity under novel charter types that do not allow lending and also considering the existing CRA regulation does not appear to apply. | Partial. | Provided under 12 CFR 207.1(b)(1)The scope of the regualtion covers SMBs, so assuming a novel charter is approved for membership, by definition this regulation would apply. | |
| Regulation H: Membership of state banking institutions in the Federal Reserve System (Subparts as follows): | | | | | |
|     Subpart B: Investments and Loans | 12 CFR 208.21 (b): "**Investments in securities.** Member banks are subject to the same limitations and conditions with respect to purchasing, selling, underwriting, and holding investment securities and stocks as are national banks under 12 U.S.C. 24, ¶ 7th. To determine whether an obligation qualifies as an investment security for the purposes of 12 U.S.C. 24, ¶ 7th, and to calculate the limits with respect to the purchase of such obligations, a state member bank may look to part 1 of the rules of the Comptroller of the Currency (12 CFR part 1) and interpretations thereunder. A state member bank may consult the Board for a determination with respect to the application of 12 U.S.C. 24, ¶ 7th, with respect to issues not addressed in 12 CFR part 1. The provisions of 12 CFR part 1 do not provide authority for a state member bank to purchase securities of a type or amount that the bank is not authorized to purchase under applicable state law."

12 CFR 1 defines Bank-Eligible securities and places limits on the types of securities that a national bank may purchase, hold, deal, underwrite, or sell. The regulation further defines types of investment (Type I – Type V) and places limitations on each type. Pursuant to 12 USC 335 and where state law permits, State Member Banks (SMB) are subject to the same restrictions and limitations in purchasing, selling, dealing, and underwriting investments as national banks. | The WY and NE rules are more restrictive than those in 12 CFR 1, as they limit investments to short-term, low-credit risk investments, but they are subject to change at the discretion of state regulatory agencies. | Full, plus additional restrictions. | The restrictions of Regulation H, Subpart B (and thus 12 CFR 1), should fully apply to novel charters, as they are intended to limit the universe of acceptable investments and ensure the investment portfolio remains a source of liquidity to the bank.

However, additional restrictions should apply since to entities that will not have deposit insurance and will not have a traditional deposit base.

It would be beneficial for the FRB to define which investments are acceptable for a non-traditional FRB member bank, via potential membership commitments. This would prevent complications from potential state agencey rule changes in the future.

Finally, there should be clarity about whether digital assets are a permissible balance sheet item for a bank, and if so, how they should be classified and risk-rated. | Sources:

12 CFR 1: https://www.ecfr.gov/current/title-12/chapter-I/part-1

12 USC 335: https://www.govinfo.gov/content/pkg/USCODE-2020-title12/pdf/USCODE-2020-title12-chap3-subchapVIII-sec335.pdf

12 USC 24: https://www.govinfo.gov/link/uscode/12/24 |

| Subpart | Review | Analysis | Applicability | Commentary |
|---|---|---|---|---|
| Subpart C: Bank Securities and Securities-Related Activities | Consideration of SEC Framework for "Investment Contract" Analysis of Digital Assets | Various digital asset products have similar characteristics of securities instruments and non-depository institutions may provide services as outline within 12 CFR 208.30(b). | Full. | Formal guidance has not been issued regarding the classification of various digital asset types and whether such instruments and transactions constitute securities, transfer services, and sellers of securities. Additionally, if considered a security additional guidance is needed on defining the security type. State legislation for novel charters does not provide substantial guidance regarding registration with the SEC. It seems prudent at this time for informal guidance to be considered relative to determination of whether products such as stablecoins or existing cryptocurrencies constitute securities requiring registration under the Securities Exchange Act. While legal determinations should be made by the SEC, the intent of Subpart C in applying SEC rules to traditional depository institutions should also apply to uninsured SMBs for consistency in application of securities laws. Alternatively, exemptions provided under Regulation R may be considered for a digitial asset custodian. |
| Subpart D: Prompt Corrective Action | General consideration. | Review of regulatory capital estimates, which indicates whether banks would be considered well-capitalized under the PCA framework. | Should not apply. | The purpose of PCA is to prevent non-viable banks from using wholesale funding and posing a threat to the deposit insurance fund. If an institution does not have insured deposits, this section of Regulation H is not applicable. |
| Subpart F: Miscellaneous Requirements | Review of existing Regulations and FFIEC guidance. | Services offered by uninsured depository entities including digital asset activities pose the same type of terrorist financing and money laundering risks as traditional banking institutions. Further, online based platforms and blockchain and distributed ledger technology employed introduce heightend risk in monitoring for suspicious activity. | Full. | 31 CFR 1020.210(b) covers uninsured depository institutions and essentially applies the same expectations as would apply to traditional banking organizations. Therefore, application of Subpart F may have limited additional benefit, but it would add consistency in the application of this part of Regulation H compared to traditional SMBs. |
| Subpart K: Forms, Instructions and Reports | Consideration of business model and anticipated balance sheet structure and primary forms of revenue. | Financial reporting on condition and income are integral to monitoring health and viability of any banking organization. The anticipated balance sheet structure and primary sources of income is anticipated to vary greatly for non-traditional entities from traditional banking institutions. | Partial. | The general intent and requirements to file a "Call Report" as provided under Subpart K are relevant as a statutory financial filing requirement should exist. An uninsured depository institution can technically meet the definition of a covered institution as provided under 208.121. However, the complexity and type of transactions conducted by a novel entity should be considered with asset-size less of a factor in determining information reported and frequency of reporting. Overall, new schedules and financial filing forms need developed to adequately capture and measure risks posed by differing business models that may pose greater off balance sheet risk and rely on fees as a primary source of income. |
| Regulation Q: Capital adequacy of bank holding companies, savings and loan holding companies, and state member banks | Reviewed capital structure and estimated regulatory capital ratios under the Regulation Q framework. | | Full. | The capital requirements in the Wyoming statues and rules for SPDIs focus on initial capital requirement and resolution, not on on-going capital needs. Thus Regulation Q would fill a gap in the state requirements. The capital conservation buffer requirement (12 CFR 217.11) is a good mechanism to reduce and eliminate dividends and other capital distributions as risk-based ratios decline toward minimum requirements. Also, we should consider whether parts of Regulation Q that do not apply to smaller banks should be applicable to novel charters, such as the requirement to calculate RWA for operational risk. In general, the capital regime for SPDIs may need to be supplemented by additional membership commitments. |

