# EXHIBIT 20

CONFIDENTIAL

In accordance with a protective order, the enclosure(s) shall be treated as confidential and shall not be shown to any person other than those persons designated in paragraph 8.2 of the paragraph order.

From: Billman, Nick <Nick.Billman@kc.frb.org>
Sent on: Wednesday, December 12, 2018 5:45:26 PM
To: Moore, Kevin <kevin.l.moore@kc.frb.org>
CC: Harwell, Ryan <Ryan.Harwell@kc.frb.org>; Sellers, Veronica <veronica.m.sellers@kc.frb.org>; Dasek-Kaine, Christie <Christie.Dasek-Kaine@kc.frb.org>; Vandivort, Bill <Bill.Vandivort@kc.frb.org>
Subject: RE: Wyoming Talking Points

**INTERNAL FR/OFFICIAL USE // FRSONLY**

Apologies for the delay, but I wanted to follow up on my call with Chris Land last Friday afternoon. Chris confirmed what Kevin and Ryan heard from Jeff and Albert below about the mandatory lawsuit provision being removed. He also agreed to remove any specific references to 12 USC 248a, which had not been removed as of the time of our talk. Chris and I generally discussed other observations we had on the bill, and the short version is he agreed with almost all of our observations and is making corresponding edits to the bill. A more detailed summary of his responses is as follows:

- Chris agreed to soften language around membership and becoming a BHC so it is clear these decisions are pursuant to applicable federal law and our approval process.
- He had already addressed the internal inconsistency between Sections 103 and 108 of the bill to clarify that insurance may be obtained but is not required – Section 108 previously read as if a lack of insurance was a foregone conclusion.
- He explained the apparent inconsistency between Sections 104(b) and 119(e) – we were questioning why a special purpose bank could not take deposits until the bank had "appropriate insurance or bond" under 119e. Chris said the "appropriate insurance or bond" refers to non-FDIC type insurance like hacking insurance, and that this provision requires the special purpose bank to maintain at least as much coverage as the deposits it holds.
- We discussed the meaning behind Sections 107(a) and (b) which basically state federal law applies where it applies but doesn't apply where it doesn't apply. Chris stated that he doesn't view these sections as being enforceable to prevent the application of appropriate federal law, but rather that they are included to prevent the commissioner or others from claiming that "best practices" from federal laws which may not apply to these special purpose banks should not be applied absent a legal requirement.
- Chris thought it was a really good idea to clarify that in Section 105, the special purpose banks needed to maintain not less than 100% of its depository liabilities in **unencumbered** liquid assets.
- Chris agreed that this bill might need some refinement and discussion with the commissioner about Section 114, which requires the public hearing on charter applications and allows cross examination by interested parties, given the real potential that such a hearing might occur with these new entities.
- Finally, Chris noted that there will be a new section added to the bill (which was excluded earlier to get it out of committee) permitting the exercise of trust powers by these special purpose banks. Chris does not have that section finalized, but said that it would require the special purpose banks to register as qualified custodians under SEC regulations, and would require the banks to hold any digital assets as either a bailment or as a financial asset under the UCC. Chris mentioned if the banks held digital assets as a financial asset they could lend against them like hedge funds do today. Admittedly I am not yet knowledgeable enough about this area, so I simply told Chris we would be interested in seeing that language and he welcomed any observations we had on this issue.

Chris anticipates sending an updated bill either later this week or next week. Hopefully this is useful, and I'm certainly happy to answer any questions this may raise. I will also forward the latest draft of the bill upon receipt.
Nick

From: Moore, Kevin <kevin.l.moore@kc.frb.org>
Sent: Wednesday, December 05, 2018 9:09 AM
To: Billman, Nick <Nick.Billman@kc.frb.org>

CONFIDENTIAL                                                                                                                          FRBKC-00018339

Cc: Harwell, Ryan <ryan.harwell@kc.frb.org>; Sellers, Veronica <veronica.m.sellers@kc.frb.org>; Dasek-Kaine, Christie <Christie.Dasek-Kaine@kc.frb.org>; Vandivort, Bill <Bill.Vandivort@kc.frb.org>
Subject: Re: Wyoming Talking Points

INTERNAL FR/OFFICIAL USE // FRSONLY

This morning Ryan and I had a call with Jeff Vogel and Albert Forkner with the State on the blockchain legislation. I first asked Albert for an update from the State's perspective given they had a task force meeting last week. Albert reported that by nearly unanimous vote, the blockchain legislation will move forward and be a part of the January session of the State legislature. However, the bill if ultimately approved, would not occur until at least October 2019.

The major change that occurred in the draft legislation as reported by Albert is that the state struck language that required the state attorney general to sue the Fed. For the reasons Nick and Veronica cited in the talking points, the State realized it ould not take legal action against the Fed on behalf of private citizens.

Albert also knows there is sensitivity to suggest these special purpose depository entities will be member banks and will have a master account. I relayed to Albert that we had similar feedback through our review given decisions about member status or Fed services is the perview of the Fed.

We did not go through the talking points in detail, but Ryan suggested we should have another call with Albert/Jeff to compare notes on our supervisory concerns. We will look to have that call next week.

I would suggest Nick set up a call with Chris Land so we can get all of our suggestions in front of him before they mark up the bill again in anticipation of the January legislative session.

That's it from me. I am in a cab writing this so apologize for the format and brief content. Ryan -there is something more you want to add, please do so.

Kevin


---
Sent from Workspace ONE Boxer

On December 3, 2018 at 3:44:50 PM MST, Billman, Nick <Nick.Billman@kc.frb.org> wrote:

> **INTERNAL FR/OFFICIAL USE // FRSONLY**
>
> Kevin,
>
> Veronica had a few additional edits, and we have incorporated them into the attached document for your review. If you've already begun working on an earlier version, I'm happy to incorporate your comments into this document, but if you haven't started yet we wanted to get this to you ASAP. Thanks,
>
> Nick