# EXHIBIT 21

CONFIDENTIAL

In accordance with a protective order, the enclosure(s) shall be treated as confidential and shall not be shown to any person other than those persons designated in paragraph 8.2 of the paragraph order.

CONFIDENTIAL
INTERNAL FR/OFFICIAL USE
DRAFT 12/03/2018

## Wyoming Cryptocurrency Bill Talking Points

### Summary of Key Issues:

- We suggest removing references to the Federal Reserve Act and 12 U.S.C. § 248a in bill sections 13-12-107, 13-12-115, and 13-12-116, and
- We suggest remove the requirement for the attorney general of the State of Wyoming to sue the Federal Reserve Bank on behalf of a private commercial entity in bill section 13-12-107.

### Explanation:

- **Bill Section 13-12-107 (Applicable federal and state laws)** requires the attorney general on behalf of the state of Wyoming and the special purpose depository bank to commence a civil action to enforce the requirements of 12 U.S.C. § 248a (Section 11A of the Federal Reserve Act).
- **Incorrect Interpretation of Federal Law; Preemption** – Additionally, as you know, the conclusion that 248a "requires" Federal Reserve Banks to provide services is contrary to the interpretation of that provision by the Federal Reserve Bank of Kansas City and the Federal Reserve Board of Governors. Federal law and interpretation preempts a state's interpretation of a federal law.
- **Sovereign Immunity/Standing** – Unsure how the State gets around the sovereign immunity and standing questions when the State brings an action against a federal instrumentality as the representatives of private citizens to enforce federal law. There is case law that states cannot do this – we do not believe adding language about the State's interpretation of federal law to your statute gives you standing.[1]

In addition to other legal issues, there are practical and policy reasons to edit or remove Section 107 which we offer in the spirit of cooperation in an attempt to provide additional perspective to the bill:

- **Policy Arguments Against Mandating Lawsuit Against Federal Reserve**
  - **May Impede Joint Supervision** - The State and Federal Reserve jointly supervise and coordinate on matters involving Wyoming financial institutions. Such cooperation requires open, candid lines of communication.
    - A statute requiring a lawsuit between the State and the Federal Reserve could adversely affect the relationship between the regulators and place the State and Federal Reserve in an adversarial posture for the benefit of private litigants. Even the threat of such litigation could have a chilling effect on the State and Reserve Bank sharing information on supervisory matters if that information might be used in any subsequent litigation brought by the State.
  - **Favors Private Entities (Appropriate Use of State Resources?)** – Existing Wyoming statute 13-2-214 provides that an applicant for a state banking charter may appeal a charter denial to a district court. The remedy for a denial of a Federal Reserve account

---

[1] *Massachusetts v. Mellon*, 262 U.S. 447 (1923) - "*While the state, under some circumstances, may sue [as representative of its citizens] for the protection of its citizens, it is no part of its duty or power to enforce their rights in respect of their relations with the federal government. In that field it is the United States, and not the state, which represents [state citizens] as parens patriae, when such representation becomes appropriate…*"

1



CONFIDENTIAL

FRBKC-00018341

CONFIDENTIAL
INTERNAL FR/OFFICIAL USE
DRAFT 12/03/2018

should track the existing state law treatment for denial of a bank charter: authorizing the affected SPDB to bring a lawsuit, but not requiring the state to file one on behalf of a private applicant's commercial enterprise.

- **Fallback Position:** In the event the bill contains a reference to Federal Reserve services, we will send proposed alternative language for this section which strikes references to section 248a, makes it permissive instead of mandatory for the Attorney General to bring suit against the Federal Reserve, and includes provisions requiring pre-litigation discussion to attempt to avoid litigation if possible.

- **Bill Sections 13-12-115(b) and 13-12-116(b)** mandate that the state's chartering decision not be dependent on the outcome of the Federal Reserve's decision on eligibility for Federal Reserve services.
    - The reference to 12 U.S.C. § 248a should similarly be struck and replaced with a more generic reference to eligibility or ineligibility for Federal Reserve services.

<u>Summary of Other Observations</u>:

- **Bill Section 13-12-103 authorizes membership in the Federal Reserve System.**
    - Section (b)(vi) provides that a special purpose depository bank may become a member bank of the Federal Reserve System (as opposed to account access). As Federal Reserve membership is purely a matter of federal law, we recommend that the provision be rephrased to state that special purpose depository banks may make application and become member banks of the Federal Reserve System, subject to applicable federal law and the Federal Reserve's approval process.

- **13-2-103 and 13-12-108 Federal deposit insurance inconsistency.**
    - <u>Internal Inconsistency</u>. On the one hand, Section 103(a) makes it clear that Federal Deposit Insurance is not required, but on the other, Section (b) specifies that nothing in the section prevents a special purpose depository institution from obtaining FDIC insurance, if available.
    - We suggest that the provisions in 108 should be modified to allow for the possibility of FDIC insurance because 13-2-103 allows SPBs to get FDIC insurance if available. Each subsection of 108 could just start "Unless the SPB has obtained FDIC insurance, . . ."

