# EXHIBIT 39

CONFIDENTIAL

In accordance with a protective order, the enclosure(s) shall be treated as confidential and shall not be shown to any person other than those persons designated in paragraph 8.2 of the paragraph order.

Message

**From:** Humston, Tara L [/O=FRSMAIL/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=J1TLH02072]
**Sent:** 11/12/2020 11:55:28 PM
**To:** George, Esther L [esther.l.george@kc.frb.org]; Zahnd, Craig C [craig.zahnd@kc.frb.org]
**Subject:** RE: Call with Katherine Carroll - Avanti

### INTERNAL FR/OFFICIAL USE // FRSONLY

Yes, we periodically track Fourth Corner and they have yet to even open their doors. Certainly been an interesting case, since they highlighted that was their primary business to serve, it resulted in them being unable to serve even 1 MRB account as a result of the case, while other existing banks continue to serve an increasing amount of MRBs.



**Tara L. Humston**
*Senior Vice President, Supervision and Risk Management Division*
P: 816.881.2935  E: Tara.L.Humston@kc.frb.org
FEDERAL RESERVE BANK OF KANSAS CITY
1 Memorial Drive · Kansas City, Missouri 64198 · www.kansascityfed.org

**From:** George, Esther L <esther.l.george@kc.frb.org>
**Sent:** Thursday, November 12, 2020 5:47 PM
**To:** Zahnd, Craig C <Craig.Zahnd@kc.frb.org>; Humston, Tara L <tara.l.humston@kc.frb.org>
**Subject:** RE: Call with Katherine Carroll - Avanti

### INTERNAL FR/OFFICIAL USE // FRSONLY

Yes that's how I remember it.

**From:** Zahnd, Craig C <Craig.Zahnd@kc.frb.org>
**Sent:** Thursday, November 12, 2020 5:24 PM
**To:** Humston, Tara L <tara.l.humston@kc.frb.org>; George, Esther L <esther.l.george@kc.frb.org>
**Subject:** RE: Call with Katherine Carroll - Avanti

### INTERNAL FR/OFFICIAL USE // FRSONLY

Esther and Tara,

**Privileged**

Regards, Craig

**Craig C. Zahnd**
*SVP, General Counsel & Chief Compliance Officer*
P: 816.881.2533  E: craig.zahnd@kc.frb.org


EXHIBIT 146
11.3.23

CONFIDENTIAL

FRBKC-00014922

FEDERAL RESERVE BANK OF KANSAS CITY
1 Memorial Drive · Kansas City, Missouri 64198 · www.kansascityfed.org

**From:** Humston, Tara L <tara.l.humston@kc.frb.org>
**Sent:** Wednesday, November 11, 2020 11:05 AM
**To:** George, Esther L <esther.l.george@kc.frb.org>; Zahnd, Craig C <Craig.Zahnd@kc.frb.org>
**Subject:** RE: Call with Katherine Carroll - Avanti

INTERNAL FR/OFFICIAL USE // FRSONLY

Agree, Esther. I should have said that I did share with her that our engagement with System colleagues was on the whole "basket" of novel charters, entities, or fintechs. We as a System want to consider the issues that any of these might raise. This led into why I told her that their desire to meet with the Board might not be right for timing, as we (System) are currently considering the broader issues any of these charter raise and there may be less focus to discuss specific entities at this time.
Tara

---
Sent from Workspace ONE Boxer

On November 11, 2020 at 10:54:55 AM CST, George, Esther L <esther.l.george@kc.frb.org> wrote:

**INTERNAL FR/OFFICIAL USE // FRSONLY**

Thanks Tara. I would want them to know the OCC payments charter poses the same issues in some respects as the Wyoming charter. And the OCC fintech charter to my knowledge never got off the ground. I'm surprised that this organization did not understand the request for a master account was not a slam dunk. I would have thought the banking department and those approving the charter might have covered this.

**From:** Humston, Tara L <tara.l.humston@kc.frb.org>
**Sent:** Wednesday, November 11, 2020 10:40 AM
**To:** Zahnd, Craig C <Craig.Zahnd@kc.frb.org>; George, Esther L <esther.l.george@kc.frb.org>
**Subject:** Call with Katherine Carroll - Avanti

INTERNAL FR/OFFICIAL USE // FRSONLY
Esther and Craig -
As I alerted you yesterday, Katherine asked for a "quick call" with me today to follow-up from the meeting. As we might have expected, her interest was focused on timing of a decision. She acknowledged that they sensed from Esther's comments this was not going to be quick. Their expectations had been that we had been working with WY for several years on this and there hope was these policy decisions were already in flight and would be quick. The conversation yesterday had them uneasy with the possibility that this decision could still go either way, which caught them off guard. Using the same message Esther delivered, I reiterated that the SPDI charter and decisions around it were WY's decisions. While we were certainly aware, we allowed those processes to finish their course (and noted that there are still some components not yet final). I once again assured them of our commitment to address this request, but I did let her know they should be thinking in terms of months not weeks, as Katherine said their leadership was now wondering if they should think about setting up a correspondent bank account.

In the call, Katherine noted the other types of charters and fintechs that were entering the banking system. She specifically talked about the OCC charters and how the OCC worked with the Fed on getting new types established. They wondered if that would be the path of least resistant to go after that type of charter (although they do not want to do that, after all the work on this charter type in WY). I told her that the OCC charter is their decision and the Fed is not part of the granting of those charters. I told her that I was not aware

CONFIDENTIAL

FRBKC-00014923

if the OCC had consulted with the Fed on that charter in any way and was not aware of the Fed publicly opining a view on that charter or access to the payments system.

Katherine also asked about meeting with the Board and she compared it to her experience of a pre-filing meeting in applications where they might meet with the RB and/or jointly with the Board to discuss an application. I clarified for her that a master account request is not an application in that goes to Board Supervision and I briefly described payments system access is managed from Credit and Risk Management at a RB. Therefore, there is not a natural Board audience that we could direct them to that convenes on these issues since it is a RB decision. However, we would not preclude them from meeting with specific Board stakeholders and will certainly let them know if we see a meeting would be helpful as we progress.

At the end of the call she noted she had a last question that she hoped did not come off as confrontational, but noted the Fourth Corner lawsuit. They understand that once Forth Corner received the charter, they got access to a master account. The only response I gave her was that RB's retain discretion in their risk analysis of granting a master account.

I committed to Katherine that we would touch base in the coming weeks, but I could not say how substantial the updates will be early on, but will try not to leave them hanging and not hearing from us at all.

Let me know if you have questions or concerns from this call. My view was none of these questions really came as a surprise.
Tara


---
Sent from Workspace ONE Boxer

CONFIDENTIAL

FRBKC-00014924