# EXHIBIT 40

CONFIDENTIAL

In accordance with a protective order, the enclosure(s) shall be treated as confidential and shall not be shown to any person other than those persons designated in paragraph 8.2 of the paragraph order.

| | |
|---|---|
| **Message** | |
| **From:** | Caitlin Long [caitlin@avantibank.com] |
| **on behalf of** | Caitlin Long <caitlin@avantibank.com> [caitlin@avantibank.com] |
| **Sent:** | 11/12/2020 4:32:08 AM |
| **To:** | Bryan Bishop [bryan@avantibank.com]; Richard C. McGinity [mcginity@uwyo.edu]; John Pettway [johnpettway@gmail.com]; Philip W. Treick [ptreick@uwyo.edu] |
| **CC:** | Chuck Thompson [chuck@avantibank.com]; Britney Reddy [britney@avantibank.com]; Zev Shimko [zev@avantibank.com]; Gregory C. Dyekman [gdyekman@lrw-law.com] |
| **Subject:** | Fed meeting update |

Hi all -- we've had the first real curveball thrown at us -- by the Fed. Net-net, there's no chance of getting our Fed master account before year-end (which had previously been Commissioner Forkner's best guess), and the Fed's new guidance is that our timeline for a Fed master account will be "months not weeks." It's a change for sure, and it injects uncertainty. But we have two options for responding: either we wait for our master account (and hopefully it will only delay our January opening by a couple of months, and enable us to roll out more products at launch than we would have had ready for a January launch), or we decide to open in January via a correspondent bank and take on additional risks (see below).

WHAT HAPPENED: During the Fed meeting yesterday, Esther George indicated the master account review process is going to be slow. This contrasts to the guidance Wyoming had previously received from a different staffer at the KC Fed. Esther indicated they are debating policy issues related to the SPDI first, and then will analyze each specific SPDI application. The policy issues she raised include: monetary policy implications, financial stability implications and there being no federal corollary to the new state banking charter yet (which normally there is). The KCFed is consulting with DC and the other reserve banks in making its decision.

Previous guidance was that all of these issues had been addressed, though. So, our advisers' best guess is that someone senior at the Fed in DC intervened and re-opened the policy debate. We asked whether the BPI "hit piece" on Avanti from Monday had any impact -- there's no way to know.

But we have an "ace in the hole." As you may recall, the Kansas City Fed cannot deny a master account to a validly-chartered bank within its jurisdiction, due to a 2017 10th Circuit case law precedent that concluded the KC Fed's granting of a master account is a ministerial function, not a discretionary function. So, the only question is how long the KC Fed will delay its decision. In theory, the KC Fed could bleed us dry if they delay indefinitely -- that's the worst case scenario. Esther did commit to getting us a response, though, and she also did acknowledge that they understand we're burning cash (~$10k per working day currently).

There's already a plan at the political level to defend Wyoming's position, starting with Gov. Gordon (who was previously on the KCFed board and who knows Esther well). We will tread very carefully on this political line of defense, though, as two advisers warned this could backfire.

Either way, as a Board we need to address our new reality. As mentioned above, we have two options. We're not yet ready to recommend which is the best one and will likely set up a Board call next week to discuss the team's recommendation. Britney is gathering correspondent cost data, and more info about the Fed will come on Friday too, as both Albert and Kraken are separately meeting with the KCFed on Friday.

OPTION 1: If we engage a correspondent bank, we can still open in January but:
(a) we probably operate at a net loss due to high costs of correspondent.
(b) due to those higher costs, we would shift our priority toward bitcoin custody and down-prioritize our transactional business until we get the Fed master account.
(c) we would still issue our Series A as quickly as possible, while offering a liquidation preference to Series A



investors if we don't get our Fed master account (perhaps by ~June 1?). We've now heard from both Albert & Katie that this will be fine.

OPTION 2: If we wait for the Fed master account, we open maybe spring 2021 but:
(a) this has HUGE implications for the timing of our fundraising round, and we may lose some of the interested investors (even if we offer them the liquidation preference).
(b) we're burning ~$10k/working day, so a long delay starts causing real problems for us.

SERIES A: Regarding the Series A, Ribbit is still very much at the table as a potential lead. They're doing customer checks now. If they decide to lead our round, I recommend that we capitalize on that and just go. We'd lay out everything for Ripple and let them make the decision on timing/structure implications as the lead.

If Ribbit doesn't lead, then we will probably go with the investment bank-led deal -- timing uncertain, but we'd probably wait until 2021 to raise the capital. We'll have ~$5m of cash in the bank at year-end, so we do have cash to wait for a while.

Visa is still actively engaged (we're meeting with them tomorrow) for an early 2021 investment. Railsbank is still at the table but said they couldn't invest until after they get further down the road of their Wirecard acquisition (so they may come back if we delay the Series A to 2021). First Republic has decided to drop -- too much on its plate. Polychain is also still a potential dark-horse lead.

We'll have a concrete recommendation for you regarding Option 1 vs. 2 by early next week, and will probably schedule a Board call mid-week.

Again -- Albert and Katie both think it's a matter of "when" not "if."

In the meantime, let us know if you have questions. Cheers!

CONFIDENTIAL

Custodia-00005522