Scott E. Ortiz, W.S.B. # 5-2550
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 No. Wolcott, Suite 400
P.O. Box 10700
Casper, Wyoming 82602
Telephone:		(307) 265-0700
Facsimile:		(307) 266-2306
Email:			sortiz@wpdn.net

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CUSTODIA BANK, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Number: 22-cv-00125-SWS |
| ) | |
| FEDERAL RESERVE BOARD OF ) | |
| GOVERNORS and FEDERAL RESERVE ) | |
| BANK OF KANSAS CITY, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF CUSTODIA BANK, INC.'S**
**OPPOSITION TO THE FEDERAL RESERVE BANK OF KANSAS CITY'S**
**MOTION TO STRIKE REPORTS AND EXCLUDE THE TESTIMONY OF**
**PROFESSOR PETER CONTI-BROWN**

Professor Peter Conti-Brown is a respected historian of financial regulation, whose work focuses on banking, central banking, and the Federal Reserve. Accordingly, Custodia Bank, Inc. ("Custodia") offers his opinions in his capacity as an expert historian. The Federal Reserve Bank of Kansas City ("Kansas City Fed" or "Reserve Bank") does not challenge either his qualifications or the relevance of his opinions; rather, it only disputes the reliability of the methodology underlying those opinions. Yet the bases for its objections are either disingenuous or ill-suited for a *Daubert* motion, as they go to the weight of the testimony but not its admissibility. Conti-Brown has carefully reviewed the relevant discovery record in this case. Much of what the Reserve Bank

characterizes as a reliability issue is truly a disagreement over the substance of Conti-Brown's opinions themselves. Disagreements over his conclusions and his weighing of the evidence are appropriate for trial, but not a *Daubert* motion.

Importantly, neither Conti-Brown nor Custodia hold out any of his opinions or testimony as a legal interpretation of the Monetary Control Act ("MCA"). Conti-Brown confines his opinions to the legislative history of the MCA and the related history of the Federal Reserve System ("Fed"). Courts routinely permit expert historical testimony, including that which delves into legislative history—neither is subject to a *per se* bar. This historical perspective extends to Conti-Brown's evaluation of the decision to deny Custodia access to a master account and the similar decisions concerning The Narrow Bank ("TNB") and the Territorial Bank of American Samoa ("TBAS"). All are important milestones in the history of the Fed's stated interpretation of the MCA. Finally, given that this is a bench trial, the Court has even greater latitude to consider Conti-Brown's testimony than it would in front of a jury. If any doubt exists as to the admissibility of Conti-Brown's expert opinions—and there should be none—the proper forum for closer examination would be the witness stand at trial where he can be subject to cross-examination by the Reserve Bank and additional questioning by the Court.

## BACKGROUND

Conti-Brown is an associate professor of financial regulation at The Wharton School at the University of Pennsylvania. (Ex. A (Conti-Brown Rpt.) ¶ 1.) He received his B.A. from Harvard College, J.D. from Stanford Law School, and Ph.D. from the Department of History at Princeton University where his coursework focused on both history and economics. (*Id.* ¶ 1, Ex. 1.) His scholarship on banking, central banking, and the Federal Reserve is extensive, and includes

forthcoming books concerning the Federal Reserve System and the history of bank supervision in the United States. (*Id.* ¶ 3, Ex. 1.)

Conti-Brown is being offered by Custodia as an expert historian—not a legal expert. Although he has a law degree, Conti-Brown has made clear that he understands that he has not been retained to offer legal opinions and is testifying solely as an historian. (*See, e.g.*, Ex. B (Conti-Brown Tr.) at 32:16–34:9 ("I offer my expertise here as a historian of banking, and I'm not offering an opinion on the legal interpretation of the statute."), 62:4–13 ("I don't offer a legal opinion. I'll leave that to the Court and to the lawyers.").) Accordingly, his expert report provides a thorough yet pertinent history of the Fed which informs his opinions. (*See* Ex. A (Conti-Brown Rpt.) ¶¶ 25–96.) Those opinions generally are:

(1) "[T]he [Federal Reserve Board of Governor's ("Board")] claim of discretion over Master Account access does not conform to history, practice, legal context, or the public policies of the US government and the Federal Reserve itself. The Fed only began to assert such discretion over Master Account access around 2015."

(2) "[T]he historical record shows that, since the Fed announced its authority to act as a re-chartering agency for all depository institutions [around 2015], the Board of Governors has exercised control over specific access or lack of access to Master Account and other Fed services." And that "[t]he administrative record in this case supports the conclusion that the Board reached the same determination in the present case, as well."

