Scott E. Ortiz, W.S.B. # 5-2550
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
159 No. Wolcott, Suite 400
P.O. Box 10700
Casper, Wyoming 82602
Telephone:       (307) 265-0700
Facsimile:       (307) 266-2306
Email:           sortiz@wpdn net

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| CUSTODIA BANK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Number: 22-cv-00125-SWS |
| | ) | |
| FEDERAL RESERVE BOARD OF | ) | |
| GOVERNORS and FEDERAL RESERVE | ) | |
| BANK OF KANSAS CITY, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF CUSTODIA BANK, INC.'S
## OPPOSITION TO THE FEDERAL RESERVE BANK OF KANSAS CITY'S
## MOTION TO STRIKE REPORTS AND EXCLUDE THE TESTIMONY OF KATIE S. COX

As a hybrid fact/expert witness who both worked within the Federal Reserve System ("Fed") for more than 30 years and later served as a paid advisor to Custodia, Katie Cox's opinions are both relevant to the issues central to this case and reliable. Having spent two decades working at the Federal Reserve Board of Governors ("Board") and another decade employed at various Reserve Banks, Cox is uniquely suited to provide the Court (sitting as the factfinder) with critical background and insights regarding the Board's decision-making and relationship with the Reserve Banks.

The Federal Reserve Bank of Kansas City ("Kansas City Fed" or "Reserve Bank") raises four challenges to Cox's expert testimony.  First, it challenges Cox's qualifications to opine on the **Kansas City Fed's** "master account process" (Def. Fed. Rsrv. Bank of Kan. City's Mot. to Strike Rpts. and Exclude the Testimony of Katie S. Cox ("Cox Mot."), ECF No. 269, at 7), even though Custodia offers her as an expert in the **Board's** decision-making process and relationship with the Reserve Banks.  Next, it disparages her careful study of the relevant material and contends that her opinions are unreliable because she did not work in the Reserve Bank's Credit Risk Management Department ("CRM"), even though she worked on applications that included a master account component while at the Board.  (Ex. A (Cox Tr. (Vol. 1)) at 30:14–20, 37:11–17, 39:2–40:22, 66:3–67:20.)  And third, the Kansas City Fed attacks her as biased and mischaracterizes her opinions as mere "regugitat[ions]" by a "paid advocate" or impermissible legal conclusions, despite its failure to locate either in her expert reports.  (Cox Mot. at 12–13.)

Cox has important testimony to offer, and the Court should hear it.  Given that this is a bench trial, the Court has even greater latitude to consider Cox's testimony than it would in a jury trial.  If any doubt exists as to the admissibility of Cox's expert opinions—and there should be none—the proper forum for closer examination would be the witness stand at trial where Cox can be subject to cross-examination by the Reserve Bank and additional questioning by the Court.  This is particularly true given the Reserve Bank's concession that, regardless of the Court's ruling on the present motion, trial time would appropriately be allotted for Cox's testimony, as she is also a relevant fact witness.  (*Id.* at 1.)

## BACKGROUND

Prior to entering the private sector, Cox spent the near entirety of her 35-year public service career at the Fed.  After graduating from the University of Virginia with a Bachelors of Science in

commerce, a concentration in finance, and extensive coursework in accounting, Cox joined the Federal Reserve Bank of Dallas as an analyst in its Mergers and Acquisitions Section.  (Ex. B (Cox Rpt.) ¶¶ 9–10, Ex. 2 at 4.)  She then spent over seven years as a bank examiner at four different Reserve Banks, including the Kansas City Fed.  (*Id.* ¶ 11, Ex. 2 at 3–4; Ex. A (Cox Tr. (Vol. 1)) at 22:14–23:15.)  During her time as a bank examiner, Cox also served as an instructor for the Fed's core bank examiner school, where she "provided instruction to assistant bank examiners as to how the Federal Reserve analyzes the financial condition of banks and bank holding companies."  (Ex. B (Cox Rpt.) ¶ 12.)  After accompanying her husband on two active duty U.S. Air Force tours where she conducted audit work (including for the U.S. Air Force Audit Agency), Cox returned to the Fed—this time at the Board.  (*Id.* ¶¶ 13–14.)

