Andrew Michaelson (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com

Jeffrey S. Bucholtz (*pro hac vice*)
Christine M. Carletta (*pro hac vice*)
E. Caroline Freeman (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500
jbucholtz@kslaw.com
ccarletta@kslaw.com
cfreeman@kslaw.com

Jared Lax (*pro hac vice*)
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Phone: (720) 535-2300
jlax@kslaw.com

Billie L.M. Addleman, #6-3690
Erin E. Berry, #7-6063
HIRST APPLEGATE, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
eberry@hirstapplegate.com

*Counsel for Defendant Federal Reserve Bank of Kansas City*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| CUSTODIA BANK, INC.,<br><br>   *Plaintiff,*<br><br>   v.<br><br>FEDERAL RESERVE BOARD OF GOVERNORS and FEDERAL RESERVE BANK OF KANSAS CITY,<br><br>   *Defendants.* | No. 1:22-cv-00125-SWS |

**DEFENDANT FEDERAL RESERVE BANK OF KANSAS CITY'S
REPLY IN SUPPORT OF MOTION TO STRIKE REPORTS AND EXCLUDE THE
TESTIMONY OF PROFESSOR PETER CONTI-BROWN**

## INTRODUCTION

Custodia's opposition makes clear that it hopes to use Conti-Brown's reports and testimony to guide this Court's resolution of both the legal question at the heart of this case (the interpretation of the Federal Reserve Act ("FRA"), as amended by the Monetary Control Act ("MCA")) and the factual dispute in which the Court expressed interest (whether the Board "pull[ed] the puppet strings," ECF 164 at 10, to dictate the denial of Custodia's request for a master account). The Court should grant FRBKC's motion to strike Conti-Brown's reports and exclude his testimony because neither topic is an appropriate subject for expert testimony and because his opinions are unreliable. Although Custodia would prefer to delay the Court's consideration of FRBKC's objections, *see* Opp. 1–2, 13, these are independent, threshold issues of admissibility, *see* Mot. 5 & n.2, 10–11; Fed. R. Evid. 702 & advisory committee's note to 2023 amendment. Custodia implies that Conti-Brown's testimony should be admitted so long as it is reliable, Opp. 1–2, but the plain text of Rule 702 requires the proponent of expert testimony to prove that it will be helpful to the trier of fact, Fed. R. Evid. 702(a). Because none of Conti-Brown's opinions are helpful to the Court as trier of fact, his testimony must be excluded. *See United States v. Richter*, 796 F.3d 1173, 1195–96 (10th Cir. 2015).

Custodia concedes that Conti-Brown cannot offer a legal opinion. Opp. 8. At a minimum, the portions of his Report opining on the meaning of the MCA's amendments to the FRA must be stricken and his testimony limited accordingly. His opinions on legislative history and legislative intent must also be excluded because they concern solely the Court's resolution of a question of law—and not a disputed fact—and therefore invade the Court's province of interpreting the law. His opinion on the Fed's historical exercise of discretion is unreliable because he ignored without explanation contrary evidence that other scholars in his field consider material. And his opinions

on the Board's role in specific master account requests, including Custodia's, must be excluded because they are not helpful to the Court and are unreliable (and, regarding TNB and TBAS, irrelevant).

## ARGUMENT

**I.    Conti-Brown Cannot Invade the Province of the Court by Offering Legal Opinions.**

**A.    Custodia Concedes that Conti-Brown Cannot Opine on the Meaning of the FRA as Amended by the MCA.**

While Custodia concedes that Conti-Brown cannot offer legal opinions, Opp. 3, 8–9, it largely ignores that Conti-Brown repeatedly offered impermissible legal opinions throughout his Report and deposition testimony.  *See* Mot. 7–8; *see, e.g.*, Ex. 1 ("Rep.") ¶¶ 9, 27 & n.12, 41, 45 (opining on what Congress "authorized" and on the legal effects of the MCA's amendments to the FRA); *cf.* Opp. 6 (stating that Conti-Brown "interpreted" Fed policy guidance).  Custodia cannot rewrite the Report through a footnote in its brief purporting to "clarif[y]" that his legal opinions are something else.  Opp. 9 n.2.  Thus, at a minimum, the Court should strike the portions of the Report that opine on the meaning of the MCA and should limit Conti-Brown's testimony to exclude legal opinions.  *See Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (en banc).

