# EXHIBIT 86

CONFIDENTIAL

In accordance with a protective order, the enclosure(s) shall be treated as confidential and shall not be shown to any person other than those persons designated in paragraph 8.2 of the paragraph order.

Page 1

1  UNITED STATES DISTRICT COURT
2  FOR THE DISTRICT OF WYOMING
3
4  _____
5  CUSTODIA BANK INC.,        ) Civil Number
                              ) 22-cv-00125-SWS
6     Plaintiff,              )
                              )
7  v.                         )
                              )
8  FEDERAL RESERVE BOARD      )
   OF GOVERNORS and FEDERAL   )
9  RESERVE BANK OF            )
   KANSAS CITY,               )
10                            )
      Defendants.             )
11 _____
12
13
               - C O N F I D E N T I A L -
14
15             Deposition of
16             TARA HUMSTON
17             November 3, 2023
18             8:04 a.m.
19
20
21 Reported by:  Bonnie L. Russo
22 Job No. 6153223

Page 25

1    I can't speak to how many.  I know she had some
2    contact at some point.
3        Q.    And did her contacts include
4    speaking with the commissioner of the Wyoming
5    Division of Banking, Albert Forkner?
6        A.    I do recall her saying she had
7    talked with Albert Forkner.
8        Q.    And did you have any conversations
9    with Wyoming representatives?
10       A.    At the time Albert would have been
11   the commissioner of Wyoming, and so in
12   supervising institutions in Wyoming, I would
13   have had periodic contact with Albert.  I don't
14   recall a specific meeting just to discuss the
15   SPDI charter.
16       Q.    You mentioned that you had regular
17   conversations with Wyoming more generally in
18   connection with their supervision -- was that
19   in connection with their supervision of
20   entities in Wyoming?
21       A.    Yes.  We work with the state
22   commissioners on the institutions that we

Page 26

1    jointly supervised through the dual banking
2    system.
3        Q.    Okay.  Do you have any criticism of
4    the Wyoming Division of Banking?
5        A.    No specific -- it's not a criticism,
6    but we often help some of our state
7    counterparts because they lack the resources to
8    be able to supervise some of the entities in
9    their state.
10       Q.    Did Wyoming have experience
11   personnel performing supervisory roles?
12       A.    For traditional banking charters,
13   they had staff that were -- had the skill set
14   needed to supervise traditional bank charters.
15       Q.    They were qualified?
16            MR. MICHAELSON:  Objection.  Form.
17            THE WITNESS:  Qualified for what?
18            BY MR. SCARBOROUGH:
19       Q.    For supervising traditional bank
20   charters, as you said?
21       A.    They had individuals I think our
22   team would say were qualified.

```
 1        Q.   And they had individuals who were
 2   also competent, correct?
 3        A.   Competent in...?
 4        Q.   Supervising traditional bank
 5   charters.
 6        A.   I think if we say they were skilled,
 7   they would be competent in supervising a
 8   traditional bank charter.
 9        Q.   And they had individuals who were
10   well trained in supervising traditional bank
11   charters, right?
12        A.   Wyoming Department of Banking had
13   training available to their examiners.  Some of
14   the states rely on the Federal Reserve's
15   training, so I don't know to what extent their
16   state relied on ours, but many of our states
17   are not able to fully utilize their own
18   training programs.
19        Q.   But your experience with Wyoming was
20   that they -- the individuals you dealt with
21   were well trained, correct?
22        A.   I don't deal with many of their
```