Andrew Michaelson (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com

Jeffrey S. Bucholtz (*pro hac vice*)
Christine M. Carletta (*pro hac vice*)
E. Caroline Freeman (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500
jbucholtz@kslaw.com
ccarletta@kslaw.com
cfreeman@kslaw.com

Jared Lax (*pro hac vice*)
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Phone: (720) 535-2300
jlax@kslaw.com

Billie L.M. Addleman, #6-3690
Erin E. Berry, #7-6063
HIRST APPLEGATE, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
eberry@hirstapplegate.com

*Counsel for Defendant Federal Reserve Bank of Kansas City*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| CUSTODIA BANK, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>FEDERAL RESERVE BOARD OF GOVERNORS and FEDERAL RESERVE BANK OF KANSAS CITY,<br><br>*Defendants.* | No. 1:22-cv-00125-SWS |

**DEFENDANT FEDERAL RESERVE BANK OF KANSAS CITY'S
REPLY IN SUPPORT OF MOTION TO STRIKE REPORTS AND
EXCLUDE THE TESTIMONY OF KATIE COX**

**INTRODUCTION**

Katie Cox's Expert Report, Supplemental Report, and testimony demonstrate that she intends to offer expert testimony that Custodia's interpretation of the Federal Reserve Act—as providing an absolute entitlement to a master account and services—is the correct one. *See* Ex. 1 ("Rep.") ¶¶ 42–55 (describing Custodia's "entitlement" to a master account); Ex. 2 ("Tr. (Day 1)") at 63:9–21 (testifying that "the only statutory factor for the master account" is whether an institution is legally eligible). FRBKC's motion explained that such legal-opinion testimony would be improper, and Custodia now concedes that Cox cannot offer such opinion. *See* Opp. 13–14 (agreeing that an expert's conclusion of law "invade[s] the province of the Court"). The Court should therefore prohibit Cox from opining that legal eligibility—meaning whether an entity meets the definition of a depository institution under Section 19(b) of the Federal Reserve Act—is "the only statutory factor" relevant to a master account determination and should exclude any other legal-opinion testimony that she may attempt to offer.[1]

FRBKC's motion also explained that a party cannot use an expert witness as a conduit to present its preferred factual narrative. *See* Mot. 2, 11–12 (citing Order at 7, *Houska v. Newkota Servs. & Rentals LLC, et al.*, No. 2:20-cv-68-SWS (D. Wyo. Feb. 22, 2022), ECF 82 (Skavdahl, J.) (testimony that is "merely a recitation of the facts in the case" is a misuse of expert testimony)). Custodia does not disagree with this point either. It does not mention *Houska* and says only that Cox will not testify in such a manner. *See* Opp. 13 (stating that Cox "does not merely 'repeat Custodia's factual allegations'").

---

[1] Custodia's claim that Cox was "goad[ed]" into sharing her legal opinion is incorrect. *See* Opp. 13–14. Cox testified freely and repeatedly to her view that legal eligibility is the only statutory factor that can be considered, and her Report refers to master accounts as "entitlements." *See, e.g.*, Ex. 2, Tr. (Day 1) at 63:4–21, 65:5–21, 67:21–68:11, 68:21–69:11, 165:7–19; Ex. 3 ("Tr. (Day 2)") at 34:6–21, 35:21–36:4, 43:10–20, 77:21–78:18; Ex. 1., Rep. ¶¶ 42–55.

If Cox will not offer legal opinions or attempt to function as a conduit for Custodia's preferred narrative, what remains of Cox's purported expert testimony? Only one discrete factual opinion: that the Board supposedly controlled the denial of Custodia's master account request. The Court should prohibit Cox from offering this expert opinion for four reasons. *First*, Custodia has failed to demonstrate that there is a need for expert testimony on this non-technical, non-scientific fact issue. The Court doesn't need an "expert" to review the factual record and tell the Court what the Board did or did not do. *Second*, even if expert testimony regarding how the Board interacted with FRBKC on Custodia's request could be helpful to the Court, Cox isn't an expert on that. During her time at the Board, she had no experience with Board-Reserve Bank communications concerning master account requests. Indeed, she recalled having only ever encountered two novel master account proposals, and all she did in connection with those proposals was refer questions of legal eligibility to Board Legal. This provides no basis to opine on what happened here, where the eligibility decision (favorable to Custodia) did not drive the outcome. What matters are Board-Reserve Bank interactions with which Cox has no experience (recall that Cox worked in Mergers & Acquisitions, not Reserve Bank Operations or Board Legal). *Third*, Cox failed to apply a reliable methodology. Cox vaguely opines that the Board decided policy questions that determined the outcome, but she fails to identify a policy decision made by the Board that did so. And Cox reviewed only a slim portion of the record, failing to take into consideration or ignoring anything that didn't fit her (and Custodia's) preconstructed narrative. *Fourth*, and relatedly, Cox is biased. In addition to being paid as an expert witness (as is standard), Cox has been on Custodia's payroll as an advisor for four years, continues to receive regular consulting payments from the company, and has a stake in the outcome of this case through her stock options.