RESTRICTED FR // FRSONLY

| Regulation | Consideration | Description | Applicability | Comments |
|---|---|---|---|---|
| Regulation W | General consideration. | The definition of affiliate can be applied to uninsured depository institutions; however, covered transactions as defined will be limited based upon business model and limitations of activities provided under state agency rules. | Partial. | The intent to identify affiliated parties and to limit the volume of transactions/exposure and potential preferential treatment as provided under Reg W should reasonably apply to uninsured depository institutions and novel charters in order to ensure fair treatment of customers. General transaction limits provided under 23A have limited applicability based upon transaction type; however, guidelines under 23B market terms could be applied to the degree transactions are allowable under state agency rules, and when considering fee structures. Consideration may be given to digital asset transactions as opposed to credit transactions in limiting the volume of transactions provided to an affiliate. Additionally, limitations may be considered should an institution offer stablecoins issued by an affiliate. |
| Regulation GG: Prohibition on funding of unlawful internet gambling | General consideration. | An uninsured depository institution can offer like transactions to a traditional banking organization in the form of ACH and wire transactions. Additionally, transactions can be conducted over different payment rails utilizing distributed ledger and blockchain technologies. | Full. | Uninsured depository institutions have the ability to offer the same payment services as traditional banking organizations, whether admisiterd through a partner/correspondent bank or if granted access to a master account. Despite how the transactions are administered, the same risks exist and should be subject to the same requirements applied to traditional banking organizaitons. |
| Regulation D | Master account application remains pending. | Access to an FRB master account. | Full. | Assuming a non-insured depository institution is granted a master account, reserve requirements should apply as applicable to a traditional banking institution. |
| 12 CFR Part 363/FDICIA 112 | Review of business model and planned activities. | Traditional depository and payment services are offered subject to limitations by state agencies. The risk profile differs in the types of risk non-traditional entities are exposed to. | Full. | Complexity of business models and planned digital asset activites may negate asset thresholds applied to traditional banking organizations. Given the high operational risk associated with digital assets, an annual independent opinion on the effectiveness of management's internal controls would provide the Board with an additional assurance on the bank's controls. It would be prudent to apply the FDICIA 112 requirements regardless of asset size, if possible, as on-balance sheet assets isn't the indicator of risk or complexity for a SPDI (see below). |
| Regulation H, Appendix D-1, II | Review of business model and planned activities. | Traditional depository and payment services are offered subject to limitations by state agencies. The risk profile differs in the types of risk non-traditional entities are exposed to. | Full. | Adoption of Regulation H, Appendix D-1, II. (A) and (B) are recommended. While FDICIA 112 guidelines are based on asset size, Regulation H provides broader internal control and audit guidance that can be tailored to risk and complexity. |
| Regulation H, Appendix D-2: Guidelines establishing information security standards | General Consideration | This guidance applies to consumer accounts. However, commercial accounts may be vulnerable as well to greater information security risk considering the reliance on blockchain and DLT. | Full. | Compliance with the Standards would set a baseline supervisory expectation for Information Security. |
| Regulation V, Fair Credit Reporting, Subpart J | General Consideration | Uninsured depositories and non-traditional banking entities are allow do offer products and services to general consumers. | Full. | Uninsured depositories and non-traditional entities can offer traditional as well as novel products and services to general consumers. The same standards that apply to traditional banking institutions remains relevant and additional considerations may need developed for non-traditional products and services. |
| Regulation YY Section 252.22: Risk committee, risk management, and corporate governance | General Consideration | Business models require a greater reliance on IT infrastructure as well as third party vendors. Additionally, new products and services are largely untested and limited data is available to create baseline assessments of risk. | Full. | It seems prudent that despite size of an organization, non-traditional activities that have not previously been subject to regulatory oversight and risk analysis be subject to higher risk management standards. |