- **13-12-104(b) and 13-12-119(e)**
    - Appears to be some internal inconsistency. 104(b) states that a depositor will get an account with a special purpose bank contingent on the "availability of insurance under W.S. 13-12-119(e). Section 119(e) relates to the bank maintaining "appropriate insurance or a bond." Not sure how the bank having insurance or a bond relates to whether a depositor may obtain an account at the bank.

- **13-12-107(b) should be deleted to avoid confusion regarding applicable federal law.**
    - Sections (a) and (b) seem to be internally inconsistent. While section (a) states that special purpose depository banks shall comply with all applicable federal laws, including anti-money

2

CONFIDENTIAL
INTERNAL FR/OFFICIAL USE
DRAFT 12/03/2018

  laundering, customer identification, and beneficiation ownership, Section (b) attempts to exempt special purpose depository banks from federal and state laws which do not apply to special purpose depository banks.
    - By logic of Section B, only the laws enumerated in the bill would apply to special purpose depository banks, since they do not exist outside of the State of Wyoming. We recommend deleting section (b), as the state does not have authority to grant exemptions from the application of federal law and the current language may have unforeseen consequences with regard to state laws of general applicability to corporations.

- **Bill Section 13-12-109 authorizes BHC formation and holding of SPDB.**
    - Section (d) provides that a bank holding company may form and hold a special purpose depository bank, subject to applicable federal and state law. This provision appears to interpret federal law and invites confusion by addressing formation and permissible ownership that the state has no power to grant.
    - We therefore recommend that this provision be struck, or rephrased in terms of an SPDB's authority to make *application* to become a bank holding company (similar to the Fed membership suggestion).

- **13-12-111 Application for charter; fee; subaccount created.**
    - Section (d) question - should it say that the administration account shall be created instead of is created?

- **13-12-114 requires investigation and examination by the commissioner and public hearings on SPDB charter applications.**
    - Section (b) of this section and preceding sections require public hearings and also that the commissioner submit the results of his investigation and examination at the public hearing on the charter application and shall be subject to cross examination by any interested party. No relevant information shall be excluded by the board as hearsay.
    - We are concerned that confidential nonpublic information relating to the SPB's efforts to obtain Federal Reserve services might be required to be disclosed in this process – can you explain to us in practice how this process protects CSI and other confidential information?

- **Supervisory Matters.**
    - <u>Appropriation for Additional Staff</u>. The bill should include a provision for additional supervisory staff, particularly given the intense AML/BSA challenges associated with cryptocurrency.
    - <u>Information</u>. Ideally, there would be some agreement between the commissioner and the FRB which specifies the content of the reports to be filed with the state and shared with the Federal Reserve System, include a requirement that reports of examination and other information sufficient to evaluate risk be collected and shared with the Reserve Bank.
    - <u>Trust powers</u>. Are there still plans to work trust powers into the bill?

Commissioner Issues (possibly to also be addressed with Chris Land):

- **13-12-105 Required liquid assets.**

3

CONFIDENTIAL
INTERNAL FR/OFFICIAL USE
DRAFT 12/03/2018

- Section (a) requires that a special purpose depository bank maintain liquid assets valued at not less than one hundred percent of its depository liabilities. "Liquid assets" are defined and include United States currency as well as "investments which are highly liquid."
    - Are there any assurances that highly liquid assets will not be cryptocurrency now or in the future?
    - How do you control the risk level of the highly liquid assets (no percentage that must be cash vs investments) and where will highly liquid assets be kept?
    - Are there restrictions in the SPB's ability to pledge liquid assets to secure potential borrowing or other non-depository liabilities? If the State expects the liquid assets to be unencumbered to qualify for covering the depository liabilities, we would suggest the language in 13-12-105 (a) be clarified to say "At all times, a special purpose depository bank shall maintain **unencumbered** liquid assets valued at not less than one hundred percent (100%) of its depository liabilities."
    - To the extent that the Federal Reserve holds pledged assets as collateral and the SPB fails, will the commissioner agree to indemnify the Federal Reserve for post-closure losses in return for the Federal Reserve's release of its interest in the held collateral?
    - Will the State agree to share periodically collected reports (such call reports) and reports of examination with the Federal Reserve, who will treat the information as CSI, so that it can adequately determine payments or other compliance standards on qualifying SPBs?

- **13-12-106 Required contingency account.**
    - A special purpose depository bank is required to maintain a contingency account, and may, but is not required to require contributions from depositors to fund the account. After three years, the account may be not less than two percent of the depository liabilities.
        - Section (b) specifies that a depositor shall obtain a refund of any contingency account contributions made under subsection (a) upon closing an account with the special purpose depository bank, but does not require anyone to pay it. The obligation should not be on the depositor to obtain the refund, but instead, on the special purpose depository institution to pay it within a certain reasonable period.

CONFIDENTIAL

FRBKC-00018344