(*Id.* ¶¶ 9, 18, 21.) These opinions are informed by Conti-Brown's detailed understanding of the history of the Fed and bring a purely historical perspective to this case.

## **LEGAL STANDARD**

Under Federal Rule of Evidence 702, codifying *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993):

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

FED. R. EVID. 702. "Under Rule 702, the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

When a jury serves as factfinder, "[i]t is the responsibility of the Court to act as a 'gatekeeper' with regard to admission of proffered expert testimony." *United States v. Motsenbocker*, No. CR-10-371-D, 2011 WL 902121, at *2 (W.D. Okla. Mar. 15, 2011) (quoting *Daubert*, 509 U.S. at 597). But the necessity for the Court's gatekeeping role is significantly diminished during a bench trial:

> *Daubert's* primary purpose is to protect juries from unreliable or confusing scientific testimony, and these concerns are significantly lessened in a bench trial. Thus, trial courts conducting bench trials have the flexibility to admit proffered expert testimony and to then decide during trial whether the evidence meets the requirements of *Daubert* and Rule 702.

*Mountain v. United States*, No. 19-CV-005-J, 2020 WL 8571674, at *2 (D. Wyo. Sept. 11, 2020); *Bevill Co. v. Sprint/United Mgmt. Co.*, No. 01-2524-CM, 2007 WL 1266675, at *2 (D. Kan. Apr. 30, 2007) ("In a bench trial setting, it is appropriate for the court to allow the expert to testify, and later make determinations about the admissibility, weight, and credibility of the expert's testimony."); *see Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 780 (10th Cir. 2009) ("[A] judge conducting a bench trial maintains greater leeway in admitting questionable evidence,

weighing its persuasive value upon presentation."); 11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2885 (3d ed. 2023) ("In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence."). Even when a jury is present, "[a] district court has broad discretion in determining the admissibility of expert testimony." *Becerra v. Schultz*, 499 F. Supp. 3d 1142, 1146 (D. Wyo. 2020) (Skavdahl, J.).

## ARGUMENT

Here, the Kansas City Fed does not dispute Conti-Brown's qualifications or the relevance of his opinions; instead, its sole challenge is to the reliability of those opinions. (*See* Def. Fed. Rsrv. Bank of Kan. City's Mot. to Strike Reports and Exclude the Testimony of Professor Peter Conti-Brown ("Conti-Brown Mot."), ECF No. 267, at 1.) In reality, though, the bulk of its motion disputes Conti-Brown's interpretation of the record or the substance of the opinions themselves. Neither, though, is a proper basis for exclusion of an expert witness. *See In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1233 (N.D. Okla. 2007) ("The evaluation for reliability cannot be permitted to evolve into an assessment of the ultimate persuasiveness of the proffered expert testimony."), *aff'd*, 558 F.3d 1130 (10th Cir. 2009). Through its motion, the Kansas City Fed essentially asks the Court to jump the gun and rule on its theory of the case, cloaking its arguments under the guise of "reliability." A *Daubert* motion is not, however, the appropriate forum for the Court to evaluate the substance of Conti-Brown's opinions and weigh their evidentiary value.

### I. Conti-Brown's Opinion on the History of Discretion Within the Fed is Reliable.

The Kansas City Fed contends that Conti-Brown failed to consider evidence contrary to his position. (*See* Conti-Brown Mot. at 3–5; *see also id.* at 9.) As a tenured professor with extensive experience as an historian and author of peer-reviewed scholarship on the history of financial regulation, Conti-Brown did not forgo such basic principles of historical research. (*See*

Ex. A (Conti-Brown Rpt.), Ex. 1.)  Conti-Brown consulted hundreds of documents, extending over thousands of pages, to prepare his opinions.  (*See id.*, Ex. 2; Ex. C (Conti-Brown Suppl. Rpt.), Ex. 1.)  And Conti-Brown was familiar with much of the evidence mentioned by the Kansas City Fed.  (*Compare* Conti-Brown Mot., ECF No. 278, Ex. 4 (1985 Federal Reserve policy statement on the control and reduction of risks to depository institutions participating in large-dollar wire transfer systems), Ex. 5 (1998 Operating Circular 1), Ex. 6 (Policy on Payments System Risk, 69 Fed. Reg. 69,926 (Dec. 1, 2004), *with* Ex. B (Conti-Brown Tr.) at 117:18–119:13 (acknowledging familiarity with the 1985 policy statement), 137:20–138:5 (same with Operating Circular 1), 141:18–142:7 (same with 2004 policy statement).)