At the Board, Cox worked in the Mergers and Acquisitions Section in various capacities for over 20 years until her retirement in 2020.  (*Id.* ¶ 14, Ex. 2 at 2–3.)  In 2010, Cox became a manager in the Section, where she "oversaw the review of the most complex domestic and international merger and acquisition proposals filed with the Federal Reserve System," "presented oral and written briefings to the Governors of the Board to obtain guidance for proposals that presented novel banking policy questions," and "saw first-hand how the Board creates policies and procedures with the goal of ensuring that Reserve Banks are consistent in their supervision and regulation of banking entities."  (*Id.* ¶ 14; *see also* Ex. A (Cox Tr. (Vol. 1)) at 51:8–56:18 (describing her interactions with the Board and the process through which policy is developed); *id.* (Cox Tr. (Vol. 2)) at 54:9–55:15 (describing her development of both public and internal "systemwide guidance," authorship of three prominent SR Letters, and review of numerous external and interagency Fed applications).

While employed at the Board, Cox "was one of the key presenters for proposals that were novel, complex, or policy setting for the governors of the Federal Reserve, and if necessary to the entire Board for the Board to vote on the proposal." (Ex. A (Cox Tr. (Vol. 2)) at 54:9–55:15.) Cox was responsible for reviewing about "40 different types of proposals that come into the Federal Reserve System." (*Id.* (Cox Tr. (Vol. 1)) at 28:7–29:8.)  Among the proposals that Cox reviewed were those for master accounts (*id.* (Cox Tr. (Vol. 1)) at 30:14–20, 37:11–17), particularly those involving novel and complex applicants such as ███████████████████ ██████████████████ (*id.* (Cox Tr. (Vol. 1)) at 39:2–40:22, 66:3–67:20).

In her expert report, Cox concludes that "the Board intervened in [Custodia Bank, Inc.'s ("Custodia")] request for a master account and exercised control over the denial of Custodia's master account" and that "although the final Custodia master account decision was issued under the imprimatur of the Reserve Bank, the Board was pulling the strings." (Ex. B (Cox Rpt.) ¶¶ 7, 85.)  Cox's opinions are based on her review of the extensive discovery record, including deposition transcripts, her communications with both the Board and Kansas City Fed during Custodia's application process, and her decades-long experience being exposed to how application decisions are made, and who makes them, at the Fed. (*See* Ex. B, Ex. 1 (Materials Relied Upon List); Ex. C at 7 (Supplemental Materials Relied Upon List); *see also, e.g.*, Ex. B (Cox Rpt.) ¶¶ 30 (experience), 35 (same), 39 (same), 45 (communications); Ex. C (Cox Suppl. Rpt.) ¶ 6 (experience); Ex. A (Cox Tr. (Vol. 1)) at 28:7–29:8 (experience), 30:14–20 (same).)

## **LEGAL STANDARD**

Federal Rule of Evidence 702 codifies *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an

opinion or otherwise if the proponent demonstrates to the court that
it is more likely than not that:

> (a) the expert's scientific, technical, or other
> specialized knowledge will help the trier of fact to
> understand the evidence or to determine a fact in
> issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles
> and methods; and

> (d) the expert's opinion reflects a reliable application
> of the principles and methods to the facts of the case.

FED. R. EVID. 702. "Under Rule 702, the district court must satisfy itself that the proposed expert

testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury

to assess such testimony." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (*en

banc*).

When a jury serves as factfinder, "[i]t is the responsibility of the Court to act as a

'gatekeeper' with regard to admission of proffered expert testimony." *United States v.

Motsenbocker*, No. CR-10-371-D, 2011 WL 902121, at *2 (W.D. Okla. Mar. 15, 2011) (quoting

*Daubert*, 509 U.S. at 597). But the necessity for the Court's gatekeeping role is significantly

diminished during a bench trial:

> *Daubert's* primary purpose is to protect juries from unreliable or
> confusing scientific testimony, and these concerns are significantly
> lessened in a bench trial. Thus, trial courts conducting bench trials
> have the flexibility to admit proffered expert testimony and to then
> decide during trial whether the evidence meets the requirements of
> *Daubert* and Rule 702.

*Mountain v. United States*, No. 19-CV-005-J, 2020 WL 8571674, at *2 (D. Wyo. Sept. 11, 2020);

*Bevill Co. v. Sprint/United Mgmt. Co.*, No. 01-2524-CM, 2007 WL 1266675, at *2 (D. Kan. Apr.