**B.    Conti-Brown's Opinion on the MCA's Legislative History Must Be Stricken Because It Concerns Solely a Question of Law and Not a Question of Fact.**

Conti-Brown's opinions on legislative history and Congressional intent are also inadmissible.  FRBKC never asserted that there is a *per se* bar on historical experts.  *Contra* Opp. 2.  Instead, it explained that an expert cannot opine on legislative intent or legislative history to inform the Court's resolution of a question of statutory interpretation.  Mot. 8–9.  Custodia attempts to shoehorn Conti-Brown's opinions into the category of historical expert testimony that is admissible by claiming that "he provides the Court—*solely in its factfinding role*—with an expert historian's understanding of the legislative history surrounding the MCA."  Opp. 9

2

(emphasis added). But the sole fact issue in dispute here is whether FRBKC exercised discretion in denying Custodia's master account request, and nothing about the MCA's legislative history could possibly be relevant to that issue. The MCA's legislative history and the context in which it was passed are relevant only to the *legal* question of the proper interpretation of the MCA. *See* Mot. 8–9; *St. Charles Inv. Co. v. Commissioner*, 232 F.3d 773, 776 (10th Cir. 2000) (explaining that the *Court's* primary task in statutory interpretation is to determine congressional intent, including by reference to legislative history when needed).

None of the cases that Custodia cites, Opp. 9–10, involved an expert describing legislative history to the court to inform the court's resolution of a question of statutory interpretation. Rather, those cases make clear that expert opinions on legal history and legislative history are admissible only when carefully limited, clearly distinguished from opinions on the law, and relevant to the resolution of a disputed issue of *fact*. *See Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1267–69 (D. Kan. 2003) (permitting history professor to testify regarding discriminatory history of nursery rhyme in dispute but excluding testimony that was "essentially a legal conclusion"); *United States v. Kamahele*, 748 F.3d 984, 998–99 (10th Cir. 2014) (no abuse of discretion where police officer was permitted to testify in a racketeering prosecution as an expert on the history of a gang); *Or. Firearms Fed'n v. Kotek*, 2023 WL 4698752, at *3 (D. Or. May 31, 2023) (permitting expert witnesses to opine on historical firearm regulations but forbidding expert opinions on whether challenged law was consistent with historical tradition)[1]; *Johnson v. DeSoto Cnty. Sch. Bd.*, 995 F. Supp. 1440, 1442 n.1 (M.D. Fla. 1998) ("[T]he Court must 'determine as a factual

---

[1] The district court's final judgment in *Oregon Firearms Federation* made clear that the court considered such testimony only insofar as it related to disputes of fact. *See* 2023 WL 4541027, at *5, *15 (D. Or. July 14, 2023) (noting witness testimony about "disputed issues regarding the historical record" and making "findings of fact" regarding "history and tradition"), *appeal docketed*, No. 23-35478 (9th Cir. July 17, 2023).

3

matter, based upon the relevant evidence and testimony presented by the parties in this case, whether there was discriminatory intent behind the 1947 Act.'" (quoting Eleventh Circuit's instructions in decision remanding the case *sub nom. Johnson v. DeSoto Cnty. Bd. of Comm'rs*, 72 F.3d 1556, 1561 (11th Cir. 1996))); *Langbord v. U.S. Dep't of Treasury*, 2009 WL 1312576, at *7–8 (E.D. Pa. May 7, 2009) (in dispute over whether gold coins could have been legally acquired, permitting numismatics expert to "testify regarding the fact that official government orders or other legal documents were issued" to "help the jury understand facts" but forbidding experts from testifying regarding "legal effect[s]" or "legal implications")[2]; *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 467 (S.D.N.Y. 2016) (in case governed by state-law theories of negligence and strict liability, permitting expert testimony on compliance with FDA regulations to assist jury in determining whether defendant acted with reasonable prudence).