I.     **The Court Doesn't Need an Expert to Help It Understand the Record.**

Custodia says that Cox's opinions "fall outside the Court's common knowledge and experience" and that Cox will be an "invaluable resource" to the Court in reviewing the discovery record. *See* Opp. 13. Custodia overstates the factual complexity here. The documents and testimony will reflect whether FRBKC exercised discretion in denying Custodia's request, or whether the Board eliminated that discretion and dictated the result. This requires no insider knowledge. It is the kind of factual determination that courts (and juries) make all the time.

Surprisingly, Custodia's opposition ignores *Weidenbach v. Casper-Natrona County Health Department*, 2021 WL 2492480 (D. Wyo. May 21, 2021) (Skavdahl, J.), cited in FRBKC's motion. *See* Mot. 8. In *Weidenbach*, this Court determined that the proffered expert testimony was "cumulative and unnecessary" where the factfinder could evaluate "each of these assertions based solely on the testimony of the direct participants without any further explanation or opinion from an expert witness." *See* 2021 WL 2492480, at *2. The same applies here. The Court does not need an expert's help in assessing the evidence and making factual findings.

II.    **Cox's General Federal Reserve Background Doesn't Qualify Her to Offer Expert Opinion on the Board's Role in Custodia's Request.**

Even if the Court could use an expert's help to determine whether the Board dictated the outcome of Custodia's request, Cox is unqualified to provide it. Custodia describes Cox as a 30-year veteran of the Federal Reserve with "insight into the Board's relationship with Reserve Banks" and says that she is being offered in her expert capacity "to explain the Board's processes for policymaking and decision-making and its relationship to the Reserve Banks." Opp. 6–7. But she is no expert on the Board's relationship with Reserve Banks concerning master account requests, and her reports don't describe the Board's "policymaking" or "decision-making" "processes." Instead, all she does is opine that the Board decided Custodia's master account

3

request. *See* Ex. 1, Rep. ¶ 7. The majority of her opinion—from paragraph 30 through the end of her initial Report—is entirely focused on the treatment of Custodia's master account request.

On this subject, Cox lacks the experience or specialized knowledge required of an expert witness. *See City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998). Cox was unfamiliar with Reserve Banks' policies and procedures concerning master account access. *See* Ex. 2, Tr. (Day 1) at 64:12–20, 148:8–149:16. She did not know that Reserve Banks conduct risk assessments. *See* Ex. 3, Tr. (Day 2) at 90:13–91:1. Cox never worked in the Board's Division of Reserve Bank Operations and Payment Systems, which oversees Reserve Bank operations and works on payment and financial system issues, and she was unfamiliar with its work. *See* Ex. 2, Tr. (Day 1) at 170:15–19; Ex. 3, Tr. (Day 2) at 46:3–47:4. Her identifiable experience at the Board on master account requests was limited to two instances:                                    ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮                      *See* Ex. 3, Tr. (Day 2) at 38:4–21.[2] In both cases, essentially all she knows is that Board Legal determined legal eligibility and the Reserve Banks ended up providing master accounts. *See* Ex. 3, Tr. (Day 2) at 34:10–21, 40:3–44:19. That's not what happened here. Custodia was deemed legally eligible to get an account—the only part of the process with which Cox has claimed familiarity—but then the request was denied. What matters is how it came to be that, following the determination of Custodia's eligibility, Custodia's request was denied and, specifically, whether the Board controlled that decision. Cox fails to articulate any reason to believe that her limited experience with ▮▮▮▮▮▮▮ provides "specialized knowledge" as to what happened here.