Although he was familiar with most of the documents mentioned by the Kansas City Fed, Conti-Brown testified that he found them irrelevant to the issues and opinions that were the focus of his reports.  Regarding the 1985 policy statement, he explained that he understood the document as carrying out regulation "that appl[ies] to the entire system as opposed to conditions [that might be] placed on individual account holders."  (Ex. B (Conti-Brown Tr.) at 120:2–121:9.)  He also testified that nowhere in the 1985 policy statement or Operating Circular 1 did the Fed contend it could impose conditions on access to a master account rather than use of the account subsequent to its opening.  (*Id.* at 138:21–141:12.)  And he similarly interpreted the 2004 policy statement as regulating use, rather than access, to a master account.  (*Id.* at 146:17–147:1.)  Conti-Brown then summarized the collective immateriality of these documents:  they refer to the "general provision of [the Fed's] priced services" as opposed to "the idiosyncratic decisions to grant priced services to individual legally eligible depository institutions" that would otherwise afford the Fed significantly more discretion.  (*Id.* at 149:5–22.)  Contrary to the Reserve Bank's telling, Conti-

Brown did not "ignore[]" these documents and others (Conti-Brown Mot. at 5); he found them to be irrelevant to his ultimate analysis.[1]

Finally, Conti-Brown's unfamiliarity with three irrelevant documents—and corresponding refusal to subscribe to the Kansas City Fed's preferred historical narrative—may be grounds for cross-examination but is not a basis for exclusion. *See United States v. Crabbe*, 556 F. Supp. 2d 1217, 1220 (D. Colo. 2008). Most were internal Reserve Bank policies, which have no bearing on his opinions. (*See* Conti-Brown Mot., ECF No. 278, Exs. 7, 8, 9.) Moreover, Reserve Banks do not create Fed policy. None have the force of Fed policy and are thus outside the scope of Conti-Brown's opinions.

The remainder of the Reserve Bank's arguments stray even farther afield. By the Kansas City Fed's logic, historians are almost never qualified to testify as experts unless they have personally engaged in the activities covered by their scholarship; such a requirement does not exist.

---

[1] In each of the examples cited by the Kansas City Fed, the courts excluded experts who failed to consider evidence that courts, competing experts, or other authorities in the field had considered relevant. *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) ("However, as a basis for their conclusions regarding the connection between silicone breast implants and autoimmune diseases, Plaintiff's experts completely ignored or discounted without explanation the many epidemiological studies which found no medically reliable link between silicone breast implants and systemic disease."); *Hall v. ConocoPhillips*, 248 F. Supp. 3d 1177, 1190–91 (W.D. Okla. 2017) (collecting cases in support of accepted proposition that "[w]hile a court can admit a differential diagnosis that it concludes is reliable if general causation has been established, the expert must adequately consider and rule out alternative explanations." (internal quotation marks and citation omitted)), *aff'd sub nom. Hall v. Conoco Inc.*, 886 F.3d 1308 (10th Cir. 2018); *Cruz v. Bridgestone/Firestone N. Am. Tire, LLC*, No. CIV 06-538 BB/DJS, 2008 WL 5598439, at *5–7 (D.N.M. Aug. 29, 2008) (failure to consider undocumented status, which had been noted as relevant by multiple authorities, when calculating average wages); *Rimbert v. Eli Lilly & Co.*, No. CIV 06-0874 JCH/LFG, 2009 WL 2208570, at *20 (D.N.M. July 21, 2009) (failure to follow differential diagnosis methodology *and* consider competing experts' opinions or methodologies), *aff'd*, 647 F.3d 1247 (10th Cir. 2011). That is not the case here. The Kansas City Fed's expert has not contended that these policies should have been integral to Conti-Brown's methodology, nor has the Reserve Bank found a case that found policies like these critical to an analogous expert opinion.