30, 2007) ("In a bench trial setting, it is appropriate for the court to allow the expert to testify, and

later make determinations about the admissibility, weight, and credibility of the expert's testimony." (collecting cases)); *see Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 780 (10th Cir. 2009) ("[A] judge conducting a bench trial maintains greater leeway in admitting questionable evidence, weighing its persuasive value upon presentation."); 11 Wright & Miller, Fed. Prac. & Proc. Civ. § 2885 (3d ed. 2023) ("In nonjury cases the district court can commit reversible error by excluding evidence but it is almost impossible for it to do so by admitting evidence."). Even when a jury is present, "[a] district court has broad discretion in determining the admissibility of expert testimony." *Becerra v. Schultz*, 499 F. Supp. 3d 1142, 1146 (D. Wyo. 2020) (Skavdahl, J.).

## ARGUMENT

Cox is uniquely qualified to testify in this case. Her experience at the Fed gives her insight into the Board's relationship with Reserve Banks. While there, Cox worked on multiple master account applications that originated from novel institutions, despite the rarity of such applications. (*See* Def. Fed. Rsrv. Bank of Kan. City's Cross-Mot. for Summ. Judgment and Opposition to Pl.'s Petition for Review and Mot. Judgment as a Matter of Law ("FRBKC Summ. J. Cross-Mot."), ECF No. 273, at 10 (Reserve Bank brief acknowledging that master account requests from *de novo* institutions are "rare.").) Furthermore, Cox's combined decades of experience at the Board and various Reserve Banks (including the Kansas City Fed) qualify her to provide the Court with helpful testimony regarding the inner workings of the Board and its relationship to Reserve Banks—insights that could not be gleaned by a layperson alone. The Court will undoubtedly benefit from her expertise. And her personal involvement as a paid advisor to Custodia who interacted with officials at both the Board and the Kansas City Fed regarding Custodia's pending applications only gives her testimony added weight.

I.      **Cox's Specialized Knowledge Qualifies Her as an Expert.**

"To qualify as an expert," the proffered expert must "possess skill, experience, or knowledge in the particular field" at issue; put another way, the "particular field" must "fall within the reasonable confines of her expertise." *Conroy v. Vilsack*, 707 F.3d 1163, 1169 (10th Cir. 2013) (internal quotation marks omitted). Rule 702 provides a "liberal standard . . . regarding expert qualifications." *United States v. Gomez*, 67 F.3d 1515, 1526 (10th Cir. 1995). "As long as an expert stays within the reasonable confines of his subject area, [Tenth Circuit] case law establishes a lack of specialization does not affect the admissibility of [the expert] opinion, but only its weight." *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1520 (10th Cir. 1996) (internal quotation marks omitted), *abrogated on other grounds by Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Here, the "particular field" at issue is the Board's decision-making processes and relationship with the Reserve Banks. *Conroy*, 707 F.3d at 1169. Cox is being offered in her capacity as an expert to explain the Board's processes for policymaking and decision-making and its relationship to the Reserve Banks. She has amassed the requisite expertise through over three decades of experience working in various capacities throughout the Fed as both a Board and Reserve Bank employee. While serving at four different Reserve Banks, including the Kansas City Fed, Cox was responsible for implementing Board policy in her role as a bank examiner. (Ex. B (Cox Rpt.) ¶¶ 9–11, Ex. 2 at 3–4; Ex. A (Cox Tr. (Vol. 1)) at 22:14–23:15.) Indeed, she was entrusted to impart her knowledge and experience to less experienced bank examiners. (*See* Ex. B (Cox Rpt.) ¶ 12.) At the Board, Cox became familiar with the most complex proposals filed with the Fed, including novel and complex master account requests. (*Id.* ¶ 14; Ex. A (Cox Tr. (Vol. 1)) at 28:7–29:8, 30:14–20, 37:11–17, 39:2–40:22, 66:3–67:20.) During this time, she was

consistently exposed to how policy was developed at the Board and subsequently communicated to the Reserve Banks. (*See* Ex. B (Cox Rpt.) ¶ 14; Ex. A (Cox Tr. (Vol. 1)) at 51:8–56:18.) Consequently, she is also qualified to apply her knowledge and experience to the discovery record surrounding Custodia's application.