Finally, even if there *were* a factual dispute in this case concerning legislative history, the methodology that Conti-Brown used to opine on the subject is unreliable because he ignored contrary evidence. *See* Mot. 9–10. At his deposition, Conti-Brown conceded that a central purpose of the MCA was to reinforce the Fed's control over monetary supply, Ex. 23 ("Tr.") at 105:10–107:11, which directly contravenes the claim in his Report that the MCA eliminated federal discretion over access to the federal payment system, Ex. 1, Rep. ¶¶ 27, 41, 45; *see also* Ex. 23, Tr. at 30:18–32:6, 188:18–189:2. But he failed even to mention that legislative history in his Report, *see* Ex. 23, Tr. at 107:8–14, much less reconcile it with his opinion. Indeed, when pressed

---

[2] The Third Circuit affirmed the district court's determination that the expert witness was not a mere conduit for inadmissible hearsay. *See* 832 F.3d 170, 194 (3d Cir. 2016). Contrary to Custodia's assertion that the Third Circuit affirmed "in relevant part," Opp. 10, the portion of the order Custodia cites—the district court's ruling on the extent to which the proffered testimony contained inadmissible legal conclusions, 2009 WL 1312576, at *8—was not raised on appeal, *see* 832 F.3d at 194 (summarizing evidentiary objections to expert testimony raised on appeal).

to substantiate his claim that the MCA's "framers" supposedly intended to eliminate the Fed's discretion over the federal payment rails, Conti-Brown admitted that he could not identify any legislative history on point. *Id.* at 216:21–218:1, 219:4–221:12. Conti-Brown's opinion on legislative history and Congressional intent is therefore unreliable. *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (an expert's methodology may be unreliable if it "completely ignore[s] or discount[s] without explanation" contrary evidence).

## II. Conti-Brown's Opinion on the Fed's Historical Exercise of Discretion Is Unreliable.

Conti-Brown's opinion that the Fed first asserted discretion over access to services in 2015, *see, e.g.*, Ex. 1, Rep. ¶¶ 59–60, is unreliable because he failed to account for countervailing evidence. He claims to have found "no evidence" that the Fed asserted discretion between 1980 and 2015. *Id.* ¶ 59. Yet other scholars in the field have described historical examples of the Fed's assertion of discretion as "too voluminous for" a single article. Ex. 3 ("Hill") at 39 (Julie Andersen Hill, *Bank Access to Federal Reserve Accounts and Payment Systems* (Univ. of Ala. Legal Studies Rsch. Paper No. 4048081, Mar. 30, 2022) (revised article published as *Opening a Federal Reserve Account*, 40 Yale J. on Reg. 453 (2023))).[3] Conti-Brown admitted at his deposition that he was aware of some of these documents, including those listed by Hill as illustrative examples, *see* Ex. 23, Tr. at 118:2–119:15, 137:20–138:7, 141:18–142:7; Ex. 3, Hill at 39–41, but he did not address them in his Report, *see* Mot. 3–4. His failure to address the evidence identified as material by other experts in his field and to *explain* why he considered it not relevant or not inconsistent with his opinion makes his methodology unreliable. *See Norris*, 397 F.3d at 884; *Rimbert v. Eli Lilly*

---

[3] Conti-Brown cites Hill's other scholarship throughout his Report, *see, e.g.*, Ex. 1, Rep. at 25–26, 28–30 nn.38, 40–42, 48–53, indicating that he considers her an authority in the field. *Contra* Opp. 7 n.1 (claiming that it "is not the case" that Conti-Brown "failed to consider evidence that … other authorities in the field had considered relevant").

5

*& Co.*, 2009 WL 2208570, at \*20 (D.N.M. July 21, 2009).