---

[2] The opposition quibbles with this characterization, protesting that "there probably were a couple more in there." Opp. 8; *see also* Ex. 2, Tr. (Day 1) at 72:21–73:8. But the Court can only verify Cox's expert qualifications based on the examples she was able to identify. Custodia cannot show that Cox is qualified by asking the Court to speculate about purported experience that Cox herself cannot recall.

To be sure, Cox had experience on a variety of proposals other than master account requests (*e.g.*, applications related to the formation/expansion of a bank holding company, changes in control of a bank holding company, applications by banks for membership in the Federal Reserve, etc.).  But these other types of proposals are those that by federal law are decided by the Board, not by Reserve Banks (unless they are exercising authority delegated by the Board).  *See, e.g.*, Section 3 of the Bank Holding Company Act, 12 U.S.C. § 1842 ("It shall be unlawful, except with the prior approval *of the Board*, [] for any action to be taken that causes any company to become a bank holding company" (emphasis added)).  Custodia fails to explain how Cox's experience with such proposals gives her expertise to opine "that the Board intervened in Custodia's request for a master account and exercised control over the denial of Custodia's master account."  Ex. 1, Rep. ¶ 7; *see also* Opp. 4 (stating that Cox reviewed about forty different types of proposals that came into the Federal Reserve System).  Experience in how decisions on other types of proposals were assessed (particularly proposals committed by statute to determination *by the Board*) doesn't make Cox an expert on how Custodia's master account outcome was reached.[3]

Finally, Custodia claims FRBKC's motion is off-base because it challenges "Cox's qualifications to opine on the Kansas City Fed's 'master account process,'" when Custodia offers Cox only as an expert on *the Board's* process.  Opp. 2.  But that's part of the point.  The fact question at issue here lies at the intersection of Board and Reserve Bank roles, and not even Custodia contends that Cox knows anything about how Reserve Banks handle master account

---

[3] For example, Cox opines in her Report that Systemwide policy groups were "one of the vehicles that the Board used to communicate its views that Custodia's master account application should be denied."  *See* Ex. 1, Rep. ¶ 37.  But there was extensive discovery into this subject, most of which Cox did not review.  That discovery yielded no evidence that the Board used these groups to communicate a view on Custodia's request.  Nor can Cox's opinion be based on her experience at the Board, as she never indicated that she participated in any working group implicating master accounts.  Her experience with membership or merger applications would also bear no relation.

requests.  And in any event, as explained above, Cox lacks expertise even on the Board's side of that equation.

### III.     Cox Failed to Apply a Reliable Methodology.

Cox's opinion hinges on her view that the Board sets "policy."  She attributes that view to both her experience and the "law."  *See, e.g.*, Ex. 1, Rep. ¶ 86.  But Cox's opinion doesn't identify the "policy" questions that supposedly determined the outcome of Custodia's request.  The only policy question named in her reports is "whether depository institutions holding custody of crypto-assets are eligible to access the Federal Reserve System."  Ex. 1, Rep. ¶ 41; *see also id.* ¶¶ 8, 20 (same).  But the Board has *not* made a "policy" decision that digital asset custody is necessarily impermissible.  *See* Ex. 25 (Policy Statement on Section 9(13) of the Federal Reserve Act, 88 Fed. Reg. 7848, 7850 (Feb. 7, 2023)).[4]

To the extent Cox opines that "the Board's concern over novel banks engaging with crypto assets as a policy matter dictated the denial of Custodia's master account application," Ex. 1, Rep. ¶ 29, that contention is left unexplained and unsupported.  Who at the Board had that concern?  Did such a concern lead to a "policy" decision?  By whom, when, and how?  And how was such an alleged Board policy decision conveyed to FRBKC?  There was extensive discovery into these questions, and the evidentiary record is what it is.  Cox should not be permitted to come over the top with "expert" supposition about what must have happened that is unsupported by the

---

[4] Cox and Custodia cite 12 C.F.R. § 265.20(a)(17) (2023) for the proposition that only the Board has authority to address any matters that raise "significant legal, supervisory, or policy issues."  Ex. 1, Rep. ¶ 33; ECF 234 at 50.  But § 265.20(a)(17) says nothing of the sort.  *First*, § 265.20 concerns only functions that the Board delegates to Reserve Banks (such as involvement in membership applications).  Reserve Banks do not review master account requests pursuant to Board-delegated authority, and nowhere in part 265 is there reference to decisions on Reserve Bank account requests.  *Second*, § 265.20(a)(17) narrowly applies only to Reserve Banks' authority concerning "requests for relieving or modifying ... a commitment relied upon by the Reserve Bank" in certain specified scenarios that are not implicated in this case.

evidentiary record.  Her conclusory assertion is not the product of any reliable methodology.