(*Compare* Conti-Brown Mot. at 3 ("Conti-Brown brings no first-hand experience to bear, having never worked for the Board or any Reserve Bank. His knowledge is therefore limited to what is in the public record or the discovery record in this case." (citation omitted), *with infra* Section II (collecting cases).) And while the Reserve Bank argues that Conti-Brown's knowledge is limited to "the public record or the discovery record in this case," it fails to explain how any non-public documents would better inform Conti-Brown's analysis. (*See* Conti-Brown Mot. at 3.) Furthermore, the "why" underlying Conti-Brown's opinion that the Fed's policy changed course around 2015 is wholly immaterial. (*See id.* at 5.) At issue is the chronology of Fed practice, to the extent it aids the Court in its exercise of statutory interpretation; the reasons behind that chronology, beyond a change in the law, have no bearing on this inquiry. As a catchall, the Kansas City Fed lastly points to its own arguments and competing expert's opinion, contending that because its expert's arguments are better, Conti-Brown's methodology must not be reliable. (*Compare id.* at 6–7, *with* Def. Fed. Rsrv. Bank of Kan. City's Cross-Mot. for Summ. Judgment and Opposition to Pl.'s Petition for Review and Mot. for Judgment as a Matter of Law, ECF No. 273, at 41–42.) That, too, however, is no basis for exclusion. *See In re Williams*, 496 F. Supp. 2d at 1233.

    **II.**    **Conti-Brown May Opine on History—Including Legislative History—Without Usurping the Role of the Court.**

Although "an expert may not testify on the requirements of a statute and its regulations," *Schmidt v. Int'l Playthings LLC*, 536 F. Supp. 3d 856, 938–39 (D.N.M. 2021), the expert "may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms," *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988). Here, Conti-Brown was careful not to offer an opinion on how to interpret the MCA or any other statute or regulation. (*See, e.g.*, Ex. B (Conti-Brown Tr.) at 32:16–34:9 ("I offer my expertise here

as a historian of banking, and I'm not offering an opinion on the legal interpretation of the statute."), 62:4–13 ("I don't offer a legal opinion. I'll leave that to the Court and to the lawyers.").) Instead, he provides the Court—solely in its factfinding role—with an expert historian's understanding of the legislative history surrounding the MCA. (*Id.* at 32:16–34:9 ("What I'm offering is a perspective on the Fed's history from 1913 to 1980, how members of Congress and others understood the changes that occurred in 1980, and then how the Federal Reserve understood and implemented those changes from 1980 to 2015, and then, finally, how it understood in different ways those implementations from 2015 to the present.").)[2]

Courts routinely admit the testimony of expert historians. *See, e.g.*, *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1266–68 (D. Kan. 2003) (history professor permitted to testify as to the racist history of nursery rhyme that comprised core allegation in race discrimination suit), *aff'd*, 145 F. App'x 238 (10th Cir. 2005); *cf. United States v. Kamahele*, 748 F.3d 984, 998–99 (10th Cir. 2014) (no abuse of discretion where court permitted police officer to testify as expert on gang's "structure, insignia, and history"). Moreover, this permissible testimony extends to opinions regarding legislative history. *See, e.g.*, *Oregon Firearms Fed'n v. Kotek*, No. 2:22-CV-01815-IM, 2023 WL 4698752, at *3 (D. Or. May 31, 2023) ("Defendants' experts may offer opinions as to what kinds of firearm regulations existed during the relevant historical time periods, how and why those regulations came into existence, and what burdens those regulations imposed at the time."); *Johnson v. DeSoto Cnty. Sch. Bd.*, 995 F. Supp. 1440 (M.D. Fla. 1998) (court's substantial reliance on expert's account of both history and legislative history in voting rights case); *cf. Langbord v.*

---

[2] During his deposition, Conti-Brown clarified that any reference to the meaning of the MCA in his reports was to his understanding of the legislative history surrounding its passage. Neither he nor Custodia holds his reports or testimony out as an opinion on statutory interpretation or construction.

*U.S. Dep't of the Treasury*, No. CIV.A. 06CV05315, 2009 WL 1312576, at *8 (E.D. Pa. May 7, 2009) (expert permitted to testify as to "the fact that several Presidential Orders and other legal documents were issued and describing the context surrounding their issuance" in case concerning whether coins were illegally obtained from the U.S. Mint or U.S. Treasury), *aff'd in relevant part*, 832 F.3d 170, 195 (3d Cir. 2016) ("To fulfill his role as an expert witness, Tripp was obliged to help the jury understand the historical background of the 1933 Double Eagles. He did so by surveying a daunting amount of historical sources, evaluating their reliability and providing a basis for a reliable narrative about that past." (internal quotation marks omitted)); *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016) (expert testimony concerning compliance with FDA regulations permissible "given the complicated nature of FDA regulations, and it would be helpful to the jury to have an expert explain this complex regulatory process"). Nevertheless, if any question remains as to whether any of Conti-Brown's opinions traverse into questions of law, the appropriate time to consider such issues would be at trial, especially considering that there is no risk of unduly influencing a jury in a bench trial. *See Crabbe*, 556 F. Supp. 2d at 1220 & n.2 ("evidentiary objections," such as "whether a particular opinion is actually a conclusion of law" "are more appropriately addressed at trial").