The Kansas City Fed's motion misapprehends the scope of Cox's expert opinion as proffered by Custodia and nitpicks her experience (*see* Cox Mot. at 6–7), which is not a basis for disqualification. *See Compton*, 82 F.3d at 1520; 29 Wright & Miller, Fed. Prac. & Proc. Evid. § 6264.1 (2d ed. 2023) ("Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility."). The Kansas City Fed contends that Cox is not qualified to opine on how master account requests are processed within CRM (*see* Cox Mot. at 6–7), which it asserts was responsible for evaluating Custodia's master account application at the Reserve Bank (FRBKC Summ. J. Cross-Mot. at 9–11). Custodia, however, has not held Cox out as an expert concerning CRM, and her expert report does not attempt to opine on CRM's historical processes for addressing master account applications. Instead, Cox opines about the Board's involvement in deciding policy questions, and offers her first-hand perspective on how that involvement manifested itself on novel master account applications while working at the Fed, and then afterwards while serving as a paid advisor to Custodia.

Relatedly, the Kansas City Fed mischaracterizes Cox's relevant experience and the degree of specialization required. (Cox Mot. at 6–7.) First, Cox never testified that she only reviewed two master account applications (Ex. A (Cox Tr. (Vol. 1)) at 72:21–73:8 (testifying that she did not "remember the exact number" but that "there probably were a couple more in there"); *see id.* (Cox Tr. (Vol. 1)) at 30:14–32:8), and the two that she did recall in her testimony specifically related to a subset of applications relating to *de novo* banks (*id.* (Cox Tr. (Vol. 1)) at 38:16–39:19).

Furthermore, the degree of Cox's specialization goes to the weight of her opinions rather than their admissibility.[1]  *Compton*, 82 F.3d at 1520; *see, e.g.*, *Burton v. R.J. Reynolds Tobacco Co.*, 183 F. Supp. 2d 1308, 1312 (D. Kan. 2002) ("The fact that Dr. Burns has not conducted a study concerning PVD does not preclude him from testifying about the causes of PVD.").  Second, the Kansas City Fed itself admits that the non-routine *de novo* requests that Cox has reviewed are "rare." (FRBKC Summ. J. Cross-Mot. at 10.)  Thus, even if one were to accept the Reserve Bank's erroneous assertions concerning the specific experience required to qualify as an expert, Cox would be an ideal expert witness because she has seen multiple "rare" examples of *de novo* master account applications.

## II.     Cox's Opinion is Reliable.

The Kansas City Fed's challenge to the reliability of Cox's opinion similarly lacks merit. The Reserve Bank's disagreement with Cox's opinion and her interpretation of the evidence is not a basis for exclusion.  *See In re Williams Sec. Litig.*, 496 F. Supp. 2d 1195, 1233 (N.D. Okla. 2007) ("The evaluation for reliability cannot be permitted to evolve into an assessment of the ultimate persuasiveness of the proffered expert testimony."), *aff'd*, 558 F.3d 1130 (10th Cir. 2009).  First, the Kansas City Fed's characterization of the discovery record and Cox's review thereof is

---

[1] The two cases cited by the Kansas City Fed are inapposite. (*See* Cox Mot. at 7–8.)  In *City of Hobbs v. Hartford Fire Insurance Co.*, 162 F.3d 576 (10th Cir. 1998), the Court emphasized that its holding was only narrowly applicable to the facts of the case, and in over 25 years since its publication, the relevant proposition in this decision has never been cited in a published Tenth Circuit opinion.  *Id.* at 587 ("We only hold here that the specific ruling on this record, challenged on this appeal, was not an abuse of discretion.").  And the degree of specialization was not at issue in *In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litigation*, No. 17-MD-2785-DDC-TJJ, 2021 WL 2577490 (D. Kan. June 23, 2021); rather, the court held that the proffered expert who had a background in pharmaceutical chemistry and drug formulation was not qualified to testify as to the unrelated mechanical issues regarding a drug delivery device. *Id.* at *48–50.

disingenuous.  Contrary to the Reserve Bank's account of Cox's analysis, only two witnesses had been deposed in the days before Cox's initial report was due on October 20, 2023, and neither of those two witnesses's final transcripts were received before October 20.  Cox then reviewed the deposition testimony in this case when it became available prior to the submission of her supplemental report.[2]  (*See* Ex. C (Cox Suppl. Rpt.) at 7.)  Based on her detailed review of the deposition testimony from *nine* witnesses and the documents that were produced late from the Reserve Bank, she determined that "[a]ll opinions and conclusions expressed in my original Cox Report remain unchanged," while also offering additional opinions that were consistent with her initial report.  (*Id.* ¶ 2.)