In its Opposition, Custodia contends that Conti-Brown disregarded these contrary facts as "irrelevant," *see* Opp. 6–7, but they are not. The point he was trying to make is that the Federal Reserve did not exercise discretion over access to services prior to 2015, and these various policies and procedures demonstrate that Reserve Banks were doing precisely what he claims they were not. The 1985 policy statement addresses risk associated with large-dollar wire transfers and describes how Reserve Banks will monitor and restrict such transfers as appropriate to mitigate risk. Ex. 4. At his deposition, Conti-Brown agreed that the policy carried out regulation "that appl[ies] to the entire system." Ex. 23, Tr. at 120:2–121:9. That is an exercise of discretion over access to Federal Reserve services that undermines his bright-line position that no such discretion was asserted until 2015. Likewise, he understood the 2004 policy, Ex. 6, to assert discretion over the use of priced services on a case-by-case basis according to risk assessments, *see* Ex. 23, Tr. at 141:18–142:7, 146:7–147:7. That, too, reflects an exercise of discretion of the sort he opines did not exist at the time. And finally, he agreed that FRBNY's 2014 policy on high-risk applicants, Ex. 7—a document he had never seen before, Ex. 23, Tr. at 236:12–237:8, 403:11–19—to describe individualized risk assessments of institutions deemed high-risk, Ex. 23, Tr. at 245:12–247:17. This is still more evidence that the Federal Reserve was exercising discretion over access to services prior to 2015. Calling all of these documents "irrelevant" does not make them so. Conti-Brown's failure to address these facts renders the very core of his opinion—that there was no assertion of discretion over access until 2015, Ex. 1, Rep. ¶¶ 59–60—not only unreliable, but demonstrably wrong.

Conti-Brown made a belated attempt at his deposition to distinguish the above-referenced expressions of discretion from the form of discretion he claims is at issue here, but his answers,

6

echoed in the opposition, Opp. 6–7, are not coherent. He says the Federal Reserve's exercises of discretion prior to 2015 are either, on the one hand, general "regulations" of broad applicability, *see, e.g.*, Ex. 23, Tr. at 81:19–82:11, or, on the other hand, individualized use-based conditions, *see, e.g.*, *id.* at 146:7–147:7. Taken together, however, general regulations of broad applicability and individualized assessments pretty much cover everything. Conti-Brown then asserts that prior to 2015, the Federal Reserve was not making "idiosyncratic decisions to grant priced services to individual legally eligible depository institutions," *id.* at 149:11–22, and he claims that the Federal Reserve cannot act as a "re-chartering" authority, *see, e.g.*, Ex. 1, Rep. ¶¶ 9, 13, 16–18. But he fails to draw any coherent line between such conduct and that which the Federal Reserve was plainly doing both before and after 2015. In sum, Conti-Brown's claim that the Fed can regulate through broadly applicable policies and can impose use-based conditions on particular institutions, Ex. 23, Tr. at 7:16–9:7, makes no sense alongside his claim that the Fed cannot engage in "bespoke" or "idiosyncratic" decision-making concerning "access," *id.* at 82:3–11, 120:19–121:9, 197:15–198:14.

### III. Conti-Brown's Opinions on Board Involvement in Specific Master Account Requests, Including Custodia's, Are Not the Proper Subject of Expert Opinion and Are Unreliable.

**Custodia.** In its Motion, FRBKC contended that whether the Board dictated the outcome of Custodia's master account request such that FRBKC exercised no discretion is not a topic on which expert testimony is proper. *See* Mot. 10–14. As FRBKC explained, evaluating deposition testimony and the documentary record to ascertain the Board's level of involvement does not require the kind of technical or scientific expertise that would make expert testimony appropriate under Federal Rule of Evidence 702. *Id.* In response, Custodia asserts without any explanation that Conti-Brown's "testimony is helpful to the Court with respect to evaluating the Board's role in the denial of Custodia's master account application," Opp. 11, but that unsupported claim does

7

not satisfy Custodia's burden to prove that the proffered testimony is admissible, *see Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991) ("[T]he touchstone of admissibility is helpfulness to the trier of fact." (quotation marks omitted)). Furthermore, Custodia goes on to admit that, once again, its real purpose in proffering Conti-Brown as an expert is to guide the Court's statutory interpretation. Opp. 12 (claiming that Conti-Brown's testimony on the denial of Custodia's request "will aid the Court in its interpretation of the MCA"). As explained *supra* and in the Motion to Exclude, expert testimony that invades the duty of this Court to decide the law is improper.