The unreliability of Cox's approach extends to her scant review of the record.  Custodia contends that Cox conducted a "careful study of the relevant material."  Opp. 2.  She did no such thing.  As her reports and testimony make clear, Cox either declined to examine most of the factual record or decided to ignore the aspects that contradicted her preconceived notions.  In its opposition, Custodia says it is "immaterial" whether Cox is familiar with the policies and procedures that guided FRBKC's handling of Custodia's master account request.  *See* Opp. 10.  But these policies are highly material.  They demonstrate that the Guidelines, S-Letter, and Handbook are consistent with FRBKC's longstanding approach to master account requests.  *See* Mot. 10–11.  Without a proper review of the record (and lacking any preexisting knowledge of FRBKC's policies), Cox's opinion that the Guidelines, S-Letter, and Handbook somehow changed the master account decision-making and handed control over to the Board is unfounded.

## IV.     The Court Should Guard Against a Biased Expert Witness Even for a Bench Trial.

As a paid consultant with a financial stake in the outcome of the litigation, Cox is clearly a biased witness.  This will be subject of impeachment if she testifies as a fact witness, and her bias prevents her from serving as an expert witness.  Even for a bench trial, Cox's "lack of objectivity" may still be a proper basis to exclude her expert testimony.  *See Agri-Sys. v. Structural Techs., LLC*, 2023 WL 3481397, at *4 (D. Colo. May 16, 2023).  Because Cox has become "an advocate for [the] cause" that Custodia is entitled to a master account, she has "depart[ed] from the ranks of an objective expert witness."  *Id.*

* * *

An expert opinion on the factual issue of whether the Board dictated the denial of Custodia's master account request is neither helpful nor necessary—the Court is fully capable of deciding that question on its own.  And in any event, Custodia has failed to demonstrate that Cox

has either specialized knowledge that would help the Court decide this question or an "expert" opinion that is the product of a reliable methodology sound enough to overcome her obvious bias. Allowing Cox to testify as an expert would also risk backsliding on Custodia's concessions that Cox cannot offer improper legal opinion or serve as a conduit for Custodia's preferred narrative. *See supra* at 1.  For all these reasons, individually and in combination, the Court should conclude that Cox's proffered expert testimony would not be helpful or proper.  *See* Order at 6–15, *Houska*, No. 2:20-cv-68-SWS (striking expert witness "for several reasons" including regurgitating a factual narrative, reaching legal conclusions, and providing no help to the trier of fact).

## CONCLUSION

For the foregoing reasons, FRBKC requests that the Court cabin Cox to appearing as a fact witness if her fact testimony is otherwise relevant and admissible and grant its motion to exclude her Report, Supplemental Report, and expert testimony.

Date: February 23, 2024

/s/ *Billie LM Addleman*
Billie L.M. Addleman, #6-3690
Erin E. Berry, #7-6063
HIRST APPLEGATE, LLP
P. O. Box 1083
Cheyenne, WY 82003-1083
Phone: (307) 632-0541
Fax: (307) 632-4999
baddleman@hirstapplegate.com
eberry@hirstapplegate.com

Andrew Michaelson (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Phone: (212) 556-2100
amichaelson@kslaw.com

Jeffrey S. Bucholtz (*pro hac vice*)
Christine M. Carletta (*pro hac vice*)
E. Caroline Freeman (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Ave NW
Washington, DC 20006
Phone: (202) 737-0500
jbucholtz@kslaw.com
ccarletta@kslaw.com
cfreeman@kslaw.com

Jared Lax (*pro hac vice*)
KING & SPALDING LLP
1401 Lawrence Street, Suite 1900
Denver, CO 80202
Phone: (720) 535-2300
jlax@kslaw.com

*Counsel for Defendant the*
*Federal Reserve Bank of Kansas City*

## CERTIFICATE OF SERVICE

I certify the foregoing ***Defendant Federal Reserve Bank of Kansas City's Reply in Support of Motion to Strike Reports and Exclude the Testimony of Katie Cox*** was served upon all parties to this action pursuant to the Federal Rules of Civil Procedure via CM/ECF on February 23, 2024.

*/s/ Shannon M. Ward*
OF HIRST APPLEGATE, LLP
Attorneys for Defendant FRBKC