Notably, the Kansas City Fed fails to locate *any* circuit that imposes a *per se* bar on expert testimony concerning legislative history. Meanwhile, the caselaw it offers is distinguishable. *See, e.g.*, *Rural Water Dist. No. 4, Douglas Cnty. v. City of Eudora*, 604 F. Supp. 2d 1298, 1307–08 (D. Kan. 2009) (expert testimony excluded where report stated he was providing his "personal and legal opinion"), *order clarified on reconsideration*, 2009 WL 1360182 (D. Kan. May 13, 2009), *and appealed on other grounds*, 659 F.3d 969 (10th Cir. 2011); *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498, 1507 n.6 (9th Cir. 1994) (appellate affidavits of non-Rule 702 experts "written

in the form of a legal document, complete with subdivisions for discussion of the issues, the law, and the conclusions" excluded)[3]; *United States v. Hausa*, No. 12 CR. 0134 (BMC), 2017 WL 354197, at *2 & n.2 (E.D.N.Y. Jan. 24, 2017) (only prohibiting testimony concerning "statutory interpretation" while allowing that if expert "sought to give relevant testimony regarding, for example, the history of the law of war and how it developed, that might be permissible testimony").

The Kansas City Fed's argument that Conti-Brown's report does not address every conceivable issue that influenced the passage of the MCA may go to the weight of his opinions, not their admissibility. (*See* Conti-Brown Mot. at 9–10.) Multiple issues often influence significant pieces of legislation. But that hardly means that each issue was of equal importance and thus deserves equal attention by an historian. Frequently the role of an historian is to determine which issues are attention worthy. Courts likewise tasked with evaluating legislative history do not consider every issue that may have touched the passage of a bill. Instead, courts focus on those issues relevant to the case at hand and determine whether (and if so, how) those issues were influential to the passage of legislation. And while the Reserve Bank cries foul at Conti-Brown's omission of its preferred historical account that it claims was so "central" to the MCA's passage, it referred to this history as a mere "*part* of the legislative history" and "*one purpose*" of the MCA during Conti-Brown's deposition. (*Compare id.* at 9, *with* Ex. B (Conti-Brown Tr.) at 105:10–15 (emphasis added), 106:19–22 (emphasis added).)

### III. Conti-Brown's Opinions Regarding Board Involvement in the Master Account Decisions of Custodia, TNB, and TBAS Provide a Helpful Historical Perspective.

Conti-Brown's testimony is helpful to the Court with respect to evaluating the Board's role in the denial of Custodia's master account application. As has been previously explained, he

---

[3] And despite its inapposite posture, in the almost 30 years since its publication, *Pan Ocean Shipping* has never been cited by the Ninth Circuit for the proposition offered by the Reserve Bank.

provides the Court with an invaluable historical perspective that helps contextualize the shift in Fed decisionmaking over time.  This understanding is critical to comparing present and historical decisionmaking at the Fed, which will aid the Court in its interpretation of the MCA.  Differences in the Fed's decision-making process over time reveal how its interpretation of the MCA has changed.

The Kansas City Fed criticizes Conti-Brown for not originally reviewing the deposition testimony in this case.  It omits that the transcripts were not available when his original report was due, and buries the fact that Conti-Brown reviewed them when they became available prior to the submission of his supplemental report.[4]  (*Compare* Conti-Brown Mot. at 11–12, *with* Ex. C (Conti-Brown Suppl. Rpt.), Ex. 1.)   Indeed, in his supplemental report, Conti-Brown cites President George's testimony in confirming his earlier conclusions.  (Ex. C (Conti-Brown Suppl. Rpt.) ¶¶ 3–4 (citing testimony), 2 (After reviewing "deposition transcripts and documents that were produced after I submitted my report[,] . . . [a]ll opinions and conclusions expressed in my original report remain unchanged.").)  That he places less weight on some self-serving testimony than the Reserve Bank is not a basis for exclusion.