Moreover, many of the documents referenced by the Kansas City Fed are outside the scope of Cox's opinion, and often go to the reasonableness of the denial of Custodia's master account, which the Court has held is not at issue in this case.  (*See, e.g.*, Cox Mot. at 9 (referring to "[d]ocuments [allegedly] showing that FRBKC had significant concerns with Custodia throughout its review, including FRBKC's risk assessments identifying numerous deficiencies"); Order, ECF No. 197; FRBKC Summ. J. Cross-Mot. at 38.)  For example, it is immaterial whether Cox is familiar with internal policies at the Kansas City Fed, as this is outside of her proffered expertise in understanding ***Board*** policies and the Board's communication of its policies to Reserve Banks. (*See* Cox Mot. at 10–11 (collecting internal Reserve Bank policies).)

Second, Cox's assessment concerning the Account Access Guidelines, S-Letter, and Handbook is properly based on her experience regarding the Board's communication of policy to

---

[2] One deposition of a former Kansas City Fed official, Andrea Mullins, occurred after Cox submitted her supplemental report.

the Reserve Banks.[3]  (*See, e.g.*, Ex. C (Cox Suppl. Rpt.) ¶ 6 ("In my experience, I cannot recall revisions to a System handbook requiring nonobjection by a division director of the Board of Governors or the general counsel of the Board."); Ex. B (Cox Rpt.) ¶ 69 ("Based on my experience working for the Board, . . . it is my opinion that the Board . . . used the Guidelines . . . to ensure that the Board would be able to exert control over the ultimate decision.").)  Whether those documents reference Custodia explicitly is irrelevant, as Cox has explained that they generally provide the Board with "significant control over how master account applications by banks such as Custodia are to be reviewed and acted upon by the Reserve Banks," (Ex. C (Cox Suppl. Rpt.) ¶ 13), and the Kansas City Fed has acknowledged that they were applied in Custodia's case, (*see* FRBKC Summ. J. Cross-Mot. ¶¶ 92 (acknowledging that the Kansas City Fed told Custodia its master account application would not be decided until the Account Access Guidelines were finalized), 95 (acknowledging that pursuant to the drafted, but not yet finalized, S-Letter, the Board provided edits to a memo recommending denial of Custodia's master account application); Ex. D (30(b)(6) Tr.) at 278:8–19 (acknowledging that the Reserve Bank consulted the draft Handbook and used it "as a reference point" in assessing Custodia's master account request).)

Third, Cox's opinions are also based on her personal experience at the Fed.  (*See* Cox Mot. at 11.)  As explained above, Cox is familiar with the development and dissemination of Board

---

[3] While the Kansas City Fed implies that Cox opining based on her experience is impermissibly speculative (*see* Cox Mot. at 12), this practice has repeatedly been upheld as permissible.  *See, e.g.*, *Willis v. BW IP Int'l Inc.*, 811 F. Supp. 2d 1146, 1154 (E.D. Pa. 2011) (ruling expert affidavits based on experts' "experience in the Navy's dealings with manufacturers" were admissible and not speculative where opinions stated that "had Defendants attempted to affix warnings to their products, the Navy would not have permitted them to do so"); *Ramos v. Banner Health*, 426 F. Supp. 3d 815, 820 (D. Colo. 2019) (refusing to exclude expert before bench trial despite "recogniz[ing] the potential weaknesses of [his] testimony" where expert relied on experience instead of data in determining "the range of expected recordkeeping and administrative service fees").

policy which is central to her opinion.  And despite the rarity of Custodia's application, Cox has

seen novel applications before, such as those filed by ███████████.  Contrary to the Kansas

City Fed's incorrect assertions (*see id.*), Cox specifically points to the Handbook and Guidelines

(and the underlying S-Letter) as Board policy that grants the Board "significant control" over

Reserve Banks' review of master account applications like Custodia's.[4]

### III.   Cox Provides a Unique and Essential Analysis of the Facts That is Helpful to Understanding a Complex Record and Does Not Otherwise Invade the Province of the Court.