Even if the Board's role in Custodia's request for a master account were a proper subject for expert testimony (which it is not), Conti-Brown's methodology is unreliable. *See* Mot. 11–12. Conti-Brown initially reached his "expert" opinion that the Board controlled the outcome of Custodia's request, *see* Ex. 1, Rep. ¶¶ 99, 128–32, 135, without reviewing *any* testimony in this case, *see* Mot. 11–12. Although his Supplemental Report asserts that his opinion "remain[ed] unchanged" after he reviewed the testimony of FRBKC employees, Ex. 14 ("Supp. Rep.") ¶ 2, it does not address the testimony regarding Custodia's request or any other part of the voluminous record demonstrating that FRBKC was skeptical of Custodia's request from the outset, moving consistently toward denial, all without any command or instruction from the Board to do so. As FRBKC has explained, Mot. 2–3, 5, 11–12 & n.6, to be reliable, an expert opinion must account for material facts; ignoring or discounting contrary evidence without explanation is insufficient.

**TNB and TBAS.** Custodia does not even acknowledge this Court's determination that the Board's role in TNB's or TBAS's request is not relevant to this litigation. ECF 175; *see* Mot. 14–15. Instead, Custodia suggests that Conti-Brown's opinion that the Board controlled the outcomes of these requests, *see, e.g.*, Ex. 1, Rep. ¶ 98, must be admitted as part of Conti-Brown's "historical

perspective on the development and implementation of the MCA at the Fed," Opp. 12. But Conti-Brown's "historical perspective" is irrelevant to the Court's determination as to whether the Board dictated the outcome of *Custodia's* master account request. *See* ECF 197. Finally, although Custodia asserts that the record regarding TNB and TBAS was sufficient for Conti-Brown to form an opinion, Opp. 12–13, Conti-Brown's Report and deposition testimony make clear that he lacked sufficient basis to opine on these irrelevant matters. *See* Mot. 14–15. An accurate determination of the Board's role in TNB's and TBAS's requests would require fact development that has not occurred in this case. Conti-Brown's opinion is impermissible speculation based on scant evidence. *See Castro v. Bleimeyer*, 2015 WL 11143395, at *3 (D.N.M. Apr. 21, 2015) (Skavdahl, J.) ("Experts may extrapolate from the evidence, but speculation is not permitted in expert testimony."). The Court should exclude Conti-Brown's unfounded testimony on TNB and TBAS, which Custodia seeks to use to buttress its own speculations.

## CONCLUSION

For the foregoing reasons, FRBKC requests that the Court grant its motion and exclude Professor Conti-Brown's Report, Supplemental Report, and testimony.

Date: February 23, 2024

/s/ *Billie LM Addleman*
Billie L.M. Addleman, #6-3690
Erin E. Berry, #7-6063
HIRST APPLEGATE, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
eberry@hirstapplegate.com

Andrew Michaelson (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com

Jeffrey S. Bucholtz (*pro hac vice*)
Christine M. Carletta (*pro hac vice*)
E. Caroline Freeman (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500
jbucholtz@kslaw.com
ccarletta@kslaw.com
cfreeman@kslaw.com

Jared Lax (*pro hac vice*)
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Phone: (720) 535-2300
jlax@kslaw.com

*Counsel for Defendant the*
*Federal Reserve Bank of Kansas City*

## CERTIFICATE OF SERVICE

I certify the foregoing ***Defendant Federal Reserve Bank of Kansas City's Reply in Support of Motion to Strike Reports and Exclude the Testimony of Professor Peter Conti-Brown*** was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure via CM/ECF on February 23, 2024.

<u>/s/ Shannon M. Ward</u>
OF HIRST APPLEGATE, LLP
Attorneys for Defendant FRBKC