The reasoning is similar for the necessity of including Conti-Brown's assessments of the decisions concerning TNB and TBAS.  These decisions are part of the relevant history of the Fed.  If Conti-Brown is permitted to provide his historical perspective on the development and implementation of the MCA at the Fed (along with their attendant issues), it follows that his perspective on the decisions regarding TNB and TBAS should be included as they are important milestones in that history.  Furthermore, the record relating to those decisions is a sufficient basis

---

[4] One deposition of a former Kansas City Fed official, Andrea Mullins, occurred after Conti-Brown submitted his supplemental report.

for him to form an opinion. What constitutes the pertinent record—for this and all other issues—would be best left for cross-examination, especially given that, if there is a trial, it will be a bench trial rather than a jury trial.

## CONCLUSION

Peter Conti-Brown brings an important historical perspective to this case. His opinions, based in the historical record, will help to inform the Court whether and how the Fed's understanding of its authority pursuant to the MCA has changed over time. Neither he nor Custodia holds out these opinions as legal interpretations on the meaning of the MCA—they are solely based on the history of its passage and implementation. Moreover, contrary to the Kansas City Fed's repeated mischaracterizations, Conti-Brown has reviewed all portions of the record that are relevant to this case. Although it quibbles with the weight he places on some evidence, those differences of opinion are not a basis to exclude his opinions in their entirety, and at most go to the weight to be accorded his testimony. If the Court determines that further exploration of this issue is necessary, the appropriate forum for its evaluation would be during cross-examination at trial, especially considering that a jury will not be present. *See Bevill*, No. 01-2524-CM, 2007 WL 1266675, at *2; *Tyson Foods*, 565 F.3d at 780.

DATED this 16th day of February, 2024.

CUSTODIA BANK, INC., Plaintiff

By:   /s/ Scott E. Ortiz
Scott E. Ortiz, W.S.B. # 5-2550
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 No. Wolcott, Suite 400
P.O. Box 10700
Casper, Wyoming 82602
Telephone:   (307) 265-0700
Facsimile:   (307) 266-2306
Email:   sortiz@wpdn.net

-and-

John K. Villa, *pro hac vice*
Ryan Scarborough, *pro hac vice*
Lauren Weinberger, *pro hac vice*
Ian Swenson, *pro hac vice*
Russell Mendelson, *pro hac vice*
WILLIAMS & CONNOLLY, LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone:   (202) 434-500
Emails:        jvilla@wc.com
                    rscarborough@wc.com
                    lweinberger@wc.com
                    iswenson@wc.com
                    rmendelson@wc.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served this day of February 16, 2024, addressed to:

| | |
|---|---|
| Mark Van Der Weide<br>Joshua P. Chadwick<br>Yvonne F. Mizusawa<br>Yonatan Gelblum<br>Katherine Pomeroy<br>BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM<br>20th Street and Constitutional Avenue, N.W.<br>Washington, DC 20551 | ☐ U.S. Mail (Postage Prepaid)<br>☐ Email<br>☐ Overnight Delivery<br>☐ Hand Delivery<br>☒ CM/ECF System |
| Billie L.M. Addleman<br>John P. Fritz<br>Erin E. Berry<br>HIRST APPLEGATE, LLP<br>P.O. Box 1083<br>Cheyenne, Wyoming 82003 | ☐ U.S. Mail (Postage Prepaid)<br>☐ Email<br>☐ Overnight Delivery<br>☐ Hand Delivery<br>☒ CM/ECF System |
| Andrew Michaelson<br>Laura Harris<br>KING & SPALDING, LLC<br>1185 Avenue of the Americas, 34th Floor<br>New York, New York 10036 | ☐ U.S. Mail (Postage Prepaid)<br>☐ Email<br>☐ Overnight Delivery<br>☐ Hand Delivery<br>☒ CM/ECF System |
| Jeffrey S. Bucholtz<br>Joshua N. Mitchell<br>Christine M. Carletta<br>Emily Caroline Snell Freeman<br>KING & SPALDING, LLP<br>1700 Pennsylvania Ave., N.W.<br>Washington, D.C. 20006 | ☐ U.S. Mail (Postage Prepaid)<br>☐ Email<br>☐ Overnight Delivery<br>☐ Hand Delivery<br>☒ CM/ECF System |
| Angela Tarasi<br>Jared M. Lax<br>KING & SPALDING, LLP<br>1401 Lawrence Street<br>Suite 1900<br>Denver, Colorado 80202 | ☐ U.S. Mail (Postage Prepaid)<br>☐ Email<br>☐ Overnight Delivery<br>☐ Hand Delivery<br>☒ CM/ECF System |

/s/ Scott E. Ortiz
Scott E. Ortiz