Cox's expertise will also be helpful to the Court as the trier of fact.  "Rule 702 requires a

district court to satisfy itself that the proposed expert testimony . . . will assist the trier of fact,

before permitting a jury to assess such testimony."  *United States v. Archuleta*, 737 F.3d 1287,

1296 (10th Cir. 2013) (internal quotation marks omitted).  "To determine whether the testimony

will assist the trier of fact, courts look to whether the testimony is relevant, within the juror's

common knowledge and experience, and whether it will usurp the juror's role of evaluating a

witness's credibility."  *Id.* (internal quotation marks omitted).  Because Cox is not opining on

another witness's credibility, the Court need only consider the relevance of her opinions and

whether those opinions fall within a trier of fact's common knowledge and experience.

---

[4] The Reserve Bank's reference to the Board's policy statement—which was finalized *after* Custodia's application was denied—is a *non-sequitur* and does not bear on Cox's opinions.  (*See* Cox Mot. at 11 (citing Policy Statement on Section 9(13) of the Federal Reserve Act, 88 Fed. Reg. 7848, 7850 (Feb. 7, 2023)).)  The Board may claim that custody of crypto-assets is theoretically permissible, yet promulgate policies such as the Guidelines, S-Letter, and Handbook which ensure that this remains all but impossible in practice, especially for entities like Custodia—an issue integral to this case.  Indeed, the policy statement cited by the Kansas City Fed is not applicable to state *non-member* banks like Custodia, and the Board admits that it "has not yet been presented with facts and circumstances that would warrant rebutting its presumption" that "limits state member banks to engaging as principal in only those activities that are permissible for national banks."  88 Fed. Reg. at 7848, 7850.

Here, Cox's opinions are relevant.  At issue in this case is whether the Board "inserted itself into [the Kansas City Fed's] consideration of Custodia's application."  (Order on Defs. Mot. to Dismiss, ECF No. 164 at 10.)  Cox's opinions directly address that issue.  (*See, e.g.*, Ex. B (Cox Rpt.) ¶ 85 ("For the reasons explained above, it is my opinion that . . . the Board was pulling the strings."); Ex. C (Cox Suppl. Rpt.) ¶ 13 ("[I]t is my opinion that the draft and final Guidelines Handbook provides the Board significant control over how master account applications by banks such as Custodia are to be reviewed and acted upon by the Reserve Banks.").)  Cox's opinions also fall outside the Court's common knowledge and experience.  This case in many ways exemplifies historical opacity within the Fed.  Custodia—along with the previous applicants and the public— previously had little insight into how its master account application was evaluated until being granted access to the administrative record (*e.g.*, revealing the S-Letter and drafts of the denial memo edited by Board staff) and discovery (*e.g.*, revealing the Handbook and Reserve Bank communications with the Board).  Due to this lack of transparency, no one outside the Fed can be said to have encountered most of the documents produced in this case before.  Accordingly, with over 30 years of experience at the Fed, Cox will be an invaluable resource to the Court as it reviews this first-of-its-kind record.

Cox does not merely "repeat Custodia's factual allegations."  (Cox Mot. at 11.)  Unlike the inapposite examples cited by the Kansas City Fed, Cox formulates her opinions by relying on her applicable experience and demonstrates how she arrives at her conclusions through clear references to the factual record—*i.e.*, a methodology (*see supra* Section II).  (*See. e.g.*, Ex. B (Cox Rpt.) ¶ 74 (describing that "the requirement that a Reserve Bank consult directly with a Division Director is highly unusual," and "[r]equiring a Division Director to be consulted effectively removes decision-making authority from Reserve Banks.").)

Nor does Cox purport to invade the province of the Court through providing legal conclusions. Notably, the Kansas City Fed fails to identify any opinions in Cox's expert reports that resemble legal conclusions—because there are none. (*See* Cox Mot. at 12–13.) Rather, they focus on her deposition, where they designed their questioning to goad Cox (despite repeated objections) until they could elicit the testimony of which they now complain. (Ex. A (Cox Tr. (Vol. 2)) at 174:14–177:13.) Notwithstanding, Cox for the most part steered clear of offering legal opinions during her deposition.[5]

Courts have repeatedly rejected such tactics. *See ZHN, LLC v. Randy Miller, LLC*, No. CIV-12-1289-M, 2015 WL 13648590, at *1 (W.D. Okla. Mar. 16, 2015) (denying motion to strike and refusing to speculate as to content of trial testimony based on legal opinions elicited by opposing counsel during expert's deposition testimony); *Kelley v. C.R. Bard, Inc.*, 644 F. Supp. 3d 1316, 1325–26 & n.7 (N.D. Ga. 2022) (denying motion to exclude expert's deposition testimony as outside the scope of his report that was elicited by moving counsel and where opposing counsel "concede[d] that [expert] [was] unable to testify on matters actually outside his report, and indicate[d] that he [would] not do so"); *see A.E. By & Through Evans v. Indep. Sch.*

---

[5] For example:

- "Q. Do you understand what the source of the authority would be for the Board to act on a master account request? [Counsel for Custodia]: Object to form. Calls for a legal conclusion. THE WITNESS: Yeah, that -- again, it would be the legal division's determination." (Ex. A (Cox Tr. (Vol. 1)) at 156:11–17.)
- "Q. Does the Federal Reserve Act give powers to the Federal Reserve banks and the -- and the Board of Governors? [Counsel for Custodia]: Object to form. Calls for a legal conclusion. THE WITNESS: Yeah, I mean, I don't -- you would have to ask an attorney about that and not me." (*Id.* (Cox Tr. (Vol. 1)) at 158:17–159:2.)
- "Q. Okay. But delegated functions are defined by regulation. Is that right? [Counsel for Custodia]: Object to form. And calls for a legal conclusion. THE WITNESS: So delegated functions, I'll say typically -- but I'm not a lawyer. That's the legal division's determination what's delegated and what's not." (*Id.* (Cox Tr. (Vol. 1)) at 350:9–16.)

*Dist. No. 25, of Adair Cnty.*, 936 F.2d 472, 477 (10th Cir. 1991) (appellant unable to challenge testimony elicited by her counsel during trial on direct examination); *United States v. Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005) (same on cross-examination, citing *Evans*); *Stetter v. Shalala*, 13 F. App'x 79, 84 n.4 (4th Cir. 2001) (party may not later complain of legal conclusion that was "invited" by its own questioning). Cox's reports are silent as to the issues that were improperly elicited by the Reserve Bank during her deposition. Custodia likewise has no intention of relying on improperly elicited testimony. There is thus no risk that Cox's opinions will exceed the bounds of what is permissible.

### IV.     Cox Is Not Biased, nor is Potential Bias a Basis for Exclusion.

Potential bias is almost never a basis for exclusion of a witness. *Downhole Stabilization Rockies Inc. v. Reliable Field Servs. LLC*, No. 15-CV-226-J, 2017 WL 3477743, at *3 (D. Wyo. Feb. 10, 2017) (Rankin, M.J.); *Renken v. Builders Transp. Co., LLC*, No. 10-CV-057-J, 2011 WL 11027989, at *3 (D. Wyo. Feb. 15, 2011) (Skavdahl, M.J.). "[B]ias goes to the weight, not the admissibility, of expert testimony." *Downhole Stabilization Rockies*, No. 15-CV-226-J, 2017 WL 3477743, at *3; *Dowdy v. Coleman Co., Inc.*, No. 1:11-CV-45, 2012 WL 12888581, at *2 (D. Utah Apr. 9, 2012) ("At trial, proof of bias may be used to impeach the credibility of a witness.").

The dearth of authority supporting the Kansas City Fed's argument is glaring. Indeed, the only case it cites as an alleged basis for excluding Cox for bias *denied* a very similar motion to strike. *See Downhole Stabilization Rockies*, No. 15-CV-226-J, 2017 WL 3477743, at *3. There, the defendant's proffered expert was an employee of the same corporate entity that owned the defendant, and the plaintiff argued that the expert, therefore, could not be considered "neutral or disinterested" to testify at the upcoming bench trial. *Id.* at *1, 3. Judge Rankin, however, denied that motion, reasoning that "while a trial court has discretion to exclude opinion testimony when the expert has an interest in the case[,] the majority of courts allow such testimony but discount its

weight and credibility accordingly." *Id.* at *3 (internal quotation marks omitted).  The court was also persuaded that "the usual concerns regarding unreliable expert testimony reaching a jury" were not of any concern because that case—like ours—was scheduled as a bench trial.  *Id.* (quoting *Tyson Foods*, 565 F.3d at 779).  The Reserve Bank cannot point to any binding authority that would otherwise require disqualifying Cox.

Cox has been fully forthcoming regarding the compensation she received as an advisor to Custodia.  (Ex. B (Cox Rpt.) ¶ 3 ($2,500 monthly retainer and stock options).)  Meanwhile, despite having had an opportunity to question Cox regarding her earnings from her work for Custodia, the Kansas City Fed limits its arguments to pure conjecture.  While the Reserve Bank nebulously points to Cox's stock options, it makes no attempt to show how their value would be impacted by the outcome of this litigation.  And for good reason: as Cox testified, such an endeavor would be highly speculative, given that Custodia is not publicly traded and the company has a complex capital structure.  (*See* Ex. A (Cox Tr. (Vol. 1)) at 111:13–112:13; *id.* (Cox Tr. (Vol. 2)) at 18:10–21:15.)  *Cf. Blue v. Fireman*, No. C.A. No. 2021-0268-MTZ, 2022 WL 593899, at *18 (Del. Ch. Feb. 28, 2022) ("Options, like other derivative securities, inherently involve risk.  Plaintiffs' speculation or hope that they picked the right side of their bet is not, standing alone, sufficient to establish a reasonable probability of a business relationship.").

## <u>CONCLUSION</u>

Custodia has clearly demonstrated both the relevance and reliability of Katie Cox's expert testimony.  If the Court determines that further exploration of this issue is necessary, that should happen during cross-examination at trial.  *See Bevill*, No. 01-2524-CM, 2007 WL 1266675, at *2; *Tyson Foods*, 565 F.3d at 780.

DATED this 16th day of February, 2024.

CUSTODIA BANK, INC., Plaintiff

By:     /s/ Scott E. Ortiz
        Scott E. Ortiz, W.S.B. # 5-2550
        WILLIAMS, PORTER, DAY & NEVILLE, P.C.
        159 No. Wolcott, Suite 400
        P.O. Box 10700
        Casper, Wyoming 82602
        Telephone:     (307) 265-0700
        Facsimile:     (307) 266-2306
        Email:         sortiz@wpdn.net

        -and-

        John K. Villa, *pro hac vice*
        Ryan Scarborough, *pro hac vice*
        Lauren Weinberger, *pro hac vice*
        Ian Swenson, *pro hac vice*
        Russell Mendelson, *pro hac vice*
        WILLIAMS & CONNOLLY, LLP
        680 Maine Avenue SW
        Washington, DC 20024
        Telephone:     (202) 434-500
        Emails:        jvilla@wc.com
                       rscarborough@wc.com
                       lweinberger@wc.com
                       iswenson@wc.com
                       rmendelson@wc.com

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served this day of February 16, 2024, addressed to:

Mark Van Der Weide
Joshua P. Chadwick
Yvonne F. Mizusawa
Yonatan Gelblum
Katherine Pomeroy
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
20th Street and Constitutional Avenue, N.W.
Washington, DC 20551

☐ U.S. Mail (Postage Prepaid)
☐ Email
☐ Overnight Delivery
☐ Hand Delivery
☒ CM/ECF System

Billie L.M. Addleman
John P. Fritz
Erin E. Berry
HIRST APPLEGATE, LLP
P.O. Box 1083
Cheyenne, Wyoming 82003

☐ U.S. Mail (Postage Prepaid)
☐ Email
☐ Overnight Delivery
☐ Hand Delivery
☒ CM/ECF System

Andrew Michaelson
Laura Harris
KING & SPALDING, LLC
1185 Avenue of the Americas, 34th Floor
New York, New York 10036

☐ U.S. Mail (Postage Prepaid)
☐ Email
☐ Overnight Delivery
☐ Hand Delivery
☒ CM/ECF System

Jeffrey S. Bucholtz
Joshua N. Mitchell
Christine M. Carletta
Emily Caroline Snell Freeman
KING & SPALDING, LLP
1700 Pennsylvania Ave., N.W.
Washington, D.C. 20006

☐ U.S. Mail (Postage Prepaid)
☐ Email
☐ Overnight Delivery
☐ Hand Delivery
☒ CM/ECF System

Angela Tarasi
Jared M. Lax
KING & SPALDING, LLP
1401 Lawrence Street
Suite 1900
Denver, Colorado 80202

☐ U.S. Mail (Postage Prepaid)
☐ Email
☐ Overnight Delivery
☐ Hand Delivery
☒ CM/ECF System

 /s/ Scott E. Ortiz
Scott E. Ortiz